QUINN EMANUEL URQUHART & SULLIVAN LLP
John Potter (CA Bar No. 165843)
  johnpotter@quinnemanuel.com
Charles B. Stevens (CA Bar No. 324425)
  charliestevens@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA  94111
(415) 875-6600

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Williams (CA Bar No. 181299)
  michaelwilliams@quinnemanuel.com
Sage R. Vanden Heuvel (CA Bar No. 294868)
  sagevandenheuvel@quinnemanuel.com
865 S Figueroa St, 10th Floor
Los Angeles, CA  90017
(213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN LLP
Derek L. Shaffer (CA Bar No. 212746)
  derekshaffer@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C.  20005
(202) 538-8000

*Attorneys for Plaintiff U.S. News & World Report, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## _____ DIVISION

| | |
|---|---|
| **U.S. NEWS & WORLD REPORT, L.P.**<br><br>Plaintiff,<br><br>vs.<br><br>**DAVID CHIU**, in his Official Capacity as City Attorney of the City and County of San Francisco,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND A DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

**Introduction**

1. The First Amendment to the United States Constitution safeguards the freedom of speech and the freedom of the press against viewpoint-based discrimination by the government. The Liberty of Speech Clause in the California Constitution, Art. I, § 2, similarly protects these foundational rights. And California's Reporters' Shield Law, embodied in the California Constitution (Art. I, § 2, subd. (b)) and California law (Cal. Evid. Code § 1070), defends the press against intrusive inquiries by the government into unpublished information, newsgathering, and methodologies.

2. Despite these bedrock protections, San Francisco's City Attorney David Chiu (the "City Attorney") is now investigating and issuing burdensome subpoenas to Plaintiff U.S. News & World Report, L.P. ("U.S. News") because he disagrees with U.S. News' viewpoint and methodology (which is publicly available) for arriving at U.S. News' rankings. Specifically, the City Attorney disapproves of U.S. News' rigorous and well-respected Best Hospital rankings. It is flatly unconstitutional for the City Attorney to harass U.S. News due to his differing views on these rankings; his mounting harassment must be put to a stop.

3. At its core, the City Attorney's actions pose a fundamental threat to our First Amendment rights and set a dangerous precedent for all media platforms and news organizations. The City Attorney is threatening invasive, sweeping,

COMPLAINT

burdensome incursions against a news organization merely because he disagrees with an editorial viewpoint – specifically, U.S. News' rankings and methodology. The independence of editorial determinations—free from business considerations— is a bedrock principle of journalism, to which U.S. News proudly adheres.

4.      U.S. News firmly stands behind its hospital rankings as a valuable and reliable public resource for individuals and families making critical decisions about medical care for themselves and their loved ones.

5.      Throughout its storied 90 year history, U.S. News has been a news organization that has consistently maintained the highest level of journalistic integrity.  U.S. News has won a variety of prestigious awards, including multiple National Magazine Awards and other recognition from the Society of Professional Journalists, Investigative Reporters and Editors, the National Press Club, and the Overseas Press Club of America.  Its mission has been and remains to equip its readers and consumers with the information needed to make important life decisions. Over the decades, U.S. News has learned that its readers consume information in different formats, which led to the development of robust ranking systems based on multiple data sources, compiled and summarized with rigor and journalistic expertise.  For over 34 years, U.S. News has provided hospital rankings to recognize excellence in healthcare services and provide important information to healthcare consumers.  U.S. News maintains fidelity to its mission of helping consumers make

COMPLAINT

the best healthcare decisions and operates according to the highest journalistic standards.

6.     On June 20, 2023, and with no prior warning, the City Attorney sent U.S. News a demand letter (attached hereto as Exhibit A) criticizing the results of U.S. News' hospital rankings and seeking information about U.S. News' ranking methodology, purportedly under the auspices of the California Business and Professions Code section 17508.  The City Attorney claimed (incorrectly) that the rankings "suffer from poor and opaque methodology" and questioned U.S. News' claim that it is the "global authority in hospital rankings."  In a thorough response dated July 19, 2023 (Ex. B), U.S. News raised grave, pointed concerns about the City Attorney's infringement on U.S. News' rights under the United States and California Constitutions and California's Reporters' Shield Laws, while also explaining that its ranking methodology is published annually, communicated widely, and is wholly transparent.

7.     When U.S. News did not receive any further correspondence from the City Attorney for nearly six months, it reasonably assumed that the City Attorney's misguided inquiry was at an end.  It was not.

8.     On January 9, 2024, the City Attorney inexplicably returned and escalated his intrusive inquiry by issuing, without notice, two subpoenas seeking documents and information relating to U.S. News' hospital rankings (the

4

"Subpoenas").  Exs. D, E.  The Subpoenas mark an unconstitutional intrusion into U.S. News' journalistic practices, motivated by the City Attorney's disapproval of U.S. News' viewpoint regarding which hospitals deserve to be ranked higher than others.

9.     The Subpoenas make clear that the City Attorney is using governmental process to engage in viewpoint discrimination—and, indeed, is proceeding as though he holds censorial (or editorial) authority over how U.S. News performs its journalistic work ranking hospitals.  The Subpoenas ask U.S. News to "[d]escribe [U.S. News'] basis for not including measures of health equity in its rankings of adult Hospitals";  "[d]escribe how, if at all, [U.S. News] has incorporated primary and preventive care in each annual version of the Best Hospitals rankings"; and "[d]escribe [U.S. News'] basis for believing that Medicare outcomes information from at least 18 months ago accurately reflects current Hospital outcomes."

10.     Simply put, the City Attorney believes his office has the power to second-guess and redirect the journalistic decision-making of U.S. News based on his own view of what factors should and should not be considered.  This is the same power that governmental censors and licensors had claimed over the press until the Framers of the U.S. Constitution enshrined the First Amendment more than 200 years ago in order to abolish any such power.  Because the City Attorney today is flouting the First Amendment's protection of Freedom of Expression and the

COMPLAINT

Freedom of the Press along with California's Constitution, U.S. News is respectfully seeking injunctive and declaratory relief.

11.     If the City Attorney's actions are allowed to stand, any journalistic enterprise that provides analyses or opinions to the public—analyses or opinions that elected officials may wish to fault—may for that reason be subject to subpoena and investigation.  Government actors who disagree with any form of journalism, including articles, rankings, product reviews, editorials, op-eds, or even political cartoons, may feel free to use their powers of investigation to harass, reshape, and chill those views.  Such actions are an affront to the foundational freedoms upon which our Constitution and nation are built.

12.     Forcing U.S. News to respond to the Subpoenas would violate the core right of U.S. News to be free from viewpoint-based discrimination by the government.  Defendant's adverse government action implicates U.S. News' fundamental rights both as a private speaker and a world-renowned journalistic enterprise.  It thus falls to this Court to vindicate the freedoms of speech and of the press embedded in the First Amendment and the Liberty of Speech Clause.

13.     Faced with violation and chilling of First Amendment freedoms, U.S. News has been forced to bring this suit pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201-02 to obtain injunctive and declaratory relief to secure its rights,

6

COMPLAINT

privileges, and immunities under the United States Constitution, the California Constitution, and California's Reporters' Shield Laws.

14.     Specifically, U.S. News seeks a declaration that the Subpoenas violate the First and Fourteenth Amendments to the United States Constitution, Article I, section 2 of the California Constitution, and section 1070 of the California Evidence Code.   U.S. News also seeks an order permanently enjoining Defendant from enforcing the Subpoenas.

**Parties**

15.     U.S. News is a privately held company that, for over 90 years, has been a leading journalistic institution with a reputation for fact-based and data-driven reporting.  U.S. News is famous for, among other things, providing trusted rankings of colleges, graduate schools, hospitals, states, countries, and healthiest communities.   There are tens of millions of visitors to U.S. News' website, usnews.com, every month, consisting of people seeking research and guidance.

16.     Defendant David Chiu is the City Attorney of the City and County of San Francisco.  In that capacity, he exercises enforcement authority on behalf of the City and County of San Francisco and holds ultimate authority over the Subpoenas and any actions to force compliance with same.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Jurisdiction**

17.    This case presents federal questions within this Court's jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(3).  U.S. News brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 (deprivation of rights, privileges, and immunities secured by the Constitution and federal law) and 28 U.S.C. §§ 2201-02 (declaratory judgment as to an actual controversy).

**Divisional Assignment**

18.    This civil action should be assigned to the San Francisco division. Defendant is the City Attorney for the City and County of San Francisco, and a substantial part of the events giving rise to the claims occurred in San Francisco.

**Venue**

19.    Venue in this Court is proper under 28 U.S.C. § 1391(b).

**Facts**

**I.    BACKGROUND OF U.S. NEWS AND ITS METHODOLOGY FOR HOSPITAL RANKINGS**

20.    U.S. News has been ranking hospitals for 34 years.  Its "Best Hospital" rankings are broken into two subcomponents — specialty rankings and procedure and condition ratings.

21.    The specialty rankings are meant for patients with life-threatening or rare conditions who need a hospital that excels in treating complex, high-risk cases.

8

Hospitals are ranked from 1 to 50 in most specialties, with hospitals not in the top 50 but still in the top 10% of all rated hospitals in those specialties receiving a designation of "high performing."

22.     The procedure and condition ratings, meanwhile, focus on specific and more commonly required individual procedures and conditions, such as hip replacement and heart failure, rather than on broader specialties like orthopedics and cardiology.  The goal for these rankings is to evaluate how well hospitals perform in each procedure or condition—not just for the most challenging cases, as with the specialty rankings, but across the full range of patients.  Because the procedures and conditions evaluated are performed at many more hospitals than the specialties, the evaluations produce ratings rather than numerical rankings.  Hospitals that treat enough patients to be evaluated are rated one of three ways for each procedure or condition: high performing, average, or below average.

23.     In 2023, U.S. News evaluated thousands of hospitals across 15 specialties and 21 procedures.

24.     U.S. News provides its Best Hospital rankings to recognize excellent healthcare facilities and to provide the public with an informed view of the relative strengths of particular hospitals.  As stated on U.S. News' website, the rankings are intended to be taken as a "starting point," and "[a]ll care decisions should be made

COMPLAINT

in conjunction with medical professionals."[1]    Depending on any particular individual's health situation, it might make more sense to go to an average hospital that is close by or in-network for insurance purposes rather than a high-performing hospital that is far away and out-of-network.

25.    The methodology used to produce each year's Best Hospitals rankings is updated and refined on an annual basis by a team of professionals and journalists led by a Managing Editor and a Senior Health Data Scientist.  Each member of the editorial team works full time on health rankings, including the hospital rankings. Editorial team members are not involved in sales of any products or services and revenue considerations do not impact the rankings in any way.

26.    In formulating its rankings, U.S. News has contracted for nearly 20 years with an independent, nonprofit research institute to support the publication of Best Hospitals: Specialty Rankings and Best Children's Hospitals.  Additionally, U.S. News has from time to time contracted with other professional organizations to support its analytical work.

27.    The process that U.S. News' editorial team uses to iteratively refine its methodology is designed to be responsive to stakeholder feedback, advances in

---

[1]  Ben Harder, *FAQ: How and Why We Rank and Rate Hospitals*, U.S. News Dec. 5, 2023, *available at* https://health.usnews.com/health-care/best-hospitals/articles/faq-how-and-why-we-rank-and-rate-hospitals (last visited Jan. 23, 2024).

COMPLAINT

measurement science, and changes in how healthcare is delivered to beneficiaries of America's largest insurance plan, Medicare.  This process entails long-standing journalistic practices that includes judgment and evidentiary rigor.

28.    Stakeholder feedback is an essential component of the journalistic process, and the team obtains feedback via multiple modalities, including: (1) working groups comprising medical experts; (2) U.S. News-convened focus groups of healthcare consumers; (3) U.S. News-initiated interaction with medical researchers and study authors; (4) memoranda and letters submitted by specialty societies, hospital consortia, researchers, clinicians, patients, patient advocate groups, hospital and health system administrators, and other stakeholders; (5) professional meetings at which U.S. News staff present and receive feedback; (6) U.S. News-hosted conferences and webinars in which U.S. News staff present and receive feedback; and (7) other miscellaneous communications with stakeholders. All of this unpublished information obtained during U.S. News' editorial process is protected by the First Amendment and California's Reporters' Shield Law.

29.    Advances in measurement science are identified by: (1) reading peer-reviewed studies published in relevant scientific journals, such as the Journal of the American Medical Association, Health Affairs, and Health Services Research; (2) speaking with and corresponding with researchers about the methods they have used in such studies; and (3) conducting independent scientific research.

30.     Relevant changes in healthcare delivery are identified by studying policy announcements issued by the Centers for Medicare and Medicaid Services, as well as studying data, whether issued by other groups or derived internally, to understand changing trends in how and where diseases are treated and how treatments are documented in the data sets available for our analysis.

31.     The U.S. News team curates the feedback received and identifies candidate methodology changes that, in its members' opinions, are likely to improve the precision with which the methodology identifies high-performing hospitals.

32.     U.S. News publishes, along with the actual rankings, reports that describe in detail the methodologies underlying each of its Best Hospital rankings for that year.  Examples of these reports are attached hereto as Exhibits G and H.  In particular, the reports describe the changes that have been made from the prior year's methodology, the data that is collected/used, the weighting of the data and criteria, the expert opinion component to the rankings, and even methodological improvements that are being considered for future years.   These detailed methodology reports are available for downloading so that anyone can see the methodology used for a particular ranking in any particular year.

33.     U.S. News gives no weight to financial considerations when determining and publishing its rankings.  Higher rankings cannot be bought at any sum, as this would fatally undermine U.S. News' standing as a leader in unbiased,

COMPLAINT

quality-driven rankings.  While U.S. News accepts advertising and other revenues from entities that may be ranked—just as television networks and newspapers regularly accept ads from businesses that are the subject of news stories—such advertising plays no role in the rankings.  Ranked entities have the option to license a "badge" to highlight their placement on the rankings on their own website and in their own advertisements, a practice followed by many other publications.  The licensing of badges is common in the publishing industry.  The licensing of the badge has absolutely no connection with the rankings an entity may receive.

34.     U.S. News is just one of many publications that provide rankings and/or ratings to the public, both about hospitals and otherwise.  The Wall Street Journal,[2] The San Francisco Chronicle,[3] Newsweek,[4] The L.A. Times,[5] The New York Times'

---

[2]     *2024 Best Colleges in the U.S.*, WALL STREET JOURNAL, *available at* https://www.wsj.com/rankings/college-rankings/best-colleges-2024 (last visited Jan. 23, 2024).

[3]     Cesar Hernandez and Soleil Ho, *Top 25 Restaurants,* SAN FRANCISCO CHRONICLE, Jan. 15, 2024, *available at* https://www.sfchronicle.com/projects/2023/best-sf-restaurants-bay-area/ (last visited Jan. 23, 2024).

[4]     *World's Best Hospitals 2023*, NEWSWEEK, *available at* https://www.newsweek.com/rankings/worlds-best-hospitals-2023/united-states (last visited Jan. 23, 2024).

[5]     Bill Addison, *The 101 Best Restaurants in Los Angeles of 2023,* LOS ANGELES TIMES, Dec. 5, 2023, *available at* https://www.latimes.com/food/list/101-best-los-angeles-restaurants-ranked-2023 (last visited Jan. 23, 2024).

Wirecutter,[6] Forbes,[7] Consumer Reports,[8] Better Homes and Gardens,[9] CNET,[10] Money.com,[11] and countless other websites, newspapers, and magazines offer rankings, reviews, and "best of" lists to their readers.  If the City Attorney's actions are permitted to stand, the overreach threatens to chill all media, not just U.S. News.

## II.   U.S. NEWS' HOSPITAL RANKINGS ARE WIDELY RECOGNIZED AS A VALUABLE RESOURCE

35.   Numerous third-party evaluations by experts in the healthcare industry support U.S. News' view that its hospital rankings are a valuable and trusted resource for the public.  Most notably, in 2019, health researchers writing in the New England Journal of Medicine (long renowned as one of the world's most respected and influential medical journals) bestowed upon U.S. News the highest grade among the hospital rankings they evaluated.[12]   The researchers conducted a comprehensive

---

[6]   New York Times Wirecutter, *available at* https://www.nytimes.com/wirecutter/ (last visited Jan. 23, 2024).

[7]   *Forbes Lists,* FORBES, *available at* https://www.forbes.com/lists/list-directory/ (last visited Jan. 23, 2024).

[8]    CONSUMER REPORTS, *available at*   https://www.consumerreports.org/ (last visited Jan. 23, 2024).

[9]   *BHG Recommends*, BETTER HOMES & GARDENS, *available at* https://www.bhg.com/shopping/bhg-recommends/ (last visited Jan. 23, 2024).

[10]   *Best* Products, CNET, *available at* https://www.cnet.com/best/ (last visited Jan. 23, 2024).

[11]    *The Best Hospitals of 2024*, MONEY, *available at* https://money.com/best-hospitals/ (last visited Jan. 23, 2024).

[12]   Karl Y. Bilimoria, et al., *Rating The Raters: An Evaluation Of Publicly Reported Hospital Quality Rating Systems*, NEW ENG. J. OF MED. CATALYST, Aug. 14, 2019, *available at* https://catalyst.nejm.org/doi/full/10.1056/CAT.19.0629 (last visited Jan. 23, 2024).

14

study to evaluate various hospital ranking systems, including the federal government's CMS Hospital Compare Overall Star Ratings, Healthgrades Top Hospitals, Leapfrog Safety Grade and Top Hospitals, and U.S. News.  The study involved a group of experienced methodologists, consisting of physician scientists who bring expertise in healthcare quality measurement from academic centers and the private sector.  The study established six major criteria for assessing these rating systems:   Potential   for   Misclassification   of   Hospital   Performance, Importance/Impact, Scientific Acceptability, Iterative Improvement, Transparency, and Usability.   The assessment aimed to identify strengths, weaknesses, and opportunities for improvement in the rating systems.  This rigorous study spanned several months and aimed to provide users with valuable insights into the different rating systems, ultimately aiding in their decision-making process.

36.     U.S. News emerged as the health researchers' top-ranking system.  It surpassed even the U.S. Government's own rating system, Hospital Compare.  The New England Journal of Medicine study concluded, "[w]e qualitatively agreed that the U.S. News rating system had the least chance of misclassifying hospital performance.   There was considerable agreement in overall grade assignments among the six individuals who performed the ratings."[13]  As one of the most highly

---

[13]   *Id.*

15

COMPLAINT

regarded peer-reviewed publications in the world, the New England Journal of Medicine study affirms the credibility and significance of U.S. News rankings.

37.    In January 2021, the Journal of General Internal Medicine published an article entitled "Revisiting US News & World Report's Hospital Rankings—Moving Beyond Mortality to Metrics that Improve Care", written by respected physicians at Brigham and Women's Hospital, Harvard Medical School, and Johns Hopkins Medicine.[14]  The authors concluded:  "[U.S. News] rankings have a powerful ability to provide useful information about where patients should seek care at a specialty and overall hospital level.  Similarly, they can motivate hospitals to provide patient-centered care.  We applaud [U.S. News'] efforts to help patients make informed decisions, and we hope that these rankings will evolve to be as reliable and valuable as possible to patients and providers."[15]

38.    U.S. News' hospital rankings has garnered additional acclaim from countless other publications.  USA Today, for instance, published an article on July 27, 2021 emphasizing U.S. News' inclusion of a health equity analysis in its 2022

---

[14]    Mallika L. Mendu, et al., *Revisiting US News & World Report's Hospital Rankings—Moving Beyond Mortality To Metrics That Improve Care*, J. OF GENERAL INTERNAL   MED.   36(1):209-210,   July   7,   2020,   *available   at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7858726/pdf/11606_2020_Article_6002.pdf (last visited Jan. 23, 2024).
    [15]   *Id.*

Best Hospitals rankings.[16]   This health equity analysis identified that "racial and ethnic minorities were underrepresented among patients in roughly 4 out of 5 hospitals in the country," highlighting the importance for hospitals to be more cognizant of these issues when administering healthcare to their local populations.

39.   On July 12, 2023, USA Today published a news article entitled "Hospital Rankings Are Far From Perfect.  But Experts Say Patients Still Need Them."[17]  In that article, an expert on quality care and patient safety noted generally with respect to hospital rankings: "The industry doesn't put out anything more accurate and doesn't put out anything more useful or more timely."[18]  The article indicated that "[t]he annual ratings also create health competition where hospitals vie for patients by devoting resources to hospital quality and safety, which leads to better care and health outcomes."[19]

40.   U.S. News believes that its methodology relies on "world-class data and technology," and it has ample justification for its opinion.  The rankings rely on the

---

[16]   *See* Adrianna Rodriguez, *US Hospitals Struggle To Reduce Health Disparities: Minority Patients Underrepresented In 4 Of 5 Hospitals*, USA TODAY, July 27, 2021, *available at* https://www.usatoday.com/story/news/health/2021/07/27/us-news-best-hospital-ranking-includes-first-health-equity-analysis/8090005002/ (last visited Jan. 23, 2024).

[17]   Adrianna Rodriguez, *Hospital Rankings Are Far From Perfect. But Experts Say Patients Still Need Them*, USA TODAY, July 12, 2023, *available at* https://www.usatoday.com/story/news/health/2023/07/12/why-patients-need-us-hospital-health-rankings/70396794007/ (last visited Jan. 23, 2024).

[18]   *Id.*

[19]   *Id.*

17

Medicare fee-for-service data set, a widely employed data set by academic researchers and various stakeholders. Notably, the rankings incorporate sophisticated technologies from third-party software companies which are highly regarded in the industry. These robust data sources and advanced technological tools contribute to the reliability and accuracy of U.S. News' hospital rankings. As discussed above, U.S. News continually enhances its data points through ongoing improvements and refinements. As the New England Journal of Medicine notes in its study, U.S. News notably improved its rating system by "weighting volume for proportion of Medicare Advantage patients, improving outcome measures with exclusion of external transfers, and adding risk adjustment for sociodemographic factors."[20]

41. These are only a handful of the reputable publications that support U.S. News' beliefs and assertions about the quality and value of its hospital rankings. Undoubtedly, there are other publications that may disagree. Views on both sides are subjective opinions entitled to the fullest First Amendment protections. It is not up to any government to choose between any competing opinions or to respond to one view or the other with adverse governmental action or inquiry.

---

[20] Karl Y. Bilimoria, et al., *supra* n.12.

COMPLAINT

1
2

III.  **DEFENDANT'S UNCONSTITUTIONAL INQUIRY INTO U.S. NEWS' PROTECTED SPEECH**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

42.    On June 20, 2023, the City Attorney sent U.S. News a demand letter seeking information regarding the Best Hospital rankings.  *See* Exhibit A.  On its face, the City Attorney's letter evinced viewpoint-based criticisms of the U.S. News' rankings and methodologies.  Among other things, the letter expressed "significant concerns about the rankings of hospitals," stated that the rankings "suffer from poor and opaque methodology," questioned the "reliability of the rankings," and suggested (falsely) that "USNWR's ranking methodology is seriously flawed." Exhibit A at 1-2.  From there, the letter called out specific aspects of the determinations that U.S. News has made in producing its rankings—such as the selection of "Honor Roll" hospitals, the relative emphasis on cystic fibrosis versus sickle cell disease, the alleged "fail[ure] to incorporate indicators of health equity," an "undue emphasis on mortality," and U.S. News' regard for "subjective opinion surveys."  *Id*. at 2-3.  The letter was a textbook example of content and viewpoint-based discrimination by a government entity.

23
24
25
26
27

43.    The City Attorney's letter sought to couch its criticisms of the content of U.S. News rankings with specious allegations of potential wrongdoing.  For example, the City Attorney alleged a potential violation of California Business and Professions Code section 17508 because U.S. News "advertises itself as an

28

COMPLAINT

authoritative resource in comparing hospitals overall, regionally, and with respect to specialties, procedures, and specific medical conditions." *Id*. at 1-2.  Specifically, the City Attorney challenged U.S. News' portrayal of itself as the "global authority in hospital rankings," and the assertions that its rankings are "authoritative," based on "world-class data and technology," and to aid patients and families in "find[ing] the best healthcare," making "data-informed decisions," and identifying "sources of skilled inpatient care." *Id*.  According to the City Attorney, U.S. News may not offer favorable opinions of itself without providing "all evidence of the facts on which" it bases such opinions.  *Id*.  If this were the law, every news organization and business in America would face potential legal peril anytime it speaks highly of itself.  But the First Amendment says otherwise.

44.     Moreover, the statute that the City Attorney relied on is inapplicable because these statements are not "advertising claim[s]."  Under Section 17508, an actionable statement must meet a three-part test to fall within the purview of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.): "(1) a commercial speaker, (2) an intended commercial audience, and (3) representations of fact of a commercial nature." *Bernardo v. Planned Parenthood Fed'n of Am*., 115 Cal. App. 4th 322, 347–48 (2004) (citing *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 964 (2002)).  The City Attorney's letter did not identify any commercial statements of fact.  In *Bernardo*, the court held that mere statements of opinion on Planned

COMPLAINT

1
2
3
4
5
6

Parenthood's website were not actionable as commercial advertisements. *Bernardo*, 115 Cal. App. 4th at 348; *see also Nike*, 27 Cal. 4th at 967 (holding that the False Advertising Law and Unfair Competition Law "do not suppress points of view but instead suppress false and misleading ***statements of fact***") (emphasis added).

7
8
9
10
11
12
13

45.     The same no less follows for U.S. News' descriptions of its rankings. These statements about U.S. News' journalism are subjective opinion, not commercial statements of fact, and they accordingly are not actionable as a matter of law.   In any event, these statements are amply validated by the views of independent third-party publications and industry observers, as detailed above.

14
15
16
17
18
19
20
21
22
23
24

46.     The City Attorney also baselessly alleged that U.S. News had violated 16 C.F.R. § 255.5, a provision of FTC's Guides Concerning the Use of Endorsements and Testimonials in Advertising ("Guides"), by failing to disclose payments from its ranked hospitals for badge licensing, data subscriptions, and advertising on U.S. News' website and guidebook.  According to the letter, the Guides apply to U.S. News because it is an "endorser" under Section 255.0 of the Guides, and the hospital payments "might materially affect the weight or credibility of the endorsement," thereby triggering disclosure obligations under Section 255.5.  Exhibit A at 3.

25
26
27
28

47.     The City Attorney's FTC allegations are misplaced for four reasons.

COMPLAINT

48.    First, U.S. News' rankings of hospitals are not "endorsements" or "testimonials" in advertising as defined by the Guides.  In its notice of adoption in 2009, the FTC stated:

> In general, under usual circumstances, the Commission **does not consider reviews published in traditional media** (i.e., where a newspaper, magazine, or television or radio station **with independent editorial responsibility** assigns an employee to review various products or services as part of his or her official duties, and then publishes those reviews) **to be sponsored advertising messages**.  Accordingly, **such reviews are not "endorsements"** within the meaning of the Guides.  Under these circumstances, the Commission believes, knowing whether the media entity that published the review paid for the item in question would not affect the weight consumers give to the reviewer's statements.[21]

49.    The Commission further clarified that its view regarding endorsements "would be the same . . . **for an Internet News website with independent editorial responsibility**, rather than a traditional brick-and-mortar periodical."[22]   In other words, there is no endorsement so long as the news media is editorially independent in its reporting, rather than reporting on behalf of advertisers or their agent.[23]   U.S. News is a media company with independent editorial responsibility; its editorial content is assigned to staff who review and report hospitals as their official duties

---

[21]    Guides Concerning the Use of Endorsements and Testimonials in Advertising, 74 Fed. Reg. 53136 (Oct. 15, 2009) (revising 16 C.F.R. § 255) (emphasis added).

[22]    *Id.* at 53136 n.101.

[23]    *Id.* at 53136.

COMPLAINT

and have no involvement in the company's advertising content.[24]  The Guides simply do not apply.

50.     Second, even if the Guides did apply—and they do not—no disclosure would be warranted under the circumstances.  Section 255.5 requires disclosure of a *material* connection between the endorser and the seller of the advertised product. A "material connection" is a relationship that "might materially affect the weight or credibility of the endorsement, and that connection is not reasonably expected by the audience…."[25]  The Commission acknowledges that "some connections may be immaterial because they are too insignificant to affect the weight or credibility given to endorsements."[26]  Here, there is absolutely no connection between the rankings a hospital may receive and their decision to license a badge or purchase advertising in U.S. News.

51.     Third, the Guides are merely "administrative interpretations" of the Federal Trade Commission Act ("FTCA"); they do not constitute binding law subject to enforcement by the City Attorney's Office.[27]  Section 255.0, the "purpose and definitions" section of the Guides, provides that the Guides "address the application

---

[24]   U.S. News, *U.S. News & World Report Editorial Guidelines, available* at https://www.usnews.com/about-us/editorial-guidelines (last visited Jan. 23, 2024).
[25] 16 C.F.R. § 255.5(a).
[26] *Id.*
[27]   16 C.F.R. § 255.0(a).

COMPLAINT

of section 5 of the FTC Act, 15 U.S.C. 45, to the use of endorsements and testimonials in advertising" and "provide the basis for voluntary compliance with the law by advertisers and endorsers."[28]  Thus, although "[p]ractices inconsistent with these Guides may result in corrective action by the [Federal Trade] Commission," they do not automatically constitute violations of the law or the FTCA.[29]  Moreover, only the FTC – not the City Attorney nor anyone else – can enforce the FTCA.  "It is well-established that there is no private right of action for violation of the FTCA; only the Federal Trade Commission has standing to enforce it."[30]

52.   Finally, and contrary to the implications in the City Attorney's letter, commercial relationships with hospitals have no influence whatsoever in determining a hospital's position in U.S. News' rankings or even whether a hospital is ranked at all.  The independence of editorial determinations—free from business

---

[28]   *Id.*

[29]   *Id.*;  *see also F.T.C. v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004); *BHRS Grp., LLC v. Brio Water Tech., Inc*., 2020 WL 9422352, at *9 (C.D. Cal. Dec. 14, 2020); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding mere interpretations expressed in policy statements, agency manuals, and enforcement guidelines lack the force of law).

[30]   *Kerr v. Am. Home Mortg. Servicing, Inc*.,  2010 WL 3743879, at *3 (S.D. Cal. Sept. 23, 2010); *see also Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973) ("The protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission").

24

considerations—is a bedrock journalistic principle, to which U.S. News proudly

adheres.

53.    On June 20, 2023, shortly after sending the letter to U.S. News, the City

Attorney expounded, via his personal Twitter account, his disagreement with the

content of U.S. News' hospital rankings:

> Today, my Office sent a letter seeking information on @usnews hospital rankings, which have come under scrutiny for ***questionable methodology, bias & undisclosed financial relationships*** with highly ranked hospitals.  Consumers use these rankings to make consequential health care decisions, and yet there is little understanding that ***the rankings are fraught*** & that U.S. News has financial relationships with the hospitals it ranks. The ***hospital rankings appear to be biased towards providing treatment for wealthy, white patients, to the detriment of poorer, sicker, or more diverse populations***.  This creates perverse incentives that may be warping our healthcare system. Hospitals are essentially "treating to the test" by investing in specialties that rack up the most points rather than in primary care or other worthy specialties.[31]

54.    In parallel, the City Attorney announced the letter from the official City

Attorney account and on the City Attorney's website, again repeating his baseless

allegation that U.S. News' rankings have a "questionable methodology."[32]  Six days

later, the City Attorney tweeted, again from his personal account, that, "[f]ollowing

---

[31]    David    Chiu,    Tweet    Message,    X.com,    *available    at* https://x.com/DavidChiu/status/1671246558967500800?s=20 (last visited Jan. 23, 2024) (emphasis added).
[32]    San Francisco City Attorney, Tweet Message (June 20, 2023), *available at* https://twitter.com/SFCityAttorney/status/1671245937271005184 (last visited Jan. 23, 2024); San Francisco City Attorney, *U.S. News & World Report Faces Legal Scrutiny Over Dubious    Hospital    Rankings*,    June    20,    2023,    *available    at* https://www.sfcityattorney.org/2023/06/20/u-s-news-world-report-faces-legal-scrutiny-over-dubious-hospital-rankings/ (last visited Jan. 23, 2024).

25

the letter my office sent US News last week, the University of Pennsylvania Health System has joined other hospitals in withdrawing from US News & World Report's dubious hospital rankings."[33]  The City Attorney was evidently pleased that his use of his official government powers had caused damage to U.S. News' business and reputation.  Moreover, the City Attorney's public statements—issued before U.S. News even had an opportunity to respond—demonstrate that the City Attorney had prejudged the issues at the very outset of the investigation.

55.    U.S. News met with the City Attorney's Office on July 11, 2023 to discuss the June 20 Letter.  During the meeting, the City Attorney's Office confirmed that it believes that U.S. News should be using a different methodology or factors in its hospital rankings.  The City Attorney's Office also expressed the view that it was well within the City Attorney's power to question U.S. News over which factors and criteria it should be considering when conducting its hospital rankings.  Indeed, a review of many of the informational requests in Attachment A to the letter confirms that the City Attorney is claiming power to second-guess and reshape U.S. News' chosen approach to its rankings. Ex. A at 5-7.  For example, the letter asks whether U.S. News has considered and declined modifications and changes to certain ranking

---

[33]    David        Chiu,        Tweet        Message,        X.com,        *available        at*
https://x.com/DavidChiu/status/1673456048882208769 (last visited Jan. 23, 2024).

26

methodologies.  *Id*.  It asks what plans U.S. News has to address what the City

Attorney perceives as disparities in weighting certain diseases.  *Id*.  It asks what

plans does U.S. News have to expand and develop its measures of health equity.  *Id*.

The Attachment also advocates for certain changes in the methodology raised by

critics of U.S. News' rankings under the heading "Data Limitations."  *Id*.

56.    The City Attorney's questions about the propriety of U.S. News'

methodology and the factors considered are misplaced and cannot be justified under

the guise of regulating mere advertising.  As the Ninth Circuit Court of Appeals

recently explained with respect to ratings systems, "there is an inherently subjective

element in deciding which scientific and objective criteria to consider.  For example,

publications that rank colleges or law schools purportedly rely on objective criteria

(*e.g.*, acceptance rates, test scores, class size, endowment), but selecting those

criteria involves subjective decision-making."  *ARIIX, LLC v. NutriSearch Corp.*,

985 F.3d 1107, 1121 (9th Cir. 2021).  That healthcare professionals disagree

regarding the best data and modeling methods to be used in hospital rankings only

underlines the subjectivity at work here.  No such opinion can be properly labeled

or regulated as though it is false advertising.

57.    On July 19, 2023, U.S. News sent a response to the City Attorney's

letter.  A copy of this letter is attached as Exhibit B.  U.S. News alerted the City

Attorney that his inquiries infringed upon U.S. News' rights under the First

27

Amendment and the Liberty of Speech Clause, but nonetheless provided a

thoroughgoing response to the baseless allegations in the letter.

58.   On January 9, 2024, the City Attorney sent a response letter to U.S.

News in which he simply reiterated his view that U.S. News must disclose the

methodology behind its hospital rankings, must substantiate its statements about the

quality and value of these rankings, and must disclose additional financial

information relating to the rankings.  A copy of this letter is attached as Exhibit C.

The letter attached two Subpoenas: one seeking documents relating to the hospital

rankings, and another containing interrogatories relating to the rankings.  A copy of

the Subpoenas are attached as Exhibits D and E.

59.   The interrogatory Subpoena contains fourteen interrogatories relating

to U.S. News hospital rankings.  Each of these interrogatories infringes upon U.S.

News' First Amendment rights as a private speaker and a media enterprise.  For

example, the Subpoena includes no less than seven interrogatories second-guessing

and challenging U.S. News' protected speech regarding its rankings:

> Describe USNWR's basis for stating that its Best Hospitals rankings
> are "[h]ow to find the best medical care in 2023," as stated on the
> following webpage: https://health.usnews.com/best-hospitals.

> Describe USNWR's basis for according 19 times greater weight to
> cystic fibrosis treatment than to sickle cell disease treatment in the
> Children's Hospital rankings;

> Describe how, if at all, USNWR has incorporated primary and
> preventive care in each annual version of the Best Hospitals rankings;

Describe USNWR's basis for not including measures of health equity in its rankings of adult Hospitals;

Describe how USNWR has adjusted the Medicare fee-for-service dataset to reflect actual patient populations in each annual version of its Best Hospitals rankings;

Describe USNWR's basis for believing that Medicare outcomes information from at least 18 months ago accurately reflects current Hospital outcomes;

Describe USNWR's basis for using opinion surveys as the exclusive method for ranking Hospitals in ophthalmology, psychiatry, and rheumatology and for incorporating opinion surveys into other specialties ranked by USNWR.

Ex. D at 3-4 (Rog. Nos. 7-13).

60.     The interrogatory Subpoena also demands that U.S. News identify *all* hospitals who have paid U.S. News for *any* purpose, including badge licensing, data, advertising, and promotion.  Ex. D at 3 (Rog Nos. 1-6).  These requests reflect an improper governmental attempt to intimidate and dissuade U.S. News and the hospitals from entering into commercial relationships with each other, harming U.S. News' business, simply because the City Attorney disagrees with U.S. News' hospital rankings and methodology.

61.     The document Subpoena is similarly intrusive, demanding U.S. News' agreements with any hospitals identified in the interrogatories, as well as its contracts with certain partners who have assisted U.S. News in creating the Best Hospitals rankings.  Ex. E at 3.

COMPLAINT

62.     The City Attorney's attempt to seek confidential, unpublished information and documents regarding U.S. News' business relationships, and to imply through government coercion and investigation that these relationships are in any way improper, appear designed to cause economic and reputational harm to U.S. News.  The City Attorney has previously touted the harm that his investigation has caused to U.S. News, and there is substantial risk that enforcement of the Subpoenas will intimidate hospitals and other entities from advertising with U.S. News or providing data to assist its rankings.

63.     If U.S. News were to surrender to the City Attorney's demands and alter its hospital rankings to align with his preferences, the implications would be severe. The City Attorney, for example, has accused U.S. News of placing "an undue emphasis on mortality"[34], and has subpoenaed information regarding the use of "opinion surveys" in its rankings.[35]   But readers are entitled to make their own decisions about these factors when making personal health care decisions.  To be sure, the City Attorney may have his own differing opinions from U.S. News' editors, to which he is entitled.  What he should not be doing is trying to dictate and second-guess the editorial judgments of U.S. News.  No government official should be imposing his personal views at the expense of a free press.

---

[34]  Ex. A at 2.
[35]  Ex. D (Rog. No. 13).

30

1

2

**IV.  THE CITY ATTORNEY'S ENFORCEMENT ACTION APPEARS MOTIVATED BY THE AGENDA OF U.S. NEWS' CRITICS, AS OPPOSED TO ANY PURPORTED GOVERNMENT INTEREST**

3

4       64.    The City Attorney's brazen efforts to trample the First Amendment

5    rights of U.S. News are facially unlawful.   Concerns are further compounded,

6    however, by indications that the City Attorney is furthering the personal agenda of

7

8    critics of U.S. News and its rankings, as opposed to any genuine governmental

9    interest.

10

11      65.    The original June 20, 2023, letter from the City Attorney instructed U.S.

12   News to "direct any questions and provide the requested documentation,

13   information, and confirmation by July 5, 2023, to Chief of Complex and Affirmative

14   Litigation Sara Eisenberg."  Ex. A at 3-4.  U.S. News met with Ms. Eisenberg and

15

16   others on July 11, 2023 to discuss its concerns with the letter, and U.S. News sent its

17   response letter to Ms. Eisenberg.  Ex. B at 1.  And when the City Attorney's Office

18   sent its Subpoenas on January 9, 2024, Ms. Eisenberg was once again copied.  Ex. F

19

20   (Jan. 9, 2024 Email from City Attorney's Office).  Ms. Eisenberg, meanwhile, is the

21   City Attorney's liaison with Yale Law School's San Francisco Affirmative Litigation

22

23   Project ("SFALP"), a partnership between Yale Law School and the San Francisco

24   City Attorney's Office.  SFALP is led by Dean Heather Gerken of Yale Law School,

25

26

27

28

31

COMPLAINT

an outspoken critic of U.S. News' rankings, who works closely with Ms. Eisenberg to oversee this partnership.[36]

66.    Dean Gerken founded SFALP in 2006[37] and "is one of the few Deans in the country to run a clinic."[38]  The program "pairs Yale Law students with lawyers from the San Francisco City Attorney's Office to conceive, develop, and litigate cutting-edge public interest cases."[39]  The SFALP website explains how the Yale program works closely and fluidly with the City Attorney's Office:

> Imagine a public interest law firm with significant resources, outstanding attorneys, and standing to bring suits that most public interest groups cannot bring without costly class-action litigation. With a long history of engaging in civil law enforcement and public policy litigation, the San Francisco City Attorney's Office deploys top-flight lawyers to pursue affirmative litigation on behalf of the people of San Francisco and California. Yale students work with deputy city attorneys on the Affirmative Litigation Task Force through every stage of the litigation process, from brainstorming possible suits to filing complaints to motions practice.[40]

67.    SFALP "embodies the vision of Dean Heather K. Gerken[.]"[41]  A litigation guide co-published by the City Attorney and SFALP encourages "city,

---

[36]    Yale Law School, *San Francisco Affirmative Litigation Project, About Us*, *available at* https://law.yale.edu/sfalp/about-us (last visited Jan. 23, 2024).

[37]    *Id.*

[38]    Yale Law School, *Heather Gerken*, *available at* https://law.yale.edu/heather-gerken (last visited Jan. 23, 2024).

[39]    Yale Law School, *San Francisco Affirmative Litigation Project*, *available at* https://law.yale.edu/sfalp (last visited Jan. 23, 2024).

[40]    Yale Law School, *San Francisco Affirmative Litigation Project, SF City Attorney's Office available at* https://law.yale.edu/sfalp/sf-city-attorneys-office (last visited Jan. 23, 2024).

[41]    Yale Law School, SFALP, The Opioid Epidemic, And Public Interest at SFALP, the Opioid Epidemic, and Public Impact | Yale Law School (last visited Jan. 23, 2024).

county, and district attorney's offices to embrace a broader sense of mission: as not only the attorney for the city or county as an institution, but also as the attorney representing the interests of its residents."[42]

68.    The litigation guide also discusses strategies for using consumer protection laws to achieve public interest goals:  "What makes consumer protection law especially valuable for impact litigation is its breadth and versatility.  When local law offices take full advantage of consumer protection law, they can engage in a wide range of public interest litigation.  They may engage in prototypical consumer protection cases—combatting deceptive sales tactics, false advertising, or unfair banking and lending practices.  But, local law offices can also use consumer protection laws to protect residents from business practices that cause other types of widespread harm or threaten residents' well-being."[43]

69.    For the past few years, while partnering with the City Attorney through SFALP, Dean Gerken has become one of the leading critics of the rankings of U.S. News.  In 2022, Yale became the first top 14 law school to decline to participate in U.S. News' ranking survey of law schools.[44]  In her public notice describing the

---

[42]  *Local Action, National Impact: A Practical Guide To Affirmative Litigation For Local Governments*, at 4, *available at* A-Practical-Guide-to-Affirmative-Litigation-FINAL-4.13.19-1.pdf (sfcityattorney.org) (last visited Jan. 23, 2024).

[43]  *Id.* at 16.

[44]  *See* Ines Chomnalez, *Yale Law School withdraws from "perverse" U.S. News rankings,* Yale News, Nov. 16, 2022 at https://yaledailynews.com/blog/2022/11/16/yale-law-school-withdraws-from-perverse-u-s-news-rankings/ (last visited Jan. 23, 2024).

33

reasons for Yale Law School's decision, Dean Gerken criticized the rankings as "profoundly flawed" and lacking a "sound methodology," and stated that "the rankings process is undermining the core commitments of the legal profession."[45] Dean Gerken went further, stating that the "ill-conceived system" of U.S. News' rankings "applies a misguided formula that discourages law schools from doing what is best for legal education," uses a "backward approach" to student debt loads, and provides "inadequate weight" to how much financial aid a law school provides to its students.[46]  Even after U.S. News met with over 100 law school administrators and made changes to the law school ranking criteria,[47] Dean Gerken continued to criticize U.S. News, telling press outlets that Yale Law School had "cemented our decision to stop participating in the rankings."[48]  Such comments notwithstanding,

---

[45]  *Dean Gerken: Why Yale Law School Is Leaving the U.S. News & World Report Rankings*, Yale Law School, Nov. 16, 2022 at https://law.yale.edu/yls-today/news/dean-gerken-why-yale-law-school-leaving-us-news-world-report-rankings (last visited Jan. 23, 2024).

[46]  *Id.*

[47]   Robert Morse and Stephanie Salmon, *Plans for Publication of the 2023-2024 Best Law Schools*, U.S. News, Jan. 2, 2023 *available at* https://www.usnews.com/education/blogs/college-rankings-blog/articles/2023-01-02/plans-for-publication-of-the-2023-2024-best-law-schools (last visited Jan. 23, 2024).

[48]   Ines Chomnalez, *U.S. News Rankings To Be Modified, Yale Law Doubles Down On Withdrawal*, Yale Daily News, Jan. 23, 2023, *available at* https://yaledailynews.com/blog/2023/01/23/u-s-news-rankings-to-be-modified-yale-law-doubles-down-on-withdrawal/ (last visited Jan. 23, 2024); *see also Education Secretary Cardona And Expert Panelists Discuss A Future Beyond Rankings*, Yale Law School, March 2, 2023, available at https://law.yale.edu/yls-today/news/education-secretary-cardona-and-expert-panelists-discuss-future-beyond-rankings (last visited Jan. 23, 2024);

U.S. News published its news law school rankings in 2023, and Dean Gerken continued her criticism of U.S. News.[49]

70.     The City Attorney's letter mirrors Dean Gerken's criticism of U.S. News' rankings.  Both the City Attorney and Dean Gerken have criticized U.S. News' "methodology" and the "weight" U.S. News gives to certain factors,[50] both have called the rankings "flawed,"[51] both claimed that U.S. News' rankings cause "harm,"[52] and both have accused U.S. News of "disincentiviz[ing]" programs that assist individuals with fewer means.[53]

71.     It is striking that U.S. News' primary contact with the City Attorney's Office has been Ms. Eisenberg, Dean Gerken's liaison and partner in the SFALP program.  While U.S. News respects Dean Gerken's First Amendment right to express her views publicly, such criticism belongs in the public square, where it may (or may not) persuade—it should not be weaponized by the City Attorney's Office

---

[49]     *See, e.g.*, Jack Stripling, *Yale Sparked A U.S. News Rankings Revolt. Here's What Happened Next*, Washington Post, Dec. 4, 2023, available at https://www.washingtonpost.com/education/2023/12/04/us-news-law-school-revolt-yale (last visited Jan. 23, 2024).

[50]     Compare *Dean Gerken*, *supra* n. 45 *with* Ex. A (June 20, 2023 Letter from the City Attorney); *see also* Ex. D (Interrogatory Subpoena) at 3-4.

[51]     Compare *Dean Gerken*, *supra* n. 45 *with* Ex. A (June 20, 2023 Letter from the City Attorney).

[52]     Compare *Dean Gerken*, *supra* n. 45 *with* City Attorney of San Francisco, *U.S. News & World Report Faces Legal Scrutiny Over Dubious Hospital Rankings* (June 20, 2023), *supra* n. 32.

[53]     Compare *Dean Gerken*, *supra* n. 45 *with* Ex. A (June 20, 2023 Letter from the City Attorney).

to launch unconstitutional enforcement actions. This Court should not allow any private party, in any way, to co-opt government so as to impose a personal viewpoint on others. By adopting Dean Gerken's preferred viewpoint as though it deserves the force of law, the City Attorney's Subpoenas are overstepping beyond the bounds of proper law enforcement and unconstitutionally attempting to chill and penalize a disfavored viewpoint. Despite the prevalence of countless media publications that perform various types of rankings, including of hospitals, U.S. News is unaware of the City Attorney investigating any of these other publications.

**Count I – First Amendment (Chilling Freedom of Speech and of the Press)**
**(Pursuant to 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988)**

72. Plaintiffs repeat, re-allege, and incorporate the allegations in paragraphs 1–71 of this Complaint as though fully set forth herein.

73. The First Amendment to the United States Constitution applies to California by virtue of the Fourteenth Amendment.

74. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press ...." U.S. Const. amend. I.

75. "The First Amendment, applied to states through the Fourteenth Amendment, prohibits laws abridging the freedom of speech." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193 (9th Cir. 2018) (internal quotation omitted).

36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

76.    "Under that Clause, a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (internal quotation omitted).

77.    "That the First Amendment speaks separately of freedom of speech and freedom of the press is no constitutional accident, but an acknowledgment of the critical role played by the press in American society." *Houchins v. KQED, Inc.*, 438 U.S. 1, 17 (1978) (Stewart, J., concurring).

78.    The Liberty of Speech Clause in the California Constitution similarly provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects" and "[a] law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2.  The California Supreme Court has held that the Liberty of Speech Clause "grants broader rights to free expression than does the First Amendment to the United States Constitution." *Fashion Valley Mall, LLC v. Nat'l Lab. Rels. Bd*., 42 Cal. 4th 850, 857 (2007).

79.    In violation of 42 U.S.C. § 1983, the Subpoenas, on pain of criminal penalties for lack of compliance, infringes the rights of U.S. News that are secured by the First and Fourteenth Amendments and the Liberty of Speech Clause, irreparably injuring U.S. News.

37

80.    Here, the City Attorney is investigating and threatening enforcement against U.S. News because the City Attorney faults the content of U.S. News' speech in the form of its journalism and methodologies.  Such adverse government action implicates both the First Amendment and the Liberty of Speech Clause, and is subject to strict scrutiny. "The level of scrutiny with which [a court reviews] a restriction of free speech activity depends upon whether it is a content-neutral regulation of the time, place, or manner of speech or restricts speech based upon its content." *Fashion Valley Mall, LLC*, 42 Cal. 4th at 865 (2007).  A law is content-based "if the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face."  *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 981 (C.D. Cal. 2017) (search warrant notice preclusion order was a content-based restriction subject to strict scrutiny) (internal quotation omitted).

81.    A law that is intended to regulate speech based on its particular content or viewpoint is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Reed*, 576 U.S. at 163.  "It is rare that a regulation restricting speech because of its content will ever be permissible."  *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

COMPLAINT

82.   The City Attorney's June 20, 2023 letter and subsequent Subpoenas demonstrate content- and viewpoint-based criticisms and intrusions against the U.S. News' journalism and methodologies.   Among other things, the June 20 letter expresses "significant concerns about the rankings of hospitals," states that the rankings "suffer from poor and opaque methodology," questions the "reliability of the rankings," and suggests (falsely) that "[U.S. News'] ranking methodology is seriously flawed."   Ex. A at 1-2.   The Subpoenas go a step further, threatening potential contempt for noncompliance if U.S. News does not answer the City Attorney's hostile, invasive questions and produce requested documents behind the hospital rankings.   Exs. D, E.

83.   U.S. News' rankings and opinions are its own.   They are not published by the City Attorney, nor does U.S. News need the City Attorney's approval and endorsement in order to publish them as it does.   By the same token, the City Attorney lacks legal charter to translate any potential disagreement with U.S. News' rankings into a burdensome, intrusive investigation, let alone an enforcement action, at U.S. News' grave expense.   *See, e.g., Giebel v. Sylvester*, 244 F.3d 1182, 1188–89 (9th Cir. 2001) (attempts to single out and silence a particular speaker amount to impermissible viewpoint discrimination); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 581 (1995) ("Disapproval of a private speaker's statement does not legitimize use of the [state's] power to compel the speaker to alter

39

the message by including one more acceptable to others."); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974) (requirement that newspaper "publish that which reason tells them should not be published is unconstitutional") (internal quotation omitted); *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 930 n.3 (C.D. Cal. 2019) (enjoining, as an impermissible content-based restriction on speech, city ordinance that "collaterally attack[s] disfavored speech via a disclosure requirement").

84.     The City Attorney's demand gives U.S. News two choices.  Either it must provide the requested documents and information, which will chill and burden its protected speech.  Or else it must bear the penalties of noncompliance with the Subpoenas.  So whichever way U.S. News goes with this Hobson's choice, it stands to lose First Amendment freedoms—and thus suffer irreparable injury—unless this Court issues declaratory and injunctive relief.

### Count II – California Reporters' Shield Law
### (Pursuant to California Constitution [Art. I. § 2(b)] and Cal. Evid. Code § 1070)

85.     Plaintiffs repeat, re-allege, and incorporate the allegations in paragraphs 1–84 of this Complaint as though fully set forth herein.

86.     The City Attorney's demands for information regarding U.S. News' rankings, methodologies, and sources of funding also conflict with the Reporters'

40

Shield Law, embodied in the California Constitution (art. I, § 2, subd. (b)) and the California Evidence Code (Cal. Evid. Code § 1070).

87.  "A publisher, editor, reporter, or other person connected with or employed upon a newspaper ... shall not be adjudged in contempt ... for refusing to disclose the source of any information . . . or for refusing to disclose any unpublished information[.]"  Cal. Const. art. I, § 2(b); *see also* Cal. Evid. Code § 1070 (same).

88.  The Shield Law safeguards the press against intrusive inquiries into unpublished information, confidential sources, and methodologies.  "Since contempt is generally the only effective remedy against a nonparty witness, the California enactments . . . grant such witnesses virtually absolute protection against compelled disclosure."  *New York Times Co. v. Superior Ct.*, 51 Cal. 3d 453, 461 (1990).

89.  This solicitude for the press is also reflected in United States Department of Justice policy guidelines, which circumscribe the instances in which the DOJ will subpoena the press:

> (1) A free and independent press is vital to the functioning of our democracy. Because freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news, the Department's policy is intended to provide protection to members of the news media from certain law enforcement tools and actions, whether criminal or civil, that might unreasonably impair newsgathering. . . .

> (2) The Department recognizes the important national interest in protecting journalists from compelled disclosure of information revealing their sources, sources they need to apprise the American people of the workings of their Government. For this reason, with the exception of certain circumstances set out in this section, the

Department of Justice will not use compulsory legal process for the purpose of obtaining information from or records of members of the news media acting within the scope of newsgathering.

28 C.F.R. § 50.10.

90.     The City Attorney's letter does not compare favorably.  It disregards the critical role that a longstanding news organization such as U.S. News plays in the public sphere.   The City Attorney has combined legal threats with burdensome demands for confidential information as part of a concerted effort to censor and revise U.S. News' rankings so that they better align with the City Attorney's viewpoint.  Its Subpoenas should be enjoined as violations of California's Reporters' Shield Law.

**Prayer for Relief**

Wherefore, U.S. News respectfully requests that judgment be entered in its favor and against the City Attorney as follows:

1.     A declaration that the Subpoenas violate the First Amendment (as incorporated by the Fourteenth Amendment), the Liberty of Speech Clause of the California Constitution, and California's Reporters' Shield Law, and is therefore null and void in its entirety;

2.     An order temporarily restraining the City Attorney from enforcing the Subpoenas until a hearing can be held on a preliminary injunction, unless the City

COMPLAINT

Attorney agrees his office will not enforce the Subpoenas before such a hearing may be held;

3.      An order preliminarily enjoining the City Attorney from enforcing the Subpoenas during the pendency of the litigation, unless the City Attorney agrees his office will not enforce the Subpoenas before this Court can issue a decision on the merits;

4.      An order permanently enjoining the City Attorney from enforcing the Subpoenas;

5.      An award to U.S. News of its reasonable attorneys' fees and costs; and

6.      A grant to U.S. News of such additional or different relief as the Court deems just and proper.

**Jury Demand**

Plaintiff U.S. News hereby demands a trial by jury as to all issues so triable in this case.

43

Dated: January 23, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

By _/s/ *John Potter*
John Potter

*Attorneys for Plaintiff*
*U.S. News & World Report, L.P.*

COMPLAINT