# EXHIBIT B

**quinn emanuel** trial lawyers | los angeles

50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 845-6352**

WRITER'S EMAIL ADDRESS
**johnpotter@quinnemanuel.com**

July 19, 2023

<u>Via E-Mail and Federal Express</u>

Sara Eisenberg
Chief of Complex and Affirmative Litigation
Office of the City Attorney
1390 Market Street, 7th Floor
San Francisco, CA 94102

Re:   Response to Concerns with U.S. News & World Report Hospital Rankings

Dear Ms. Eisenberg:

On behalf of U.S. News & World Report ("U.S. News"), we respectfully submit this response to City Attorney Chiu's letter, dated June 20, 2023, sent to U.S. News' Executive Chairman and CEO. Without waiving any journalistic, constitutional or evidentiary privileges, U.S. News is providing this response in an effort to address the points raised in the letter. As noted in our meeting on July 11, 2023, after you have the opportunity to review and consider this submission, we will make ourselves available to continue the dialogue between your office and ours.

As a 90-year old journalistic institution with a reputation for fact-based and data-driven reporting coupled with a history of transparency, U.S. News has developed a rigorous and well-respected hospital ranking methodology which provides important information to healthcare consumers. This ranking methodology is published annually, communicated widely, and is wholly transparent. U.S. News takes its mission to help consumers make the best healthcare decisions very seriously and it operates its business with the highest of journalistic standards.

The City Attorney's suggestion that U.S. News is engaged in false advertising and has failed to comply with FTC disclosure guidelines is quite troubling and, with all due respect, these concerns are misplaced. As discussed further below, the assertion that U.S. News' hospital rankings and its characterizations of them constitute "advertisements" is an affront to the extensive independent research, analysis and journalistic effort which goes into the creation of these rigorous rankings year after year. These independent reviews and research not only provide a valuable resource to the public but are entitled to the full protection of the First Amendment as non-commercial speech.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

For all of these reasons, the allegations suggested by the City Attorney's letter are contrary to the advertising laws, the FTC guidelines, and the Constitutions of the United States and California.

**Background of U.S. News and its Methodology for Hospital Rankings**

U.S. News has been ranking hospitals for 34 years. The methodology used to produce each year's Best Hospitals rankings is updated and refined on an annual basis by a team of professionals and journalists led by a Managing Editor and a Senior Health Data Scientist. Each member of the team works full time on the hospital rankings. Team members are not involved in sales of any products or services and revenue considerations do not impact the rankings in any way.

In formulating its rankings, U.S. News has contracted for nearly 20 years with RTI International, a not-for-profit research organization based in North Carolina, to support the publication of Best Hospitals: Specialty Rankings and Best Children's Hospitals. Additionally, U.S. News has from time to time contracted with other professional organizations to support its analytical work.

The process the team uses to iteratively refine its methodology is designed to be responsive to stakeholder feedback, advances in measurement science, and changes in how healthcare is delivered to beneficiaries of America's largest insurance plan, Medicare. This process requires both judgment and scientific methods.

Stakeholder feedback is an essential component of the journalistic process, and the team obtains feedback via multiple modalities, including: (1) working groups comprising medical experts; (2) U.S. News-convened focus groups of healthcare consumers; (3) U.S. News-initiated interaction with medical researchers and study authors; (4) memoranda and letters submitted by specialty societies, hospital consortia, researchers, clinicians, patients, patient advocate groups, hospital and health system administrators, and other stakeholders; (5) professional meetings at which U.S. News staff present and receive feedback; (6) U.S. News hosted conferences and webinars in which U.S. News staff present and receive feedback; and (7) other miscellaneous communications with stakeholders.

Advances in measurement science are identified by: (1) reading peer-reviewed studies published in relevant scientific journals, such as the Journal of the American Medical Association, Health Affairs, and Health Services Research; (2) speaking with and corresponding with researchers about the methods they have used in such studies; and (3) conducting independent scientific research.

Relevant changes in healthcare delivery are identified by studying policy announcements issued by the Centers for Medicare and Medicaid Services, as well as studying data, whether issued by other groups or derived internally, to understand changing trends in how and where diseases are treated and how treatments are documented in the data sets available for our analysis.

The U.S. News team and its contractor RTI International curate the feedback received and identify candidate methodology changes that, in its members' opinions, are likely to improve the precision with which the methodology identifies high-performing hospitals.

U.S. News publishes, along with the actual rankings, reports which describe in detail the methodologies underlying each of its Best Hospital rankings for that year. The reports describe the changes that have been made from the prior year's methodology, the data that is collected/used, the weighting of the data and criteria, the expert opinion component to the rankings, and even methodological improvements that are being considered for future years. These detailed methodology reports are available for download so that anyone can see the methodology used for a particular ranking in any particular year. We encourage your office to download and review the 275 pages of methodology documentation referenced in Footnote 6.

**Request for Substantiation of Advertising (Cal. Bus. & Prof. Code § 17508)**

The City Attorney requests substantiation for certain so-called "advertising" statements made by U.S. News about its rankings and the data it relies upon. Specifically, the City Attorney challenges U.S. News' portrayal of itself as the "global authority in hospital rankings," and the assertions that its rankings are "authoritative," based on "world-class data and technology," and aid patients and families in "finding the best healthcare," making "data-informed decisions," and identifying "sources of skilled inpatient care." These statements about U.S. News's journalism are legally deemed to be subjective opinion and while they therefore are not actionable as a matter of law, they are, in any event, amply supported as discussed in further detail below.

As an initial matter, Cal. Bus. & Prof. Code § 17508, which the City Attorney relies on, is inapplicable because these statements are not "advertising claim[s]." Under Section 17508, an actionable statement must meet a three-part test to fall within the purview of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.): "(1) a commercial speaker, (2) an intended commercial audience, and (3) representations of fact of a commercial nature."[1] The City Attorney's letter does not identify any commercial statements of fact. In *Bernardo*, the court held that mere statements of opinion on Planned Parenthood's website were not actionable as commercial advertisements.[2] The same no less follows for U.S. News' descriptions of its rankings.

Nevertheless, numerous third party evaluations by experts in the industry support U.S. News' views about the value of its hospital rankings. Most notably, in 2019, health researchers writing in the New England Journal of Medicine, renowned as one of the world's most respected and influential medical journals, bestowed upon U.S. News the highest grade among the hospital rankings they evaluated. The researchers conducted a comprehensive study to evaluate various hospital ranking systems, including CMS Hospital Compare Overall Star Ratings, Healthgrades Top Hospitals, Leapfrog Safety Grade and Top Hospitals, and U.S. News. The study involved a group of experienced methodologists, consisting of physician scientists with expertise in healthcare quality measurement from academic centers and the private sector. The study established six major criteria for assessing these rating systems: Potential for Misclassification of

---

[1] *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 347–48 (2004) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 964 (2002).
[2] *Bernardo*, 115 Cal. App. 4th at 348; *see also Nike*, 27 Cal. 4th at 967 (holding that the False Advertising Law and Unfair Competition Law "do not suppress points of view but instead suppress false and misleading **statements of fact**.") (emphasis added).

Hospital Performance, Importance/Impact, Scientific Acceptability, Iterative Improvement, Transparency, and Usability.  The assessment aimed to identify strengths, weaknesses, and opportunities for improvement in the rating systems.  This rigorous study spanned several months and aimed to provide users with valuable insights into the different rating systems, ultimately aiding in their decision-making process.

U.S. News emerged as the top-ranking system.  It surpassed even the U.S. Government's own rating system, Hospital Compare.  The New England Journal of Medicine study concluded, "We qualitatively agreed that the U.S. News rating system had the least chance of misclassifying hospital performance.  There was considerable agreement in overall grade assignments among the six individuals who performed the ratings."  As one of the most highly regarded peer-reviewed publications in the world, the New England Journal of Medicine study affirms the credibility and significance of U.S. News rankings.

In January 2021, the Journal of General Internal Medicine published an article entitled "Revisiting US News & World Report's Hospital Rankings—Moving Beyond Mortality to Metrics that Improve Care", written by respected physicians at Brigham and Women's Hospital, Harvard Medical School, and Johns Hopkins Medicine.  The authors concluded:  "*USNWR* rankings have a powerful ability to provide useful information about where patients should seek care at a specialty and overall hospital level.  Similarly, they can motivate hospitals to provide patient-centered care.  We applaud *USNWR's* efforts to help patients make informed decisions, and we hope that these rankings will evolve to be as reliable and valuable as possible to patients and providers."

U.S. News' hospital rankings has garnered additional acclaim from countless other publications.  USA Today, for instance, published an article on July 27, 2021 emphasizing U.S. News' inclusion of a health equity analysis in its 2022 Best Hospitals rankings.[3]  This health equity analysis identified that "racial and ethnic minorities were underrepresented among patients in roughly 4 out of 5 hospitals in the country," highlighting the importance for hospitals to be more cognizant of these issues when administering health care to their local populations.

In fact, as recently as July 12, 2023, USA Today published a news article entitled "Hospital rankings are far from perfect.  But experts say patients still need them."[4]  In that article, an expert on quality care and patient safety noted generally with respect to hospital rankings: "The industry doesn't put out anything more accurate and doesn't put out anything more useful or more timely".  Contrary to the City Attorney's letter suggesting that hospital rankings create perverse incentives, this article indicated that "[t]he annual ratings also create health competition where hospitals vie for patients by devoting resources to hospital quality and safety, which leads to better care and health outcomes."

---

[3] *See* US News Best Hospital ranking includes first health equity analysis" located at https://www.usatoday.com/story/news/health/2021/07/27/us-news-best-hospital-ranking-includes-first-health-equity-analysis/8090005002/

[4] https://www.usatoday.com/story/news/health/2023/07/12/why-patients-need-us-hospital-health-rankings/70396794007/

These are only a handful of the reputable publications that support U.S. News' assertions about the quality and value of its hospital rankings. Undoubtedly, there are other publications the City Attorney could (and does) point to that do not share this same opinion. That fact alone confirms that these statements are subjective opinions and not subject to false advertising laws.

U.S. News' belief that its methodology relies on "world-class data and technology" is also amply justified. The rankings rely on the Medicare fee-for-service data set, a widely employed data set by academic researchers and various stakeholders. Notably, the rankings incorporate sophisticated technologies such as Stata, the 3M Health Information Systems Ambulatory Potential Preventable Complications software, and the Elixhauser Comorbidity Index, which are highly regarded in the industry. These robust data sources and advanced technological tools contribute to the reliability and accuracy of U.S. News' hospital rankings. As discussed above, U.S. News continually enhances its data points through ongoing improvements and refinements. As the New England Journal of Medicine notes in its study, U.S. News' notably improved its rating system by "eliminating all NHSN measures and most PSIs, weighting volume for proportion of Medicare Advantage patients, improving outcome measures with exclusion of external transfers, and adding risk adjustment for sociodemographic factors."

The City Attorney's letter asserts that U.S. News encourages patients to follow its rankings even over physician referrals, claiming "[t]he hospital the doctor suggested for you might be right for you – but maybe not." This assertion is a mischaracterization of U.S. News' messaging regarding its rankings. In multiple locations on its website explaining the rankings and how they should be used, U.S. News makes clear that "these ratings should be taken as a starting point. All care decisions should be made in conjunction with medical professionals."[5] The website also includes a prominently displayed disclaimer that underscores the informational nature of the content pertaining to doctors, hospitals, nursing homes, diets, and health products on USNews.com. The disclaimer emphasizes that this information should be used as a guide rather than the sole basis for decision-making. It further highlights the importance of seeking advice from medical professionals for specific health concerns.

**Request for Information about U.S. News Hospital Ranking Methodology**

The City Attorney's letter requests specific information about U.S. News' Hospital Ranking Methodology, claiming that "research" has suggested its methodology is flawed. Based on this faulty premise, the City Attorney proceeds to ask a number of questions about U.S. News' Hospital Ranking Methodology. Many of these questions can be answered by reference to the extremely detailed reports U.S. News publishes on its website describing the methodology in minute detail.[6] The report for the Best Hospitals: Specialty Rankings alone spans 166 pages. In addition, we have

---

[5] https://health.usNews.com/health-care/best-hospitals/articles/faq-how-and-why-we-rank-and-rate-hospitals
[6] https://health.usnews.com/media/best-hospitals/BH_Methodology_2022-23;
https://health.usnews.com/media/best-hospitals/BHPC-Methodology-2022-2023;
https://health.usnews.com/media/best-hospitals/Best-Hospitals-Health-Equity-2022-23.

provided above a detailed description of the process used by U.S. News in connection with preparing its hospital rankings.

During our meeting on July 11, 2023, we asked whether the City Attorney was aware that U.S. News publishes its detailed methodologies on its website for each hospital ranking every year, which your colleague acknowledged.

We also asked whether the City Attorney contends that statements in the methodology itself were false or misleading or rather, the City Attorney believes that U.S. News should be using a different methodology or factors in its hospital rankings. Your colleagues confirmed that it was the latter and expressed the view that it was well within the City Attorney's power to question U.S. News over which factors and criteria it should be considering when conducting its hospital rankings. Indeed, a review of many of the informational requests in Attachment A to the letter confirms this view. For example, the City Attorney asks whether U.S. News has considered and declined modifications and changes to certain ranking methodologies and why? What plans U.S. News has to address what the City Attorney perceives as disparities in weighting certain diseases? What plans does U.S. News have to expand and develop its measures of health equity? The Attachment also seems to be advocating for certain changes in the methodology raised by critics of U.S. News' rankings under the heading "Data Limitations".

The City Attorney's questions about the propriety of U.S. News' methodology and the factors considered are misplaced and cannot be justified under the guise of advertising laws. As the Ninth Circuit Court of Appeals recently explained with respect to ratings systems, "there is an inherently subjective element in deciding which scientific and objective criteria to consider. For example, publications that rank colleges or law schools purportedly rely on objective criteria (*e.g.*, acceptance rates, test scores, class size, endowment), but selecting those criteria involves subjective decision-making."[7] The fact that healthcare professionals disagree regarding the best data and modeling methods to be used in hospital rankings makes clear that these involve matters of subjective decision-making and not subject to false advertising laws.

Even more concerning, the City Attorney's requests threaten U.S. News' freedom of expression by intruding into and second-guessing the journalistic decision-making behind U.S. News' venerable hospital rankings. Underlying and animating the various requests are the City Attorney's stated differences of opinion with U.S. News' published rankings and methodologies. Numerous laws prohibit the government from regulating or influencing the free press and opinions thereof, including the (i) First Amendment to the United States Constitution; (ii) Article I, section 2(a) (the "Liberty of Speech Clause") of the California Constitution; and (iii) Article I, section 2(b) (the "Reporters' Shield Law") of the California Constitution. While U.S. News is willing to continue the dialogue with the City Attorney on these issues, any such conversation must respect the fundamental rights of the free press.

---

[7] *ARIIX, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021).

**The City Attorney's Investigation Constitutes Viewpoint-Based Discrimination**

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press...."[8] "The First Amendment, applied to states through the Fourteenth Amendment, prohibits laws abridging the freedom of speech."[9] "Under that Clause, a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[10] "That the First Amendment speaks separately of freedom of speech and freedom of the press is no constitutional accident, but an acknowledgment of the critical role played by the press in American society."[11]

The Liberty of Speech Clause in the California Constitution similarly provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects" and "[a] law may not restrain or abridge liberty of speech or press."[12] The California Supreme Court has held that the Liberty of Speech Clause "grants broader rights to free expression than does the First Amendment to the United States Constitution."[13]

Here, the City Attorney is investigating and threatening action against U.S. News because the City Attorney disagrees with U.S. News' rankings and methodology. Such adverse government action implicates both the First Amendment and the Liberty of Speech Clause, and would trigger strict scrutiny by any reviewing court. "The level of scrutiny with which [a court reviews] a restriction of free speech activity depends upon whether it is a content-neutral regulation of the time, place, or manner of speech or restricts speech based upon its content."[14] A law is content-based "if the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face."[15] A law that is intended to regulate speech based on its content or the speaker's viewpoint is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."[16] "It is rare that a regulation restricting speech because of its content will ever be permissible."[17]

The City Attorney's letter evinces viewpoint-based criticisms of the U.S. News' rankings and methodologies. Among other things, the letter expresses "significant concerns about the rankings of hospitals," states that the rankings "suffer from poor and opaque methodology," questions the "reliability of the rankings," and suggests (falsely) that "USNWR's ranking methodology is

---

[8] U.S. Const. amend. I.
[9] *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193 (9th Cir. 2018) (internal quotation omitted).
[10] *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).
[11] *Houchins v. KQED, Inc.*, 438 U.S. 1, 17 (1978) (Stewart, J., concurring).
[12] Cal. Const. art. I, § 2.
[13] *Fashion Valley Mall, LLC v. Nat'l Lab. Rels. Bd.*, 42 Cal. 4th 850, 857 (2007).
[14] *Id.*
[15] *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 981 (C.D. Cal. 2017) (search warrant notice preclusion order was a content-based restriction subject to strict scrutiny).
[16] *Reed*, 576 U.S. at 163.
[17] *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

seriously flawed."[18]  From there, the letter calls out specific aspects of the determinations that U.S. News has made in producing its rankings—such as the selection of "Honor Roll" hospitals, the relative emphasis on cystic fibrosis versus sickle cell disease, the alleged "fail[ure] to incorporate indicators of health equity," an "undue emphasis on mortality," and U.S. News' regard for "subjective opinion surveys."[19]

Of course, U.S. News' rankings and its process for producing them are its own journalistic product. They are not published by the City Attorney, nor does U.S. News need the City Attorney's approval and endorsement in order to publish them as it does.  By the same token, the City Attorney lacks legal charter to translate any disagreement with U.S. News' rankings into a burdensome, intrusive investigation, let alone an enforcement action, at U.S. News' grave expense.[20]  The chilling effects of the City Attorney's inquiry in this regard cannot be overstated.

No such government second-guessing or granular censorship by any jurisdiction is proper.  In formulating and publishing its rankings, U.S. News is not seeking to please everyone, nor is it capable of pleasing everyone.  Rather, U.S. News is doing what conscientious publications in its position have long done, consistent with fundamental journalistic protections that the First Amendment protects:  U.S. News is committed to inform the public on matters of public concern by its best lights, even in the face of controversy and possible government pushback.

### The City Attorney's Demands Conflict With California's Reporters' Shield Law

The City Attorney's demands for information regarding U.S. News' rankings, methodologies, and sources of funding also conflict with the Reporters' Shield Law, embodied in the California constitution (art. I, § 2, subd. (b)) and the California Evidence Code (Cal. Evid. Code § 1070). "A publisher, editor, reporter, or other person connected with or employed upon a newspaper ... shall not be adjudged in contempt ... for refusing to disclose the source of any information . . . or for refusing to disclose any unpublished information[.]"[21]  The Shield Law safeguards the press against intrusive inquiries into confidential sources and methodologies.  "Since contempt is

---

[18] June 20 Letter at 1-2.

[19] *Id.* at 2-3.

[20] *See, e.g., Giebel v. Sylvester*, 244 F.3d 1182, 1188–89 (9th Cir. 2001) (attempts to single out and silence a particular speaker amount to impermissible viewpoint discrimination); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 581 (1995) ("Disapproval of a private speaker's statement does not legitimize use of the [state's] power to compel the speaker to alter the message by including one more acceptable to others."); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974) (requirement that newspaper "publish that which reason tells them should not be published is unconstitutional"); *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 930 n.3 (C.D. Cal. 2019) (enjoining, as an impermissible content-based restriction on speech, city ordinance that "collaterally attack[s] disfavored speech via a disclosure requirement").

[21] Cal. Const. art. I, § 2(b); *see also* Cal. Evid. Code § 1070 (same).

generally the only effective remedy against a nonparty witness, the California enactments . . . grant such witnesses virtually absolute protection against compelled disclosure."[22]

This solicitude for the press is also reflected in the United States Department of Justice policy guidelines, which circumscribe the instances in which the DOJ will subpoena the press:

> (1) A free and independent press is vital to the functioning of our democracy. Because freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news, the Department's policy is intended to provide protection to members of the news media from certain law enforcement tools and actions, whether criminal or civil, that might unreasonably impair newsgathering. . . .
>
> (2) The Department recognizes the important national interest in protecting journalists from compelled disclosure of information revealing their sources, sources they need to apprise the American people of the workings of their Government. For this reason, with the exception of certain circumstances set out in this section, the Department of Justice will not use compulsory legal process for the purpose of obtaining information from or records of members of the news media acting within the scope of newsgathering.[23]

The City Attorney's letter disregards the critical role that a longstanding news organization such as U.S. News plays in the public sphere. In the case of the hospital rankings, that role has included providing U.S. News' readers with healthcare information that would be difficult if not impossible for them to find on their own. The City Attorney has combined legal threats with burdensome demands for privileged information as part of a concerted effort to revise U.S. News' rankings and bring them into line with the City Attorney's viewpoint. The City Attorney's letter does not square with freedom of speech and of the press, and with settled laws protecting same. While U.S. News will not compromise the constitutional rights that are at stake here and expressly reserves them all, we are willing to continue to engage in good faith discussions with your office consistent with U.S. News' legal rights and protections.

**Inapplicability of the FTC Guidelines on Disclosure of Funding Relationships**

The City Attorney's letter also claims that U.S. News appears to violate 16 C.F.R. § 255.5, a provision of FTC's Guides Concerning the Use of Endorsements and Testimonials in Advertising ("Guides"), by failing to disclose payments from its ranked hospitals for badge licensing, data subscriptions, and advertising on U.S. News' website and guidebook.[24] According to the letter, the Guides apply to U.S. News because it is an "endorser" under Section 255.0 of the Guides, and the hospital payments "might materially affect the weight or credibility of the endorsement,"

---

[22] *New York Times Co. v. Superior Ct*., 51 Cal. 3d 453, 461 (1990).
[23] 28 C.F.R. § 50.10.
[24] Although the FTC recently revised these Endorsement Guides on June 29, 2023, none of the revisions change the analysis contained herein.

9

thereby triggering disclosure obligations under Section 255.5.  The City Attorney's concerns are misplaced for four reasons.

First, U.S. News' rankings of hospitals are not "endorsements" or "testimonials" in advertising as defined by the Guides.  In its notice of adoption in 2009, the FTC stated:

> In general, under usual circumstances, the Commission **does not consider reviews published in traditional media** (i.e., where a Newspaper, magazine, or television or radio station **with independent editorial responsibility** assigns an employee to review various products or services as part of his or her official duties, and then publishes those reviews) **to be sponsored advertising messages**. Accordingly, **such reviews are not "endorsements"** within the meaning of the Guides.  Under these circumstances, the Commission believes, knowing whether the media entity that published the review paid for the item in question would not affect the weight consumers give to the reviewer's statements.[25]

The Commission further clarified in a footnote that its view regarding endorsements "would be the same . . . **for an Internet News website with independent editorial responsibility**, rather than a traditional brick-and-mortar periodical."[26]  In other words, there is no endorsement if the News media is editorially independent in its reporting, rather than reporting on behalf of advertisers or their agent.[27]  U.S. News is a media company with independent editorial responsibility; its editorial content is assigned to staff who review and report hospitals as their official duties and have no involvement in the company's advertising content.[28]  The Guides simply do not apply.

Second, even if the Guides did apply— and they do not – no disclosure would be warranted under the circumstances.  Section 255.5 requires disclosure of a *material* connection between the endorser and the seller of the advertised product.  A "material connection" is a relationship that "might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience)."[29]  The Commission acknowledges that "some connections may be immaterial because they are too insignificant to affect the weight or credibility given to endorsements."[30]  Here, there is absolutely no connection between the rankings a hospital may receive and their decision to license a badge or purchase advertising in U.S. News.

---

[25] Federal Register, Vol. 74, No. 198, at 53136, (https://www.federalregister.gov/documents/2009/10/15/E9-24646/guides-concerning-the-use-of-endorsements-and-testimonials-in-advertising) (emphasis added).
[26] *Id.* at 53136 n. 101.
[27] *Id.* at 53136.
[28] U.S. News Editorial Guidelines (https://www.usNews.com/about-us/editorial-guidelines).
[29] 16 C.F.R. § 255.5.
[30] Federal Register, Vol. 74, No. 198, at 44294, (https://www.federalregister.gov/documents/2009/10/15/E9-24646/guides-concerning-the-use-of-endorsements-and-testimonials-in-advertising).

Third, the Guides are merely "administrative interpretations" of the Federal Trade Commission Act ("FTCA"); they do not constitute binding law subject to enforcement by the City Attorney's Office.[31] Section 255.0, the "purpose and definitions" section of the Guides, provides that the Guides "address the application of Section 5 of the FTC Act (15 U.S.C. 45) to the use of endorsements and testimonials in advertising" and "provide the basis for voluntary compliance with the law by advertisers and endorsers."[32] Thus, although "[p]ractices inconsistent with these Guides may result in corrective action by the [Federal Trade] Commission," they do not automatically constitute violations of the law or the FTCA.[33] Moreover, only the FTC – not the City Attorney nor anyone else – can enforce the FTCA. "It is well-established that there is no private right of action for violation of the FTCA; only the Federal Trade Commission has standing to enforce it."[34]

Finally, and contrary to the implications in the City Attorney's letter, commercial relationships with hospitals have no influence whatsoever in determining a hospital's position in the rankings or even whether a hospital is ranked at all. The independence of editorial determinations – free from business considerations -- is a bedrock journalistic principle, to which U.S. News proudly adheres.

**Conclusion**

U.S. News stands behind its hospital rankings as a valuable and reliable resource to consumers of health care services. Others may share a different opinion, as is their right. But a difference in opinion does not give rise to a false advertising claim, nor does it justify a government inquiry into the journalistic and editorial decision-making of the media.

U.S. News hopes that this letter will put the City Attorney's stated concerns to rest. However, as we indicated during our meeting, we remain willing to engage in good faith discussions with your office consistent with U.S. News' rights and protections under the law.

---

[31] 16 C.F.R. § 255.0.
[32] *Id.* (emphasis added).
[33] *Id.*; *F.T.C. v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004); *BHRS Grp., LLC v. Brio Water Tech., Inc.*, No. 22CV07652JWHJCX, 2020 WL 9422352, at *9 (C.D. Cal. Dec. 14, 2020); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding that mere interpretations expressed in policy statements, agency manuals, and enforcement guidelines, lack the force of law).
[34] *Kerr v. Am. Home Mortg. Servicing, Inc.*, No. 10-CV-1612 BEN AJB, 2010 WL 3743879, at *3 (S.D. Cal. Sept. 23, 2010); *Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973) ("The protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission").

12

We look forward to continuing this dialogue with your office to the extent necessary.

Sincerely,

John Potter

cc:     Michael E. Williams
        Alexander Holtzman