QUINN EMANUEL URQUHART & SULLIVAN LLP
John Potter (CA Bar No. 165843)
  johnpotter@quinnemanuel.com
Charles B. Stevens (CA Bar No. 324425)
  charliestevens@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA  94111
(415) 875-6600

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Williams (CA Bar No. 181299)
  michaelwilliams@quinnemanuel.com
Sage R. Vanden Heuvel (CA Bar No. 294868)
  sagevandenheuvel@quinnemanuel.com
865 S Figueroa St, 10th Floor
Los Angeles, CA  90017
(213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN LLP
Derek L. Shaffer (CA Bar No. 212746)
  derekshaffer@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C.  20005
(202) 538-8000

*Attorneys for Plaintiff U.S. News & World Report, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **U.S. NEWS & WORLD REPORT, L.P.** | Case No. 3:24-cv-00395-WHO |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION** |
| vs. | |
| **DAVID CHIU**, in his Official Capacity as City Attorney of the City and County of San Francisco, | Judge William H. Orrick |
| Defendant. | Courtroom: 2 Hearing Date:  March 6, 2024 Hearing Time:  2:00 p.m. |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

INTRODUCTION ......................................................................................................................... 2

FACTUAL BACKGROUND ........................................................................................................ 4

    A.    U.S. News And Its Methodology For Hospital Rankings ....................................... 4

    B.    U.S. News' Hospital Rankings Are Widely Lauded And Valued .......................... 6

    C.    Defendant's Unconstitutional Inquiry Into U.S. News' Protected Speech ............ 7

    D.    The City Attorney's Enforcement Action Is Furthering The Agenda Of U.S. News' Critics Rather Than Any Genuine Government Interest ........................... 12

ARGUMENT ............................................................................................................................... 14

I.    U.S. NEWS IS LIKELY TO SUCCEED ON THE MERITS ........................................... 15

    A.    The First Amendment Bars The City Attorney's Subpoenas ............................... 15

    B.    California's Reporters' Shield Law Bars The City Attorney's Subpoenas ........... 18

II.    U.S. NEWS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ................................................................................................................... 19

III.    THE EQUITIES TIP SHARPLY IN FAVOR OF U.S. NEWS ........................................ 20

IV.    AN INJUNCTION SERVES THE PUBLIC INTEREST ................................................. 21

CONCLUSION ........................................................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

*Alliance for the Wild Rockies v. Cottrell*,

5

    632 F.3d 1127 (9th Cir. 2011) ........................................................................ 15, 20

6

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,

    916 F.3d 749 (9th Cir. 2019) ................................................................................ 21

7

*Animal Legal Def. Fund v. Wasden*,

8

    878 F.3d 1184 (9th Cir. 2018) .............................................................................. 15

9

*Arc of California v. Douglas*,

10

    757 F.3d 975 (9th Cir. 2014) .......................................................................... 14, 15

11

*Bernardo v. Planned Parenthood Fed'n of Am.*,

    115 Cal. App. 4th 322 (2004) ................................................................................ 8

12

*Carlo C. Gelardi Corp. v. Miller Brewing Co.*,

13

    421 F.Supp. 233 (D.N.J. 1976) ........................................................................... 20

14

*Doran v. Salem Inn, Inc.*,

15

    422 U.S. 922 (1975) .............................................................................................. 20

16

*Elrod v. Burns*,

    427 U.S. 347 (1976) .............................................................................................. 19

17

*Farris v. Seabrook*,

18

    677 F.3d 858 (9th Cir. 2012) ............................................................................... 21

19

*Fashion Valley Mall, LLC v. Nat'l Lab. Rels. Bd.*,

20

    42 Cal. 4th 850 (2007) .......................................................................................... 16

21

*Giebel v. Sylvester*,

    244 F.3d 1182 (9th Cir. 2001) ............................................................................. 17

22

*Houchins v. KQED, Inc.*,

23

    438 U.S. 1 (1978) .................................................................................................. 15

24

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,

    515 U.S. 557 (1995) .............................................................................................. 17

25

*Junior Sports Mags. Inc. v. Bonta*,

26

    80 F.4th 1109 (9th Cir. 2023) .............................................................................. 19

27

*Kasky v. Nike, Inc.*,

28

    27 Cal. 4th 939 (2002) ............................................................................................ 8

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2008)................................................................. 20

*Koala v. Khosla*,
    931 F.3d 887 (9th Cir. 2019).................................................................. 20

*Leigh v. Salazar*,
    677 F.3d 892 (9th Cir. 2012).................................................................. 21

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012).................................................................. 15

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012).................................................................. 21

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974)............................................................................... 17

*Nat'l Rifle Ass'n of Am. v. City of Los Angeles*,
    441 F. Supp. 3d 915 (C.D. Cal. 2019)................................................... 17

*New York Times Co. v. Superior Ct.*,
    51 Cal. 3d 453 (1990)............................................................................ 18

*Opticians Ass'n of America v. Indep. Opticians of America*,
    920 F.2d 187 (3d Cir. 1990)............................................................. 19, 20

*Pitt News v. Pappert*,
    379 F.3d 96 (3d Cir. 2004).................................................................... 20

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015)......................................................................... 15, 16

*Matter of Search Warrant for [redacted].com*
    248 F. Supp. 3d 970, 981 (C.D. Cal. 2017)........................................... 16

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)............................................................................... 16

*Valle Del Sol Inc. v. Whiting*,
    709 F.3d 808 (9th Cir. 2013).................................................................. 19

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)............................................................................. 19, 20

### Constitutional Provisions

Cal. Const. art. I, § 2 .......................................................................*passim*

U.S. Const., First Amendment .......................................................*passim*

**Statutes**

28 C.F.R. § 50.10 ............................................................................................................ 18

California Evidence Code § 1070 ................................................................................. 18

California Business and Professions Code § 17500 *et seq*. .......................................... 8

California Business and Professions Code § 17508 ................................................ 2, 8

**Rules**

Fed. R. Civ. P. 65 .............................................................................................................. 1

**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition § 30:18 ...................................... 19, 20

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on March 6, 2024 at 2:00 p.m., in the United States District Court for the Northern District of California, San Francisco Division, before the Honorable William H. Orrick, Plaintiff U.S. News & World Report, L.P. ("U.S. News") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 65 for a Preliminary Injunction.

Specifically, U.S. News will move this Court to (1) restrain Defendant David Chiu, in his capacity as the City Attorney for the City and County of San Francisco (the "City Attorney") from enforcing the subpoenas served by his Office on U.S. News on January 9, 2024 (the "Subpoenas"); and (2) restraining the City Attorney from taking any other enforcement actions in furtherance of the Subpoenas until the Court issues a final decision on the merits. This motion is made on the grounds that (i) U.S. News is likely to succeed on the merits of its claims that the Subpoenas violate the First Amendment to the U.S. Constitution, the Liberty of Speech Clause in the California Constitution, and California's Reporters' Shield Law; (ii) absent injunctive relief, U.S. News is likely to suffer irreparable harm; (iii) the balance of equities favors U.S. News; and (iv) the public interest supports an injunction. This motion is based upon the Complaint in this action, this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Proposed Order filed herewith, the Declaration of John Potter filed herewith along with its accompanying exhibits ("Potter Decl."), and all matters with respect to which this Court may take judicial notice and such oral and documentary evidence as may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff U.S. News & World Report, L.P. ("U.S. News") respectfully seeks a preliminary injunction to prevent Defendant David Chiu, the City Attorney for the City and County of San Francisco (the "City Attorney") from using his governmental authority to perpetrate viewpoint discrimination in violation of the First Amendment. Throughout its 90 year history, U.S. News has been a news organization that has consistently maintained the highest level of journalistic integrity, and its mission has been to equip citizens with the information they need to make important life decisions and understand news events. The City Attorney is investigating U.S. News because he disagrees with U.S. News' journalistic work product and publicly available methodologies in arriving at its annual hospital rankings, which U.S. News has been publishing for more than 30 years. Prior to filing this action, U.S. News explained to the City Attorney the serious constitutional problems posed by his investigation and believed the matter was resolved when six months elapsed without it hearing anything further. Then, out of nowhere, and without even acknowledging the serious constitutional issues at stake, on January 9, 2024 the City Attorney served U.S. News with subpoenas for documents and interrogatories that go to the heart of U.S. News' journalistic mission. Accordingly, U.S. News now asks this Court to vindicate the U.S. and California Constitutions by curbing the City Attorney's intrusions upon a free press by issuing an order preliminarily enjoining the City Attorney from enforcing the subpoenas during the pendency of this litigation.

Specifically, the City Attorney has expressed his disapproval of U.S. News' rigorous and well-respected Best Hospital rankings while conducting wide-ranging, intrusive inquiries into U.S. News' editorial judgment and decision-making. On June 20, 2023, the City Attorney sent U.S. News a demand letter (Declaration of John Potter filed concurrently herewith ["Potter Decl."], Ex. A) criticizing the results of U.S. News' hospital rankings and seeking information about U.S. News' ranking methodology, purportedly under the auspices of California Business and Professions Code section 17508. The City Attorney claimed (incorrectly) that the rankings "suffer from poor and opaque methodology" and questioned U.S. News' claim that it is the "global authority in hospital rankings." Potter Decl. Ex. A at 1. U.S. News responded on July 19, 2023, providing further

explanation for its ranking methodologies, which are annually published, widely communicated, and wholly transparent, while resisting the City Attorney's demands, which intruded into the constitutional and state statutory protections afforded under the U.S. and California Constitutions. Potter Decl. Ex. B.

When U.S. News did not receive any further correspondence from the City Attorney for nearly six months, it assumed that the City Attorney's misguided inquiry was at an end.  It was not. On January 9, 2024, the City Attorney resumed his intrusive inquiry by issuing two subpoenas seeking documents and information relating to U.S. News' hospital rankings (the "Subpoenas"). Potter Decl. Exs. C, D, & E.  The Subpoenas mark an unconstitutional attempt to discriminate against U.S. News' journalistic practices, fueled by the City Attorney's disapproval of U.S. News' viewpoint regarding which hospitals deserve to be ranked higher than others.

The Subpoenas make clear that the City Attorney is using governmental power to engage in viewpoint discrimination—and, indeed, is proceeding as though he holds censorial (or editorial) authority over how U.S. News performs its journalistic work ranking hospitals.  The Subpoenas demand that U.S. News, among other things, "[d]escribe [its] basis for not including measures of health equity in its rankings of adult Hospitals"; "[d]escribe how, if at all, [U.S. News] has incorporated primary and preventive care in each annual version of the Best Hospitals rankings"; and "[d]escribe [U.S. News'] basis for believing that Medicare outcomes information from at least 18 months ago accurately reflects current Hospital outcomes."  Potter Decl. Ex. D.

Simply put, the City Attorney believes his office has the power to second-guess and redirect the journalistic decision-making of U.S. News based on his own view of what factors should and should not be considered.  If the City Attorney's actions are allowed to stand, any news organization that provides news, analyses or opinions to the public—news, analyses or opinions that elected officials may wish to fault—may for that reason be subject to subpoena and investigation. Government actors who disagree with any form of journalism, including articles, rankings, product reviews, editorials, op-eds, or even political cartoons may deploy their powers of investigation to harass, reshape, and chill those views.  Such actions are an affront to the foundational freedoms

upon which our Constitution and nation are built.  This action should be stopped before it inflicts further harm upon U.S. News and thereby casts a wider chill across the free press.

The timeline confirms that the status quo should be preserved before constitutional freedoms can be trampled.  As demonstrated herein, U.S. News is likely to succeed on the merits and the chilling and burdening of U.S. News' protected expression constitutes irreparable harm by definition.  In contrast, there is no plausible harm to the City Attorney (or the public) if this anomalous, misguided investigation is paused while this litigation proceeds.  U.S. News has been publishing hospital rankings for more than thirty years, and the City Attorney waited six months between U.S. News' written response and the issuance of the Subpoenas.  This Court has a compelling basis to grant a preliminary injunction barring enforcement of the Subpoenas during this litigation, both for the sake of preserving the status quo and preventing irreparable harm to free expression.

## FACTUAL BACKGROUND

### A.    U.S. News And Its Methodology For Hospital Rankings

U.S. News has been ranking hospitals for 34 years.  Potter Decl. Ex. B at 2.  Its "Best Hospital" rankings are broken into two subcomponents — specialty rankings and procedure and condition ratings.  *See* Potter Decl. Ex. F at 1.

The specialty rankings are meant for patients with life-threatening or rare conditions who need a hospital that excels in treating complex, high-risk cases.  *Id*.  Hospitals are ranked from 1 to 50 in most specialties, with hospitals not in the top 50 but still in the top 10% of all rated hospitals in those specialties receiving a designation of "high performing."  *Id*. at 2.

The procedure and condition ratings, meanwhile, focus on specific and more commonly required individual procedures and conditions, such as hip replacement and heart failure, rather than on broader specialties like orthopedics and cardiology.  *Id*.  The goal for these rankings is to evaluate how well hospitals perform in each procedure or condition – not just for the most challenging cases, as with the specialty rankings, but across the full range of patients.  *Id*.

U.S. News provides its Best Hospital rankings to recognize excellent healthcare facilities and to inform the public about the relative strengths of particular hospitals.  As stated on U.S. News'

website, "these ratings should be taken as a starting point," and "[a]ll care decisions should be made in conjunction with medical professionals." *Id*. Depending on any particular individual's circumstances, it might make more sense to go to an average hospital that is close by or in-network for insurance purposes rather than a high-performing hospital that is far away and out-of-network. *Id*.

The methodology used to produce each year's Best Hospitals rankings is updated and refined on an annual basis by a team of professionals and journalists led by a Managing Editor and a Senior Health Data Scientist. Potter Decl. Ex. B at 2. Each member of the editorial team works full time on health rankings, including the hospital rankings. *Id*. Editorial team members are not involved in sales of any products or services and revenue considerations do not impact the rankings in any way. *Id*. The process that U.S. News' editorial team uses to iteratively refine its methodology is designed to be responsive to stakeholder feedback, advances in measurement science, and changes in how healthcare is delivered to beneficiaries of America's largest insurance plan, Medicare. *Id*. This process entails long-standing journalistic practices that includes judgment and evidentiary rigor. *Id*.

U.S. News publishes, along with the actual rankings, reports that describe in detail the methodologies underlying each of its Best Hospital rankings for that year. *Id.* at 3. In particular, the reports describe the changes that have been made from the prior year's methodology, the data that is collected/used, the weighting of the data and criteria, the expert opinion component to the rankings, and even methodological improvements that are being considered for future years. *Id.* These detailed methodology reports are available for downloading so that anyone can see the methodology used for a particular ranking in any particular year. *Id*.; *see also* Potter Decl. Exs. Y, Z.

U.S. News gives no weight to financial considerations when determining and publishing its rankings. Potter Decl. Ex. B at 2. Higher rankings cannot be bought at any sum, as this would fatally undermine U.S. News' standing as a leader in unbiased, quality-driven rankings. While U.S. News accepts advertising and other revenues from entities that may be ranked—just as television networks and newspapers regularly accept ads from businesses that are the subject of news stories—

such advertising plays no role in the rankings.  Ranked entities have the option to license a "badge" to highlight their placement on the rankings on their own websites and advertisements, a practice followed by many other publications.  The licensing of badges is common in the publishing industry.  Whether or not a hospital chooses to license a badge has no bearing upon the rankings it may receive.  *Id*. at 10; Potter Decl. Ex. Y at iii; Potter Decl. Ex. Z at 3.

U.S. News is just one of many publications that provide rankings and/or ratings to the public, about hospitals and otherwise.  The Wall Street Journal, The San Francisco Chronicle, Newsweek, The L.A. Times, The New York Times' Wirecutter, Forbes, Consumer Reports, Better Homes and Gardens, CNET, Money.com, and countless other websites, newspapers, and magazines offer rankings, reviews, and "best of" lists to their readers.  Potter Decl. Exs. G-P.  If the City Attorney's actions stand, his overreach will chill all media, not just U.S. News.

## B.    U.S. News' Hospital Rankings Are Widely Lauded And Valued

Numerous third-party evaluations by experts in the healthcare industry support U.S. News' view that its hospital rankings are a valuable and trusted resource for the public.  Most notably, in 2019, health researchers writing in the New England Journal of Medicine (long renowned as one of the world's most respected and influential medical journals) bestowed upon U.S. News the highest grade among the hospital rankings they evaluated.  Potter Decl. Ex. Q (New England Journal of Medicine Catalyst, "Rating the Raters: An Evaluation of Publicly Reported Hospital Quality Ranking Systems").  The researchers conducted a comprehensive study to evaluate various hospital ranking systems, including the federal government's CMS Hospital Compare Overall Star Ratings, Healthgrades Top Hospitals, Leapfrog Safety Grade and Top Hospitals, and U.S. News.  *Id*.  This rigorous study spanned several months and aimed to provide users with valuable insights into the different rating systems, ultimately aiding in their decision-making process.

U.S. News emerged as the health researchers' top-ranking system.  *Id*. at 8.  It surpassed even the U.S. Government's own rating system, Hospital Compare.  *Id*.  The New England Journal of Medicine study concluded, "[w]e qualitatively agreed that the U.S. News rating system had the least chance of misclassifying hospital performance.  There was considerable agreement in overall grade assignments among the six individuals who performed the ratings."  *Id*.

1    In July 2020, the Journal of General Internal Medicine published an article entitled

2 "Revisiting US News & World Report's Hospital Rankings—Moving Beyond Mortality to Metrics

3 that Improve Care", written by respected physicians at Brigham and Women's Hospital, Harvard

4 Medical School, and Johns Hopkins Medicine.  Potter Decl. Ex. R.  The authors concluded: "[U.S.

5 News] rankings have a powerful ability to provide useful information about where patients should

6 seek care at a specialty and overall hospital level.  Similarly, they can motivate hospitals to provide

7 patient-centered care.  We applaud [U.S. News'] efforts to help patients make informed decisions,

8 and we hope that these rankings will evolve to be as reliable and valuable as possible to patients and

9 providers." *Id.* at 210.

10    U.S. News' hospital rankings has garnered additional acclaim from countless other

11 publications.  USA Today, for instance, published an article on July 27, 2021, emphasizing U.S.

12 News' inclusion of a health equity analysis in its 2022 Best Hospitals rankings.  Potter Decl. Ex. S

13 (USA Today, "US Hospitals Struggle To Reduce Health Disparities: Minority Patients

14 Underrepresented In 4 Of 5 Hospitals").  This health equity analysis observed that "racial and ethnic

15 minorities were underrepresented among patients in roughly 4 out of 5 hospitals in the country" (*id*.

16 at 2), highlighting the importance for hospitals to be more cognizant of these issues when

17 administering healthcare to their local populations.

18    These are only a handful of the reputable publications that support U.S. News' beliefs and

19 assertions about the quality and value of its hospital rankings.  Undoubtedly, there are other

20 publications that may disagree.  Views on both sides are subjective opinions entitled to the fullest

21 First Amendment protections.  It is not up to the government to choose between competing opinions

22 or to target one view or the other with adverse governmental action or inquiry.

23    **C.    Defendant's Unconstitutional Inquiry Into U.S. News' Protected Speech**

24    On June 20, 2023, the City Attorney sent U.S. News a demand letter seeking information

25 regarding the Best Hospital rankings.  Potter Decl. Ex. A.  On its face, the City Attorney's letter

26 evinced viewpoint-based criticisms of the U.S. News' rankings and methodologies.  Among other

27 things, the letter expressed "significant concerns about the rankings of hospitals," stated that the

28 rankings "suffer from poor and opaque methodology," questioned the "reliability of the rankings,"

and suggested (falsely) that "[U.S. News'] ranking methodology is seriously flawed." *Id*. at 1-2. From there, the letter called out specific aspects of the determinations that U.S. News has made in producing its rankings—such as the selection of "Honor Roll" hospitals, the relative emphasis on cystic fibrosis versus sickle cell disease, the alleged "fail[ure] to incorporate indicators of health equity," an "undue emphasis on mortality," and U.S. News' regard for "subjective opinion surveys." *Id*. at 2-3.   The letter exemplified content and viewpoint-based discrimination by a government entity.

The City Attorney's letter sought to couch its criticisms of the content of U.S. News rankings with specious allegations of potential wrongdoing.   For example, the City Attorney alleged a potential violation of California Business and Professions Code section 17508 because U.S. News "advertises itself as an authoritative resource in comparing hospitals overall, regionally, and with respect to specialties, procedures, and specific medical conditions." *Id*. at 1-2.   Specifically, the City Attorney challenged U.S. News' portrayal of itself as the "global authority in hospital rankings," and the assertions that its rankings are "authoritative," based on "world-class data and technology," and to aid patients and families in "find[ing] the best healthcare," making "data-informed decisions," and identifying "sources of skilled inpatient care." *Id*.   According to the City Attorney, U.S. News may not offer favorable opinions of itself without providing "all evidence of the facts on which" it bases such opinions. *Id*.[1]

---

[1]  The statute that the City Attorney relied on is wholly inapplicable because U.S. News' statements cannot be mistaken for "advertising claim[s]."  Under Section 17508, an actionable statement must meet a three-part test to fall within the purported purview of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.): "(1) a commercial speaker, (2) an intended commercial audience, and (3) representations of fact of a commercial nature." *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 347–48 (2004) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 964 (2002)).  The City Attorney's letter did not identify any commercial statements of fact.  In *Bernardo*, the court held that mere statements of opinion on Planned Parenthood's website were not actionable as commercial advertisements. *Bernardo*, 115 Cal. App. 4th at 348; *see also Nike*, 27 Cal. 4th at 967 (holding that the False Advertising Law and Unfair Competition Law "do not suppress points of view but instead suppress false and misleading statements of fact.").  It cannot fairly be said that U.S. News, or any other news organization, is advertising itself and making factual claims when it portrays itself in a favorable light.

On June 20, 2023, shortly after sending the letter to U.S. News, the City Attorney expounded, via his personal Twitter account, as to his disagreement with the content of U.S. News' hospital rankings:

> Today, my Office sent a letter seeking information on @usnews hospital rankings, which have come under scrutiny for *questionable methodology, bias & undisclosed financial relationships* with highly ranked hospitals.  Consumers use these rankings to make consequential health care decisions, and yet there is little understanding that *the rankings are fraught* & that U.S. News has financial relationships with the hospitals it ranks.  The *hospital rankings appear to be biased towards providing treatment for wealthy, white patients, to the detriment of poorer, sicker, or more diverse populations*.  This creates perverse incentives that may be warping our healthcare system.  Hospitals are essentially "treating to the test" by investing in specialties that rack up the most points rather than in primary care or other worthy specialties.[2]

These public statements by the City Attorney confirm that the City Attorney was not conducting a legitimate government inquiry but rather, he had prejudged the results before U.S. News even had an opportunity to respond to the accusations.  In parallel, the City Attorney announced the letter from the official City Attorney's account and on the City Attorney's website, again repeating the baseless allegation that U.S. News' rankings have a "questionable methodology."[3]  Six days later, the City Attorney tweeted that, "[f]ollowing the letter my office sent US News last week, the University of Pennsylvania Health System has joined other hospitals in withdrawing from US News & World Report's dubious hospital rankings."[4]  By all indications, the City Attorney had prejudged the issues at the very outset of the investigation and was pleased to be damaging U.S. News by publicly condemning it at the outset (not the conclusion) of his investigation.

U.S. News met with the City Attorney's Office on July 11, 2023 to discuss the June 20 Letter.  During the meeting, the City Attorney's Office confirmed that it believes that U.S.

---

[2]  Potter Decl. Ex. T (David Chiu June 20, 2023 Twitter message) (emphasis added).

[3]  Potter Decl. Ex. U (City Attorney June 20, 2023 Twitter message); *see also* Potter Decl. Ex. AA (City Attorney of San Francisco, *U.S. News & World Report Faces Legal Scrutiny Over Dubious Hospital Rankings* [June 20, 2023], *available at* https://www.sfcityattorney.org/2023/06/20/u-s-news-world-report-faces-legal-scrutiny-over-dubious-hospital-rankings/).

[4]  Potter Decl. Ex. V (David Chiu June 26, 2023 Twitter message).

should be using a different methodology or factors in its hospital rankings.  The City Attorney's Office also expressed the belief that it was well within the City Attorney's power to challenge U.S. News over which factors and criteria it should be considering when conducting its hospital rankings.  Indeed, a review of many of the informational requests in Attachment A to the letter confirms that the City Attorney is claiming power to second-guess and reshape U.S. News' chosen approach to its rankings.  Potter Decl. Ex. A at 5-7.  For example, the letter asks: (1) whether U.S. News has considered and declined modifications and changes to certain ranking methodologies; (2) what plans U.S. News has to address what the City Attorney perceives as disparities in weighting certain diseases; and (3) what plans U.S. News has to expand and develop its measures of health equity.  *Id*.  The Attachment also advocates for certain changes in the methodology raised by critics of U.S. News' rankings, under the heading "Data Limitations."  *Id*. at 5.

On July 19, 2023, U.S. News sent a response to the City Attorney's letter.  Potter Decl. Ex. B.  Therein, U.S. News alerted the City Attorney's Office that its inquiries infringed upon U.S. News' rights under the First Amendment, the Liberty of Speech Clause, and California's Reporter Shield Law while providing a thorough response to the baseless allegations.

Six months later, on January 9, 2024, the City Attorney's Office sent a response letter to U.S. News in which it simply ignored the First Amendment concerns and reiterated its view that U.S. News must disclose the methodology behind its hospital rankings, must substantiate its statements about the quality and value of these rankings, and must disclose additional financial information relating to the rankings.  Potter Decl. Ex. C.  The letter attached two Subpoenas:  one containing interrogatories relating to the hospital rankings, and another seeking documents relating to the rankings.  Potter Decl. Exs. D & E.

The interrogatory Subpoena contains fourteen interrogatories relating to U.S. News' hospital rankings.  Potter Decl. Ex. D.  Each one infringes upon U.S. News' First Amendment rights as a private speaker and a media enterprise.  For example, the Subpoena includes no less than seven interrogatories second-guessing and challenging U.S. News' protected speech regarding its rankings:

Describe [U.S. News'] basis for stating that its Best Hospitals rankings are "[h]ow to find the best medical care in 2023," as stated on the following webpage: https://health.usnews.com/best-hospitals;

Describe [U.S. News'] basis for according 19 times greater weight to cystic fibrosis treatment than to sickle cell disease treatment in the Children's Hospital rankings;

Describe how, if at all, [U.S. News] has incorporated primary and preventive care in each annual version of the Best Hospitals rankings;

Describe [U.S. News'] basis for not including measures of health equity in its rankings of adult Hospitals;

Describe how [U.S. News] has adjusted the Medicare fee-for-service dataset to reflect actual patient populations in each annual version of its Best Hospitals rankings;

Describe [U.S. News'] basis for believing that Medicare outcomes information from at least 18 months ago accurately reflects current Hospital outcomes;

Describe [U.S. News'] basis for using opinion surveys as the exclusive method for ranking Hospitals in ophthalmology, psychiatry, and rheumatology and for incorporating opinion surveys into other specialties ranked by USNWR.

Potter Decl. Ex. D at 3-4.

The interrogatory Subpoena also demands that U.S. News identify *all* hospitals who have paid U.S. News for *any* purpose, including badge licensing, data, advertising, and promotion.  Potter Decl. Ex. D at 3 (Rog Nos. 1-6).  These requests reflect an improper governmental attempt to intimidate and dissuade U.S. News and the hospitals from entering into commercial relationships with each other, thereby harming U.S. News' business, simply because the City Attorney disagrees with U.S. News' hospital rankings and methodology.

The document Subpoena is similarly intrusive, demanding U.S. News' agreements with any hospitals identified in the interrogatories, as well as its contracts with certain partners who have assisted U.S. News in creating the Best Hospitals rankings.  Potter Decl. Ex. E at 3.

To protect its rights, U.S. News filed this lawsuit on January 23, 2024.  That same day, U.S. News contacted the City Attorney's Office to ask that the City Attorney agree to postpone any enforcement of the Subpoenas pending a ruling from this Court on a preliminary injunction motion. While the City Attorney's Office has stood by its Subpoenas, it has agreed not to enforce the

Subpoenas while this Court decides U.S. News' motion for a preliminary injunction, thereby obviating the need for a temporary restraining order.

**D.**  **The City Attorney's Enforcement Action Is Furthering The Agenda Of U.S. News' Critics Rather Than Any Genuine Government Interest**

The obvious constitutional concerns raised by the City Attorney's intrusions are further compounded by strong indicia that his office's inquiries are tainted by its relationship with outspoken critics of U.S. News who have a long-standing public/private partnership with the City Attorney's Office.  The proof of this jumps from the face of publicly-available materials, read alongside the investigative demands at issue.  The original June 20, 2023 letter from the City Attorney instructed U.S. News to "direct any questions and provide the requested documentation, information, and confirmation by July 5, 2023, to Chief of Complex and Affirmative Litigation Sara Eisenberg."  Potter Decl. Ex. A at 3-4.  After meeting with Ms. Eisenberg, U.S. News sent its response letter to her.  Potter Decl. Ex. B at 1.  When the City Attorney sent the Subpoenas on January 9, 2024, Ms. Eisenberg was once again copied.  Potter Decl. Ex. X.  Ms. Eisenberg, meanwhile, is the City Attorney's liaison with Yale Law School's San Francisco Affirmative Litigation Project ("SFALP"), a partnership between Yale Law School and the San Francisco City Attorney's Office.  Potter Decl. Ex. W.  SFALP is led by Dean Heather Gerken of Yale Law School, an outspoken critic of U.S. News' rankings, who works closely with Ms. Eisenberg to oversee this partnership.  *Id.*

Dean Gerken founded SFALP in 2006 and "is one of the few Deans in the country to run a clinic."[5]  The program "pairs Yale Law students with lawyers from the San Francisco City Attorney's Office to conceive, develop, and litigate cutting-edge public interest cases."[6]  The SFALP website explains how it works closely and fluidly with the City Attorney's Office:

> Imagine a public interest law firm with significant resources, outstanding attorneys, and standing to bring suits that most public interest groups cannot bring without costly class-action litigation.  With a long history of engaging in civil law enforcement and public policy litigation, the San Francisco City Attorney's Office

---

[5]  Yale Law School, *Heather Gerken*, *available at* https://law.yale.edu/heather-gerken (last visited Jan. 22, 2024); *see also* Potter Decl. Ex. W.
[6]  Yale Law School, *San Francisco Affirmative Litigation Project*, *available at* https://law.yale.edu/sfalp (last visited Jan. 22, 2024).

deploys top-flight lawyers to pursue affirmative litigation on behalf of the people of San Francisco and California.  Yale students work with deputy city attorneys on the Affirmative Litigation Task Force through every stage of the litigation process, from brainstorming possible suits to filing complaints to motions practice.[7]

SFALP "embodies the vision of Dean Heather K. Gerken[.]"[8]  A litigation guide co-published by the City Attorney and SFALP encourages "city, county, and district attorney's offices to embrace a broader sense of mission: as not only the attorney for the city or county as an institution, but also as the attorney representing the interests of its residents."[9]  The guide also trumpets the "breadth and versatility" of "consumer protection law" and the ability of "local law offices" to "engage in a wide range of public interest litigation," even beyond "prototypical consumer protection cases."[10]

For the past few years, while partnering with the City Attorney through SFALP, Dean Gerken has become one of the leading critics of the rankings of U.S. News.  In 2022, Yale became the first top 14 law school to decline to participate in U.S. News' ranking survey of law schools.[11] In her public notice describing the reasons for Yale Law School's decision, Dean Gerken criticized the rankings as "profoundly flawed" and lacking a "sound methodology," and stated that "the rankings process is undermining the core commitments of the legal profession."[12]  Dean Gerken went further, stating that the "ill-conceived system" of U.S. News' rankings "applies a misguided formula that discourages law schools from doing what is best for legal education," uses a "backward approach" to student debt loads, and provides "inadequate weight" to how much financial aid a law

---

[7]    Yale Law School, *San Francisco Affirmative Litigation Project, SF City Attorney's Office available at*  https://law.yale.edu/sfalp/sf-city-attorneys-office (last visited Jan. 22, 2024).
[8]    Yale Law School, SFALP, The Opioid Epidemic, And Public Interest *available at* SFALP, the Opioid Epidemic, and Public Impact | Yale Law School (last visited Jan. 22, 2024).
[9]     *Local Action, National Impact: A Practical Guide To Affirmative Litigation For Local Governments*, at 4, *available at* A-Practical-Guide-to-Affirmative-Litigation-FINAL-4.13.19-1.pdf (sfcityattorney.org) (last visited Jan. 22, 2024).
[10]    *Id.* at 16.
[11]    *See* Ines Chomnalez, *Yale Law School Withdraws From "Perverse" U.S. News Rankings,* Yale News, Nov. 16, 2022 *available at* https://yaledailynews.com/blog/2022/11/16/yale-law-school-withdraws-from-perverse-u-s-news-rankings/ (last visited Jan. 22, 2024).
[12]    *Dean Gerken: Why Yale Law School Is Leaving the U.S. News & World Report Rankings*, Yale Law School, Nov. 16, 2022 *available at* https://law.yale.edu/yls-today/news/dean-gerken-why-yale-law-school-leaving-us-news-world-report-rankings (last visited Jan. 22, 2024).

school provides to its students.[13] Even after U.S. News met with over 100 law school administrators and made changes to the law school ranking criteria,[14] Dean Gerken continued to criticize U.S. News, telling press outlets that Yale Law School had "cemented our decision to stop participating in the rankings."[15] Such comments notwithstanding, U.S. News published its new law school rankings in 2023, and Dean Gerken continued her criticism.[16]

The City Attorney's letter mirrors Dean Gerken's criticism of U.S. News' rankings. Both the City Attorney and Dean Gerken have criticized U.S. News' "methodology" and the "weight" U.S. News gives to certain factors,[17] both have called the rankings "flawed,"[18] both claimed that U.S. News' rankings cause "harm,"[19] and both have accused U.S. News of "disincentiviz[ing]" programs that assist individuals with fewer means.[20] It is also striking that Ms. Eisenberg, Dean Gerken's liaison and partner in the SFALP program, is the leader of the City Attorney's investigation, and has been U.S. News' primary contact.

**ARGUMENT**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Arc of California*

---

[13] *Id.*

[14] Robert Morse and Stephanie Salmon, *Plans for Publication of the 2023-2024 Best Law Schools*, U.S. News, Jan. 2, 2023 *available at* https://www.usnews.com/education/blogs/college-rankings-blog/articles/2023-01-02/plans-for-publication-of-the-2023-2024-best-law-schools (last visited Jan. 30, 2024).

[15] Ines Chomnalez, *U.S. News Rankings To Be Modified, Yale Law Doubles Down On Withdrawal*, Yale Daily News, Jan. 23, 2023, *available at* https://yaledailynews.com/blog/2023/01/23/u-s-news-rankings-to-be-modified-yale-law-doubles-down-on-withdrawal/ (last visited Jan. 20, 2024).

[16] *See, e.g.*, Jack Stripling, *Yale Sparked A U.S. News Rankings Revolt. Here's What Happened Next*, WASHINGTON POST, Dec. 4, 2023, *available at* https://www.washingtonpost.com/education/2023/12/04/us-news-law-school-revolt-yale (last visited Jan. 30, 2024).

[17] Compare *Dean Gerken*, *supra* n. 12 *with* Potter Decl. Ex. A (June 20, 2023 Letter from the City Attorney); *see also* Potter Decl. Ex. D (Interrogatory Subpoena) at 3-4.

[18] Compare *Dean Gerken*, *supra* n. 12 *with* Potter Decl. Ex. A (June 20, 2023 Letter from the City Attorney).

[19] Compare *Dean Gerken*, *supra* n. 12 *with* Potter Decl. Ex. AA (City Attorney of San Francisco, *U.S. News & World Report Faces Legal Scrutiny Over Dubious Hospital Rankings* [June 20, 2023]).

*v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citation omitted).  The Ninth Circuit uses a "'sliding scale' approach to preliminary injunctions," under which "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (brackets and citation omitted).  That is, a "preliminary injunction is proper if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).  That standard is amply satisfied here, given the glaring constitutional problems and irreparable harm posed by the City Attorney's looming intrusions upon journalistic freedoms and autonomy.

## I.   U.S. NEWS IS LIKELY TO SUCCEED ON THE MERITS

U.S. News is likely to prevail on the merits of its two claims, namely that the City Attorney's Subpoenas (1) violate the First Amendment of the U.S. Constitution and the Liberty of Speech Clause of the California Constitution; and (2) violate California's Reporters' Shield Laws.

### A.   The First Amendment Bars The City Attorney's Subpoenas

The City Attorney is interfering with the intricate workings of the free press based on content he finds disagreeable.  Because his inquiries are burdensome, invasive and chilling, they are inimical to the First Amendment and venerable jurisprudence enforcing this constitutional command.  By its terms, the First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press ...."  U.S. Const. amend. I.  "The First Amendment, applied to states through the Fourteenth Amendment, prohibits laws abridging the freedom of speech." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193 (9th Cir. 2018) (internal quotation omitted).  "Under that Clause, a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (internal quotation omitted).  "That the First Amendment speaks separately of freedom of speech and freedom of the press is no constitutional accident, but an acknowledgment of the critical role played by the press in American society." *Houchins v. KQED, Inc.*, 438 U.S. 1, 17 (1978) (Stewart, J., concurring).

1    The Liberty of Speech Clause in the California Constitution similarly provides that "[e]very

2    person may freely speak, write and publish his or her sentiments on all subjects" and "[a] law may

3    not restrain or abridge liberty of speech or press."  Cal. Const. art. I, § 2.  The California Supreme

4    Court has held that the Liberty of Speech Clause "grants broader rights to free expression than does

5    the First Amendment to the United States Constitution."  *Fashion Valley Mall, LLC v. Nat'l Lab.*

6    *Rels. Bd.*, 42 Cal. 4th 850, 857 (2007).

7        Here, the City Attorney is investigating and threatening enforcement against U.S. News

8    because the City Attorney disagrees with the content of U.S. News' speech in the form of its

9    journalism and methodologies.  Such adverse action is squarely at odds with the First Amendment

10    and the Liberty of Speech Clause, and it triggers strict scrutiny.

11        "The level of scrutiny with which [a court reviews] a restriction of free speech activity

12    depends upon whether it is a content-neutral regulation of the time, place, or manner of speech or

13    restricts speech based upon its content." *Fashion Valley Mall, LLC*, 42 Cal. 4th at 865.  A law is

14    content-based "if the main purpose in enacting it was to suppress or exalt speech of a certain content,

15    or it differentiates based on the content of speech on its face."  *Matter of Search Warrant for*

16    *[redacted].com*, 248 F. Supp. 3d 970, 981 (C.D. Cal. 2017) (search warrant notice preclusion order

17    was a content-based restriction subject to strict scrutiny) (internal quotation omitted).

18        A law that is intended to regulate speech based on its particular content or viewpoint is

19    "presumptively unconstitutional and may be justified only if the government proves that they are

20    narrowly tailored to serve compelling state interests."  *Reed*, 576 U.S. at 163.  "It is rare that a

21    regulation restricting speech because of its content will ever be permissible."  *United States v.*

22    *Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

23        The City Attorney's June 20, 2023 letter and subsequent Subpoenas demonstrate content-

24    and viewpoint-based criticisms and intrusions against the U.S. News' journalism and

25    methodologies, despite the obvious absence of any compelling (or even legitimate) interest and any

26    conscientious attempt at narrow tailoring.  Among other things, the June 20 letter expresses

27    "significant concerns about the rankings of hospitals," states that the rankings "suffer from poor and

28    opaque methodology," questions the "reliability of the rankings," and suggests (falsely) that "[U.S.

News'] ranking methodology is seriously flawed." Potter Decl. Ex. A at 1-2. The Subpoenas go a step further, threatening potential contempt for noncompliance if U.S. News does not answer the City Attorney's invasive, sweeping inquiries and produce requested documents underlying the hospital rankings. Potter Decl. Exs. D, E. And the way that the City Attorney's Office is favoring Dean Gerken's viewpoint over that of U.S. News' (given the close relationship between Yale Law School and the City Attorney's Office) is yet further proof that viewpoint discrimination is at work. *See supra at pp.* 12-14.

Under the First Amendment, U.S. News does not need the City Attorney's approval and endorsement in order to publish its rankings as it sees fit. The City Attorney lacks legal charter to translate any disagreement with U.S. News' rankings into a burdensome, intrusive investigation, let alone an enforcement action, at U.S. News' grave expense. *See, e.g., Giebel v. Sylvester*, 244 F.3d 1182, 1188–89 (9th Cir. 2001) (attempts to single out and silence a particular speaker amount to impermissible viewpoint discrimination); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 581 (1995) ("Disapproval of a private speaker's statement does not legitimize use of the [state's] power to compel the speaker to alter the message by including one more acceptable to others."); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974) (requirement that newspaper "publish that which reason tells them should not be published is unconstitutional") (internal quotation omitted); *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 930 n.3 (C.D. Cal. 2019) (enjoining, as an impermissible content-based restriction on speech, city ordinance that "collaterally attack[s] disfavored speech via a disclosure requirement").

The City Attorney's demand that U.S. News provide confidential documents and information solely because the City Attorney disagrees with U.S. News' viewpoint is not narrowly tailored to any compelling government interest. Instead, the City Attorney seeks to stifle U.S. News' exercise of its expressive freedoms because he disagrees with U.S. News' rankings. Tellingly, when U.S. News spelled out these obvious, profound constitutional problems at painstaking length (Potter Decl. Ex. B at 7-9), the City Attorney had no response other than to restate his demands in the form of coercive Subpoenas. Potter Decl. Exs. C, D, & E. For these reasons and on this record, U.S. News is likely to prevail on the merits of its challenge to the City Attorney's actions.

**B.      California's Reporters' Shield Law Bars The City Attorney's Subpoenas**

The City Attorney's demands regarding U.S. News' rankings, methodologies, and funding also violate the Reporters' Shield Law, embodied in the California Constitution (art. I, § 2, subd. (b)) and California Evidence Code (Cal. Evid. Code § 1070). "A publisher, editor, reporter, or other person connected with or employed upon a newspaper ... shall not be adjudged in contempt ... for refusing to disclose the source of any information . . . or for refusing to disclose any unpublished information[.]" Cal. Const. art. I, § 2(b); *see also* Cal. Evid. Code § 1070 (same).

The Shield Law safeguards the press against intrusive inquiries into unpublished information, confidential sources, and methodologies. "Since contempt is generally the only effective remedy against a nonparty witness, the California enactments . . . grant such witnesses virtually absolute protection against compelled disclosure." *New York Times Co. v. Superior Ct.*, 51 Cal. 3d 453, 461 (1990) (emphasis omitted).

Such solicitude for the press is also reflected in United States Department of Justice policy guidelines, which circumscribe the instances in which the DOJ will subpoena the press:

> (1) A free and independent press is vital to the functioning of our democracy. Because freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news, the Department's policy is intended to provide protection to members of the news media from certain law enforcement tools and actions, whether criminal or civil, that might unreasonably impair newsgathering. . . .
>
> (2) The Department recognizes the important national interest in protecting journalists from compelled disclosure of information revealing their sources, sources they need to apprise the American people of the workings of their Government. For this reason, with the exception of certain circumstances set out in this section,[21] the Department of Justice will not use compulsory legal process for the purpose of obtaining information from or records of members of the news media acting within the scope of newsgathering.

28 C.F.R. § 50.10(a).

The City Attorney's letter does not compare favorably. It disregards the critical role that a longstanding news organization such as U.S. News plays in the public sphere. The City Attorney

---

[21]   The exceptions to the policy, set forth in 28 C.F.R. § 50.10(b)(3), concern foreign agents and terrorists and would not apply here.

has combined legal threats with burdensome demands for confidential information as part of a concerted effort to censor and revise U.S. News' rankings so that they better align with the viewpoint of those who work closely with the City Attorney's Office. U.S. News is likely to prevail on its claim that the Subpoenas violate California's Reporters' Shield Law.

## II.      U.S. NEWS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

By infringing upon the rights of U.S. News to free expression and unfettered reporting, the City Attorney's Subpoenas will irreparably injure U.S. News starting the moment it is forced *either* (1) to comply with their invasive, burdensome, chilling demands, *or* (2) be hauled into enforcement proceedings, entailing concomitant burdens and penalties for any noncompliance. This dilemma now faced by U.S. News is one that it should never face consistent with its constitutional rights; the upshot of it, either way, threatens to chill and interfere with free expression and reporting. U.S. News cannot constitutionally be put to any such choice—and, if it is, irreparable harm will have been dealt. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) ("[W]hen a party has established likelihood of success on the merits of a constitutional claim—particularly one involving a fundamental right—the remaining *Winter* factors favor enjoining the likely unconstitutional law.") (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Absent immediate relief from this Court, U.S. News will suffer irreparable harm, which will in turn ripple beyond U.S. News—across any and all journalistic entities that may find themselves on the wrong side of one or another regulator anywhere in the country.

Notably, the City Attorney is seeking documents and information about U.S. News' business relationships with hospitals and has suggested repeatedly that U.S. News' licensing of its trademarked badges is somehow improper. Such statements on official government letterhead, no matter how specious, are meant to destroy public confidence in U.S. News' rankings, undermine its business relationships, and convince readers to choose different media sources. Such "loss of control of reputation, loss of trade, and loss of good will" also constitutes irreparable harm.

1   *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (citing 2

2   MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:18); *see Doran v. Salem Inn, Inc.*,

3   422 U.S. 922, 932 (1975); *Carlo C. Gelardi Corp. v. Miller Brewing Co.,* 421 F.Supp. 233, 236

4   (D.N.J. 1976).[22]  In sum, black-letter law supplies compelling bases for granting preliminary relief.

5   **III.    THE EQUITIES TIP SHARPLY IN FAVOR OF U.S. NEWS**

6        Balancing the equities requires the Court to "balance the competing claims of injury and …

7   consider the effect on each party of the granting or withholding of the requested relief."  *Winter*,

8   555 U.S. at 24.  In cases like this, where the First Amendment hangs in the balance, the "balance of

9   equities" "tip[s] sharply in favor of" enjoining the offending governmental action.  *Klein v. City of*

10   *San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2008).

11        The balance here is even easier, however, than it is in the typical First Amendment case.

12   The timeline makes clear that entering a preliminary injunction will impose no real costs on the City

13   Attorney.  There is no denying that the City Attorney has gone without the information sought by

14   the Subpoenas throughout the 34 years U.S. News has been publishing the rankings in question.

15   Nor is there any denying that, even after he began faulting, questioning and inquiring into U.S.

16   News' rankings, the City Attorney brought himself and his staff to a complete, voluntary pause for

17   *six months*—between July 2023 and January 2024.  All U.S. News now asks is that the City Attorney

18   wait one more beat, while this Court decides the important constitutional questions now before it.

19        No appreciable harm can result from granting a preliminary injunction.  If U.S. News

20   ultimately prevails on the merits, then the City Attorney will have suffered no harm.  Alternatively,

21   if a preliminary injunction is later lifted, then the City Attorney can pick up where he left off, after

22   pausing no longer than he already has voluntarily.  When the balance of equities "tips sharply" in

23   the plaintiff's favor—as it does here—then preliminary relief is proper under the "serious questions"

24   version of the sliding-scale test (even setting aside the overwhelming likelihood that U.S. News will

25   prevail).  *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

26

27   [22]  *Cf. Koala v. Khosla*, 931 F.3d 887, 897 (9th Cir. 2019) (a "threat to the First Amendment arises

28   from the imposition of financial burdens that may have the effect of influencing or suppressing
speech") (quoting *Pitt News v. Pappert*, 379 F.3d 96, 111-112 (3d Cir. 2004)).

## IV.   AN INJUNCTION SERVES THE PUBLIC INTEREST

Finally, the Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (citation omitted); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").  "The free press is the guardian of the public interest, and the independent judiciary is the guardian of the free press."  *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012). That public interest is at its zenith and urgently calls for relief considering the adverse, chilling precedent that would result from letting the City Attorney subject U.S. News to governmental invasions.  If the City Attorney can make an example out of U.S. News, then no member of the free press can truly be safe from any hostile regulator who may come knocking on its door.

On the other side of the scale, the City Attorney's own delay confirms the absence of any appreciable public interest in barreling forward amidst judicial review.  Nor can it plausibly be claimed that the citizens of San Francisco face any particular risk from the continued, independent development of hospital rankings that preeminent commentators around the country have lauded for the value they provide to the public nationwide.  Injunctive relief in this case would well serve the broad and profound "public interest in upholding free speech."  *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) (citation omitted).

## CONCLUSION

For these reasons, U.S. News respectfully requests that the Court preserve the status quo by issuing a preliminary injunction prohibiting the City Attorney from enforcing the Subpoenas or taking any action in furtherance of them pending the Court's final decision on the merits.

Case No. 3:24-CV-00395-WHO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Dated: January 31, 2024.                    Respectfully submitted,

                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN LLP


                                   By */s/ John Potter*
                                       John Potter
                                       *Attorneys for Plaintiff*
                                       *U.S. News & World Report, L.P.*