Mara W. Elliott, City Attorney
Mark Ankcorn, Chief Deputy City Attorney (SBN 16687)
OFFICE OF THE CITY ATTORNEY
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
mankcorn@sandiego.gov
Tel.: (619) 533-5800
Fax: (619) 236-7215

*Attorneys for Amicus Curiae*
*City Attorney of San Diego, California*

*Additional amici and counsel are listed on signature pages*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. NEWS & WORLD REPORT, L.P., | Case No. 3:24-cv-00395-WHO |
| Plaintiff, | **[PROPOSED] BRIEF OF AMICI CURIAE 18 LOCAL GOVERNMENTS, LOCAL GOVERNMENT OFFICIALS, AND LOCAL GOVERNMENT ORGANIZATIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DISMISSAL** |
| vs. | |
| DAVID CHIU, in his Official Capacity as City Attorney of the City and County of San Francisco, | |
| Defendant. | Judge: Hon. William H. Orrick III |
| | Place: Courtroom 2, 17th Floor |
| | Trial Date: Not Set |

# TABLE OF CONTENTS

Table of Contents ............................................................................................................ i

Statement of Interest ...................................................................................................... 1

Summary of Argument .................................................................................................... 2

Argument .......................................................................................................................... 5

    I.     The Power to Issue Administrative Subpoenas Facilitates Responsible and
         Informed Governmental Decisionmaking ................................................................. 5

         A.    Local Governments Rely on the Subpoena Power to Protect the Health
              and Welfare of the Communities They Serve .............................................. 5

         B.    Judicial Review of Administrative Subpoenas Is Necessary, Limited,
              and Summary ................................................................................................... 8

             1.    Subpoena Respondents Are Entitled to Judicial Review Before
                 Enforcement ........................................................................................ 9

             2.    Judicial Review of Administrative Subpoenas is Generally
                 Limited ............................................................................................... 10

         C.    Limited Judicial Review of Administrative Subpoenas Advances
              Important Governmental Interests Without Sacrificing Individual
              Liberties .......................................................................................................... 11

    II.    Premature Federal Court Actions That Bypass Applicable Legal Frameworks
         Undermine the Subpoena Power .............................................................................. 15

         A.    Government and the Public Have a Strong Interest in Efficiency and
              Flexibility when Conducting Civil Investigations ..................................... 15

         B.    U.S. News's Premature Action Frustrates Governmental Interest in
              Efficiency and Flexibility ........................................................................... 16

Conclusion ....................................................................................................................... 20

Additional Signatories .................................................................................................... 21

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ass'n of Am. Med. Colls. v. United States*,
   217 F.3d 770 (9th Cir. 2000) ...............................................................12, 14, 18

*Barenblatt v. United States*,
   360 U.S. 109 (1959)........................................................................................6

*Carpenter v. United States*,
   585 U.S. 296 (2018)........................................................................................7

*Casey v. FTC*,
   578 F.2d 793 (9th Cir. 1978) ........................................................................14

*CBA Pharma, Inc. v. Perry*,
   No. 22-5358, 2023 WL 129240 (6th Cir. Jan. 9, 2023)............................ 13-14

*CFPB v. Seila Law LLC*,
   No. 17-01081, 2017 WL 6502722 .................................................................16

*Church of Scientology of California v. United States*,
   506 U.S. 9 (1992)...........................................................................................16

*City of Los Angeles, Calif. v. Patel*,
   576 U.S. 409 (2015)........................................................................................10

*Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
   124 F.3d 1304 (D.C. Cir. 1997)................................................................. 12-13

*Donaldson v. United States*,
   400 U.S. 517 (1971)......................................................................................9, 19

*Donovan v. Lone Steer, Inc.*,
   464 U.S. 408 (1984)........................................................................................10

*Exxon Mobil Corp. v. Healey*,
   28 F.4th 383 (2d Cir. 2022) ..........................................................................14

*Fed. Mar. Comm'n v. Port of Seattle*,
   521 F.2d 431 (9th Cir. 1975) .......................................................................7, 16

*First Choice Women's Resource Ctrs., Inc. v. Platkin*,
   No. 23-23076, 2024 WL 150096 (D.N.J. Jan. 12, 2024)...............................20

*FTC v. Texaco, Inc.*,
   555 F.2d 862 (D.C. Cir. 1977).......................................................................15

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) .................................................................................20

*Hannah v. Larche*,
  363 U.S. 420 (1960)........................................................................................4, 12

*In re EEOC*,
  709 F.2d 392 (5th Cir. 1983) ...............................................................................15

*Jerry T. O'Brien, Inc. v. SEC*
  719 F.2d 300 (9th Cir. 1983) ...............................................................................19

*McLane Co. v. EEOC*,
  581 U.S. 72 (2017) ................................................................................... 7, 10-13

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).............................................................................................5

*NLRB v. N. Bay Plumbing, Inc.*,
  102 F.3d 1005 (9th Cir. 1996) ..............................................................................13

*Obria Grp. Inc. v. Ferguson*,
  No. 23-6093 (W.D. Wash. filed Nov. 29, 2023)......................................................20

*Oklahoma Press Pub. Co. v. Walling*,
  327 U.S. 186 (1946)................................................................................ 3, 8, 11-12

*Reisman v. Caplin*,
  375 U.S. 440 (1964).............................................................................................10

*Schulz v. IRS*,
  413 F.3d 297 (2d Cir. 2005) .................................................................................10

*SEC v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980).............................................................................16

*SEC v. Jerry T. O'Brien, Inc.*,
  467 U.S. 735 (1984)....................................................................................4, 12, 19

*Second Amend. Found. v. Ferguson*,
  No. 23-1554, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024) .....................................20

*See v. City of Seattle*,
  387 U.S. 541 (1967)..........................................................................................9-10

*Trump v. Mazars USA, LLP*,
  591 U.S. ----, 140 S. Ct. 2019 (2020) .................................................................6, 7

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) ...............................................................................20

*United States v. Golden Valley Elec. Ass'n,*
  689 F.3d 1108 (9th Cir. 2012) ......................................................... 10-11

*United States v. Kis,*
  658 F.2d 526 (7th Cir. 1981) ...............................................................16

*United States v. Markwood,*
  48 F.3d 969 (6th Cir. 1995) ..................................................................15

*United States v. Morton Salt Co.,*
  338 U.S. 632 (1950) ..................................................................... *passim*

*Univ. of Med. & Dentistry of N.J. v. Corrigan,*
  347 F.3d 57 (3d Cir. 2003) ..............................................................12-15

*Winter v. Cal. Med. Rev., Inc.,*
  900 F.2d 1322 (9th Cir. 1989) ...................................................13-14, 18

*Worldwide Church of God v. McNair*
  805 F.2d 888 (9th Cir. 1986) ................................................................17

**State Cases**

*Arnett v. Dal Cielo,*
  923 P. 2d 1 (Cal. 1996) ..........................................................................8

*Brovelli v. Superior Ct. of Los Angeles Cnty.,*
  364 P.2d 462 (Cal. 1961) ...........................................................3, 4, 8, 10

*Burns v. Arizona Pub. Serv. Co.*
  517 P.3d 624 (Ariz. 2022) .....................................................................10

*Cal. Rest. Ass'n v. Henning,*
  219 Cal. Rptr. 630 (Cal. Ct. App. 1985).............................................. 9-12

*City & Cnty. of San Francisco v. Uber Techs., Inc.,*
  248 Cal. Rptr. 3d 273 (Cal. Ct. App. 2019) ..................................... *passim*

*City of Vacaville v. Pitamber,*
  21 Cal. Rptr. 3d 396 (Cal. Ct. App. 2004) ..............................................6

*Compare People v. Alorica Inc.,*
  291 Cal. Rptr. 3d 905 (Cal. Ct. App. 2022) ...........................................19

*Connecticut Indem. Co. v. Superior Ct.,*
  3 P.3d 868 (Cal. 2000) ...........................................................................6

*Craib v. Bulmash,*
  777 P.2d 1120 (Cal. 1989) .....................................................................8

*Dibb v. Cnty. of San Diego*,
 884 P.2d 1003 (Cal. 1994) ....................................................................................6, 9

*Exxon Mobil Corp. v. Att'y Gen.*,
 94 N.E.3d 786 (Mass. 2018) .......................................................................................10

*Kirchmeyer v. Helios Psychiatry Inc.*,
 305 Cal. Rptr. 3d 667 (Cal. Ct. App. 2023) ...............................................................13

*Lewis v. Superior Ct.*,
 397 P.3d 1011 (Cal. 2017) ...................................................................................3, 4, 13

*Meta Platforms, Inc. v. D.C.*,
 301 A.3d 740 (D.C. 2023) ...........................................................................................10

*Parkhouse v. Stringer*,
 912 N.E.2d 48 (N.Y. 2009) ..........................................................................................11

*People ex rel. Gallo v. Acuna*,
 929 P.2d 596 (Cal. 1997) ...............................................................................................5

*People v. Alorica*,
 291 Cal. Rptr. 3d 905 (Cal. Ct. App. 2022) ...............................................................18

*Schade v. Texas Workers' Comp. Comm'n*,
 150 S.W.3d 542 (Tex. App. 2004) ..............................................................................11

*Scott v. Ass'n for Childbirth at Home, Int'l*,
 430 N.E.2d 1012 (Ill. 1981) .........................................................................................11

*State v. Brelvis Consulting LLC*,
 436 P.3d 818 (Wash. Ct. App. 2018) ..........................................................................10

*State v. Ghim*,
 381 P.3d 789 (Or. 2016) ...............................................................................................10

*State Water Res. Control Bd. v. Baldwin & Sons, Inc.*,
 258 Cal. Rptr. 3d 425 (Cal. Ct. App. 2020) ...............................................................13

*Tesoro Petroleum Corp. v. State*,
 42 P.3d 531 (Alaska 2002) ...........................................................................................11

*Union Pac. R. Co. v. Looney*,
 729 P.2d 1063 (Idaho 1986) .........................................................................................11

*Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*,
 45 A.3d 208 (Md. 2012) ..........................................................................................10-11

**Federal Statutes**

26 U.S.C. § 7609 ...................................................................................................................19

**State Statutes**

Cal. Bus. & Prof. Code § 16759 ........................................................................................6, 17

Cal. Bus. & Prof. Code § 17204 ..............................................................................................6

Cal. Civ. Code § 3480 ...............................................................................................................5

Cal. Gov't Code § 11184 ...........................................................................................................9

Cal. Gov't Code § 11187 .........................................................................................................17

Cal. Gov't Code § 25170 ...........................................................................................................6

Cal. Gov't Code § 37104 ...........................................................................................................6

1

**STATEMENT OF INTEREST**[1]

2      Amici Curiae are local jurisdictions and officials from around the country, and local

3 government organizations, that collectively represent and serve millions of residents.[2]  Like all local

4 and state governments and officials, Amici bear responsibility for protecting the health, safety, and

5 welfare of the residents and communities they serve.  And like all local and state governments and

6 officials, Amici exercise discretion and independent judgment about how best to use their powers to

7 do so.  Despite the diversity of their priorities, resources, and policy preferences, all Amici have in

8 common a compelling interest in ensuring their actions are well-informed, responsive to the

9 communities they serve, and reasonably likely to achieve their intended ends.  To achieve this interest,

10 Amici and many other state and local governments and officials can issue subpoenas to obtain

11 information relevant to their decision-making.

12      The subpoenas that Amici can issue—so-called non-self-enforcing subpoenas, typically in the

13 form of administrative subpoenas—permit the government to access a wide range of information by

14 directing inquiries to people and organizations with knowledge relevant to the issue under

15 consideration.  In some instances, officials may be authorized to serve subpoenas in connection with

16 an investigation into potential violations of laws or policies.  In other instances, legislative bodies may

17 be authorized to conduct investigations in order to prepare wise and timely laws.  More broadly, many

18 agencies and officials can conduct investigations on all manner of issues within their subject matter

19 jurisdiction.  The common thread in all these inquiries is that *the government has the right to ask*

20

21
[1] No party's counsel authored this brief in whole or in part, and no person or entity made a monetary contribution intended to fund the preparation or submission of this brief.

22
23
24
25
26
27
[2] Amici are the City Attorney for the City of San Diego, Calif.; the City of Alameda, Calif.; the City of Baltimore, Md.; the City of Chicago, Ill.; the City of New York, New York; the City Attorney for the City of Oakland, Calif.; the County of Milwaukee, Wisc., the County of Travis, Tex.; the International Municipal Lawyers Association (IMLA); Marilyn Ezzy Ashcroft, Mayor of the City of Alameda, Calif.; Nancy Metayer Bowen, Member of the City Commission for the City of Coral Springs, Fla.; Peter Ceglarek, Treasurer of the Board of Education of the Ferndale School District in Ferndale, Mich.; Steven Marchese, Director of the Office of Labor Standards for the City of Seattle, Wash.; Veronica Pillar, Member of the Tompkins County Legislature, Tompkins County, New York; Jacqueline "Jack" Porter, Member of the City Commission for the City of Tallahassee, Fla.; Ginny Welsch, Member of the City Council of the City of Nashville, Tenn.; and Robin Wilt, Councilmember of the Town Board of the Township of Brighton, New York.

28
IMLA has been an advocate and resource for local government attorneys since 1935. Owned solely by its more than 3,000 members, IMLA serves as an international clearinghouse for legal information and cooperation on municipal legal matters.

*questions*, and in fact *must* do so to ensure it is responsibly carrying out its duty to protect its residents and communities.

For these reasons, the administrative subpoena is a critical and well-established tool of modern governance, and Amici have a shared interest in ensuring that it is not sapped of its utility.  Yet that is what Plaintiff U.S. News & World Report, L.P.'s ("U.S. News") action threatens to accomplish.  Defendant City Attorney for the City and County of San Francisco ("San Francisco") has shown why this Court should dismiss this action.  Amici write separately for two reasons: (1) to underscore and give context for the centrally important role that administrative subpoenas play in local, state, and administrative governance; and (2) to illustrate how lawsuits like the one filed by U.S. News threaten to undermine the ability and willingness of agencies and officials to exercise their lawful authority to conduct investigations—including through subpoenas—into suspected wrongful activities..

Amici take no position on the merits of the theory San Francisco has asserted it is investigating regarding the legality of U.S. News's business practices.  Rather, Amici's view is that the merits of this theory, and any possible defenses to it, are not appropriately assessed at this time or in this forum.

## SUMMARY OF ARGUMENT

This case implicates a bedrock principle of governance:  Governments must be able to access relevant information in order to govern wisely and serve their communities effectively.  The government has long been understood to have an inherent "power of inquiry" attendant to its powers to legislate and enforce laws.  In the modern era, this "power of inquiry" is embodied in the form of a subpoena seeking documents and information relevant to their decision-making.  For public agencies and officials charged with civil enforcement of the laws, this takes the form of the civil administrative subpoena, sometimes referred to as an investigative subpoena.  Governments rely on the subpoena power to achieve their important interest in being able to access relevant, timely information about matters of public concern.

Significantly, government agencies' broad latitude to issue administrative subpoenas exists within a well-established framework that ensures appropriate oversight by courts.  Agencies and officials can *issue* civil administrative subpoenas, but they cannot *enforce* them by threat of contempt or other punishment.  Rather, constitutional principles require that the subpoena-enforcement power

belongs exclusively to the courts, and only after the recipients are given due process including the opportunity to object.  A person or business who has been served with a subpoena cannot be held in contempt or otherwise punished for noncompliance unless and until a court has determined the subpoena is valid, not overbroad, does not intrude on constitutionally protected privileges, and has ordered the respondent to comply within a reasonable period of time. And in keeping with our federalist structure, state courts scrutinize subpoenas issued by state and local agencies while federal courts do so for administrative subpoenas issued by federal agencies.

Here, U.S. News could not be subjected to any penalty for refusing to respond to San Francisco's subpoenas *unless and until* (1) U.S. News exercised its rights under state law to object to San Francisco's subpoenas; (2) state courts subsequently considered and rejected U.S. News's objections, held that the subpoenas were valid, and ordered U.S. News to comply with them; and (3) U.S. News thereafter continued to refuse to comply with the subpoenas despite court orders directing it to do so.  None of these have happened.

Every state has different rules for how and when these safeguards are employed, and in California, as elsewhere, the framework is well-established by decades of case law applying clear statutory and constitutional protections.  California law, as elsewhere, affords substantial deference to agencies; in the normal course, it calls for the enforcement of subpoenas if they meet the minimal requirements of (1) seeking information within the subject matter jurisdiction of the issuing agency, (2) describing demands that are not too indefinite, and (3) seeking information that is reasonably relevant to the investigation.  *See generally Brovelli v. Superior Ct. of Los Angeles Cnty.*, 364 P.2d 462, 465 (Cal. 1961) (applying similar requirements as *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 213 (1946), and *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950)).  The framework also calls for greater scrutiny when enforcement of the subpoena itself—as opposed to a hypothetical subsequent civil enforcement action—could infringe on constitutional rights.  *See, e.g.*, *Lewis v. Superior Ct.*, 397 P.3d 1011, 1021-22 (Cal. 2017).

In no case, however, can courts demand that the agency issuing a subpoena prove the merits of its theory of the case.  To the contrary, an agency or official "does not depend on a case or controversy for power to get evidence."  *Morton Salt*, 338 U.S. at 642.  The purpose of a subpoena is to obtain

evidence and inform decisionmaking, *not* to prove a pending charge or theory.  In other words, "an administrative investigation adjudicates no legal rights," *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (citing *Hannah v. Larche*, 363 U.S. 420, 440-43 (1960)).

By filing this action in this forum at this stage, U.S. News ignores and attempts to short-circuit this entire legal framework.  U.S. News's action makes no mention of the state law under which San Francisco issued its subpoenas or the broad investigatory latitude that state and local agencies have to obtain information necessary for wise decisionmaking.  Because they completely ignore governing law, U.S. News's submissions also elide the critical distinction between a civil *investigation* and a civil *prosecution*, the highly uncertain and contingent path from investigation to prosecution, and the flexibility San Francisco retains to determine *after* conducting its investigation whether to pursue civil enforcement at all—and, if so, to what extent and on what grounds.  Nor does U.S. News acknowledge that it has two existing options under California law to contest the validity of the subpoenas— including on federal constitutional grounds—and that it has availed itself of neither.  Despite its failure to acknowledge governing law, U.S. News asks this Court to take the extraordinary step of enjoining a local or state agency from conducting an investigation that state law both authorizes and subjects to judicial safeguards.

U.S. News's disregard for the applicable legal frameworks threatens to undermine *all* local and state governments' ability to use their administrative subpoena power effectively.  Rather than following the clear and well-established rules that govern issuance of and challenges to administrative subpoenas under California law, U.S. News would have this Court issue an advisory opinion assessing and opining on the merits of a hypothetical enforcement action that San Francisco has not filed, and to do so on a preliminary injunction record based entirely on speculation about future actions San Francisco might or might not take.  These realities make inevitable the conclusion that this lawsuit must be dismissed.

In the meantime, this action itself diverts precious and scarce resources from San Francisco's efforts to engage in efficient, prompt, and informed decisionmaking.  Actions like this can inhibit valid and lawful investigations to vindicate the common good and, by increasing the costs, they can also discourage agencies from even initiating investigations.  And above all, actions like this harm the

public by demanding that government attend to meritless, premature litigation rather than follow existing law when protecting the public health and welfare.  If courts countenance actions like this one, it will encourage investigation targets to use litigation as a tactic in the hope that the costs and delays associated with pre-enforcement litigation will deter agencies from valid and lawful investigations into suspected wrongdoing by large and well-resourced actors.  The result could be to paralyze agencies and weaken their civil enforcement powers.  For these reasons, actions like the one filed by U.S. News represent a threat to all local and state governments that rely on the power to issue administrative subpoenas and the smooth functioning of established law to enforce them.

## ARGUMENT

### I.     THE POWER TO ISSUE ADMINISTRATIVE SUBPOENAS FACILITATES RESPONSIBLE AND INFORMED GOVERNMENTAL DECISIONMAKING

#### A.     Local Governments Rely on the Subpoena Power to Protect the Health and Welfare of the Communities They Serve

In our constitutional system of limited federal power, local and state governments bear primary responsibility for protecting the health and safety of their residents.  *E.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (residents' "health and safety" are "primarily, and historically, matters of local concern," and "States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons" (internal citations and quotations omitted)).  Local and state governments must protect not only individual residents, but also the community that those residents collectively constitute.  *E.g.*, *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 603 (Cal. 1997) (emphasizing state's right and obligation to protect the community as a whole).

To fulfill this fundamental responsibility, the law has long given local and state governments tools to investigate potential violations of law and to decide whether, when, and how to bring civil law enforcement actions based on what those investigations reveal.  For example, in California, as in most states, localities and the State have the power to enjoin and abate public nuisances, which for centuries have been understood as "offenses against, or interferences with, the exercise of rights common to the public."  *Acuna*, 929 P.2d at 603; *see also* Cal. Civ. Code § 3480.  Similarly, the State and certain local

officials are authorized to bring suit to enjoin and obtain monetary penalties for any unfair, unlawful, or deceptive business practice.  Cal. Bus. & Prof. Code § 17204.  Many other states also have consumer-protection statutes.  And setting aside these specific enforcement mechanisms, state and local governments provide services and implement and enforce laws through an array of agencies, departments, and officials, each of which is also tasked with ensuring compliance with the laws within their purview.

By common sense, tradition, and governing law, it is clear that government must have access to relevant information if it is to exercise its powers in an informed and responsible manner.  In other words, it must—and does—have the ability to *investigate*.  *E.g.*, *Connecticut Indem. Co. v. Superior Ct.*, 3 P.3d 868, 872 (Cal. 2000) ("It long has been recognized that a legislative body may conduct an investigation in order to assist its decisionmaking regarding legislative or appropriative matters." (citing *Barenblatt v. United States*, 360 U.S. 109, 111-12 (1959)); *accord Trump v. Mazars USA, LLP*, 591 U.S. ----, 140 S. Ct. 2019, 2031 (2020).

A primary mechanism for obtaining this information is an administrative subpoena.  Through administrative subpoenas, government exercises the "power to get information from those who best can give it and who are most interested in not doing so."  *Morton Salt*, 338 U.S. at 642.  All states, and many local governments, can issue subpoenas that command the production of documents or testimony.  In California, for example, administrative subpoena power is considered both inherent within government's "structural and operational" powers and also "reasonably necessary to the full accomplishment" of government's legitimate goals.  *Dibb v. Cnty. of San Diego*, 884 P.2d 1003, 1012-13 (Cal. 1994) (administrative subpoena power is one of "[t]he powers and duties of governing bodies and all other county officers"); *City of Vacaville v. Pitamber*, 21 Cal. Rptr. 3d 396, 398, 403-04 (Cal. Ct. App. 2004) (city council's subpoena power includes the authority to grant mayor power to issue and seek enforcement of administrative subpoena on matter related to compliance with city ordinances); *see also*, *e.g.*, Cal. Gov't Code § 25170 (granting subpoena power to county boards of supervisors); *id.* § 37104 (granting subpoena power to city councils); Cal. Bus. & Prof. Code § 16759(b) (empowering specified local public prosecutors to issue subpoenas with respect to suspected violations of the Unfair Competition Law).

The use of administrative subpoenas at the state and local level has parallels at the federal level. The U.S. Supreme Court has recognized that Congress has the "broad and indispensable" "power of inquiry—with process to enforce it—[as] an essential and appropriate auxiliary to the legislative function," lest it otherwise "be shooting in the dark, unable to legislate wisely or effectively." *Mazars*, 591 U.S. ----, 140 S. Ct. at 2031 (2020) (internal quotations and citations omitted). In turn, Congress has empowered almost all federal agencies to issue administrative subpoenas as part of their civil investigatory authority. *See Morton Salt*, 338 U.S. at 643 ("When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.").

As the economic, social, and administrative order has grown more complex, so too has the need for government to quickly become well informed in order to balance communities' many competing interests. For Amici and other local and state governments around the country, the administrative subpoena is now an indispensable tool to conduct fact-gathering investigations. These subpoenas are one of government's "traditional investigative practices," and "are used for investigatory purposes by state and federal grand juries, state and federal administrative agencies, and state and federal legislative bodies." *Carpenter v. United States*, 585 U.S. 296, 331 (2018) (Kennedy, J., dissenting). Information obtained through subpoenas enables informed governmental decisionmaking. Accordingly, courts also recognize that agencies must have broad latitude to investigate matters within their purview. *See, e.g.*, *McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017) ("In order '[t]o enable the [EEOC] to make informed decisions at each stage of the enforcement process,' Title VII 'confers a broad right of access to relevant evidence,'" including through power to issue administrative subpoenas); *accord Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975) (enforcement of appropriate administrative subpoenas is "the very backbone of an administrative agency's effectiveness in carrying out [its] mandated duties").

For the same reasons, it is also beyond dispute that agencies can conduct investigations without establishing probable cause to believe a target of investigation has violated the law, as would be required to serve a warrant, and without having filed a civil enforcement prosecution claiming that the target has actually committed wrongdoing. Under both California and federal law, "[t]he very purpose

of [a] subpoena … is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one *if, in the [agency's] judgment*, the facts thus discovered should justify doing so." *Okla. Press*, 327 U.S. at 201 (emphasis added); *accord Morton Salt*, 338 U.S. at 643 (an agency "may take steps to inform itself as to *whether* there is probable violation of the law") (emphasis added); *Craib v. Bulmash*, 777 P.2d 1120, 1124-26 (Cal. 1989).  An agency's "power to make administrative inquiry . . . does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated.'" *Brovelli*, 364 P.2d at 465 (quoting *Morton Salt*, 338 U.S. at 642-43).  Instead, agencies can issue subpoenas without any "formal accusation [] on file or a formal adjudicative hearing [] pending."  *Arnett v. Dal Cielo*, 923 P. 2d 1, 3 (Cal. 1996).  This is because "[t]here is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him." *Brovelli*, 364 P.2d at 465.  The Supreme Court has been crystal clear on this point: an agency "does not depend on a case or controversy for power to get evidence." *Morton Salt*, 338 U.S. at 642; *accord Brovelli*, 364 P.2d at 465.

## B. Judicial Review of Administrative Subpoenas Is Necessary, Limited, and Summary

Government's power to obtain information by administrative subpoena is subject to well-established judicial oversight.  In both California and the federal system, judicial review is a constitutional prerequisite to enforcement of administrative subpoenas, precisely so that courts can protect individual liberties and constrain overbroad inquiries.  In California, as in other states and the federal system, the legal framework for judicial review of administrative subpoenas carefully balances governmental interests with subpoena respondents' rights.  The framework recognizes and facilitates the government's interest in efficient and effective factfinding and its broad latitude to conduct investigations without first initiating civil prosecutions, but it also enforces subpoena respondents' rights against unreasonable and overbroad requests as well as rights or privileges they may have against disclosing subpoenaed material in the first place.

If and when U.S. News avails itself of the options available to it under state law to object to San Francisco's subpoenas, U.S. News will be entitled to state court oversight and review pursuant to this framework—and it will have an opportunity to have a court determine the validity of its objections *before* it could ever be compelled to respond to San Francisco's subpoenas. *Cal. Rest. Ass'n v. Henning*, 219 Cal. Rptr. 630, 635 (Cal. Ct. App. 1985). Accordingly, there is simply no merit to U.S. News's contention that San Francisco's subpoenas put U.S. News to a "Hobson's choice" of "provid[ing] the requested documents and information" or "bear[ing] the penalties of noncompliance with the Subpoenas." Compl. [ECF No. 1] at ¶ 84.

### 1.  Subpoena Respondents Are Entitled to Judicial Review Before Enforcement

The constitution requires a court to assess the validity of an administrative subpoena, and to consider a respondent's objections to that subpoena, before the court order the respondent to comply under threat of contempt or other penalty.

It has long been the case in California, for instance, that "it is not constitutionally permissible to place under penalty of criminal conviction the subpoenaed party who has refused in good faith to comply unless and until the subpoena's validity has been first judicially established." *Henning*, 219 Cal. Rptr. at 635; *see also Dibb*, 884 P.2d at 1014 (noting, in the context of administrative subpoenas, that "unless the Constitution expressly or by necessary implication provides otherwise, only a court may adjudicate and punish contempt").[3]

The same is true for federal courts assessing federal agencies' administrative subpoenas. It has been "settled" for a half-century that although "the *demand to inspect* may be issued by the agency, in the form of an administrative subpoena . . . the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *See v. City of Seattle*, 387 U.S. 541, 544-45 (1967) (emphasis added); *accord Donaldson v. United States*, 400 U.S. 517, 525 (1971) ("the summons is administratively issued but its enforcement is only by federal court authority in 'an adversary proceeding' affording the opportunity for challenge and 'complete

---

[3] This requirement is reflected in statutory law as well. For example, the California Legislature has directed that state department heads must exercise their administrative subpoena powers "in a manner consistent with the California Constitution and the United States Constitution." Cal. Gov't Code § 11184(a).

protection to the witness.'" (quoting *Reisman v. Caplin*, 375 U.S. 440, 446 (1964))); *see also City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 420 (2015); *Morton Salt*, 338 U.S. at 643; *see generally Schulz v. IRS*, 413 F.3d 297, 303 (2d Cir. 2005) (collecting cases establishing "[t]he rule of due process" that subjects of administrative subpoenas are entitled to "an opportunity to seek judicial review" before they can be subjected to penalty for noncompliance).

### 2. Judicial Review of Administrative Subpoenas is Generally Limited

The exercise of judicial oversight over administrative subpoenas is subject to its own well-established body of law, which consistently emphasizes that the court's role is straightforward and limited.  California courts hold that courts assessing administrative subpoenas issued under California law must afford "considerable" "deference to administrative discretion and expertise" and apply a "general policy of noninterference" when reviewing the validity of an administrative subpoena. *Henning*, 219 Cal. Rptr. at 634 (citing *Morton Salt*, 338 U.S. at 652-53).  Under California law, an administrative subpoena is enforceable if the following is established: "[1] that the inquiry [is] one which the agency demanding production is authorized to make, [2] that the demand [is] not too indefinite, and [3] that the information sought [is] reasonably relevant." *Brovelli*, 364 P.2d at 465; *accord City & Cnty. of San Francisco v. Uber Techs., Inc.*, 248 Cal. Rptr. 3d 273, 280 (Cal. Ct. App. 2019).  California's standard mirrors well-established federal law, which requires only that a federal agency's administrative subpoena be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (quoting *See*, 387 U.S. at 544); *accord United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012), *abrogated on other grounds by McLane*, 581 U.S. at 85 (appeals of federal district court decisions to enforce federal agencies' administrative subpoenas should be reviewed for abuse of discretion, not *de novo*).  An administrative subpoena will survive judicial review for reasonableness so long as it satisfies "these rather minimal limitations." *See*, 387 U.S. at 545.[4]

---

[4] Other states' laws are also consistent with these principles.  *See, e.g.*, *Meta Platforms, Inc. v. D.C.*, 301 A.3d 740, 756 (D.C. 2023); *Burns v. Arizona Pub. Serv. Co.*, 517 P.3d 624, 629 (Ariz. 2022); *Exxon Mobil Corp. v. Att'y Gen.*, 94 N.E.3d 786, 799 (Mass. 2018); *State v. Brelvis Consulting LLC*, 436 P.3d 818 (Wash. Ct. App. 2018); *State v. Ghim*, 381 P.3d 789, 796-97 (Or. 2016); *Washington*

As a corollary, neither state nor federal law permits a court to demand that an agency "prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas or conduct an investigation." *Uber*, 248 Cal. Rptr. 3d at 283; *accord McLane*, 581 U.S. at 76 (federal district courts considering enforcement of EEOC subpoenas must "not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint"); *Golden Valley Elec. Ass'n*, 689 F.3d at 1113 ("The scope of judicial review in an administrative subpoena enforcement proceeding is quite narrow." (internal quotation and citation omitted)).

### C.   Limited Judicial Review of Administrative Subpoenas Advances Important Governmental Interests Without Sacrificing Individual Liberties

There are two reasons that judicial deference in reviewing administrative subpoenas makes sense.

First, the administrative subpoena is a tool to facilitate civil investigations, and a civil investigation is *not* an accusation of wrongdoing.  Rather, the purpose of an investigation is to ensure that governmental decisionmaking—including decisionmaking related to potential enforcement—is well informed.  Its purpose is *not* to prove a case in court.  In many instances, an investigation will not ultimately result in a civil enforcement action.  Accordingly, review of an administrative subpoena's validity is far too early a stage for courts to assess the objections that an investigation target may have to the merits of a potential, hypothetical civil enforcement proceeding the investigating agency might eventually bring.

Second, as discussed above, agencies and officials must and do have broad latitude to conduct investigations—including through administrative subpoenas—in order to gather all facts they reasonably determine to be relevant to their decisionmaking within their own subject matter jurisdiction.  *See Okla. Press*, 327 U.S. at 213 (agencies conduct "investigation[s] in the public interest," so limitations on investigations must in the normal course be minimal so that agencies can

---

*Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*, 45 A.3d 208, 214 (Md. 2012); *Parkhouse v. Stringer*, 912 N.E.2d 48 (N.Y. 2009); *Schade v. Texas Workers' Comp. Comm'n*, 150 S.W.3d 542, 551 (Tex. App. 2004); *Tesoro Petroleum Corp. v. State*, 42 P.3d 531, 540-41 (Alaska 2002); *Union Pac. R.R. Co. v. Looney*, 729 P.2d 1063, 1066 (Idaho 1986); *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1022 (Ill. 1981).

"effective[ly] discharge [] the duties of investigation and enforcement" with which they are charged);
*accord Henning*, 219 Cal. Rptr. at 634-35 (following *Oklahoma Press*).

It is well established that agencies' civil investigations are separate from, and antecedent to, civil enforcement actions.  At the investigative subpoena stage, "[t]he only power that is involved . . . is the power to get information from those who best can give it and who are most interested in not doing so."  *Morton Salt*, 338 U.S. at 642; *accord Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 782, 784 (9th Cir. 2000) (notwithstanding subpoena respondents' concerns about potential future civil enforcement actions, "nothing but participation in the audits is demanded of them at present").  Accordingly, "'[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action.'  In the ordinary course, an investigation is the beginning of a process that *may or may not* lead to an ultimate enforcement action. . . . That path is highly uncertain." *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (emphasis added) (quoting *Assoc. of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000)); *accord Uber*, 248 Cal. Rptr. 3d at 283.  In fact, "the possibility that no enforcement action may be taken is real for several reasons, not least of which is that the [agency] may change [its] mind on one or more issues along the way."  *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 69.  For this reason, "an administrative investigation adjudicates no legal rights," *Jerry T. O'Brien, Inc.*, 467 U.S. at 742 (citing *Hannah*, 363 U.S. at 440-43), so targets of investigation do not have the sort of adjudicatory due process rights attendant to civil prosecutions, *Hannah*, 363 U.S. at 440-43.[5]

As a result, courts must give a subpoenaing "agency a wide berth as to relevance because it need establish only that the information is relevant to its *investigation* not to a hypothetical adjudication, and . . . the boundary of an investigation need only, *indeed can only*, be defined in

---

[5] To be sure, a courts may make allowances to address rights at the investigation phase in the unusual circumstances where the subpoena respondent claims entitlement to refuse to disclose information in the first place.  This may, for example, arise when agencies investigating medical providers or facilities subpoena patient medical files subject to the state constitutional right to privacy.  Protective orders sometimes adequately protect privacy interests, and at other times courts may limit or quash subpoenas.  *E.g.*, *Kirchmeyer v. Helios Psychiatry Inc.*, 305 Cal. Rptr. 3d 667, 673 (Cal. Ct. App. 2023) ("California's constitutional right to privacy places procedural and substantive limits on the [agency's] subpoena power."); *see generally Lewis*, 397 P.3d at 1021 (noting that court should consider whether "protective measures" such as protective orders can permit investigations to proceed while respecting privacy interests) .

general terms." *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (second emphasis added); *see also McLane*, 581 U.S. at 84; *accord State Water Res. Control Bd. v. Baldwin & Sons, Inc.*, 258 Cal. Rptr. 3d 425, 439 (Cal. Ct. App. 2020) ("[A] subpoena is proper even when it is designed to produce material concerning a defense that may never arise; the focus is on relevancy to the investigation, not relevancy to the issues at the hearing.") (quoting and agreeing with *NLRB v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996)).

This is why courts assessing the validity of administrative subpoenas routinely rebuff as "premature" subpoena respondents' arguments about the merits or legal contours of civil enforcement actions that agencies might file at the conclusion of an investigation.  The problem with "[j]udicial intervention into the agency process" at the investigation stage is that it "denies the agency an opportunity to correct its own mistakes and to apply its expertise."  *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 69.  At the same time, at the investigation phase, analysis of the merits of a subpoena respondent's potential defenses to a hypothetical future civil enforcement action "would be premature, as the controversy lacks, and would benefit from, a concrete factual context."  *CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL 129240, at *4 (6th Cir. Jan. 9, 2023) (during investigation phase, it was too early to assess claim that agency could not lawfully prosecute hypothetical future civil enforcement action); *accord Winter v. Cal. Med. Rev., Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1989) (at the investigation phase, an agency's preliminary finding is nonfinal, and court cannot assess claims of injury based on potential future enforcement action because they require that "a series of contingent events must occur to produce an injury").

*City and County of San Francisco v. Uber Technologies* is a case in point.  There, San Francisco subpoenaed Uber for information relevant to its concerns that the company may have been committing or facilitating traffic violations, violating minimum wage laws, and violating state law by failing to provide adequate accommodations for disabled riders. 248 Cal. Rptr. 3d at 280-81.  Uber resisted the subpoenas on the basis that San Francisco's authority to bring any enforcement action on those grounds was preempted by the California Public Utilities Commission.  *Id.* at 281.  The court found that the subpoenas related to an investigation of possible violations of law and were otherwise valid.  *Id.* at 280-81.  Turning to Uber's contentions, the court held that "we cannot reach the question

of a '[h]ypothetical conflict' between the CPUC's jurisdiction and the City's jurisdiction because that conflict may never arise." *Id.* at 281.  It went on to explain:

> [A]s the trial court correctly pointed out during oral argument, Uber is "way too early" with its contention that the administrative subpoenas are "a collateral attack on something that the [C]PUC has asserted jurisdiction over." As stated in the trial court order: "This is a pre-litigation motion to enforce administrative subpoenas, not a summary judgment motion at the close of discovery. The City need not prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas or conduct its investigation."

> We agree with the trial court's determination that Uber's preemption arguments are premature. . . . [T]he City is far from seeking a finding of liability against Uber – it is at the preliminary investigatory stage in which it seeks to determine if any violations of state or local law have occurred and, if so, whether it has jurisdiction to seek redress for any such violations. The trial court's enforcement of the administrative subpoenas in no way requires the court to adjudicate how, or whether, a CPUC rule applies.

*Id.* at 283.  Other courts assessing administrative subpoenas reach the same conclusion when faced with arguments about the merits of a hypothetical future enforcement action.  *See, e.g.*, *CBA Pharma, Inc.*, 2023 WL 129240, at *4; *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 69; *Ass'n of Am. Med. Colls.*, 217 F.3d at 781-82 (at the subpoena-enforcement stage, rejecting as premature the assertion that civil investigation may lead to civil enforcement); *Winter*, 900 F.2d at 1325; *Casey v. FTC*, 578 F.2d 793, 798 (9th Cir. 1978) (affirming district court order enforcing FTC subpoena, and refusing to "reach the issue" of whether eventual prosecution, if any, would be unconstitutional "because the mere possibility of prosecution here does not constitute a case or controversy sufficient to render the issue justiciable").

Nor is an investigating agency assured that it will succeed in a civil enforcement action simply because it has conducted an administrative investigation.  *See, e.g.*, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 390-98 (2d Cir. 2022) (dismissing as moot appeal regarding validity of administrative subpoenas because, in intervening time, state closed investigation, state brought civil enforcement action in state court, Exxon prevailed on the merits, and state determined not to appeal decision on the merits).  And, of course, in the event San Francisco chooses to file a civil enforcement action against

U.S. News challenging its business practices, U.S. News would have the right and ability to contest that action fully, including by raising any constitutional defenses it might wish to raise.

## II.   PREMATURE FEDERAL COURT ACTIONS THAT BYPASS APPLICABLE LEGAL FRAMEWORKS UNDERMINE THE SUBPOENA POWER.

The deference and narrowness that characterize the subpoena-enforcement caselaw enable two vital aspects of governmental factfinding—efficiency and flexibility—that are undermined when subpoena respondents like U.S. News bypass established state-court processes to challenge investigative subpoenas.

### A.   Government and the Public Have a Strong Interest in Efficiency and Flexibility when Conducting Civil Investigations

The case law recognizes explicitly the important governmental and public interest in efficiency.  Governments need to make decisions in a timely manner to address matters of social, political, or economic import to the communities they serve, and they should do so using as few public resources as necessary.  These public resources take several forms, chief among them money, time, attention, and human capital.  In the typical case, the government's—and the public's—interest in efficiency and prompt factfinding and decisionmaking calls for subpoena-enforcement procedures that are swift and summary in nature.  "[T]he scope of the issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the *expeditious investigation* of possible unlawful activity." *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977) (en banc)) (emphasis added). "In the ordinary course, judicial proceedings are appropriate only after the investigation has led to enforcement, because '[j]udicial supervision of agency decisions to investigate might hopelessly entangle the courts in areas that would prove to be unmanageable and would certainly throw great amounts of sand into the gears of the administrative process.'" *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 64 (internal citation omitted).

Other courts agree.  *In re EEOC*, 709 F.2d 392, 398 (5th Cir. 1983) (promptness is especially important in EEOC discrimination cases because "time is not just money. It is the welfare of those very citizens whom Congress directed the Commission to protect. We therefore think that the courts in

EEOC cases should tolerate delay at the subpoena enforcement stage only in the most unusual circumstances."); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir. 1981) (regarding "summons enforcement actions, we cannot stress too emphatically that these proceedings are intended to be summary in nature. They occur, after all, at only the investigative stage of any action against a taxpayer, and no guilt or liability on the part of the taxpayer is established. … The action should be concluded quickly, so that the investigation may advance toward the ultimate determination of civil or criminal liability, if any."), *abrogated on other grounds by Church of Scientology of California v. United States*, 506 U.S. 9 (1992); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (rejecting request to stay SEC subpoena-enforcement proceeding, in part on the ground that "the SEC must often act quickly, lest the false or incomplete statements of corporations mislead investors and infect the markets"); *Port of Seattle*, 521 F.2d at 433 ("the very backbone of an administrative agency's effectiveness in carrying out [its] congressionally mandated duties … is the *rapid exercise* of the power to investigate.") (emphasis added).[6]  The government's interest in efficient and expeditious investigations is plainly and widely recognized.

## B.    U.S. News's Premature Action Frustrates Governmental Interest in Efficiency and Flexibility

This action illustrates how ancillary proceedings outside the applicable legal framework disrupt, frustrate, and delay this process.  At this time, for instance, San Francisco has not sought to enforce its subpoenas, let alone brought a civil enforcement action.  By necessity, therefore, U.S. News's claims are based on speculation about multiple contingent future events.

To be clear, U.S. News is not without options.  To the contrary, once San Francisco issued the subpoenas on January 9, 2024, state law offered U.S. News two paths forward.  First, U.S. News could have made no response at all; nothing in California law requires U.S. News to state its objections to a subpoena at this stage. Cal. Gov't Code § 11187(a), (d).  San Francisco would have then needed to

---

[6] *See also CFPB v. Seila Law LLC*, No. 17-01081, 2017 WL 6502722, at *3 (C.D. Cal. Sept. 1, 2017) ("Crippling one investigation for years and potentially hampering an ongoing enforcement action is a grave injury not only to the CFPB, but also to the public's 'strong interest in the vigorous enforcement of consumer protection laws.'" (quoting *John Doe Co. v. CFPB*, 235 F.Supp.3d 194, 205 (D.D.C. 2017))), *aff'd*, 923 F.3d 680 (9th Cir. 2019), *vacated and remanded on other grounds*, 140 S.Ct. 2183 (2020) (holding unconstitutional but severable for-cause restriction on President's power to remove CFPB director).

petition the Superior Court to enforce the subpoenas, at which point U.S. News could ask the Superior Court to limit or invalidate the subpoenas based on whatever objection it cared to assert.  Cal. Bus. & Prof. Code § 16759(b); Cal. Gov't Code § 11187(a), (d).  Second, U.S. News could have gone on offense by serving objections to the subpoenas, meeting and conferring with San Francisco about them, and then, absent agreement, petitioned the Superior Court to quash or modify the subpoenas. Cal. Bus. & Prof. Code § 16759(d).[7]

Strikingly, U.S. News's papers omit any reference to the state law subpoena-enforcement framework that applies to its objections, let alone its two options to press those objections in state court.  Nor does it recognize that San Francisco is simply conducting an investigation, and has not brought a civil enforcement action. Instead, U.S. News contends that it *would* have state and federal constitutional defenses to the civil enforcement action that it *speculates* San Francisco will eventually bring in the future.  And it asks this court to issue an advisory ruling on those defenses, even though a series of contingencies would need to occur before its claims could be fit for judicial resolution. Precisely because San Francisco's civil *investigation* is ongoing, U.S. News's contentions about the constitutionality of any potential subsequent civil *enforcement* action are premature.

Indeed, U.S. News's action dangerously suggests that San Francisco should be foreclosed from even *asking questions* that might inform whether to pursue an enforcement action against U.S. News. For instance, U.S. News invokes standards applicable to "a restriction of free speech activity" and criteria for assessing whether "[a] law is content-based" and what distinctions that "law" makes or is "intended to regulate." Pls.' Mot. for Prelim. Inj. [ECF No. 18] at 16 (citations to cases omitted).  But a lawfully authorized investigation is not a law or a restriction of free speech activity.  And San Francisco has not initiated a civil enforcement action, so there is no concrete factual context in which courts could assess whether San Francisco has impermissibly restricted, regulated, or drawn distinctions around speech.[8]  Similarly, U.S. News claims that San Francisco cannot civilly prosecute

---

[7] There is, of course, no reason to doubt that California courts will effectively and competently apply federal constitutional law if U.S. News avails itself of either option available to it under state law.  *See, e.g.*, *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986) ("state courts are as competent as federal courts to decide federal constitutional issues").

[8] U.S. News's contentions to the contrary seem to be baseless speculation and innuendo.  *See* Pls.' Mot. for Prelim. Inj. at 9, 11,14 (expressing concern that San Francisco "had prejudged the issues at

it for false advertising because, in U.S. News's own estimation, it is not "advertising itself [or] making factual claims when it portrays itself in a favorable light." Pls.' Mot. for Prelim. Inj. at 8 n.1. Yet that assertion assumes the very fact that is under investigation. *Compare People v. Alorica Inc.*, 291 Cal. Rptr. 3d 905, 910 (Cal. Ct. App. 2022) ("The People have the authority to subpoena records from Alorica in order to determine whether Alorica . . . is a debt collector under the Rosenthal Act. It follows that Alorica cannot resist the subpoena by claiming that it is not a debt collector"). San Francisco has the right to serve a subpoena to request information to determine if U.S. News is engaged in advertising or making factual claims. *If* San Francisco pursues an enforcement action premised on the allegation that U.S. News is engaged in advertising, U.S. News will be entitled to raise its defenses in that enforcement action.

U.S. News speculates—and asks this court to speculate—about "outcomes [that] turn on contingencies which the court is ill-equipped to predict." *Ass'n of Am. Med. Colls.*, 217 F.3d at 782. The subpoenas are part of an ongoing investigation, so it is entirely possible that San Francisco's "conclusions could change with additional information." *Id.* at 781 (citing *Winter*, 900 F.2d at 1325-26). Indeed, "after reviewing information submitted by" U.S. News, San Francisco could "review [U.S. News's] arguments and decide not to" initiate a civil prosecution. *Winter*, 900 F.2d at 1325.

Beyond wasting of judicial resources, premature and unmeritorious federal lawsuits like this one threaten to undermine local and state governments' ability to use administrative subpoenas to gather relevant information and make informed decisions on a wide range of matters. Each of these lawsuits requires a subpoenaing agency to divert resources away from investigations, slows down its factfinding, and drives up the cost—in time, money, attorney hours, and otherwise—to investigate and civilly prosecute violations of the laws that protect communities whose health and welfare local and state governments exist to protect.

This very case, for instance, has caused San Francisco not to enforce its administrative subpoenas, and instead to dedicate its resources to defending against U.S. News's misdirected claims. Already, the result has been to prevent state courts from assessing the validity of administrative

the very outset of the investigation"; asserting that San Francisco "disagrees with U.S. News' hospital rankings and methodology"; and intimating, without evidence, that San Francisco's assignment of personnel indicates that it has already reached final conclusions about facts still under investigation).

subpoenas that San Francisco issued pursuant to state law and to divert at least some of San

Francisco's resources away from investigating potential violations of the laws it enforces.  Further

delay could prejudice San Francisco's efforts to gather relevant information before documents are lost

and witness memory fades.  In addition, delay means the applicable statute of limitations may cover

less and less relevant conduct if San Francisco ultimately determines to initiate a civil enforcement

proceeding.

The U.S. Supreme Court has warned more than once against permitting investigation targets to

initiate litigation for the purpose or with the effect of undermining the agency's investigative efforts.

Targets, the Court explained, must not be permitted to litigate for the purpose of "further delay[ing]

disclosure" or giving themselves the time or opportunity to "destroy or alter documents [or] intimidate

witnesses." *Jerry T. O'Brien, Inc.*, 467 U.S. at 750-51 (explaining why investigation targets need not

be notified of subpoenas issued to third parties); *see also Jerry T. O'Brien, Inc. v. SEC*, 719 F.2d 300,

300 (9th Cir. 1983) (Kennedy, J., dissenting from denial of rehearing en banc) (expressing concern

that the rule adopted by the Ninth Circuit, subsequently reversed by the Supreme Court, "threatens to

compromise government investigations by most agencies. Not only will wrongdoers be provided a

new instrument of obstruction or delay, but also employees and others subject to reprisals will be

chilled from cooperating with investigators. Under the panel decision, government agencies will find it

increasingly difficult to conduct confidential, nonpublic investigations in which actual targets are not

discovered until a number of subpoenas have been served. Agencies may instead be forced to

articulate premature conclusions about potential targets.").  Likewise, when the Court held that

taxpayers have no right to intervene to oppose subpoenas directed at their employers, it expressed

concern about targets' litigation delay tactics.  A right to intervene could, the Court said, allow

investigation targets to file lawsuits and objections designed primarily "to counter and overcome [the

subpoena respondent's] willingness, under summons, to comply and to produce records," and "would

unwarrantedly cast doubt upon and stultify the [IRS's] every investigatory move." *Donaldson*, 400

U.S. at 531, *superseded by statute*, 26 U.S.C. § 7609 (entitling taxpayer to notice of subpoena and to

intervene in order to move to quash).

Particularly when viewed in light of these warnings, it bears underscoring that U.S. News's action is not a one-off aberration, and these harms are not speculative, hyperbolic, or overblown. In 2022, the Ninth Circuit held conclusively in very similar circumstances that federal courts have no subject-matter jurisdiction to consider a "[p]re-enforcement" challenge to a state official's administrative subpoena because the mere issuance of the subpoena does not expose the recipient to "any penalties for its refusal to comply." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1176 (9th Cir. 2022); *accord Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016).

Yet despite *Twitter*, U.S. News and two other targets of state agencies' administrative subpoenas have brought pre-enforcement challenges in district courts within the Ninth Circuit, claiming that the courts have jurisdiction even without any government action to enforce the subpoenas. In one case, the plaintiff has appealed the district court's dismissal for lack of subject-matter jurisdiction; U.S. News's action and another one remain pending. *Second Amend. Found. v. Ferguson*, No. 23-1554, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024), *appeal filed*, No. 24-760 (9th Cir. filed Feb. 8, 2024); *Obria Grp. Inc. v. Ferguson*, No. 23-6093 (W.D. Wash. filed Nov. 29, 2023). Another organization recently brought a similar action in federal court in New Jersey. *See First Choice Women's Resource Ctrs., Inc. v. Platkin*, No. 23-23076, 2024 WL 150096 (D.N.J. Jan. 12, 2024) (same), *appeal filed*, No. 24-1111 (3d Cir.). These other actions, like U.S. News's, prejudice the agencies that have initiated the investigations now hung up in federal court.

## CONCLUSION

For the reasons stated above and in Defendant's filings, the Court should dismiss this action.

Dated: February 28, 2024

Respectfully submitted,

MARA W. ELLIOTT
San Diego City Attorney

By:  */s/ Mark Ankcorn*
Chief Deputy City Attorney

*Attorneys for Amicus Curiae*
*City Attorney of San Diego, California*

*Additional amici and counsel listed on next page*

1

## ADDITIONAL SIGNATORIES

2

Yibin Shen
City Attorney
3
2263 Santa Clara Avenue
Alameda, CA 94501
4
*Attorney for the City of Alameda, Calif.*

5
Ebony M. Thompson
Baltimore City Solicitor
6
100 N. Holliday Street
Baltimore, Maryland 21202
7
*Attorney for the City of Baltimore, Md.*

8
Mary B. Richardson-Lowry
Corporation Counsel
9
City of Chicago
Department of Law
10
121 North LaSalle Street, Suite 600
Chicago, Illinois 60602
11
*Attorney for the City of Chicago, Ill.*

12
Hon. Sylvia O. Hinds-Radix
Corporation Counsel
13
100 Church Street
New York, NY 10007
14
*Attorney for the City of New York, New York*

15
Barbara J. Parker
City Attorney
16
One Frank H. Ogawa Plaza, Sixth Floor
Oakland, California 94612
17
*City Attorney of Oakland, Calif.*

18
Margaret C. Daun
Corporation Counsel
19
901 N 9th St. #303
Milwaukee, Wisconsin 53233
20
*Attorney for the County of Milwaukee, Wisc.*

21
Delia Garza
County Attorney
22
P.O. Box 1748
Austin, Texas 78701
23
*Attorney for the County of Travis, Tex.*

24
Amanda M. Karras
Executive Director and General Counsel
25
51 Monroe Street, Suite 404
Rockville, Maryland 20850
26
*Attorney for the International Municipal
Lawyers Association*

27

28

Marilyn Ezzy Ashcroft
*Mayor, City of Alameda, Calif.*

Nancy Metayer Bowen
*Commissioner, City of Coral Springs, Fla.*

Andy Brown
*County Judge (equivalent to County Executive)
County of Travis, Tex.*

Peter Ceglarek
*Member and Treasurer, Board of Education,
Ferndale School District, Ferndale, Mich.*

Steven Marchese
*Director, Office of Labor Standards for the City
of Seattle, Wash.*

Veronica Pillar
*Legislator, Tompkins County Legislature,
Tompkins County, New York*

Jacqueline "Jack" Porter
*Commissioner, City of Tallahassee, Fla.*

Ginny Welsch
*Council Member, City of Nashville, Tenn.*

Robin Wilt
*Councilmember, Town Board,
Township of Brighton, New York*