1   DAVID CHIU, SBN 189542
    City Attorney
2   YVONNE R. MERÉ, SBN 173594
    Chief Deputy City Attorney
3   SARA J. EISENBERG, SBN 148137
    Chief of Complex & Affirmative Litigation
4   ALEXANDER J. HOLTZMAN, SBN 311813
    KARUN A. TILAK, SBN 323939
5   Deputy City Attorneys
    Fox Plaza
6   1390 Market Street, 6th Fl.
    San Francisco, California 94102-5408
7   Telephone:     (415) 554-3999
                   (415) 355-3308
8   Facsimile:     (415) 437-4644
    E-Mail:        Alexander. Holtzman@sfcityatty.org
9                  Karun.Tilak@sfcityatty.org

10  *Attorneys for Defendant*
    San Francisco City Attorney David Chiu

11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16  U.S. NEWS & WORLD REPORT, L.P.,           Case No. 3:24-cv-00395-WHO

17          Plaintiff,                        **DEFENDANT SAN FRANCISCO CITY
                                              ATTORNEY DAVID CHIU'S NOTICE OF
18          vs.                               MOTIONS; MOTION TO DISMISS; ANTI-
                                              SLAPP MOTION TO STRIKE STATE LAW
19  DAVID CHIU, in his Official Capacity as   CLAIMS; MEMORANDUM OF POINTS AND
    City Attorney of the City and County of   AUTHORITIES IN SUPPORT OF MOTIONS
20  San Francisco,                            TO DISMISS AND STRIKE AND IN
                                              OPPOSITION TO PRELIMINARY
21          Defendant.                        INJUNCTION MOTION**

22                                            Judge:          Hon. William H. Orrick III
                                              Place:          Courtroom 2, 17th Floor
23                                            Hearing Date:   April 10, 2024
                                              Time:           2:00 p.m.
24
                                              Trial Date:     Not Set
25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

NOTICE OF MOTIONS AND MOTIONS....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................2

    I.     Introduction...........................................................................................2

    II.    Background .............................................................................................4

         A.    Statutory Background ............................................................4

         B.    Factual Background ...............................................................5

    III.   Argument ...............................................................................................8

         A.    The Claims Asserted by USNWR Fail as a Matter of Law on Numerous Grounds...........................................................8

             1.    USNWR's Claims Are Non-Justiciable..........................9

                 a.    USNWR Cannot Assert an Actual or Imminent Harm for Purposes of Standing or Constitutional Ripeness. ...............9

                 b.    USNWR's Claims Are Prudentially Unripe. ....................13

             2.    USNWR's Claims Fail on the Merits. ...........................16

                 a.    USNWR's First Amendment Claim Fails on the Merits. ..16

                 b.    USNWR's California Reporters' Shield Law Claim Fails on the Merits. .........................................................22

             3.    USNWR's Claims Are Barred By Applicable Privileges and Immunities. ...............................................27

                 a.    USNWR's Claims Are Both Barred by the *Noerr-Pennington* Doctrine. ..........................................27

                 b.    USNWR's Reporters' Shield Law Claim Is Also Barred by California Privilege Law..............................29

         B.    USNWR's Reporters' Shield Law Claim Should Be Stricken Under California's Anti-SLAPP Law...........................30

              1.    Step 1: USNWR's Reporters' Shield Law Claim Arises from the City Attorney's Protected Speech or Activity. .............................31

                 a.    The Shield Law Claim Arises from the Issuance of Subpoenas. ..........................................................32

                 b.    The City Attorney's Issuance of Subpoenas Is Protected Activity. ..........................................................32

2.      Step 2: USNWR Will Not Prevail on Its Reporters' Shield Law
        Claim.................................................................................................38

C.      No Preliminary Injunction Should Issue.......................................................38

        1.      USNWR Has No Likelihood of Success on the Merits. .................39

        2.      USNWR Faces No Irreparable Harm from the Subpoenas. ...........41

        3.      The Balance of Equities and Public Interest Weigh Against an
                Injunction. ......................................................................................42

IV.     Conclusion ..............................................................................................43

1

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. FCE Benefit Adm'rs, Inc.*
No. 17-CV-05448-JSW, 2018 WL 11447534 (N.D. Cal. Jan. 22, 2018) ................................28

*Andersen v. Atl. Recording Corp.*
No. 07-CV-934-BR, 2009 WL 3806449 (D. Or. Nov. 12, 2009) .............................................27

*Animal Legal Defense Fund v. Wasden*
878 F.3d 1184 (9th Cir. 2018) ................................................................................................17

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..................................................................................................................9

*Ass'n of Am. Med. Colls. v. United States*
217 F.3d 770 (9th Cir. 2000) ............................................................................................14, 15

*Ass'n of Irritated Residents v. U.S. Envt'l Prot. Agency*
10 F.4th 937 (9th Cir. 2021) .....................................................................................................9

*Belen v. Ryan Seacrest Prods., LLC*
65 Cal. App. 5th 1145 (2021) ..................................................................................................36

*Belle Fourche Pipeline Co. v. United States*
751 F.2d 332 (10th Cir. 1984) ..........................................................................................13, 15

*Benavidez v. Cnty. of San Diego*
993 F.3d 1134 (9th Cir. 2021) ...................................................................................................9

*Bonni v. St. Joseph Health Sys.*
83 Cal. App. 5th 288 (2022) ....................................................................................................30

*Bradbury v. Super. Ct.*
49 Cal. App. 4th 1108 (1996) ..................................................................................................31

*Briggs v. Eden Council for Hope & Opportunity*
19 Cal. 4th 1106 (1999) ...........................................................................................................33

*Carley v. Eyster*
No. SCUKCVG1769021, 2019 WL 6267375 (Cal. Ct. App. Nov. 18, 2019) .........................34

*CBA Pharma, Inc. v. Perry*
No. 22-5358, 2023 WL 129240 (6th Cir. Jan. 9, 2023) ...........................................................15

*Chipman v. Nelson*
No. 2:11-CV-2770-GEB-EFB, 2013 WL 1007285 (E.D. Cal. Mar. 13, 2013) ........................28

*Chipman v. Nelson*
No. 2:11-CV-2770-GEB-EFB, 2013 WL 1284330 (E.D. Cal. Mar. 28, 2013) ........................28

*City & Cnty. of S.F. v. Uber Techs, Inc.*
   36 Cal. App. 5th 66 (2019) ..................................................................20

*City of Costa Mesa v. D'Alessio Invs., LLC*
   214 Cal. App. 4th 358 (2013) ........................................................33, 34

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) ...........................................................................9

*Coastal States Mktg., Inc. v. Hunt*
   694 F.2d 1358 (5th Cir. 1983) .............................................................27

*Cross v. Cooper*
   197 Cal. App. 4th 357 (2011) ..............................................................37

*Cuellar v. Joyce*
   596 F.3d 505 (9th Cir. 2010) ...............................................................40

*Dana Point Safe Harbor Collective v. Super. Ct.*
   51 Cal. 4th 1 (2010) ............................................................................5

*Davidson v. Kimberly-Clark Corp.*
   889 F.3d 956 (9th Cir. 2018) ...............................................................9

*Delaney v. Super. Ct.*
   50 Cal. 3d 785 (1990) .........................................................................25

*Drakes Bay Oyster Co. v. Jewell*
   747 F.3d 1073 (9th Cir. 2014) .............................................................38

*Dwight R. v. Christy B.*
   212 Cal. App. 4th 697 (2013) ..............................................................35

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*
   365 U.S. 127 (1961) ...........................................................................27

*Emps. Ins. of Wausau v. Granite State Ins. Co.*
   330 F.3d 1214 (9th Cir. 2003) .............................................................34

*Evers v. Cnty. of Cluster*
   745 F.2d 1196 (9th Cir. 1984) .............................................................28

*Exxon Mobil Corp. v. Schneiderman*
   316 F. Supp. 3d 679 (S.D.N.Y. 2018) ..................................................19

*Fashion Valley Mall, LLC v. NLRB*
   42 Cal. 4th 850 (2007) ............................................................16, 17, 18

*FilmOn.com Inc. v. DoubleVerify Inc.*
   7 Cal. 5th 133 (2019) ......................................................................37, 38

*First Choice Women's Res. Ctrs. Inc. v. Platkin*
   No. 23-23076 (MAS) (TJB), 2024 WL 150096 (D.N.J. Jan. 12, 2024) .......................... *passim*

*Freeman v. Lasky, Haas & Cohler*
   410 F.3d 1180 (9th Cir. 2005) ................................................................28

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*
   771 F.3d 1119 (9th Cir. 2014) ..........................................................24, 25

*Giebel v. Sylvester*
   244 F.3d 1182 (9th Cir. 2001) ..........................................................16, 17

*Geiser v. Kuhns*
   13 Cal. 5th 1238 (2022) .......................................................................36

*Goldstein v. Galvin*
   719 F.3d 16 (1st Cir. 2013) ..................................................................19

*Google, Inc. v. Hood*
   822 F.3d 212 (5th Cir. 2016) ............................................................. *passim*

*Gunn v. Drage*
   65 F.4th 1109 (9th Cir. 2023) ..............................................................31

*Hansen v. Cal. Dep't of Corrs. & Rehab.*
   171 Cal. App. 4th 1537 (2008) .............................................................35

*Herb Reed Enters. LLC v. Fla. Ent. Mgmt., Inc.*
   736 F.3d 1239 (9th Cir. 2013) .............................................................41

*Hicks v. Richard*
   39 Cal. App. 5th 1167 (2019) ..............................................................37

*Hilton v. Hallmark Cards*
   599 F.3d 894 (9th Cir. 2010) ..............................................................30

*Holt v. Noble House Hotels & Resort, Ltd*
   370 F. Supp. 3d 1158 (S.D. Cal. 2019).....................................................34

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*
   515 U.S. 557 (1995).............................................................................17

*Iloh v. Regents of Univ. of Cal.*
   94 Cal. App. 5th 947 (2023) ................................................................36

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .....................................................21

*Jacob B. v. Cnty. of Shasta*
   40 Cal. 4th 948 (2007) ........................................................................30

*Jobs, Training & Services, Inc. v. East Tex. Council*
  50 F.3d 1318 (5th Cir.1995) ....................................................................................15

*Jordan-Benel v. Universal City Studios, Inc.*
  859 F.3d 1184 (9th Cir. 2017) ............................................................................31, 32

*Kasky v. Nike Inc.*
  27 Cal. 4th 939 (2002) ......................................................................................20, 21

*Ketchum v. Moses,*
  24 Cal. 4th 1122 (2001) .........................................................................................31

*Khai v. Cnty. of Los Angeles*
  730 F. Appx. 408 (9th Cir. 2018) ...........................................................................35

*Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*
  39 Cal. 4th 192 (2006) ...........................................................................................35

*Kilgore v. Younger*
  30 Cal. 3d 770 (1982) ............................................................................................30

*KSDO v. Super. Ct.*
  136 Cal. App. 3d 375 (1982) .............................................................................23, 25

*Laird v. Tatum*
  408 U.S. 1 (1972)......................................................................................................9

*Laker v. Bd. of Trs. of Cal. State Univ.*
  32 Cal. App. 5th 745 (2019) ...................................................................................35

*Lavie v. Procter & Gamble Co.*
  105 Cal. App. 4th 496 (2003) .................................................................................21

*Lewis v. Younger*
  653 F.2d 1258 (9th Cir. 1980) ................................................................................15

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*
  No. 17-CV-00904-JST, 2018 WL 4207260 (N.D. Cal. Sept. 4, 2018) ....................25

*Lopez v. Brewer*
  680 F.3d 1068 (9th Cir. 2012) ................................................................................39

*Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*
  90 F.3d 367 (9th Cir 1996) .....................................................................................16

*Lu v. Hawaiian Gardens Casino, Inc.*
  50 Cal. 4th 592 (2010) ...........................................................................................24

*Madsen v. Women's Health Ctr., Inc.*
  512 U.S. 753 (1994)................................................................................................17

*Mallard v. Progressive Choice Ins. Co.*
    188 Cal. App. 4th 531 (2010) ........................................................................................33

*Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*
    158 Cal. App. 4th 1075 (2008) ..............................................................................3, 29, 33

*Maryland v. King*
    567 U.S. 1301 (2012)...................................................................................................42

*Matter of Search Warrant for [Redacted].com*
    248 F. Supp. 3d 970 (C.D. Cal. 2017) ..........................................................................17

*Miami Herald Publ'g Co. v. Tornillo*
    418 U.S. 241 (1974).....................................................................................................17

*Mitchell v. Super. Ct.*
    37 Cal. 3d 268 (1984) ..................................................................................................24

*Monsanto Co. v. Geertson Seed Farms*
    561 U.S. 139 (2010)........................................................................................................9

*Motown Rec. Co., L.P. v. Kovalcik*
    No. 07-CV-4702, 2009 WL 455137 (E.D. Pa. Feb. 23, 2009) .....................................27

*Muddy Waters, LLC v. Super. Ct.*
    62 Cal. App. 5th 905 (2021) .........................................................................................36

*Nat'l Rifle Ass'n of Am. v. City of Los Angeles*
    441 F. Supp. 3d 915 (C.D. Cal. 2019) ..........................................................................17

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
    434 U.S. 1345 (1977)....................................................................................................42

*New York Times Co. v. Super. Ct.*
    51 Cal. 3d 453 (1990) .......................................................................................23, 24, 25

*Nygard, Inc. v. Uusi-Kerttula*
    159 Cal. App. 4th 1027 (2008) .....................................................................................36

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*
    477 U.S. 619 (1986)......................................................................................................17

*Ojjeh v. Brown*
    43 Cal. App. 5th 1027 (2019) .......................................................................................37

*Pacaso Inc. v. City of St. Helena*
    No. 21-cv-02493-WHO, 2021 WL 2987144 (N.D. Cal. July 15, 2021) ..................29, 34

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*
    899 F.3d 1081 (9th Cir. 2018) ......................................................................................41

*People v. Persolve, LLC*
   218 Cal. App. 4th 1267 (2013) ...................................................................30

*Petroleum Expl. v. Pub. Serv. Comm'n of Ky.*
   304 U.S. 209 (1938)....................................................................................43

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
   890 F.3d 828 (9th Cir. 2018) ......................................................................38

*Rancho Publ'ns. v. Super. Ct.*
   68 Cal. App. 4th 1538 (1999) ..............................................................22, 26

*Rattlesnake Coal. v. U.S. E.P.A.*
   509 F.3d 1095 (9th Cir. 2007) ......................................................................9

*Reed v. Town of Gilbert, Ariz.*
   576 U.S. 155 (2015)....................................................................................17

*Reisman v. Caplin*
   375 U.S. 440 (1964)........................................................................... *passim*

*Religious Tech. Ctr. v. Wollersheim*
   971 F.2d 364 (9th Cir. 1992) ......................................................................22

*Resolute Forest Prods. Inc. v. Greenpeace Int'l*
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) .....................................................38

*Ribas v. Clark*
   38 Cal. 3d 355 (1985) .................................................................................30

*Rivera v. First DataBank, Inc.*
   187 Cal. App. 4th 709 (2010) .....................................................................36

*Rosenberger v. Rector & Visitors of Univ. of Va.*
   515 U.S. 819 (1995)....................................................................................17

*Royer v. Steinberg*
   90 Cal. App. 3d 490 (1979) .....................................................................3, 29

*S. Pac. Transp. Co. v. Pub. Util. Comm'n. of State of Cal.*
   716 F.2d 1285 (9th Cir. 1983) ....................................................................11

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004) ......................................................................8

*Sanghvi v. City of Claremont*
   328 F.3d 532, 543 (9th Cir. 2003) ..............................................................28

*SCI-Sacramento, Inc. v. Super. Ct.*
   54 Cal. App. 4th 654 (1997) .......................................................................23

*Scocca v. Smith*
   No. 11-CV-01318-EMC, 2012 WL 2375203 (N.D. Cal. June 22, 2012) .................................25

*Scott v. Pasadena Unified Sch. Dist.*
   306 F.3d 646 (9th Cir. 2002) ...............................................................................................13

*Seaside Civic League, Inc. v. United States Dep't of Hous. & Urb. Dev.*
   No. C-14-1823-RMW, 2014 WL 2192052 (N.D. Cal. May 23, 2014) ....................................42

*Sec. & Exch. Comm'n v. McGoff*
   647 F.2d 185 (D.C. Cir. 1981) .............................................................................................17

*Second Amend. Found. v. Ferguson*
   No. C23-1554 MJP, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024) .................................. *passim*

*Soderling v. Off. of Att'y Gen. of Cal.*
   Nos. A124196, A124931, 2010 WL 4150259 (Cal. Ct. App. Oct. 22, 2010) (unpublished) ....35

*Sosa v. DIRECTV, Inc.*
   437 F.3d 923 (9th Cir. 2006) .........................................................................................27, 28

*Stormans Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) .............................................................................................15

*Tarpley v. Keistler*
   188 F.3d 788 (7th Cir. 1999) ...............................................................................................28

*Theme Promotions, Inc. v. News Am. Mktg. FSI*
   546 F.3d 991 (9th Cir. 2008) ...............................................................................................28

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) .......................................................................................13, 15

*Thomas v. Cnty. of Los Angeles*
   978 F.2d 504 (9th Cir. 1992), *as amended* (Feb. 12, 1993).....................................................39

*Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*
   682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...............................................................................33

*Tutor-Saliba Corp. v. Herrera*
   136 Cal. App. 4th 604 (2006) ..............................................................................................30

*Twitter Inc. v. Paxton*
   56 F.4th 1170 (9th Cir. 2022) ...................................................................................... *passim*

*U.S. v. Playboy Ent. Grp.*
   529 U.S. 803 (2000).............................................................................................................17

*United Med. Labs., Inc. v. Columbia Broad. Sys., Inc.*
   404 F.2d 706 (9th Cir. 1968) ...............................................................................................36

*United States v. Blondeau*
   No. 10CR3871-LAB, 2016 WL 1072849 (S.D. Cal. Mar. 15, 2016)........................................12

*United States v. Braren*
   338 F.3d 971 (9th Cir. 2003) ..................................................................................................14

*United States v. Morton Salt Co.*
   338 U.S. 632 (1950)..................................................................................................................42

*United States v. Stringfellow*
   911 F.2d 225 (9th Cir. 1990) ..................................................................................................11

*Univ. of Med. & Dentistry of N.J. v. Corrigan*
   347 F.3d 57 (3d Cir. 2003) .....................................................................................................14

*Valley Surgical Ctr. LLC. v. Cnty. of Los Angeles*
   No. CV 13-02265 DDP (AGRx), 2016 WL 7017208 (C.D. Cal. Dec. 1, 2016) .....................30

*Vargas v. City of Salinas*
   46 Cal. 4th 1 (2009) ................................................................................................................31

*Veritext Corp. v. Bonin*
   417 F. Supp. 3d 778 (E.D. La. 2019)......................................................................................28

*Vernon v. City of Los Angeles*
   27 F.3d 1385 (9th Cir. 1994) ..................................................................................................23

*Winter v. Cal. Med. Rev., Inc.*
   900 F.2d 1322 (9th Cir. 1989) ................................................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*
   555 U.S. 7 (2008)...............................................................................................................38, 41

*Yazzie v. Hobbs*
   977 F.3d 964 (9th Cir. 2020) ..................................................................................................39

*Younger v. Harris*
   401 U.S. 37 (1971)..............................................................................................................38, 42

*Zhenhua Logistics (Hong Kong) Co. v. Metamining, Inc.*
   No. C-13-2658 EMC, 2013 WL 3360670 (N.D. Cal. July 3, 2013).......................................38

**Constitutional Provisions**
United States Constitution
   Amendment I ..........................................................................................................................27

**Federal Statutes**
42 United States Code
   § 1983 .....................................................................................................................................28

**State Statutes & Codes**

Business & Professions Code
§ 16759 ...............................................................................................................10
§ 16759 (b) ................................................................................................... *passim*
§ 16759 (c) ...........................................................................................................10
§ 16759 (d) ..........................................................................................5, 10, 42
§ 17200 ....................................................................................................2, 4, 29
§ 17203 .................................................................................................................4
§ 17204 .................................................................................................................4
§ 17508 ...............................................................................................................29

Civil Code
§ 47 (a) ..........................................................................................................9, 29, 30

Code of Civil Procedure
§ 425.16 .........................................................................................................8, 33, 36
§ 425.16 (e) ........................................................................................................32
§ 425.16 (e)(2) .............................................................................................. *passim*
§ 425.16 (e)(4) ...............................................................................................35, 38

Government Code
§ 11180 *et seq.* ...................................................................................................7, 10
§ 11181 ..........................................................................................................4, 29
§ 11183 .................................................................................................................4
§ 11187 ...............................................................................................................10
§ 11187 (d) ...........................................................................................................5
§ 11188 ..........................................................................................................5, 10

Health & Safety Code
§ 1278.5 ...............................................................................................................30

**Rules**

Federal Rule of Civil Procedure
§ 12 (b)(1) ............................................................................................................8
§ 12 (b)(6) ........................................................................................................9, 38

## NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE that on April 10, 2024 at 2:00 p.m., Defendant David Chiu in his official capacity as the City Attorney of the City and County of San Francisco ("City Attorney"), will and hereby does move this Court, located in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, for an order dismissing Plaintiff U.S. News & World Report L.P.'s ("USNWR") Complaint for Injunctive Relief and a Declaratory Judgment ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that: (A) USNWR cannot assert a concrete or imminent harm for purposes of standing or ripeness, *see, e.g.*, *Twitter Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022); (B) USNWR has failed to allege facts stating a claim for relief on its causes of action; and (C) USNWR's claims are barred by the *Noerr-Pennington* doctrine and California's privilege law.

At the same time and place, the City Attorney will and hereby does move this Court for an order striking the state law claims asserted by USNWR and awarding the City Attorney his fees and costs associated with litigating this motion, under California Code of Civil Procedure section 425.16 on the grounds that: (A) USNWR's purported cause of action under the California Reporters' Shield Law arises from the City Attorney's protected speech or conduct; (B) USNWR cannot make the required showing that it will prevail on its Reporters' Shield Law claim; and (C) to the extent USNWR has asserted a claim under California's Liberty of Speech clause, it should be stricken for the same reasons.

These Motions are based on this Notice of Motions, the following Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of Alexander J. Holtzman, the pleadings in this action, and such other matters as may be considered by the Court at the hearing.

Dated:  February 28, 2024

DAVID CHIU
City Attorney
ALEXANDER J. HOLTZMAN
KARUN A. TILAK
Deputy City Attorneys

By: */s/ Karun A. Tilak*
KARUN A. TILAK

Attorneys for Defendant
SAN FRANCISCO CITY ATTORNEY DAVID CHIU

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    Introduction**

Plaintiff U.S. News & World Report L.P. ("USNWR") advertises itself as the global authority in ranking the best hospitals in the United States.  It claims that its rankings are authoritative and reliable and should be trusted even above a physician's recommendation.  *See* Holtzman Decl. Ex. 2 ("The hospital the doctor suggested for you might be right for you—but maybe not.").  But medical experts have expressed concerns that flaws in USNWR's methodology promote skewed and inequitable healthcare recommendations for patients, raising significant concerns regarding the veracity of USNWR's claims about the quality of its rankings.  In addition, USNWR fails to disclose that it receives payments from the very hospitals it ranks, which deprives the public of key information in considering the reliability of the rankings.  These misstatements about the quality of the rankings and omissions about financial connections with the ranked hospitals potentially violate the law, including the Unfair Competition Law ("UCL"), which prohibits unfair, unlawful, and deceptive business acts or practices.  Cal. Bus. & Prof. Code § 17200.  As the City Attorney for the City and County of San Francisco, Defendant David Chiu ("City Attorney") is empowered to investigate violations of the UCL and take legal action to address wrongdoing and protect the public.  And he has a responsibility to ensure that consumers in San Francisco and California have access to truthful, accurate information, including with respect to critical healthcare choices.  Pursuant to this authority and responsibility, the City Attorney sought information from USNWR about its rankings and the payments it receives from hospitals, first through a letter and then through two administrative subpoenas.  Those subpoenas do not carry any immediate sanction for failure to comply.  Rather, California law lays out a process through which USNWR can object, after which the City Attorney can only enforce the subpoenas by seeking an order from state court.  USNWR also has the option to move to quash the subpoenas in state court.

Rather than addressing the City Attorney's reasonable concerns, meeting and conferring with the City Attorney about the information sought in the subpoenas, or even following the prescribed procedures to object to the subpoenas, USNWR apparently adopted "the best defense is a good offense" as a litigation strategy and filed a federal lawsuit a day before its subpoena response was due.

But that approach disregards the clear limitations on federal court jurisdiction under Article III of the U.S. Constitution.  It also fails to afford the appropriate deference to the process of government investigations of potential violations of law.  In its rush to court, USNWR ignored binding decisions on federal court jurisdiction and federal and state privileges, and it trampled on the City Attorney's right to speak about important public issues of patient and consumer protection and ask questions in the context of a pre-litigation investigation.  Shorn of USNWR's vague and heated rhetoric, layers of conjecture, and ill-fitting legal constructs, the Complaint's two causes of action are facially meritless.

At the outset, USNWR cannot meet the most basic requirement for federal court jurisdiction: an injury in fact.  Under the Ninth Circuit's decision in *Twitter Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), and consistent decisions from numerous other courts, USNWR cannot establish an actual or imminent injury because the City Attorney's subpoenas do not carry any automatic sanctions for failure to comply and can only be enforced through a state court proceeding where USNWR can have its objections adjudicated.  Because USNWR's claims are contingent on the hypothetical outcome of future efforts to enforce the subpoenas in state court, its claims are also prudentially unripe.

Even if jurisdiction were proper, USNWR's Complaint fails to state a claim for relief for two distinct reasons.  First, UNSWR's claims fail on the merits.  USNWR's first cause of action for viewpoint discrimination fails because the subpoenas do not prohibit or restrict any speech, and USNWR has not plausibly alleged that the City Attorney lacked a viewpoint-neutral basis for the subpoenas.  And USNWR's second cause of action is not legally cognizable because the Reporters' Shield Law is a defense to contempt, not a private right of action.  Second, USNWR's claims are barred by applicable privileges and immunities.  Both causes of action are premised on protected First Amendment conduct by the City Attorney and are therefore barred by the *Noerr-Pennington* doctrine. And USNWR's Shield Law claim is also barred by California Civil Code section 47, which "confers privileged status upon any statement made by a public official in the course of discharging his [or her] official duties."  *Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075, 1087 (2008) ("*Maranatha*") (quoting *Royer v. Steinberg*, 90 Cal. App. 3d 490, 500 (1979)).

While these defects warrant outright dismissal of the Complaint, USNWR's state law claims must also be stricken under California's anti-SLAPP statute because those claims target the City Attorney's protected speech and USNWR is unlikely to prevail on these claims.

Finally, USNWR's Preliminary Injunction Motion simply repeats the allegations in the Complaint and is accompanied by no relevant evidence.  Thus, the same deficiencies in USNWR's Complaint doom any likelihood of success on the merits of its Preliminary Injunction Motion.  Further, because the City Attorney's subpoenas are not self-enforcing and do not create an actual or imminent injury for standing purposes, they *a fortiori* cannot create an irreparable injury.  Lastly, the balance of the harms and the public interest tip sharply in the City Attorney's favor because USNWR's lawsuit interferes with a legally authorized inquiry pursuant to the City Attorney's duty to investigate potential violations of California's consumer protection laws.  Government officials and entities charged with investigating violations of the law will be knee-capped—and the public will suffer—if investigatory targets can halt investigations by hauling the government into federal court to seek an injunction rather than availing themselves of the usual and prescribed procedures for advancing and protecting their rights.  In contrast, USNWR faces no harm from having its objections to the subpoenas adjudicated in state court, as contemplated by California law.

As such, the Court should dismiss USNWR's Complaint without leave to amend, strike its California state-law claims under California's anti-SLAPP provisions, and deny its Preliminary Injunction Motion.

## II.   Background

### A.     Statutory Background

The UCL prohibits any unlawful, fraudulent, or unfair business practice, and empowers certain local officials, including the City Attorney, to civilly prosecute violations on behalf of the People of the State of California.  Cal. Bus. & Prof. Code §§ 17200, 17203, 17204.  In order to investigate suspected violations of the UCL, the City Attorney is authorized to issue document and interrogatory subpoenas based on a reasonable belief that a person or entity may have violated the UCL.  *See id.* § 16759(b); Cal. Gov. Code § 11181.  Information produced in response to such subpoenas is confidential.  Cal. Gov. Code § 11183.

If the recipient of a subpoena objects to the requests and on that basis refuses to respond, it must provide its objections to the City Attorney and meet and confer with the City Attorney in an attempt to address those objections.  Cal. Bus. & Prof. Code § 16759(d); *see also* Cal. Gov. Code § 11187(d).  The subpoena is not a court order and is not self-enforcing—i.e., the recipient faces no automatic penalties for objecting or failing to respond, and the City Attorney has no independent authority to impose sanctions.  Rather, once a recipient has objected (or has failed to respond), the City Attorney can only compel a response by filing a petition in San Francisco Superior Court.  Cal. Gov. Code § 11187(a); *see also id.* § 11187(b) (stating the requirements for a petition).  Upon the filing of the petition, the superior court must issue an order to the subpoena recipient to appear before the court and show cause why it has not complied with the subpoena.  *Id.* § 11188.  The order must be served on the subpoena recipient in the same manner as a summons in a lawsuit.  *Id.*  Alternatively, after serving objections and meeting and conferring with the City Attorney, a subpoena recipient may file a motion to quash the subpoena in the superior court.  Cal. Bus. & Prof. Code § 16759(d).

Under either scenario, the subpoena recipient can present its objections for adjudication by the superior court before it can be compelled to respond.  The City Attorney is not empowered to overrule the objections.  Rather, the statute makes clear that the "validity of the objection shall be determined exclusively in a proceeding brought . . . to compel compliance" with a subpoena.  Cal. Gov. Code § 11187(d).  If a court determines that these objections are well founded, the subpoena may not be enforced.  If the court determines the objections are not valid, it can then issue an order compelling compliance.  *Id.* § 11188.  If the recipient continues to violate a court order compelling compliance, only then may the City Attorney seek sanctions for contempt of court.  *Id.*  An order compelling compliance with an administrative subpoena is immediately appealable.  *See Dana Point Safe Harbor Collective v. Super. Ct.*, 51 Cal. 4th 1, 11 (2010) (holding that "an order compelling compliance with [legislative or administrative] subpoenas is an appealable final judgment").

### B.    Factual Background

USNWR is a privately held company that holds itself out as a global authority on hospital rankings.  Compl. ¶ 15; Holtzman Decl. Ex. 3.   USNWR publishes a variety of hospital rankings, including specialty rankings that are targeted at patients with life-threatening or rare conditions,

Compl. ¶ 21, procedure rankings that are aimed at common procedures and medical conditions, Compl. ¶ 22, a hospital "Honor Roll," hospital rankings by region, and a series of children's hospital rankings, Holtzman Decl. Ex. 4.  USNWR's website touts these rankings as "[h]ow to find the best medical care in 2024."  *Id.*  In FAQs about its hospital rankings, USNWR has stated that its rankings provide "a tool that can help . . . patients find sources of skilled inpatient care" and that "the hospital the doctor suggested for you might be right for you – but maybe not."  Holtzman Decl. Ex. 2.  For example, it has suggested that "[s]omeone in their 80s with pancreatic cancer" "would be better served by one of the hospitals" in USNWR's rankings.  *Id.*

USNWR's rankings are widely viewed.  Its website receives tens of millions of viewers every month, Compl. ¶ 15, and, according to USNWR, visitors look to these rankings "when they are most in need of expert advice and motivated to act on that advice directly on our platforms."  Holtzman Decl. Ex. 5.  USNWR's rankings are a core part of its business model.  USNWR characterizes its rankings as its "signature franchise" and describes itself as having a "diversified business model [that] engages consumers at every point in their decision-making journey and allows our corporate partners to use brand advertising, performance marketing, e-commerce, brand recognition, and thought-leadership programs to achieve their business objectives."  *Id.*  As part of this business model, USNWR earns revenues from entities it ranks, Compl. ¶ 33, including hospitals.  For example, USNWR offers hospitals various "marketing opportunities" to "[e]nhance [their] reputation and visibility to health care consumers," including by advertising on its website, licensing the "U.S. News Best Hospitals" badge, and buying access to USNWR's data.  Holtzman Decl. Ex. 6.

In contrast to USNWR's public representations about the reliability of its rankings, several medical experts have raised concerns that flaws in USNWR's data sources and methodology may undermine the reliability of its rankings and create skewed and inequitable healthcare recommendations for consumers.  Holtzman Decl. Exs. 7–16.   News articles and publications in medical journals have also expressed concerns that USNWR receives significant revenues from ranked hospitals but does not disclose this information.  *See* Holtzman Decl. Ex. 17 (noting that one of the thousands of hospitals USNWR ranks acknowledged that it paid $42,000 to use the USNWR logo for a single year in 2014); *see also id.* Exs. 18–22.

In response to these concerns, the City Attorney initiated an investigation into whether USNWR's potentially misleading representations about its hospital rankings and its failure to disclose hospital payments violate the UCL.  On June 20, 2023, the City Attorney sent a letter to USNWR asking that the company provide factual substantiation regarding certain representations about its rankings, answer specific questions about its methodology, supply information about payments received from ranked hospitals, and commit to disclosing these payments as required by Federal Trade Commission ("FTC") guidance.  Compl. Ex. A.  As the City Attorney explained in his letter, he sought this information because "medical experts have recently raised concerns that USNWR's rankings suffer from poor and opaque methodology, mislead those using the rankings, and create perverse incentives for hospitals nationwide," and as City Attorney, he had "a duty to ensure San Franciscans and Californians have access to accurate information as they make critical healthcare decisions." *Id.* at 1.  The letter did not threaten litigation, and instead asked for this information to facilitate the City Attorney's investigation.  *Id.*  On July 11, 2023, the City Attorney's Office met and conferred with counsel for USNWR regarding the requests in the letter.  Compl. ¶ 55.  On July 19, USNWR sent a response letter to the City Attorney in which it disputed the basis for the City Attorney's investigation and refused to provide any of the information sought by the City Attorney.  Compl. Ex. B.

On January 9, 2024, the City Attorney served two subpoenas on USNWR.  The first subpoena sought responses from USNWR to fourteen interrogatories.  Many of these interrogatories inquired about USNWR's commercial relationships, including with ranked hospitals.  *See* Compl. Ex. D, at Interrogatories 1–6, 14.  The remaining interrogatories included a focused list of questions about USNWR's representations and methodology.  *Id.* at Interrogatories 7–13.  The second subpoena consisted of six document requests, all of which pertained to USNWR's corporate structure, relationships with affiliated entities, and payments from hospitals.  Compl. Ex. E.  Both of the subpoenas stated that they were issued pursuant to the City Attorney's authority under California Business & Professions Code section 16759(b) and the procedures of California Government Code section 11180 *et seq.*  Compl. Exs. D, E.  The subpoenas had a response deadline of January 24, 2024. *Id.*

On January 23, 2024—the day before the deadline to respond to the subpoena—USNWR filed the present lawsuit.  That afternoon, counsel for USNWR emailed the City Attorney's Office threatening to file for a temporary restraining order unless the City Attorney's Office agreed to forbear enforcing the subpoena.  Holtzman Decl. Ex. 1.  USNWR had not asked to meet and confer, served objections to the subpoena, or otherwise communicated with the City Attorney's Office about the subpoenas in advance of filing suit and threatening a TRO.  Holtzman Decl. ¶ 7.  Out of consideration for the Court's time, the City Attorney's Office agreed not to enforce the subpoena while USNWR sought a preliminary injunction.  Holtzman Decl. ¶ 8.  USNWR filed its Preliminary Injunction Motion on January 31, 2024.

## III.   Argument

USNWR's lawsuit is ill-conceived and riddled with numerous fatal flaws.  First, USNWR's Complaint must be dismissed because, under binding Ninth Circuit precedent and consistent authority from other courts, a plaintiff launching a pre-enforcement challenge to a non-self-enforcing subpoena—as USNWR has done here—has not suffered an injury for purposes of Article III standing and such challenges are constitutionally and prudentially unripe.  Second, even if USNWR had properly invoked this Court's jurisdiction, its claims must be dismissed because USNWR has not pled legally cognizable theories or sufficient facts to state plausible claims for relief.  Third, USNWR's state law claims must be stricken under California's anti-SLAPP law, Cal. Code Civ. Proc. § 425.16, because these claims arise from the City Attorney's protected First Amendment activity and USNWR is unlikely to prevail on them.  Finally, if the Court ultimately reaches USNWR's Preliminary Injunction Motion—which merely regurgitates the Complaint and includes no relevant evidence—the court should deny the Motion because USNWR cannot establish any of the required elements for preliminary injunctive relief.

### A.      The Claims Asserted by USNWR Fail as a Matter of Law on Numerous Grounds.

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if its allegations "are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."  *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d

1095, 1102 n.1 (9th Cir. 2007).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), USNWR must allege legally cognizable theories and well-pleaded facts to state a plausible claim for relief on each theory.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018).  To be plausible, a complaint must contain sufficient well-pleaded facts to show that the plaintiff is entitled to relief; facts that only "permit the court to infer . . . the mere possibility of misconduct" are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While the court must accept well-pleaded factual allegations in the complaint as true, conclusory allegations and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion.  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021).   USNWR cannot meet these standards, and its Complaint must therefore be dismissed, because its claims are nonjusticiable, based on legal theories that are not cognizable and conclusory allegations and inferences that are not plausible, and barred by the *Noerr-Pennington* doctrine and California Civil Code section 47(a).

                    **1.**        **USNWR's Claims Are Non-Justiciable.**

                            **a.**      **USNWR Cannot Assert an Actual or Imminent Harm for Purposes of Standing or Constitutional Ripeness.**

        As the party invoking federal court jurisdiction, USNWR bears the burden of establishing standing—i.e., it must show that it has suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  Allegations of threatened injury "must be *certainly impending* to constitute injury in fact;" "allegations of *possible* future injury are not sufficient."  *Clapper*, 568 U.S. at 409 (cleaned up).  Constitutional ripeness overlaps with the injury-in-fact analysis for Article III standing.  *Ass'n of Irritated Residents v. U.S. Envt'l Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021).  To make a sufficient showing that it has suffered a First Amendment injury in the form of self-censorship of chilled speech, USNWR cannot rely on "nakedly asserting that [its] speech was chilled," but must show that any chilling effect was objectively reasonable.  *Twitter*, 56 F.4th at 1174 (citation omitted); *see also Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

Whether considered under the rubric of standing or constitutional ripeness, USNWR's claims are nonjusticiable because USNWR fails to (and cannot) allege an actual or imminent injury. USNWR makes no allegation that its speech has already been chilled in any way; instead, the sparse allegations of injury in its Complaint pertain exclusively to potential future harm if the subpoenas are enforced. *See, e.g.*, Compl. ¶¶ 11, 12, 63, 84. But contrary to USNWR's bare assertion that it faces a "Hobson's choice" between providing the requested documents and information or "bear[ing] the penalties of noncompliance," *id.* ¶ 84, USNWR is not compelled to respond and the City Attorney has no authority to unilaterally impose penalties on USNWR for refusing to respond. Rather, if USNWR objects or refuses to respond, the City Attorney would have to petition the superior court for an order compelling responses. Cal. Gov. Code §§ 11187–11188; Cal. Bus. & Prof. Code § 16759(c). Alternatively, USNWR could move to quash the subpoena after filing objections and meeting and conferring with the City Attorney. Cal. Bus. & Prof. Code § 16759(d). Either way, USNWR would have the opportunity to raise objections to the subpoena, including presumably the objections raised in its Complaint. A court would have to adjudicate those objections before USNWR could be compelled to respond or face penalties for noncompliance, and USNWR would have the opportunity to appeal any adverse state court decision to enforce the subpoenas.[1] *See* Part II.A, *supra*. While USNWR highlights the subpoenas' reference to contempt, Compl. ¶ 82, both subpoenas identify Business & Professions Code section 16759 and Government Code sections 11180 *et seq.* as the applicable statutory authority, and USNWR's experienced counsel must surely be aware of the procedures and safeguards available under those statutes before USNWR could be compelled to respond or ever face the possibility of enforcement, let alone contempt.

At this juncture, however, *none* of the statutory procedures has occurred, and the "Hobson's choice" that USNWR posits is entirely speculative, not actual or imminent. In fact, the Ninth Circuit has dismissed a pre-enforcement challenge to a subpoena for lack of subject matter jurisdiction in virtually identical circumstances—foreclosing USNWR's attempt to invoke federal court jurisdiction

---

[1] Likewise, while USNWR asserts that "[f]orcing U.S. News to respond to the Subpoenas would violate" its First Amendment rights, Compl. ¶ 12, at this juncture, USNWR is not forced to respond and can only be compelled to respond through a future court proceeding where it could raise its First Amendment objections.

here.  In *Twitter Inc. v. Paxton*, the Attorney General of Texas served Twitter with a Civil

Investigative Demand ("CID") seeking information related to Twitter's content moderation policies.

As with the subpoenas at issue here, the CID was not self-enforcing but required the Attorney General

to petition a state court for an order to compel.  56 F.4th at 1176.  And like USNWR, rather than

respond or wait for a motion to enforce the subpoena in state court, Twitter filed a federal lawsuit for

injunctive and declaratory relief alleging that the CID violated its First Amendment rights.  *Id.* at

1172–73.

The Ninth Circuit affirmed dismissal of Twitter's lawsuit and held that Twitter failed to

establish an injury in fact sufficient to satisfy Article III.  As particularly relevant here, the court

concluded that "Twitter has not suffered an Article III injury because the CID"—like the subpoenas

here—"is not self-enforcing" and could only be enforced in a state court proceeding that would protect

Twitter's rights.  *Twitter* 56 F.4th at 1176.  The court emphasized that:

> [p]re-enforcement, Twitter never faced any penalties for its refusal to
> comply with the CID.  And enforcement is no rubber stamp:  If OAG
> seeks to enforce the CID, it must serve the recipient with the petition, the
> state court can conduct hearings to determine whether to order
> enforcement, and the recipient may appeal to the Texas Supreme Court.
> So to complain about the CID in this posture is to speculate about injuries
> that have not and may never occur.  And to the extent Twitter argues that
> any actions it has taken in response to the CID create an Article III injury,
> those injuries are self-inflicted because the actions were voluntary.

*Id.* (citations omitted).  That analysis is squarely on point here:  like *Twitter*, USNWR "never faced

any penalties for its refusal to comply with the" subpoena and can advance its objections in state court

if the City Attorney petitions to enforce the subpoena, so to file a federal complaint in this posture "is

to speculate about injuries that have not and may never occur."  *Id.*; *cf.* Part II.A, *supra* (describing

enforcement process for the City Attorney's subpoenas).[2]

---

[2] It is surprising that USNWR does not mention *Twitter Inc. v. Paxton* in its Complaint or
Preliminary Injunction Motion given that it is controlling Ninth Circuit authority directly contrary to
its assertion that this Court has jurisdiction to hear its challenge to the City Attorney's non-self-
enforcing subpoenas.  *See S. Pac. Transp. Co. v. Pub. Util. Comm'n. of State of Cal.*, 716 F.2d 1285,
1291 (9th Cir. 1983) (characterizing an attorney's failure to mention controlling precedent contrary to
its assertion of jurisdiction as "a dereliction of [its] duty to the court"); *United States v. Stringfellow*,
911 F.2d 225, 226 (9th Cir. 1990) (noting that where counsel fails to cite controlling case law that
renders its position frivolous, he or she "should not be able to proceed with impunity in real or feigned
ignorance of them") (citation omitted, cleaned up); *United States v. Blondeau*, No. 10CR3871-LAB,

The *Twitter* court also found that Twitter's allegations about potential effects "if th[e] CID and investigation were allowed to proceed" were "highly speculative" and allegations that Twitter's operations were "impeded by the persistent threat that government actors" would issue CIDs were "vague and refer[red] only to a general possibility of retaliation." *Twitter*, 56 F.4th at 1175. Those statements closely parallel USNWR's equally conclusory allegations of potential future injury. *See, e.g.*, Compl. ¶ 11 ("If the City Attorney's actions are allowed to stand, any journalistic enterprise that provides analyses or opinions to the public . . . may for that reason be subject to subpoena or investigation"); *id.* ¶ 34 ("If the City Attorney's actions are permitted to stand, the overreach threatens to chill all media, not just U.S. News"); *id.* ¶ 63 ("If U.S. News were to surrender to the City Attorney's demands . . . the implications would be severe").[3]

Other courts have likewise consistently found that pre-enforcement challenges to subpoenas like those issued by the City Attorney must be dismissed for lack of standing or constitutional ripeness—even in cases involving alleged First Amendment harms. *See, e.g.*, *Google, Inc. v. Hood*, 822 F.3d 212, 225–26 (5th Cir. 2016) (finding, in case raising First Amendment challenge to administrative subpoena, that dispute was not ripe because subpoena was not self-enforcing and the plaintiff could raise its First Amendment objections if the government moved to enforce the subpoena in state court); *First Choice Women's Res. Ctrs. Inc. v. Platkin*, No. 23-23076 (MAS) (TJB), 2024 WL 150096, at *2–4 (D.N.J. Jan. 12, 2024) (dismissing pre-enforcement First Amendment challenges to state administrative subpoenas that were not self-executing); *Second Amend. Found. v. Ferguson*, No.

---

2016 WL 1072849, at *2 (S.D. Cal. Mar. 15, 2016) (citing extensive authority in support of the proposition that "[u]nder the rules of practice applicable in federal courts and the courts of virtually every state, an attorney may not knowingly fail to disclose controlling authority that is directly adverse to the position he or she advocates").

[3] In fact, USNWR's allegations of injury are even weaker than the allegations found to be inadequate in *Twitter*. There, Twitter alleged that it had suffered some *present* harm from issuance of the CID. *See, e.g.*, 56 F.4th at 1175 (alleging Twitter was "already being forced" to weigh the consequences of an investigation and that "the CID and associated investigation chill Twitter's speech"). USNWR, in contrast, makes no allegation that the issuance of the subpoenas has already chilled its speech. USNWR's sole allegation of reputational harm—that the subpoenas are "designed to cause economic and reputational harm"—is also too conclusory for standing purposes. *See Second Amend. Found. v. Ferguson*, No. C23-1554 MJP, 2024 WL 97349, at *5 (W.D. Wash. Jan. 9, 2024) (finding similar allegation to be insufficient for standing).

C23-1554 MJP, 2024 WL 97349, at *3–6 (W.D. Wash. Jan. 9, 2024) (same); *see also Reisman v. Caplin*, 375 U.S. 440, 445–50 (1964) (dismissing case involving pre-enforcement challenge to IRS summons because of available administrative and judicial remedies if summons were enforced); *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334–35 (10th Cir. 1984) (dismissing pre-enforcement challenge to federal agency subpoena and noting that *Reisman* "announced a rule strongly disfavoring any pre-enforcement review of investigative subpoenas").[4]

*Twitter* and these other authorities are indistinguishable from, and dispositive of, USNWR's case. As in those cases, USNWR's asserted injury of either complying with the subpoenas or facing penalties is too speculative for purposes of standing or constitutional ripeness because the subpoenas are not self-enforcing and may only be enforced through a future state court proceeding. USNWR's Complaint must therefore be dismissed for lack of subject matter jurisdiction.

### b.   USNWR's Claims Are Prudentially Unripe.

The contingent (and, at this point, hypothetical) outcome of any future enforcement of the subpoenas also renders USNWR's claims prudentially unripe. The prudential component of ripeness examines (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (citation omitted). The rationale for this doctrine is to "prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citation omitted). These considerations "are amplified where constitutional issues are concerned," and courts will not review cases that "rest[] upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Id.* (cleaned up). That is precisely the case here.

---

[4] The *Twitter* court distinguished *Reisman* because, in its view, "[t]he key to the holding in *Reisman* was that there had not yet been any injury," but Twitter had "alleged . . . that its [First Amendment] constitutional injury has already occurred." 56 F.4th at 1178–79. Here, however, USNWR has not alleged that it has already been harmed, only that its First Amendment rights *will* be harmed if the subpoenas are enforced. As such, although *Reisman* was not a First Amendment case and did not expressly address ripeness, its holding bears directly on USNWR's claims of potential future injury.

First, USNWR's claims are not fit for judicial review.  A claim is fit for judicial review if "the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000) (looking at the following factors: "whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms").  As numerous courts have found, lawsuits like USNWR's that seek pre-enforcement review of subpoenas and investigations are not ripe because they require judicial review of non-final actions that do not require immediate compliance and depend on factual contingencies that may never materialize.  *See, e.g., Ass'n of Am. Med. Colls.*, 217 F.3d at 781–82 (pre-enforcement challenge to government audit not ripe because "[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action" and the government's audits were "not final and their outcomes turn on contingencies which the court is ill-equipped to predict"); *Winter v. Cal. Med. Rev., Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1989) (challenge to investigation not ripe where investigator could review additional information and arguments submitted by target and determine there was no violation); *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (action to enjoin an investigation was not ripe because "an investigation is the beginning of a process that may or may not lead to an ultimate enforcement action"); *Second Amend. Found.*, 2024 WL 97349, at *6 (finding First Amendment claim relating to non-self-executing subpoenas unripe because investigation was ongoing and "[a]ny determination of whether the investigation is improper . . . relies on an incomplete factual record"); *First Choice Women's Res. Ctrs. Inc.*, 2024 WL 150096, at *4 ("[W]ere the Court to consider Plaintiff's [First Amendment] claims prior to the state court enforcing the Subpoena as written, the Court could only speculate as to whether the state court would, in fact, find the Subpoena enforceable").

Indeed, USNWR's attempt to skip available state-court procedures to challenge the subpoenas renders this dispute particularly unfit for federal court resolution because it raises serious federalism and comity concerns.  *Google*, 822 F.3d at 226 ("[C]omity should make [federal courts] less willing to intervene when there is no current consequence for resisting the subpoena and the same challenges

raised in the federal suit could be litigated in state court").  In a similar setting, the Ninth Circuit

dismissed a pre-enforcement challenge to an investigation by the California Attorney General where

the investigation target could "properly litigate [its claims] if and when the Attorney General

attempt[ed] to enforce" against the target.  *Lewis v. Younger*, 653 F.2d 1258, 1260 (9th Cir. 1980)

(Kennedy, J.).  Even if the target might ultimately prevail on its arguments, the court determined that

deferring ruling was still appropriate while the investigation was ongoing because it "would avoid

unnecessary federal interference with the proper activities of state executive officials."  *Id.*

Nor can USNWR satisfy the hardship prong, which looks at whether the action "requires an

immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties

attached to noncompliance."  *Stormans Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009).  As part

of this prong, courts also consider the hardship to the government from moving forward with the case.

*Thomas*, 220 F.3d at 1142.  USNWR faces no immediate harm from refusing to comply with the

subpoena and cannot be compelled to comply absent a future enforcement action in which a state court

could address the very objections USNWR raises here.  *See Second Amend. Found.*, 2024 WL 97349,

at *6; *see generally* Part III.A.1.a, *supra* (citing authorities for the proposition that non-self-executing

subpoenas do not create a cognizable injury).

At the same time, proceeding with the action would impede the City Attorney's ability to

conduct a legally authorized investigation and would force the City Attorney to prematurely litigate

issues that overlap with the merits of its investigation while that investigation is still ongoing.  *See,*

*e.g.*, *Ass'n of Am. Med. Colleges*, 217 F.3d at 781 (claim unripe because audits were still ongoing and

there was "open question whether the . . . audits will actually result in findings of abuse or fraud");

*Jobs, Training & Servs., Inc. v. East Tex. Council*, 50 F.3d 1318, 1324–25 (5th Cir.1995) (challenge to

ongoing investigation not ripe because "[j]udicial intervention at [the investigative] stage will deter

rather than foster effective administration of the statute"); *Belle Fourche Pipeline Co.*, 751 F.2d at 335

(denying injunctive relief as unripe because "by accepting the plaintiffs' suit before the FERC had

sought judicial enforcement of its subpoenas, the court interfered with an ongoing investigation");

*CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL 129240, *4 (6th Cir. Jan. 9, 2023) (dismissing

complaint against state investigation and subpoena because the agency had "taken no enforcement

action and is merely investigating alleged fraud" and legal analysis of plaintiff's claims "would be premature"). This Court should similarly decline USNWR's attempt to prematurely adjudicate hypothetical claims premised on a potential future state-court enforcement action.

In sum, USNWR's Complaint should be dismissed in its entirety for lack of jurisdiction.

### 2. USNWR's Claims Fail on the Merits.

In addition to being non-justiciable, USNWR's claims also fail on the merits and should be dismissed for failure to state a claim.

### a. USNWR's First Amendment Claim Fails on the Merits.

In its first cause of action, USNWR alleges that the City Attorney's subpoenas constitute "content- and viewpoint-based" discrimination in violation of the First Amendment of the U.S. Constitution and the Liberty & Speech Clause of the California Constitution. Compl. ¶ 82; *see id.* ¶¶ 72–84.[5] To state a plausible claim for relief under this theory, USNWR must, as a threshold matter, show that the City Attorney's subpoenas prohibit or restrict speech. *See Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) ("Content discrimination occurs when the government *chooses* the subjects that may be discussed, while viewpoint discrimination occurs when the government *prohibits* speech by particular speakers, thereby suppressing a particular view about a subject") (cleaned up, emphasis added); *Fashion Valley Mall, LLC v. NLRB*, 42 Cal. 4th 850, 865 (2007) (articulating tests of content and viewpoint-based "*restriction* of free speech activity") (emphasis added).

USNWR's claim falters right out of the gate because the City Attorney's subpoenas do not restrict or prohibit *any* speech by USNWR. As discussed at length above, USNWR is not compelled to respond to the subpoenas or alter its speech because of the subpoenas, which merely seek information and records, carry no automatic sanction for non-compliance, and can only be enforced through a state court proceeding where USNWR could raise its First Amendment concerns. *See* Parts

---

[5] The title of USNWR's first cause of action only references the "First Amendment," and the statutory bases listed are federal statutes, including 42 U.S.C. § 1983. Yet in the body of the cause of action, USNWR also makes passing reference to the Liberty & Speech Clause of the California Constitution. Compl. ¶¶ 78–79. Violations of state law, including state constitutions, are not cognizable under § 1983, *Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir 1996), so to the extent USNWR's § 1983 claim is premised on the California Constitution, Compl. ¶ 79, it must be dismissed.

II.A, III.A.1, *supra*. Indeed, as courts have repeatedly found, merely serving a non-self-enforcing subpoena is insufficient to create a First Amendment harm. *Twitter, Inc.*, 56 F.4th at 1176; *Google, Inc.*, 822 F.3d at 228; *Second Amend. Found.*, 2024 WL 97349, at *3–6; *First Choice Women's Res. Ctrs., Inc.*, 2024 WL 150096, at *3–4; *see also Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986) (state civil rights commission did not violate First Amendment rights "by merely investigating the circumstances" of a potential legal violation); *Sec. & Exch. Comm'n v. McGoff*, 647 F.2d 185, 190 (D.C. Cir. 1981) (SEC subpoena did not violate First Amendment because the federal securities laws the SEC invoked were "nondiscriminatory" and "impose[d] no direct regulation on the content, time, place, or manner of expression").[6] USNWR's viewpoint discrimination claim is particularly misplaced where all of the document requests and a majority of the interrogatories in the subpoenas relate to USNWR's commercial relationships with hospitals and other entities—which do not constitute speech at all.

Even if USNWR had been able to identify an actual restriction on its speech (there is none), its claim would still fail. To prevail on a viewpoint discrimination claim, USNWR must plausibly allege that the "specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Fashion Valley Mall, LLC*, 42 Cal. 4th at 867 (articulating similar test under California Constitution). By contrast, if the government action is motivated by a purpose other than the content of the message, then it has not engaged in viewpoint discrimination. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994). The fact that government action "covered people with a particular viewpoint does

---

[6] None of the cases that USNWR cites bears any similarity to the subpoenas at issue here. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), *U.S. v. Playboy Ent. Grp.*, 529 U.S. 803 (2000), *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974), *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018), and *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915 (C.D. Cal. 2019), all involved challenges to statutes or ordinances explicitly prohibiting certain speech or conduct or regulating where it could take place. *Fashion Valley Mall*, 42 Cal. 4th 850 (2007) similarly involved a challenge to whether a mall could enforce a rule prohibiting persons from urging customers to boycott a store. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995) was a challenge to the exclusion of an LGBT group from a parade. *Giebel v. Sylvester*, 244 F.3d 1182 (9th Cir. 2001) involved the removal of handbills from a notice board at a state university. And *Matter of Search Warrant for [Redacted].com*, 248 F. Supp. 3d 970 (C.D. Cal. 2017), involved a challenge to a provision of a warrant prohibiting the recipient from notifying anyone of the existence of the warrant.

not itself render the injunction content or viewpoint based." *Id.* The test for viewpoint discrimination does "*not* require literal or absolute content neutrality, but instead requires only that the regulation be justified by legitimate concerns that are unrelated to any disagreement with the message conveyed by the speech." *Fashion Valley Mall, LLC*, 42 Cal. 4th at 867 (cleaned up).

Here, USNWR has not plausibly alleged that the subpoenas were based on disagreements with USNWR's specific viewpoint, rather than legitimate consumer protection concerns. As the City Attorney's June 2023 letter explained, numerous articles in reputable medical journals have critiqued USNWR's hospital rankings and its receipt of payments from hospitals, raising concerns that USNWR's marketing representations about its rankings may be misleading to patients and consumers. Compl. Ex. A at 1; *see also id.* at 7 (citing articles). While USNWR cites several articles that it claims support its rankings methodology, *see* Compl. ¶¶ 35–39, the City Attorney has already explained to USNWR why these articles raised many of the same concerns regarding the reliability of the rankings and hospital payments and, in fact, further supported the City Attorney's investigation into USNWR's representations. *See* Compl. Ex. C. The City Attorney's correspondence clearly articulates the reasonable, viewpoint neutral bases for his investigation and issuance of subpoenas to USNWR.

In an effort to deflect the legitimate concerns raised in the City Attorney's letters as the basis for his investigation, USNWR points to the City Attorney's public statements about the investigation on social media. But those statements only underscore the same non-viewpoint-based consumer protection justifications reflected in the City Attorney's correspondence. For example, USNWR quotes June 20, 2023 tweets from the City Attorney and from the City Attorney's Office. As those tweets make clear, the City Attorney was concerned that "[c]onsumers use these rankings to make consequential healthcare decisions" but, based on "scrutiny" (from the sources identified in the City Attorney's letter), the rankings "appear[ed]" to be biased and "may" be affecting the healthcare system. Compl. ¶¶ 53, 54. USNWR also points to a press release that expounds on the City Attorney's concern that U.S. News "markets itself as an expert on ranking hospitals" and its "rankings affect many people's healthcare decisions," yet its decisions "have come under scrutiny from medical experts for imprecise methodology and bias" and it received "revenue from hospitals it ranks that it does not disclose." *See* Compl. ¶ 54 n.32 (linking to press release). These statements further

demonstrate that the subpoenas and investigation are grounded in the City Attorney's efforts to protect consumers and investigate violations of the UCL, not a personal disagreement with USNWR's rankings.

Courts have rejected similar efforts to weaponize elected officials' public statements about an investigation to create inferences of improper intent. *See, e.g.*, *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 706–08 (S.D.N.Y. 2018) (public statements by attorneys general about holding Exxon liable for misleading the public only showed that they believed Exxon acted illegally and did not support an inference that they prejudged the investigation and targeted Exxon because of its views); *see also Goldstein v. Galvin*, 719 F.3d 16, 29–30 (1st Cir. 2013) (government regulator's public announcement of enforcement action against plaintiff on website was not evidence of retaliation against plaintiff's speech). As in those cases, the City Attorney's statements regarding his belief that USNWR may be violating the law and that an investigation is warranted do not support a plausible inference that the investigation was prejudged or based on an illegitimate purpose.

USNWR also attempts to cast aspersions on the City Attorney's motivations by arguing that he was improperly motivated by the "personal agenda" of the dean of Yale Law School rather than any genuine governmental interest. Compl. ¶ 64. This scurrilous assertion relies on implausible conjecture. In sum and substance, USNWR alleges that (1) the City Attorney's Office and Yale Law School collaborate through the San Francisco Affirmative Litigation Project ("SFALP"), which provides law students the opportunity to work on the City Attorney's Office's consumer protection and public interest litigation, Compl. ¶¶ 65–68; (2) City Attorney's Office staff involved with SFALP have also participated in the USNWR investigation, *id.* ¶ 65; (3) Yale Law School Dean Heather Gerken founded and oversees SFALP, *id.* ¶¶ 65–66; and (4) Dean Gerken has been critical of USNWR's law school rankings, *id.* ¶ 69. But to get from these allegations to the claim that the City Attorney's subpoenas "adopt[] Dean Gerken's preferred viewpoint," Compl. ¶ 71, requires massive logical leaps that USNWR does not and cannot make. These allegations are unsupported and insufficient to defeat the City Attorney's motion to dismiss. *See, e.g.*, *Exxon*, 316. F. Supp. 3d at 709 (alleged meetings between attorneys general and activists insufficient to show that their subpoenas were motivated by improper purpose where the complaint contained no information about the content

of the meetings, and even if court could speculate that the activists advocated for investigation without good faith belief, "another logical leap is required to infer the [attorneys general] agreed to do so without having a good faith belief that their investigations of Exxon were justified").

Finally, USNWR attempts to litigate the merits of whether it violated the UCL, including arguing that its rankings are reliable, that its statements regarding its rankings are not commercial advertisements, and that the FTC regulations cited in the City Attorney's letters are inapplicable to USNWR.  Compl. ¶¶ 20–39, 44–52.  These are red herrings.  These arguments go to USNWR's potential ultimate liability if the City Attorney ultimately decides to sue USNWR for violating the UCL, but are entirely irrelevant to whether the City Attorney has a viewpoint neutral basis to investigate the company.  As California courts have made clear, the City "need not prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas or conduct its investigation."  *City & Cnty. of S.F. v. Uber Techs, Inc.*, 36 Cal. App. 5th 66, 78 (2019) (rejecting preemption challenge to subpoena as premature because "the City is far from seeking a finding of liability against Uber — it is at the preliminary investigatory stage in which it seeks to determine if any violations of state or local law have occurred").  Nonetheless, we will briefly address them here to demonstrate that, in addition to being irrelevant, these arguments are incorrect.

With respect to the articles that USNWR identifies to argue the merits of its methodology, the City Attorney has already explained to USNWR how those same articles underscore the City Attorney's concerns about USNWR's representations and receipt of hospital payments.  *Compare* Compl. ¶¶ 35–39, *with id.* Ex. C.  And many other articles and experts have expressed serious concerns and doubts about the reliability of the rankings.  *See, e.g.*, Holtzman Decl. Exs. 7–16.

With respect to its argument that the kinds of statements identified by the City Attorney are not commercial for purposes of California's consumer protection law, Compl. ¶¶ 43–45, USNWR's statements make clear that it is engaged in advertising subject to California's consumer protection laws.  USNWR is a "speaker... engaged in commerce," *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 960 (2002), because it "accepts advertising and other revenues from entities [e.g., hospitals] that may be ranked," Compl. ¶ 33.  Its claims about the authoritativeness and quality of its rankings are aimed at inducing patient reliance on the rankings, which in turn likely influences hospitals to advertise with

USNWR and license its badges.  *See Kasky*, 27 Cal. 4th at 960 (intended audience for commercial

speech includes persons "likely to repeat the message to or otherwise influence actual or potential

buyers or customers"); *cf.* Holtzman Decl. Ex. 5 (referring to rankings as USNWR's "signature

franchise" and highlighting that its business model "engages consumers at every point . . . and allows

our corporate partners . . . to achieve their business objectives"); *id.* Ex. 6 (describing "marketing

opportunities" for hospitals to "[e]nhance [their] reputation and visibility to health care consumers").

        USNWR's marketing statements are also actionable, particularly where USNWR has

specialized knowledge of its methodology and its statements are intended to influence consumers.

*See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 295

F. Supp. 3d 927, 1006 (N.D. Cal. 2018) ("[A]dvertising statements placed in an ad knowing or

intending that they are of the type that will affect the consumer's judgment, are not puffery, but rather

constitute actionable representations"); *cf.* Compl. ¶ 43, Ex. A (identifying some of USNWR's

marketing statements); Holtzman Decl. Ex. 5 (USNWR's acknowledgment that consumers look to its

"signature franchise" rankings "when they are most in need of expert advice and motivated to act on

that advice directly on our platforms," which allows "corporate partners" to use advertising and other

marketing "to achieve their business objectives").

        Lastly, USNWR devotes several paragraphs to the applicability of FTC endorsement

guidelines to its receipt of payments from hospitals.  Compl. ¶¶ 46–52.  USNWR's commercial

relationships with hospitals do not implicate USNWR's First Amendment speech, and the City

Attorney's inquiries into payments from hospitals—which constitute the majority of requests in the

two subpoenas—are therefore wholly irrelevant to a claim of viewpoint discrimination.  In any event,

California courts have explained that the FTC's guidance interpreting the Federal Trade Commission

Act "has always been viewed as more than ordinarily persuasive in [their] construction of the breadth

of the protection afforded consumers under the UCL," *Lavie v. Procter & Gamble Co.,* 105

Cal. App. 4th 496, 507 (2003) (cleaned up), and the FTC's guidance regarding disclosure of

endorsements includes an example of when disclosure is required that is very similar to USNWR's

business model, *see* 16 C.F.R. § 255.4(b)(3) (providing example of a headphone review website and

noting that if "the review website does not take payments for higher rankings, but receives payments

from some of the headphone manufacturers, such as for affiliate link referrals, it should clearly and conspicuously disclose that it receives such payments"); *cf.* Holtzman Decl. Ex. 6 (describing various "marketing opportunities" for hospitals).

Despite USNWR's insinuations and premature legal arguments, its Complaint does not give rise to any reasonable inference that the City Attorney's subpoenas restrict any speech, or that they were motivated by anything other than his responsibility to protect San Francisco and California consumers and his belief that USNWR may be violating the UCL. As such, USNWR's first cause of action fails as a matter of law.[7]

### b. USNWR's California Reporters' Shield Law Claim Fails on the Merits.

Like its First Amendment claim, USNWR's purported Shield Law claim falls short on the merits in multiple independent respects. USNWR must "prove [that] all the requirements of the shield law have been met." *Rancho Publ'ns. v. Super. Ct.*, 68 Cal. App. 4th 1538, 1546 (1999) (citation omitted). As a threshold matter, it cannot do so because the Shield Law provides only a limited defense against contempt, not an affirmative cause of action to evade responding to subpoenas. And, even if USNWR had a contempt judgment against it, the Shield Law would not protect USNWR from answering questions about the money it receives from hospitals it ranks because the company's business transactions with hospitals it ranks fall outside the ambit of the Shield Law. Nor does the Shield Law prevent a response to the remaining subpoena questions about support for USNWR's commercial representations.

### i. The Shield Law Only Provides a Defense Against Contempt, Which USNWR Does Not Face.

USNWR's Shield Law arguments fail on the merits at the outset because a contempt judgment is a "prerequisite" for invoking the Shield Law's protection. *New York Times Co. v. Super. Ct.*, 51

---

[7] Because USNWR's sole federal cause of action must be dismissed, the Court may decline to exercise supplemental jurisdiction over USNWR's state-law cause of action. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992) ("[W]hen federal claims are dismissed before trial . . . pendent state claims should also be dismissed."); *see* Compl. ¶ 17 (alleging the presence of federal questions as the basis for federal court jurisdiction).

Cal. 3d 453, 460 (1990); *see also Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994) ("a federal court interpreting state law is bound by the decisions of the highest state court").  That is, the Shield Law "provides only an immunity *from contempt*."  *New York Times*, 51 Cal. 3d at 459 (emphasis in original).  USNWR describes the subpoenas themselves as "violations" of the Shield Law.  Compl. ¶ 90.  But USNWR has "nothing from which to seek relief" because it has not "been adjudged in contempt."  *New York Times*, 51 Cal. 3d at 459; *see KSDO v. Super. Ct.*, 136 Cal. App. 3d 375, 384 (1982) (holding the "petitioner's argument that the California shield law prohibits a discovery order requiring disclosure of defendant['s] notes is without merit").

The Shield Law is thus irrelevant and cannot serve as a basis for relief.  *See New York Times*, 51 Cal. 3d at 460 ("The Court of Appeal . . . erred by granting relief before the newsperson was held in contempt").[8]  USNWR was far from facing any hypothetical contempt judgment when it filed this lawsuit, and it is no closer now.  Again, USNWR filed its Complaint the day before its response to the subpoenas was due.  *See* Compl. header (reflecting date of filing); Exs. D, E (subpoenas reflecting response date of January 24, 2024).  Under the applicable California law procedures, USNWR faced no automatic sanction for failing to comply with the subpoenas—let alone a finding of contempt.  Rather, USNWR would only face contempt if the City Attorney filed a petition to enforce the subpoenas in state court, the court overruled USNWR's opposition to the petition and compelled it to respond, USNWR decided not to appeal that decision, and then continued not to comply with a court order.  *See* Part II.A, *supra*.  No event in this chain has yet played out.  Like the defendant in *New York Times*, USNWR seeks to "avoid the responsibility" of choosing whether to comply with the subpoenas.  51 Cal. 3d at 460.  But under California law, USNWR cannot dodge this task.  See *id.* at 459–60.  Allowing it to do so by granting "relief before a judgment of contempt would violate the unambiguous language of the shield law."  *Id.* at 459.

---

[8] The Court need not and should not reach the merits of USNWR's invocation of the Shield Law in the event of a hypothetical contempt judgment.  *See SCI-Sacramento, Inc. v. Super. Ct.*, 54 Cal. App. 4th 654, 661 (1997) ("we need not reach the substantive issues, because . . . there is no shield law question ripe for review").  Courts that have occasionally reached the merits of a premature Shield Law defense did so "without suggesting any exception to the rule that a judgment of contempt is a prerequisite" for relief.  *New York Times*, 51 Cal. 3d at 460–61.

USNWR entirely fails to engage with this limitation.  Instead, it quotes out of context a portion of a sentence from *New York Times*—that the Shield Law "'grants [nonparty] witnesses *virtually absolute protection* against compelled disclosure.'"  51 Cal. 3d at 461 (quoting *Mitchell v. Super. Ct.*, 37 Cal. 3d 268, 274 (1984)); see Compl. ¶ 88.  But that statement offers USNWR no support given the clear language in *New York Times* about the limited protection against contempt provided by the Shield Law.  *See id.* at 463 ("It necessarily follows from that conclusion that other sanctions . . . are not precluded.")  Meanwhile, USNWR's block quotation from the U.S. Department of Justice's policy guidelines, Compl. ¶ 89, of course does not reflect an interpretation of California's Shield Law.  And USNWR makes no attempt to explain how the policy guidelines are otherwise legally enforceable or pertinent to its claims.

### ii.     The Shield Law Does Not Create a Freestanding Cause of Action.

USNWR tries to stretch the Shield Law even further than the unsuccessful defendant raising the immunity in *New York Times* by asserting an affirmative Shield Law cause of action as a *plaintiff* seeking injunctive and declaratory relief excusing it from responding at all to the City Attorney's subpoenas.  Compl. ¶¶ 85–90.  This attempt fails because the Shield Law does not create a cause of action.  Again, the Shield Law "by its own terms provides only an *immunity from contempt*."  *New York Times*, 51 Cal. 3d at 456 (emphasis added).  As the name reflects, it is a "shield," not a sword.  The "Legislature or voters could have worded [the] shield law more broadly if they had intended to provide more."  *Id.* at 459 n.5.

USNWR cannot imbue the Shield Law with an implied cause of action to excuse compliance with a subpoena.  USNWR's ability to sue under Evidence Code section 1070 "depends on 'whether the Legislature has "manifested an intent to create such a private cause of action" under the statute.'"  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1132 (9th Cir. 2014) (quoting *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010)).  That intent is "revealed through the language of the statute and its legislative history."  *Id.*  Neither the language nor the legislative history Evidence Code section 1070 manifest any such intent.

The statutory Shield Law's language does not indicate any intent to create a right of action. *See Fresno Motors,* 771 F.3d at 1132–33 ("statutes . . . 'indicate' an intent to create a private cause of action . . . when [they] expressly state[] 'that a person has or is liable for a cause of action for a particular violation'") (quoting *Lu,* 50 Cal. 4th at 597).  The legislative history likewise reflects no intent to create an affirmative right of action rather than a defense against a contempt judgment.  *See KSDO,* 136 Cal. App. 3d at 379–84.  To the contrary, the Legislature "clearly rejected" the proposition that it afforded "a carte blanche" privilege "to refuse to disclose" information.  *Id.* at 380 (citation omitted).  Therefore, no statutory Shield Law cause of action exists.  *See, e.g.*, *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2018 WL 4207260, at *6 (N.D. Cal. Sept. 4, 2018) (granting with prejudice a motion for judgment on the pleadings for lack of a private cause of action under state law); *Scocca v. Smith*, No. 11-CV-01318-EMC, 2012 WL 2375203, at *10 (N.D. Cal. June 22, 2012) (dismissing a plaintiff's claim without leave to amend for lack of a private cause of action under state law).

The constitutional Shield Law provision—which is "virtually identical" to Evidence Code section 1070—similarly does not create an affirmative cause of action.  Inferring such a cause of action would be entirely inconsistent with decades of consistent authority from the California Supreme Court and Courts of Appeal that this provision, too, creates only a limited *defense* to contempt.  *See New York Times*, 51 Cal. 3d at 458; *Delaney v. Super. Ct.*, 50 Cal. 3d 785, 797 n.6 (1990); *KSDO*, 136 Cal. App. 3d at 381.

### iii. The Shield Law Does Not Plausibly Extend to Payments USNWR Receives from Hospitals.

On top of the many other deficiencies with its purported Shield Law claim, USNWR cannot show that the City Attorney's subpoena requests would conflict with the Shield Law even if the law created a claim that was ripe because USNWR was subject to a contempt judgment.  Again, most of the requests seek information about USNWR's corporate structure and business transactions with third parties including the hospitals it ranks.  *See* Compl. Ex. D (Interrogatories 1–6, 14); *id.* Ex. E (all Requests).  For instance, Document Request No. 2 asks for agreements between USNWR and BrandConnex, LLC, the company that appears to administer USNWR's licensing of Best Hospitals

badges.  *See id.* Ex. E (Request No. 2); Holtzman Decl. Ex. 6.  These questions categorically fall outside of the scope of the Shield Law because they relate to the company's business rather than its asserted journalistic activities.  For example, *Rancho Publications* held that information about a newspaper's "advertorial" customers was not covered by the Shield Law.  *Rancho Publ'ns.*, 68 Cal. App. 4th at 1546.  The decision recognized the "fundamental distinction between the reporting and editorial functions of a newspaper and the buying, selling and placing of commercial advertisements" which is not protected by the Shield Law.  *Id.* at 1545.  Like the advertorials in *Rancho Publications*, the payments USNWR solicits from hospitals are clearly unprotected.  Moreover, USNWR insists that payments from hospitals have no effect on its hospital rankings as part of arguing that it does not need to disclose those payments to the public.  Compl. ¶ 52.  USNWR's own averments that the payments it receives do not impact its rankings are inconsistent with its argument that the City Attorney's inquiries into USNWR's receipt of payments from hospitals and commercial relationships with affiliated entities implicate USNWR's alleged journalistic activities.  *See Rancho Publ'ns.*, 68 Cal. App. 5th at 1546.

### iv.    The Inquiries Related to USNWR's Advertising Representations Do Not Demand Information Protected by the Reporters' Shield Law.

The remaining inquiries in the subpoenas—which relate to the support for USNWR's representations about its hospital rankings—do not require disclosure of information protected by the Shield Law either.  *See* Compl. Ex. D (Interrogatories 7–13).  Each of these questions allows USNWR to disclose just the information it intends to use to justify its commercial representations without providing information it believes falls within the ambit of the Shield Law.  That information will—like the other aspects of the subpoena responses—allow the City Attorney to evaluate the potential violations of law that are the basis for his investigation.  For example, Interrogatory Specification No. 7 asks for "USNWR's basis for stating that its Best Hospitals rankings are '[h]ow to find the best medical care in 2023.'"  Even assuming USNWR has some information relevant to this request protected by the Shield Law, it can prepare a response that does not include that information.

### 3.     USNWR's Claims Are Barred By Applicable Privileges and Immunities.

Even if USNWR's claims were justiciable and sufficiently pled, they must still be dismissed under the *Noerr-Pennington* doctrine and/or California privilege law.

### a.     USNWR's Claims Are Both Barred by the *Noerr-Pennington* Doctrine.

USNWR gets the law exactly backwards when it claims that the City Attorney's prelitigation activities violated USNWR's constitutional rights.  To the contrary, it is the relief USNWR seeks—an order enjoining the City Attorney's investigatory subpoenas—that would violate the First Amendment.

The City Attorney, like all citizens, has the right to "petition the Government for a redress of grievances" under the First Amendment.  U.S. Const. amend. I.  The right to petition includes the "right of access to the courts."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  This encompasses the right to engage in "conduct incidental to [and preceding] the prosecution of" a lawsuit, such as investigating and issuing investigatory subpoenas.  *Id.* at 935, 939 (internal quotations omitted); *see also Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("The litigator should not be protected only when he strikes without warning."); *Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2009 WL 3806449, at *9 (D. Or. Nov. 12, 2009) (holding prelitigation letters and investigatory subpoenas issued by record company protected by *Noerr-Pennington*); *Motown Rec. Co., L.P. v. Kovalcik*, CIV. No. 07-CV-4702, 2009 WL 455137, at *4 (E.D. Pa. Feb. 23, 2009) (concluding counterclaims for abuse of process for attempts to subpoena information barred by *Noerr-Pennington*).

The *Noerr-Pennington* doctrine protects the right to petition by ensuring that those who petition the government for redress "are generally immune from statutory liability for their petitioning conduct."  *Sosa*, 437 F.3d at 929.  The doctrine establishes a rule of statutory construction whereby courts must "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise."  *Id.* at 931.  Courts will not "lightly impute to Congress an intent to invade . . . freedoms" protected by the right to petition.  *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).  Thus, if the conduct at issue "could fairly fall within the scope of the Petition Clause and a plausible construction of the

applicable statute is available that avoids the burden, [a court] must give the statute the reading that does not impinge on the right of petition." *Sosa*, 437 F.3d at 932.

The *Noerr-Pennington* doctrine thus requires this Court to interpret 42 U.S.C. § 1983 and California's Shield Law in a way that does not burden the City Attorney's right to petition. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (holding the *Noerr-Pennington* doctrine applies equally to state law claims); *Sosa*, 437 F.3d at 932 n.6 (*Noerr-Pennington* guides interpretation of statutes such as § 1983); *Sanghvi v. City of Claremont*, 328 F.3d 532, 543 (9th Cir. 2003) (city officials' filing of lawsuit against plaintiff protected by *Noerr-Pennington*); *Evers v. Cnty. of Cluster*, 745 F.2d 1196, 1204 (9th Cir. 1984); *Tarpley v. Keistler*, 188 F.3d 788, 794–96 (7th Cir. 1999). The City Attorney's investigation of USNWR's potentially unlawful and deceptive practices—including issuing subpoenas—is pre-litigation conduct that "fairly fall[s] within the scope of the Petition Clause," and is entitled to *Noerr-Pennington* immunity. *Sosa*, 437 F.3d at 932; *see Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) ("Discovery, like settlement talks, is 'conduct incidental to' a petition"); *Acosta v. FCE Benefit Adm'rs, Inc.*, No. 17-CV-05448-JSW, 2018 WL 11447534, at *4 (N.D. Cal. Jan. 22, 2018) (holding "propounding discovery subpoenas" was "litigation conduct" that "fits squarely within the heartland of the *Noerr-Pennington* doctrine's protections"); *Chipman v. Nelson*, No. 2:11-CV-2770-GEB-EFB, 2013 WL 1007285, at *13 n.14 (E.D. Cal. Mar. 13, 2013) ("the doctrine extends to filing a subpoena"), *report and recommendation adopted*, 2013 WL 1284330 (E.D. Cal. Mar. 28, 2013); *see also Veritext Corp. v. Bonin*, 417 F. Supp. 3d 778, 788 (E.D. La. 2019) (holding a group's efforts to encourage a regulatory board to issue administrative subpoenas to its competitor protected by *Noerr-Pennington*).

*Noerr-Pennington* therefore requires this Court to reject USNWR's claim that the City Attorney violated federal or state law by engaging in pre-litigation conduct. *Sosa*, 437 F.3d at 929, 935, 939. This is true even though USNWR claims the City Attorney's petitioning conduct violated its First Amendment rights. Even if USNWR's claims had some merit (which, as discussed above, they do not), a plaintiff may not be accorded a remedy that violates the defendant's right to petition. *See Tarpley*, 188 F.3d at 796. "The machinery of the courts may not be invoked to protect one First Amendment right at the expense of the other." *Id.* at 796 n. 7.

**b.    USNWR's Reporters' Shield Law Claim Is Also Barred by California Privilege Law.**

While USNWR cannot bring an affirmative claim under the Reporters' Shield Law for the reasons stated in Part III.A.2.b, even if it could, any such claim would be foreclosed by California Civil Code section 47(a).  Section 47(a) "confers privileged status upon any statement made by a public official in the course of discharging his [or her] official duties."  *Maranatha*, 158 Cal. App. 4th at 1087 (quoting *Royer*, 90 Cal. App. 3d at 500).  The privilege "protects any statement by a public official, so long as it is made (a) while exercising policy-making functions, and (b) within the scope of his [or her] official duties.'"  *Id.* (quoting *Royer*, 90 Cal. App. 3d at 501).  The City Attorney's conduct here falls squarely within this protection.

The City Attorney clearly exercised his policy-making functions in investigating USNWR's failure to disclose payments it receives from hospitals and apparent misstatements about the authoritativeness and quality of its rankings, including in issuing subpoenas to the company.  *See, e.g.*, Compl. Ex. A (June 20, 2023 letter describing concerns with USNWR's business practices leading to policy decision to investigate); *id.* Ex. C (describing bases for the City Attorney's issuance of subpoenas).  And the City Attorney has undertaken his investigation of USNWR's business practices as part of his official duties as defined by California law.  *See* Cal. Bus. & Prof. Code §§ 16759(b), 17200, 17508; Cal. Gov't Code § 11181; *see also* Compl. Exs. A, D, E (identifying statutory bases for the City Attorney's request for substantiation and subpoena requests).

Courts have held public officers' actions in an investigation were privileged in situations analogous to the City Attorney's investigation.  For example, this Court held that a letter from the St. Helena City Attorney to a company in an investigation of violations of zoning ordinances was privileged under section 47(a).  *Pacaso Inc. v. City of St. Helena*, No. 21-cv-02493-WHO, 2021 WL 2987144 (N.D. Cal. July 15, 2021) (Orrick, J.).  The Court recognized in *Pacaso* that the city attorney had "sent the letter in the course of discharging his duties as the city attorney to evaluate and prevent violations of the City's zoning ordinances, which involved a policy-making aspect and the exercise of discretion."  *Id.* at *10.  Similarly, here, the investigation and subpoenas regarding USNWR's business practices arose from the City Attorney's duties "to evaluate and prevent violations of" California's

consumer protection statutes, "which involved a policy-making aspect and the exercise of discretion." *Id.*; *see also Valley Surgical Ctr. LLC v. Cnty. of Los Angeles*, No. CV 13-02265 DDP (AGRx), 2016 WL 7017208, at *5 (C.D. Cal. Dec. 1, 2016) (holding investigation including coroner's subpoena was an "official investigation authorized by law" protected by California privilege under Civil Code section 47(b)). The California Court of Appeal, in *Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604 (2006), similarly held the former San Francisco City Attorney's actions were privileged under section 47(a) when a construction company sued the City Attorney for defamation for statements he made about the potential merits of fraud litigation initiated against the company. *Id.* at 613–17. The subpoenas challenged here are at least as closely tied to the City Attorney's official duties, policymaking, and discretion as the speech held to be privileged in *Tutor-Saliba*. *See also Kilgore v. Younger*, 30 Cal. 3d 770, 774–78 (1982) (statements made by Attorney General regarding results of investigation of organized crime were protected by Civil Code § 47(a)).

The section 47 privilege has repeatedly "been interpreted to preclude constitutional and statutory causes of action." *People v. Persolve, LLC*, 218 Cal. App. 4th 1267, 1274 (2013); *see Ribas v. Clark*, 38 Cal. 3d 355, 364–65 (1985) (applying the section 47 privilege to bar a statutory cause of action because "the purpose of the judicial proceedings privilege seems no less relevant to such claims"); *Bonni v. St. Joseph Health Sys.* 83 Cal. App. 5th 288, 293, 303–05 (2022) (applying the litigation privilege to bar claim for retaliation under Health & Safety Code section 1278.5). As such, USNWR's cause of action under the Shield Law must be dismissed.[9]

**B.  USNWR's Reporters' Shield Law Claim Should Be Stricken Under California's Anti-SLAPP Law.**

Under California's anti-SLAPP statute, state law claims that arise from defendants' exercise of their speech rights, or any action taken in furtherance of those rights, must be stricken unless the plaintiff establishes that it can make out a claim on the merits. Code Civ. Proc. § 425.16(b)(1); *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010). This rule applies regardless of whether the

---

[9] To the extent USNWR states a claim under the Liberty and Speech Clause of the California Constitution (see n.5, *supra*) it, too, is foreclosed by section 47(a). *See Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 960–62 (2007) (section 47 privilege applied to constitutional claim).

claims are filed in federal or state court.  *See, e.g.*, *Gunn v. Drage*, 65 F.4th 1109, 1119 (9th Cir. 2023)

("[W]e have repeatedly affirmed the applicability of California's anti-SLAPP statute in diversity

cases.").  And it applies to public officials the same as to any other private litigant.  *See, e.g.*, *Vargas v.*

*City of Salinas*, 46 Cal. 4th 1, 17 (2009); *Bradbury v. Super. Ct.*, 49 Cal. App. 4th 1108, 1111 (1996)

(the anti-SLAPP statute "applies to a governmental entity and its representatives who are sued for their

written and verbal comments concerning an official investigation").

   To determine whether an anti-SLAPP motion to strike should be granted, federal courts in this

circuit apply a two-step burden-shifting framework.  "At the first step, the moving defendant must

make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's

constitutional right to free speech."  *Gunn*, 65 F.4th at 1118 (internal quotation marks and citation

omitted).  If that burden is met, "the burden shifts to the plaintiff to demonstrate that each challenged

claim based on protected activity is legally sufficient and factually substantiated."  *Id.* (internal

quotation marks and citation omitted).  Under this framework, USNWR's California Reporters' Shield

Law claim should be stricken.[10]  In addition, USNWR should be ordered to pay the fees and costs

associated with this motion in an amount to be determined later by the Court.  *See Ketchum v. Moses*,

24 Cal. 4th 1122, 1131 (2001) ("[U]nder Code of Civil Procedure section 425.16, subdivision (c), any

SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees").

### 1.    Step 1: USNWR's Reporters' Shield Law Claim Arises from the City Attorney's Protected Speech or Activity.

   The first step of the anti-SLAPP analysis involves two related inquiries: "[a] From what

conduct does the claim arise? and [b] Is that conduct in furtherance of the rights of petition or free

speech?"  *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017).  To

prevail at this step, the defendant need only make a prima facie showing that the claim arises from the

defendants' protected activity.  *Gunn*, 65 F.4th at 1121.  This standard is easily met here.

---

[10] California's anti-SLAPP provision does not apply to federal claims filed in federal court. Accordingly, it appears to be inapplicable to USNWR's "First Amendment" cause of action. However, to the extent USNWR is attempting to assert a claim under California's Liberty of Speech clause (which is mentioned in passing in the allegations), that claim should also be stricken: it arises out of the same protected conduct as the Reporters' Shield claim, *see* Part III.B.1.a, *infra*) and USNWR cannot demonstrate that the claim is legally sufficient, *see* Part III.A.2.a & n.5, *supra*.

**a.**      **The Shield Law Claim Arises from the Issuance of Subpoenas.**

For purposes of the anti-SLAPP statute, a cause of action "arises from" the conduct that "constitutes the specific act of wrongdoing challenged by the plaintiff." *Jordan-Benel*, 859 F.3d at 1191. The "specific act of wrongdoing" challenged in USNWR's Shield Law claim is the City Attorney's issuance of investigatory subpoenas. This is apparent from both the harm USNWR alleges and the relief it seeks. Specifically, USNWR states that "forcing [it] to respond to the Subpoenas" would violate its "core right[s]" and seeks "a declaration that the Subpoenas violate [*inter alia*] section 1070 of the California Evidence Code" as well as "an order permanently enjoining Defendant from enforcing the Subpoenas." Compl. ¶¶ 12, 14; *see also id.* at Count II ¶ 90 (stating that the "Subpoenas should be enjoined as violations of California's Reporters' Shield Law"); *id.* at Prayer for Relief ¶¶ 1–4 (seeking a "declaration that the Subpoenas violate . . . California's Reporters' Shield Law" and are "therefore null and void," and an order temporarily, preliminarily, and permanently "enjoining the City Attorney from enforcing the Subpoenas").

**b.**      **The City Attorney's Issuance of Subpoenas Is Protected Activity.**

California's anti-SLAPP statute describes four types of activity that qualify as protected conduct:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; *(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;* (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; *(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.*

Cal. Code Civ. Proc. § 425.16(e) (emphases added). The City Attorney's issuance of investigatory subpoenas to USNWR falls squarely within two of these categories.

**i.**      **Section 425.16(e)(2)**

First, the City Attorney's subpoenas fall within subsection (e)(2), which "encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." *Briggs v. Eden Council for*

*Hope & Opportunity*, 19 Cal. 4th 1106, 1113 (1999).  A statement or writing "enjoys protected status" under (e)(2) if it "is connected either to an issue under review by one of the three branches or government *or* to an official proceeding authorized by law."  *See Maranatha*, 158 Cal. App. 4th at 1085 (emphasis in original).  Both of these apply here.

State and federal cases make clear that subpoenas served in connection with an issue under consideration by an official proceeding or body are writings subject to anti-SLAPP protection under section 425.16(e)(2).  *See, e.g.*, *Mallard v. Progressive Choice Ins. Co.*, 188 Cal. App. 4th 531, 535 (2010) ("We hold the use of subpoenas to conduct discovery in the context of a contractual arbitration of an uninsured motorist claim dispute under the Insurance Code constitutes a writing in connection with 'any other official proceeding authorized by law,' within the meaning of section 425.16, subdivision (e)(2)."); *Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003, 1015 (N.D. Cal. 2010) ("The anti-SLAPP statute protects any act in furtherance of a person's right of petition or free speech, see Cal. Civ. P. Code § 425.16, including, without limitation . . . the service of subpoenas, and any factual investigation related to the issues in dispute.").

And there can be no dispute that the subpoenas at issue here were prepared and served by the City Attorney in connection with an issue under consideration and review by his office.  "As used in section 425.16(e)(2), a matter is under consideration if it is one kept before the mind [or] given attentive thought, reflection, meditation.  A matter under review is one subject to an inspection, examination."  *Maranatha*, 158 Cal. App. 4th at 1085 (cleaned up).  "The review or consideration process need not consist of official or formal proceedings."  *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 373 (2013).  The courts' decisions in *Maranatha* and *Costa Mesa* are instructive.

In *Maranatha*, the California Department of Corrections and Rehabilitation ("CDCR") and a private prison contractor ("Maranatha") had an ongoing disagreement over the contractor's right to retain revenue from inmate telephone calls at a particular prison facility.  *Maranatha*, 158 Cal. App. 4th at 1081.  The California Court of Appeal held that a publicized letter sent by the director of the CDCR explaining that the state was terminating its contract with Maranatha over this issue was protected activity under section 425.16(e)(2) because "Maranatha's right to retain revenue from inmate

telephone calls at the [facility] was undoubtedly an 'issue under consideration'" by the state agency. *Id.* at 1085.

Similarly, in *Costa Mesa*, the city of Costa Mesa filed a public nuisance action against a commercial landlord and refused to issue him new business licenses until he came into compliance with the law.  The landlord filed a cross-complaint alleging that five city employees made statements about him that amounted to slander, trade libel, and interference with perspective economic advantage. *Costa Mesa*, 214 Cal. App. 4th at 365–66.  The court found that the landlord's causes of action arose from protected activity because the employees' statements were made in connection with an issue under consideration by both the court and the city government.  *Id.* at 372–73.

Applying these cases, this Court has held that a letter from the St. Helena City Attorney to a company sent as part of an investigation into violations of zoning ordinances was protected activity under section 425.16(e)(2) because it was made in connection with an issue under consideration by the city and the city attorney—namely, whether the company was violating the city's timeshare and short term rental ordinances.  *Pacaso Inc.*, 2021 WL 2987144 at *1 (Orrick, J.); *see also Carley v. Eyster*, No. SCUKCVG1769021, 2019 WL 6267375, at *3 (Cal. Ct. App. Nov. 18, 2019) (unpublished)[11] (holding that statements by the Mendocino County District Attorney were protected under section 425.16(e)(2) because they were made in connection with an issue under consideration by his office). The same analysis applies here.  The subpoenas that form the basis of USNWR's claims were issued in connection with an issue under consideration and review by the City Attorney's office—whether the company is violating the UCL by failing to disclose the payments it receives from hospitals and/or marketing its rankings as authoritative despite a potentially flawed methodology and possible perverse incentives created by these payments.[12]  Accordingly, just like the St. Helena City Attorney's letter in *Pacaso*, the City Attorney's subpoenas are protected activity under section 425.16(e)(2).

---

[11] Even though unpublished California Courts of Appeal decisions are not precedential under California law, federal courts may consider them as persuasive authority on how California courts would apply the law.  *See Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1165 (S.D. Cal. 2019); *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

[12] As discussed above, state law empowers the City Attorney to civilly prosecute violations of the UCL, Cal. Bus. & Prof. Code §§ 17200, 17203, 17204, and to issue subpoenas to investigate potential violations, *id.* § 16759(b); Cal. Gov. Code § 11181; *see also* Part II.A, *supra*.

In addition, the City Attorney's subpoenas are protected because they were issued in connection with an "official proceeding authorized by law"—the City Attorney's investigation of USNWR's potential UCL violations.  Courts have repeatedly recognized that a legally sanctioned investigation by a government entity is an "official proceeding" within the meaning of the anti-SLAPP statute.  *See, e.g.*, *Khai v. Cnty. of Los Angeles*, 730 F. Appx. 408, 410 (9th Cir. 2018) (holding that statements by a county social worker made in the context of a child welfare investigation were protected under section 425.16(e)(2)); *Laker v. Bd. of Trs. of Cal. State Univ.*, 32 Cal. App. 5th 745, 764–65 (2019) (holding that a statutorily authorized internal investigation conducted by a state university is an official proceeding within the meaning of section 425.16(e)(2)); *Dwight R. v. Christy B.*, 212 Cal. App. 4th 697, 711 (2013) (same for an investigation by child protective services); *Hansen v. Cal. Dep't of Corrs. & Rehab.*, 171 Cal. App. 4th 1537, 1544 (2008) (same for an investigation into a public employee's conduct); *Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*, 39 Cal. 4th 192, 199 (2006) (same for hospital's peer review proceedings authorized in the California Business and Professions Code); *Soderling v. Off. of Att'y Gen. of Cal.*, Nos. A124196, A124931, 2010 WL 4150259, at *9 (Cal. Ct. App. Oct. 22, 2010) (unpublished) (same for statements made in the course of a Medical Board investigation).

Accordingly, the City Attorney's subpoenas qualify as protected conduct under section 425.16(e)(2) because they were issued in connection with an issue under review by a government entity and an official proceeding authorized by law.

### ii.       Section 425.16(e)(4)

The subpoenas are also protected under the "catchall" subsection (e)(4), which protects "any other conduct in furtherance of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest."  The California Supreme Court has "articulated a two-step inquiry for deciding whether the activity from which a lawsuit arises falls within section 425.16(e)(4)'s protection: first, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue. If the answer to the second question is yes, then the protections of the anti-SLAPP statute are triggered, and the

plaintiff in the underlying lawsuit must establish 'a probability' of prevailing before the action may proceed." *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1243 (2022) (cleaned up).

Section 425.16 does not define the term "public interest," but instructs that the statute should be construed broadly, and provides that "it is in the public interest to encourage continued participation in matters of public significance."  In keeping with this guidance, California courts have interpreted "an issue of public interest" broadly to include "*any issue in which the public is interested.*"  *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original).  Under this lenient standard, California courts have recently held all of the following to be issues of public interest within the meaning of 425.16:

- allegations that a publicly traded company was engaged in a scheme to artificially inflate its reported sales and business activity, *Muddy Waters, LLC v. Super. Ct.*, 62 Cal. App. 5th 905, 918 (2021);
- how a public university handles and resolves quality or integrity problems in its professors' publications, *Iloh v. Regents of Univ. of Cal.*, 94 Cal. App. 5th 947, 957 (2023), review denied (Dec. 13, 2023); and
- "[t]he daily lives, experiences, and struggles faced by models," *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1158 (2021).

Here, the subpoenas involve concerns about USNWR's hospital rankings: concerns that USNWR overstates the authoritativeness of its rankings in its statements to consumers and concerns that USNWR fails to make required disclosures about payments it receives from hospitals it ranks. These rankings are viewed and used by potentially hundreds of thousands of people nationwide to make critical medial decisions.  *See* Compl. ¶ 15 (alleging that USNWR's website gets "tens of millions of visitors . . . every month").  Such "matters of health . . . are undeniably of interest to the public."  *Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 716 (2010) (internal quotation marks omitted, alteration in original); *cf. United Med. Labs., Inc. v. Columbia Broad. Sys., Inc.,* 404 F.2d 706, 711 (9th Cir. 1968) (finding in a defamation action for statements made in media about accuracy of lab tests that public health issues are an "area of public interest").  This is undoubtedly of at least as

much interest to the public as a company artificially inflating its reported sales or the struggles faced by models.

But the court need not simply presume that the public is interested in USNWR's hospital rankings.  There is ample evidence of the public's engagement on this issue: newspapers and medical experts published articles regarding concerns about USNWR's rankings before the City Attorney sent his June 2023 letter to the company, the media published additional articles about the City Attorney's inquiry, and Senator Blumenthal sent a letter USNWR raising similar concerns, which was also covered by the media and included in communications with his constituents.  Holtzman Decl. Exs. 7–23.

Accordingly, the only question is whether the subpoenas contribute to the public discussion of the issue.  To answer that question, courts "examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019).  In *Ojjeh v. Brown*, 43 Cal. App. 5th 1027 (2019), for example, the court held that individuals' solicitation of investments from plaintiff and their performance of allegedly unsatisfactory work on an uncompleted documentary qualified for protection under (e)(4) because even though the documentary was not actually made at the time the complaint was filed, "the proposed documentary was speech activity intended for the public sphere, and defendants' work thereon constituted an attempt to participate in a larger public discussion."  *Id.* at 1044–45.  The defendants' efforts to obtain interview footage "were directly related to the asserted issue of public interest and were undertaken to contribute toward the public discourse on the matter" and their "efforts to secure funding for the documentary's production was functionally related to the advancement of its message."  *Id.* at 1044; *see also Hicks v. Richard*, 39 Cal. App. 5th 1167, 1177 (2019) (holding that a letter "intended to prompt [ ] outside authorities to investigate and act on the allegations contained within it . . . contributed to the public debate, or furthered the discourse"); *Cross v. Cooper*, 197 Cal. App. 4th 357, 375 (2011) (holding that the defendant's conduct "directly related" to an issue of public interest because it "served th[e] interests" of preventing child abuse and protecting children).

Here, the City Attorney's subpoenas were issued to gather information to advance the City Attorney's investigation and inform the possibility of bringing a UCL action against USNWR for its violations of the law—both of which would further the larger public discussion and contribute to the public discourse on the matter.  Accordingly, by issuing the subpoenas, the City Attorney "participated in, or furthered, the discourse that makes an issue one of public interest" (*FilmOn.com Inc.*, 7 Cal. 5th at 151), and his conduct is therefore protected under section 425.16(e)(4).

### 2.   Step 2: USNWR Will Not Prevail on Its Reporters' Shield Law Claim.

Having established a prima facie showing that USNWR's suit arises from an act in furtherance of the City Attorney's constitutional right to free speech under subsections (e)(2) and/or (e)(4), the burden now shifts to USNWR to demonstrate that the Reporters' Shield Law claim is legally sufficient and factually substantiated.  Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  If USNWR "cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then [it] as a matter of law cannot meet the probability of success on the merits standard." *Resolute Forest Prods. Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017).  For the reasons discussed above, *see* Parts III.A.2, III.A.3, *supra*, USNWR fails to meet this burden and its Reporters' Shield Law claim cause of action (and any potential Liberty & Speech Clause claim) should therefore be stricken.

### C.   No Preliminary Injunction Should Issue.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  "Where there is an adequate remedy of law, there is no irreparable harm." *Zhenhua Logistics (Hong Kong) Co. v. Metamining, Inc.*, No. C-13-2658 EMC, 2013 WL 3360670, at *1 (N.D. Cal. July 3, 2013); *see also e.g.*, *Younger v. Harris*, 401 U.S. 37, 43–44 (1971) ("courts of equity should not act . . . when the moving party has an

adequate remedy at law and will not suffer irreparable injury if denied equitable relief"). A plaintiff must make a "clear showing" to justify the "extraordinary and drastic remedy" of a preliminary injunction. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted). That showing is heightened when a plaintiff seeks an injunction against a state agency, including a local jurisdiction acting under state authority, and "a strong factual record is necessary." *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992), *as amended* (Feb. 12, 1993).

Because USNWR's Complaint is meritless and should be dismissed in its entirety, *see* Part III.A, *supra*, the Court need not reach USNWR's Preliminary Injunction Motion. But even if it were to do so, USNWR's Motion fails to meet the high bar for an injunction because the Motion is virtually identical to the Complaint, suffers from the same deficiencies, and is not supported by any relevant evidence.

### 1.    USNWR Has No Likelihood of Success on the Merits.

USNWR's Preliminary Injunction Motion almost entirely regurgitates the allegations and arguments in its Complaint. *Compare* PI Mot. 15–17 *with* Compl. ¶¶ 72–84 (First Amendment claim); PI Mot. 18–19 *with* Compl. ¶¶ 85–90 (Shield Law claim).[13] For the reasons described above, both of USNWR's causes of action are meritless, so USNWR cannot establish a likelihood of success on the merits of either claim. *See* Parts III.A & III.B, *supra*.

None of the evidence USNWR submits with its Preliminary Injunction Motion compels a different result. At the preliminary injunction stage, USNWR "must make a clear showing of each element of standing." *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (citation omitted). But it makes no effort to do so. USNWR submits no declaration describing any First Amendment harm it has already suffered or is likely to suffer—although, as described above, a pre-enforcement challenge to a non-self-executing subpoena does not give rise to a cognizable injury. *See* Part III.A.1, *supra*.

---

[13] Indeed, USNWR's factual allegations in the Complaint align almost word-for-word with the facts provided in the Preliminary Injunction Motion. *Compare* PI Mot. 4–6 *with* Compl. ¶¶ 20–34 (describing USNWR's methodology); PI Mot. 6–7 *with* Compl. ¶¶ 35–41 (describing publications expressing favorable views of USNWR's hospital rankings); PI Mot. 7–11 *with* Compl. ¶¶ 42–44, 53–61 (describing the City Attorney's letter and subpoena); PI. Mot. 12–14 *with* Compl. ¶¶ 64–71 (allegations regarding Yale Law School Dean Heather Gerken).

The evidence that USNWR does submit appended to a declaration from its counsel is entirely repetitive of documents attached to, or referenced in, the Complaint.[14]  And most of this evidence is irrelevant.[15]  For example, USNWR attaches articles from other news outlets providing "best of" rankings, Potter Decl. Exs. G-P, for the broad proposition that the City Attorney's investigation will "chill all media."  PI Mot. 6; *see also* Compl. ¶ 34.  These allegations of a chilling effect are conclusory and insufficient in the context of a challenge to non-self-enforcing subpoena.  *See* Part III.A.1, *supra*.  Moreover, USNWR does not offer any allegation or evidence that any of these outlets—let alone "all media"——are comparable to USNWR in that they hold their rankings out as being authoritative and reliable in the same manner as USNWR, accept payments from the entities they rank, or do not disclose payments they receive.  In fact, some of these outlets have policies around disclosing payments and gifts from companies that they rank or review—which the City Attorney has explained USNWR must do as well.  *See* Holtzman Decl. Ex. 24 (acknowledging that Wirecutter "earn[s] money through subscriptions and various affiliate marketing programs" and gets "paid commissions on products purchased through our links to retailer sites"); *id.* Ex. 25 (noting CNET's commitment to being "transparent about how we make money, from advertisements and affiliate commissions, which include clear labels and disclosures").

USNWR also includes journal and news articles, Potter Decl. Exs. Q-S, for the proposition that its hospital rankings "are a valuable and trusted resource" for the public.  PI Mot. 6; *see also* Compl. ¶¶ 35-41.  To the extent USNWR submits these articles for the truth of the proposition that USNWR's rankings are accurate and reliable, that is inappropriate because the court may only take judicial notice of the existence of the articles, not the truth of their contents (which are inadmissible hearsay).

---

[14] *Compare* PI Mot. Exs. A–E *with* Compl. Exs. A–E (City Attorney's June 20, 2023 letter, counsel for USNWR's July 19, 2023 response, and City Attorney's January 9, 2024 subpoenas and cover letter); PI Mot. Ex. F *with* Compl. ¶ 24 fn.1 (USNWR Hospital Rankings FAQ webpage as of Dec. 5, 2023); PI Mot. Exs. G–P *with* Compl. ¶ 34 fns. 2–11 (webpages from other companies that allegedly provide rankings); PI Mot. Exs. Q–S *with* Compl. ¶ 35 fn. 12, ¶ 37 fn.14, and ¶ 38 fn. 6 (journal articles and article from USA Today discussing hospital rankings); PI Mot. Exs. T–V *with* Compl. ¶¶ 53–54 fns. 31–33 (tweets from the personal account of City Attorney David Chiu and the San Francisco City Attorney account).

[15] USNWR does not appear to formally ask the court to take judicial notice of this evidence, but to the extent that it does, the court need not do so because the evidence is irrelevant. *Cuellar v. Joyce*, 596 F.3d 505, 512 (9th Cir. 2010).

*Packsys, S.A. de. C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 n.2 (9th Cir. 2018). And to the extent USNWR submits them merely to show that some studies have expressed favorable views of the rankings, they are irrelevant.  USNWR does not deny that other articles have been critical of its methodology.  PI Mot. 7, Compl. ¶ 41.  Indeed, the City Attorney cited many such articles in his correspondence.  Potter Decls. Exs. A, C; Holtzman Decl. Exs. 7–16.  The City Attorney was entitled to rely on those articles in deciding to investigate whether USNWR's representations regarding its rankings may be misleading, and the fact that four articles have expressed a positive view of USNWR does not undermine that belief.

### 2.    USNWR Faces No Irreparable Harm from the Subpoenas.

For the reasons discussed in Part III.A.1, above, USNWR's pre-enforcement challenge to the City Attorney's non-self-enforcing subpoenas does not create a cognizable First Amendment injury— let alone an irreparable one.  *See Twitter, Inc.*, 56 F.4th at 1176; *Google, Inc.*, 822 F.3d at 228; *Second Amend. Found.*, 2024 WL 97349, at *4-6; *First Choice Women's Res. Ctrs. Inc.*, 2024 WL 150096, at *4; *see also Reisman*, 375 U.S. at 443 (dismissing pre-enforcement challenge to subpoena "for want of equity" because plaintiff had adequate remedy to protect its constitutional rights if government moved to enforce the subpoena in court).

USNWR's vague allegations of reputational harm are also inadequate to show irreparable harm.  USNWR baldly asserts that the City Attorney's subpoenas "are meant to destroy public confidence in U.S. News' rankings, undermine its business relationships, and convince readers to choose different media sources," without citation to any declaration or evidence.  PI Mot. 19.  While "*[e]vidence* of loss of control over business reputation" may support a finding of irreparable harm, USNWR cannot simply rely on "platitudes rather than evidence," and this naked allegation of reputational harm is insufficient.  *Herb Reed Enters. LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (emphasis added) (reversing finding of irreparable harm where plaintiff failed to submit record evidence to support assertion of loss of reputation).  Moreover, to the extent that USNWR merely claims that the subpoenas are "meant to" cause reputational harm, that does not show that any such harm is occurring or is likely to occur.  *Winter*, 555 U.S. at 22 (plaintiff must make clear

showing that "irreparable injury is *likely* in the absence of the injunction," and an injunction will not

issue "based only on a possibility of irreparable harm").

Finally, even if USNWR had alleged a credible threat of reputational harm, that harm would

not be irreparable.  Under Business & Professions Code section 16759(d), USNWR has the ability at

any time to move to quash the subpoenas in state court—which would achieve the same practical end

as an injunction against enforcement of the subpoenas.  The availability of an adequate state law

remedy to quash the subpoenas and remove this alleged threat of reputational harm negates any

allegation of irreparable harm.  *See Reisman*, 375 U.S. at 443 (dismissing complaint for injunctive

relief for "want of equity" where other procedures were available to challenge IRS summons);

*Younger*, 401 U.S. at 43–44.

### 3. The Balance of Equities and Public Interest Weigh Against an Injunction.

Finally, the balance of the equities and public interest weigh conclusively against issuance of a

preliminary injunction.  Administrative subpoenas like the ones at issue here serve a vital law

enforcement function because they enable a government body "charged with seeing that the laws are

enforced" to "inform itself as to whether there is probable violation of the law" by "get[ting]

information from those who best can give it and who are most interested in not doing so."  *United

States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950).  Here, the City Attorney's subpoenas to

USNWR were issued pursuant to authority conferred on him by the California Legislature to protect

consumers from unlawful, unfair, and fraudulent business practices by investigating suspected

violations of the UCL.  Bus. & Prof. Code § 16759(b).  An injunction would gravely harm the public

because it would prevent the City Attorney from simply seeking information from USNWR in

furtherance of his state-law consumer protection responsibilities.  *New Motor Vehicle Bd. of Cal. v.

Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is

enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form

of irreparable injury.");  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)

(same); *see also Seaside Civic League, Inc. v. United States Dep't of Hous. & Urb. Dev.*, No. C-14-

1823-RMW, 2014 WL 2192052, at *3 (N.D. Cal. May 23, 2014) (recognizing that "there is inherent

harm to an agency in preventing it from enforcing regulations that Congress found it in the public

interest to direct that agency to develop and enforce") (citation omitted).   That harm is particularly acute because the answers to the City Attorney's questions are relevant to determine whether USNWR's representations may be misleading consumers about critical healthcare choices.

By contrast, USNWR faces *no* harm from the denial of a preliminary injunction.  If there is no preliminary injunction issued, USNWR would be in the same position it was in before it filed this lawsuit—i.e., it would face no immediate sanction for objecting and refusing to respond to the subpoena.  Part II.A, III.A.1, *supra*.  If the City Attorney ultimately chooses to move to enforce the subpoena in state court, or if USNWR moves to quash the subpoena in state court, USNWR can present the very same objections it raises here to the state court.  While USNWR's First Amendment and Reporters' Shield Law claims are ultimately meritless, *see* Part III.A.2, *supra*, the state court is statutorily authorized and constitutionally empowered to adjudicate these claims before USNWR is ever compelled to respond to the subpoenas or faces any threat of sanction.  *See Reisman*, 375 U.S. at 442–43 (dismissing challenge to subpoena for "want of equity" where constitutional and other objections could be raised in administrative proceedings); *Petroleum Expl. v. Pub. Serv. Comm'n of Ky.*, 304 U.S. 209, 222 (1938) (upholding denial of injunction that would require federal court to "stop at the threshold, the effort of [a state body] to investigate matters entrusted to its care by a statute" enacted by the state legislature where there statute "contains detailed provisions for hearings and judicial review" to protect the rights of the investigation target); *see also* Part III.A.1, *supra* (citing cases denying federal court relief in pre-enforcement challenges to state subpoenas and investigations because of the availability of state court remedies).

## IV.   Conclusion

For the foregoing reasons, the City Attorney respectfully requests that the Court dismiss the Complaint in its entirety without leave to amend, strike USNWR's Reporters' Shield Law claim as violating the City Attorney's anti-SLAPP protections, award the City Attorney his fees and costs associated with litigating this motion, and deny USNWR's request for a preliminary injunction.

//

//

//

1

2   Dated:  February 28, 2024                    Respectfully submitted,

3                                                DAVID CHIU
                                                 City Attorney
4                                                YVONNE R. MERÉ
                                                 Chief Deputy City Attorney
5                                                SARA J. EISENBERG
                                                 Chief of Complex & Affirmative Litigation
6                                                ALEXANDER J. HOLTZMAN
                                                 KARUN A. TILAK
7                                                Deputy City Attorneys

8

9                                          By: */s/ Karun A. Tilak*
                                                 KARUN A. TILAK
10
                                                 Attorneys for Defendant
11                                               SAN FRANCISCO CITY ATTORNEY DAVID CHIU

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28