QUINN EMANUEL URQUHART & SULLIVAN LLP
John Potter (CA Bar No. 165843)
  johnpotter@quinnemanuel.com
Charles B. Stevens (CA Bar No. 324425)
  charliestevens@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA  94111
(415) 875-6600

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Williams (CA Bar No. 181299)
  michaelwilliams@quinnemanuel.com
Sage R. Vanden Heuvel (CA Bar No. 294868)
  sagevandenheuvel@quinnemanuel.com
865 S Figueroa St, 10th Floor
Los Angeles, CA  90017
(213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN LLP
Derek L. Shaffer (CA Bar No. 212746)
  derekshaffer@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C.  20005
(202) 538-8000

*Attorneys for Plaintiff U.S. News & World Report, L.P.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **U.S. NEWS & WORLD REPORT, L.P.** | Case No. 3:24-cv-00395-WHO |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE, AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| **DAVID CHIU**, in his Official Capacity as City Attorney of the City and County of San Francisco, | Judge William H. Orrick |
| Defendant. | Courtroom: 2 Hearing Date:  April 10, 2024 Hearing Time:  2:00 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ...................................................................................................................... 5

ARGUMENT ................................................................................................................................... 6

I.  CONTRARY TO THE CITY ATTORNEY'S CORE PREMISE, THIS COURT
    HAS JURISDICTION TO ENJOIN HIS VIOLATION OF THE FIRST
    AMENDMENT ...................................................................................................................... 6

    A.  U.S. News Faces Actual And Imminent Harm As A Result Of The City
        Attorney's Viewpoint-Based Discrimination ............................................................. 6

    B.  Courts Regularly Permit Pre-Enforcement Challenges To First Amendment
        Violations ................................................................................................................... 8

    C.  U.S. News Has Alleged A Credible Threat Of Enforcement ...................................... 11

    D.  The City Attorney Misreads *Twitter* And Other Authorities .................................. 13

    E.  The Case Is Prudentially Ripe, And The City Attorney Faces No
        Appreciable Hardship If His Unconstitutional Investigation Is Enjoined .............. 17

    F.  The City Attorney's Position Effectively Bars U.S. News From Federal
        Court .......................................................................................................................... 19

II.  THE CITY ATTORNEY FAILS TO DEFEND HIS ATTEMPTED CENSORSHIP ........ 20

    A.  The Subpoenas Reflect Unconstitutional Viewpoint-Based Discrimination ......... 21

    B.  California's Reporters' Shield Laws Support The Requested Injunction ............. 24

III.  THE *NOERR-PENNINGTON* DOCTRINE AND CALIFORNIA PRIVILEGE
      LAW ARE IRRELEVANT TO THIS DISPUTE .................................................................. 26

    A.  The *Noerr-Pennington* Doctrine Does Not Bar U.S. News' Claims ..................... 26

    B.  The California Privilege Law Does Not Protect The City Attorney's
        Issuance Of The Subpoenas ...................................................................................... 30

IV.  THIS COURT SHOULD DENY THE CITY ATTORNEY'S ANTI-SLAPP
     MOTION ............................................................................................................................. 32

    A.  Claims Against the Government Challenging The Legality Of Government
        Action Are Not Subject To The Anti-SLAPP Statute ............................................... 33

    B.  The Act Of Issuing Government Subpoenas Is Not "Protected Activity"
        Under Section 425.16(e) ........................................................................................... 36

    C.  U.S. News Is Likely To Prevail On Its California Claims ........................................ 39

V.    U.S. NEWS IS ENTITLED TO A PRELIMINARY INJUNCTION ...................................39

      A.    U.S. News Has Demonstrated A Likelihood of Success on the Merits .................39

      B.    U.S. News Will Be Irreparably Harmed Absent A Preliminary Injunction...........39

      C.    The Balance of Equities Weigh Heavily In Favor Of U.S. News, And An
            Injunction Serves The Public Interest.........................................................................40

CONCLUSION....................................................................................................................................40

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Am. C.L. Union of Illinois v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ........................................................................20

5

6

*Am. Commun. Ass'n, C.I.O., v. Douds*,
  339 U.S. 382 (1950) ......................................................................................10

7

8

*Amarin Pharma, Inc. v. U.S. Food & Drug Admin.*,
  119 F. Supp. 3d 196 (S.D.N.Y. 2015) ...........................................................9

9

*Amazon.com LLC v. Lay*,
  758 F. Supp. 2d 1154 (W.D. Wash. 2010) ................................................9, 10

10

11

*Americans for Prosperity Found. v. Bonta*,
  141 S. Ct. 2373 (2021) ..................................................................................10

12

*Area 51 Prods., Inc. v. City of Alameda*,
  20 Cal. App. 5th 581 (2018) .........................................................................33

13

14

*ARIIX, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ......................................................................19

15

*Arizona Right to Life Pol. Action Comm. v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) ...................................................................7, 11

16

17

*Arizona Students' Ass'n v. Arizona Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016) ........................................................................14

18

19

*Ass'n of Am. Med. Colleges v. United States*,
  217 F.3d 770 (9th Cir. 2000) ........................................................................13

20

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) ..........................................................27, 28, 29, 30

21

22

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ....................................................................................7, 8

23

24

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) .........................................................................................9

25

*Belle Fourche Pipeline Co. v. United States*,
  751 F.2d 332 (10th Cir. 1984) ......................................................................13

26

27

*Bernardo v. Planned Parenthood Fed'n of Am.*,
  115 Cal. App. 4th 322 (2004) ..................................................................18, 19

28

-iii-

*Berry v. Schmitt*,
    688 F.3d 290 (6th Cir. 2012) ............................................................................. 10

*Bonni v. St. Joseph Health Sys.*,
    11 Cal. 5th 995 (2021) ............................................................................... 36, 37

*Butler v. Elle*,
    281 F.3d 1014 (9th Cir. 2002) ......................................................................... 29

*California Pro-Life Council, Inc. v. Getman*,
    328 F.3d 1088 (9th Cir. 2003) ................................................................ 6, 7, 14

*Canatella v. State of California*,
    304 F.3d 843 (9th Cir. 2002) .................................................................. 7, 11, 12

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940) ......................................................................................... 2

*Christianburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
    434 U.S. 412 (1978) ....................................................................................... 17

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010) ....................................................................................... 24

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ............................................................................. 9

*City of Houston, Tex. v. Hill*,
    482 U.S. 451 (1987) ....................................................................................... 18

*City of Montebello v. Vasquez*,
    1 Cal. 5th 409 (2016) ..................................................................................... 33

*Cnty. of Santa Clara v. Trump*,
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ............................................................ 17

*Cross v. Cooper*,
    197 Cal. App. 4th 357 (2011) ......................................................................... 38

*Ctr. For Biological Diversity v. Kempthorne*,
    588 F.3d 701 (9th Cir. 2009) .......................................................................... 17

*Culinary Workers Union, Loc. 226 v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) ....................................................................... 9, 12

*D.H.L. Associates, Inc. v. O'Gorman*,
    199 F.3d 50 (1st Cir. 1999) ............................................................................. 11

*Degrassi v. Cook*,
    29 Cal. 4th 333 (2002) .............................................................................. 21, 25

*Doe v. Harris*,
    772 F.3d 563 (9th Cir. 2014) ...................................................................... 40

*Elrod v. Burns*,
    427 U.S. 347 (1976) ..................................................................... 8, 20, 40

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal. 5th 133 (2019) ................................................................................. 38

*First Choice Women's Res. Centers, Inc. v. Platkin*,
    2024 WL 150096 (D.N.J. Jan. 12, 2024) ................................................. 13

*Fowler v. Guerin*,
    899 F.3d 1112 (9th Cir. 2018) .................................................................. 17

*Freeman v. Lasky, Haas & Cohler*,
    410 F.3d 1180 (9th Cir. 2005) .................................................................. 28

*Gibson v. Fla. Legislative Comm.*,
    372 U.S. 539 (1963) ............................................................................ 23, 24

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) .................................................................... 13

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*,
    181 Cal. App. 4th 1207 (2010) ................................................................ 32

*Grant v. Meyer*,
    828 F.2d 1446 (10th Cir. 1987) ............................................................... 12

*Grosjean v. American Press Co.*,
    297 U.S. 233 (1936) .................................................................................. 14

*Hagberg v. California Fed. Bank*,
    32 Cal. 4th 350 (2004) .............................................................................. 31

*Hawaii Newspaper Agency v. Bronster*,
    103 F.3d 742 (9th Cir. 1996) .................................................................... 11

*Hernandez-Gotay v. United States*,
    985 F.3d 71 (1st Cir. 2021) ...................................................................... 12

*Hicks v. Richard*,
    39 Cal. App. 5th 1167 (2019) ................................................................... 38

*Italian Colors Restaurant v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) .................................................................. 11

*Junior Sports Mags. Inc. v. Bonta*,
    80 F.4th 1109 (9th Cir. 2023) ................................................................... 40

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ...........................................................................18, 19

*Katzberg v. Regents of Univ. of California*,
   29 Cal. 4th 300 (2002) .................................................................................25

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) ......................................................................27

*Kilgore v. Younger*,
   30 Cal. 3d 770 (1982)..................................................................................31

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ....................................................................40

*Laker v. Bd. of Trustees of California State Univ.*,
   32 Cal. App. 5th 745 (2019) .......................................................................33

*Lakeview Financial v. Dept. of Financial Institutions*,
   2021 WL 2530727 (W.D. Wash. 2021) ....................................... 10, 11, 20

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ......................................................................5

*Lewis v. Younger*,
   653 F.2d 1258 (9th Cir. 1980) ....................................................................13

*Libertarian Party of Los Angeles Cnty. v. Bowen*,
   709 F.3d 867 (9th Cir. 2013) ........................................................................8

*LSO, Ltd. v. Stroh*,
   205 F.3d 1146 (9th Cir. 2000) ....................................................... 2, 6, 9, 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................6

*Maldonado v. Morales*,
   556 F.3d 1037 (9th Cir. 2009) ......................................................................9

*Mangual v. Rotger-Sabat*,
   317 F.3d 45 (1st Cir. 2003)..........................................................................12

*Manistee Town Ctr. v. City of Glendale*,
   227 F.3d 1090 (9th Cir. 2000) ....................................................................27

*Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*,
   158 Cal. App. 4th 1075 (2008) ..............................................................31, 35

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ..................................................................................2, 9

*Mendiola-Martinez v. Arpaio*,
   836 F.3d 1239 (9th Cir. 2016) ..................................................................27, 33

*Mills v. City of Covina*,
   921 F.3d 1161 (9th Cir. 2019) ..........................................................................29

*Miszkewycz v. Cnty. of Placer*,
   317 Cal. Rptr. 3d 465 (2024)..............................................................................36

*Mitchum v. Foster*,
   407 U.S. 225 (1972) ...........................................................................................2

*Nat'l Rifle Ass'n of Am. v. City of Los Angeles*,
   441 F. Supp. 3d 915 (C.D. Cal. 2019)..............................................................39

*Navegar, Inc. v. U.S.*,
   103 F.3d 994 (D.C. Cir. 1997)............................................................................9

*O'Grady v. Superior Ct.*,
   139 Cal. App. 4th 1423 (2006)..........................................................................25

*Ojjeh v. Brown*,
   43 Cal. App. 5th 1027 (2019) ...........................................................................38

*Oklevueha Native American Church of Hawaii, Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012) ............................................................................10

*Online Merchants Guild v. Cameron*,
   995 F.3d 540 (6th Cir. 2021) ............................................................................10

*Pacaso Inc. v. City of St. Helena*,
   2021 WL 2987144 (N.D. Cal. July 15, 2021) ........................................ 30, 32, 35

*Park v. Bd. of Trustees of California State Univ.*,
   2 Cal. 5th 1057 (2017) ................................................................................35, 36

*Peace Ranch, LLC v. Bonta*,
   93 F.4th 482 (9th Cir. 2024) ............................................................................11

*Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ..............................................................................5

*Pleasant Grove City v. Summum*,
   555 U.S. 46 (2009) ............................................................................................27

*Preminger v. Peake*,
   552 F.3d 757, 763 (9th Cir. 2008) ......................................................................7

*Rancho Publications v. Superior Court*,
   68 Cal. App. 4th 1538 (1999)............................................................................26

-vii-

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ...................................................................................21, 24

*Reisman v. Caplin,*
    375 U.S. 440 (1964) ........................................................................................ 13

*Robinson v. Attorney General,*
    957 F.3d 1171 (11th Cir. 2020) ...................................................................... 9

*Rosenberger v. Rector & Visitors of Univ. of Virginia,*
    515 U.S. 819 (1995) ........................................................................................ 21

*Royer v. Steinberg,*
    90 Cal. App. 3d 490, 500 (1979) .................................................................... 30

*San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Employees' Ret. Assn.,*
    125 Cal. App. 4th 343 (2004) ........................................................................ 34

*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.*
    225 Cal. App. 4th 1345 (2014) ...................................................................... 34

*Second Amend. Found. v. Ferguson,*
    2024 WL 97349 (W.D. Wash. Jan. 9, 2024) ................................................ 13

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care,*
    968 F.3d 738 (9th Cir. 2020) ........................................................................ 17

*Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey,*
    27 F.4th 886 (3d Cir. 2022) .......................................................................... 10

*Smith & Wesson Brands, Inc. v. Grewal,*
    2022 WL 17959579 (D.N.J. Dec. 27, 2022) .................................................. 18

*Snyder & Assocs. Acquisitions LLC v. United States,*
    859 F.3d 1152 (9th Cir. 2017) ........................................................................ 5

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) ........................................................... 26, 28, 29

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ........................................................................................ 9

*Supershuttle Int'l, Inc. v. Lab. & Workforce Dev. Agency,*
    40 Cal. App. 5th 1058 (2019) ........................................................................ 36

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .................................................................................2, 9, 12

*Theofel v. Farey-Jones*
    359 F.3d 1066 (9th Cir. 2004) ...................................................................... 29

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
  682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...................................................................37

*Tutor-Saliba Corp. v. Herrera*,
  136 Cal. App. 4th 604 (2006) ...............................................................................31

*Twitter v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) ......................................................................... *passim*

*United States v. Playboy Entertainment Group, Inc.*,
  529 U.S. 803 (2000) ...............................................................................................21

*Univ. of Med. & Dentistry of New Jersey v. Corrigan*,
  347 F.3d 57 (3d Cir. 2003).....................................................................................13

*USA Waste of California, Inc. v. City of Irwindale*,
  184 Cal. App. 4th 53 (2010) ...........................................................................33, 34

*Vacation Rental Owners v. City of Rancho Mirage*,
  2023 WL 4445297 (Cal. Ct. App. July 11, 2023) ..................................................33

*Valley Surgical Ctr. LLC. v. Cnty. of Los Angeles*,
  2016 WL 7017208 (C.D. Cal. Dec. 1, 2016) .........................................................31

*Vargas v. City of Salinas*,
  46 Cal. 4th 1 (2009)................................................................................................35

*Vergos v. McNeal*,
  146 Cal. App. 4th 1387 (2007) ..............................................................................17

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
  858 F.2d 1075 (5th Cir. 1988) ...............................................................................27

*Virginia v. Am. Booksellers Assn*,
  484 U.S. 383 (1988) .................................................................................................8

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) .................................................................................................2

*Watkins v. United States*,
  354 U.S. 178 (1957) ...............................................................................................24

*Wilson v. Cable News Network, Inc.*,
  7 Cal. 5th 871 (2019)..............................................................................................37

*Winter v. California Med. Rev., Inc.*,
  900 F.2d 1322 (9th Cir. 1989) ...............................................................................13

*Winter v. Wolnitzek*,
  834 F.3d 681 (6th Cir. 2016) ...................................................................................7

*Yee v. City & Cnty. of San Francisco*,
    2016 WL 234462 (Cal. Ct. App. Jan. 20, 2016) ........................................................34

*Ex parte Young*,
    209 U.S. 123 (1908) .............................................................................................2

*Younger v. Harris*,
    401 U.S. 37 (1971) ...........................................................................................20

### Constitutional Provisions

U.S. Const., First Amendment ............................................................................ *passim*

Cal Const., art. I, § 2 ..................................................................................... 21, 24, 25

### Statutes

Cal. Bus. & Prof. Code § 16759 ............................................................................2

Cal. Bus. & Prof. Code § 17200 ............................................................................2

Cal. Bus. & Prof. Code § 17203 ............................................................................2

Cal. Bus. & Prof. Code § 17204 ............................................................................2

Cal. Bus. & Prof. Code § 17508 ............................................................................2

Cal. Civ. Proc. Code § 47 .........................................................................4, 30, 31, 32

Cal. Civ. Proc. Code § 425.16 ............................................................32, 33, 36, 37, 39

Cal. Civ. Proc. Code § 425.17 ...........................................................................32

Cal. Civ. Proc. Code § 904.1.............................................................................16

Cal. Evid. Code § 1070 ..................................................................................24, 25

Cal. Gov't Code § 11181.................................................................................2

Cal. Gov't Code § 11183.................................................................................2

Cal. Gov't Code § 11184.................................................................................19

Cal. Gov't Code § 11188.................................................................................17

### Rules

Fed. R. Civ. P. 12(b)(1).................................................................................5

Fed. R. Civ. P. 12(b)(6) ............................................................................................5, 39

Fed. R. Civ. P. 56 .................................................................................................6

## INTRODUCTION

It is problematic enough for the San Francisco City Attorney, Defendant David Chiu (the "City Attorney"), to be frontally assaulting U.S. News & World Report ("U.S. News") with Subpoenas that seek to invade, second-guess, and reshape its First-Amendment-protected journalism. But his purported defense raises even louder alarms. According to the City Attorney, such subpoenas—no matter how flagrantly they offend the First Amendment and trespass upon a free press—are categorically immune from constitutional challenge because the doors of federal courts are supposedly closed. Of course, constitutional design and venerable precedent stand to the contrary. Federal courts exist in large part to vindicate federal rights, with the freedoms of speech and of the press foremost among them, as enumerated in the First Amendment. When a local official tramples these cherished constitutional rights, as the City Attorney is doing, he can be held to account in federal court. No principled reading of the ripeness doctrine or precedent can short-circuit adjudication of the merits here. Nor can the City Attorney's invocation of California's anti-SLAPP statute or the *Noerr-Pennington* doctrine transform his constitutional vices into virtues. This challenge results from the City Attorney's use of government's coercive powers to censor and chill a journalistic entity with which he and his collaborators disagree.[1] Such efforts have no place in the United States, and this Court has the power and, indeed, the obligation to put a stop to them.

It speaks volumes that the City Attorney—after pounding his chest via tweets and press releases—now retreats to a ripeness defense that would forestall adjudication of the merits. Equally telling is the fact that his ripeness defense defies a century of First Amendment jurisprudence. By the City Attorney's account, a nakedly unconstitutional investigation that takes the form of coercive subpoenas—driven, say, by racial, religious, or viewpoint discrimination—is impervious to redress in federal court. Instead, the plaintiff must await contempt proceedings and sanctions in state court

---

[1] Although the City Attorney faults U.S. News for supposedly neglecting to meet and confer (Motion to Dismiss and Motion to Strike ["Br."] at 2, 8), he ignores that he issued the Subpoenas only after U.S. News had met at length with him to discuss precursor demands and sent him a 12-page letter enumerating the same First Amendment objections (Potter Decl. Ex. B), and that he then proceeded without attempting to account for U.S. News' constitutional objections. *Id*. Exs. C, D. E. U.S. News would not have accomplished anything by yet again pressing its constitutional rights before the City Attorney, as opposed to this Court.

before the federal claim ripens, by which time the federal courts would arguably be obliged, under the *Younger* abstention doctrine, to defer to state courts.  But a defining purpose of the Fourteenth Amendment and Section 1983 was to ensure that state and local officials throughout the country would be uniformly made to adhere to "fundamental rights and liberties."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citation omitted); *see Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of [Section] 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights . . . ."); *Ex parte Young*, 209 U.S. 123, 159-60 (1908) ("If the question of unconstitutionality . . . be first raised in a Federal court, that court . . . has the right to decide it, to the exclusion of all other courts.").

No right comes ahead of the First Amendment, as incorporated under the Fourteenth. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Whenever the First Amendment is implicated, "a finding of a reasonable threat of prosecution . . . dispenses with any ripeness problem."  *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000).  Per the Supreme Court, "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."  *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128-129 (2007); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014).

There is no denying that U.S. News faces an actual and imminent threat of enforcement.  *See* Br. at 4, 29 (identifying Cal. Bus. & Prof. Code §§ 16759(b), 17200, 17203, 17204, 17508; Cal. Gov't Code §§ 11181, 11183); *id*. at 7 (explaining investigation of U.S. News and issuance of Subpoenas); *id*. at 5 (explaining legal consequences for failure to comply).  Were there any doubt as to the City Attorney's commitment to pry into U.S. News' journalistic operations and follow through on his pointed threats, his opposition to a preliminary injunction and effort to seek anti-SLAPP relief confirm that he is doubling down on his efforts to intimidate U.S. News and make it pay a price for exercising and defending its independent editorial judgment.  *See LSO*, 205 F.3d at 1155 ("Courts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing.").

Nor can the City Attorney deny that his Subpoenas target protected speech.  Although the City Attorney now largely elides his express inquiries into the substance of how U.S. News ranks

and covers hospitals, he cannot change what his Subpoenas say in black and white.   Viewpoint discrimination drips from them, including in the form of seven (7) interrogatories inquiring into U.S. News' "representations and methodology."  Br. at 7 (citing Compl. Ex. D, at Interrogatories 7-13). As for the requests relating to financial relationships, they derive from the theory that the rankings are "misleading" simply because U.S. News allegedly fails to disclose financial relationships with hospitals (Br. at 7), but the same can be said of any for-profit journalistic organization, all of which may have "financial" ties to entities they report on, whether in the form of advertising, subscription, licensing, or ownership relationships.  *See also* Holtzman Decl. Ex. 6 (showing U.S. News' public disclosure of marketing and branding opportunities with hospitals).[2]  Ultimately, the City Attorney concedes he is investigating U.S. News' subjective views regarding the "quality of its rankings" (Br. at 1), along with the "methodology" underlying them (Br. at 7).

The City Attorney is free to personally disagree with U.S. News' editorial decisions about which hospitals should be ranked higher than others, and which factors deserve more weight.  But he cannot bring coercive governmental power crashing down on U.S. News for failing to conform to his views.  Nor can he specially privilege the views of colleagues at Yale Law School who, after loudly criticizing U.S. News, are now ostensibly co-opting the City Attorney's powers to censor and chill U.S. News.  That is what is happening here, according to detailed factual allegations of the complaint, and the City Attorney's brief is bereft of factual refutation.[3]

Lacking any credible defense, the City Attorney seeks to avoid review on the merits by misreading and overreading a recent Ninth Circuit case, *Twitter v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), which differs in crucial respects.  In *Twitter*, the plaintiff did not make a pre-enforcement challenge based on imminent threat of enforcement, as U.S. News does.  Instead, the plaintiff

---

[2]   The City Attorney attaches disclosures from the NY Times Wirecutter and CNET which state that their reviews are "unbiased" and the "most trusted," while also disclosing marketing and affiliate relationships.  Holtzman Decl. Exs. 24, 25.  By the City Attorney's reasoning, the NY Times, CNET, and other news organization could just as easily be made to answer intrusive subpoenas questioning whether financial considerations influence their opinions and news stories.

[3]   Although the City Attorney terms the allegations "scurrilous" (Br. at 19), his rhetorical dismissal is unaccompanied by any substantive refutation of facts drawn from the public record.

alleged—inadequately, as the panel found—that its speech had already been chilled by a retaliatory action.  Nor did *Twitter* involve an allegation by the regulator that plaintiff had violated the law, as the City Attorney alleges here.  Br. at 1, 7; Compl. Ex. C.  And the requests challenged in *Twitter*— inquiring into a platform's content moderation policies and public documents, many of which Twitter had *willingl*y produced—were a far cry from these documents and information requests, which issued *after* U.S. News stood on its First Amendment objections, only for the City Attorney to blow past them, thereby prompting this challenge.  *Twitter* does not apply to these facts, and did not, as the City Attorney suggests, overrule decades of First Amendment cases vindicating challenges like this one.

Next, and contrary to the City Attorney's suggestions, U.S. News' Reporters' Shield Law claim is legally cognizable and factually supported.  No private right of action is needed to seek declaratory and injunctive relief directly under the California Constitution.  Nor must U.S. News await contempt before invoking the Shield Law, as the very case that the City Attorney cites confirms.  It bears emphasizing that the Subpoenas seek information covered by the Shield Law because they seek unpublished information surrounding U.S. News' rankings and publications.

Similarly, the City Attorney misplaces reliance on certain privileges and immunities in a misconceived effort to place his unconstitutional actions beyond challenge.

*First*, the *Noerr-Pennington* doctrine—designed to avoid statutory interpretations that could infringe the right to petition—does not apply because it is wholly inapplicable to the declaratory and injunctive relief sought against unconstitutional government action.  Moreover, it protects only conduct incidental to an actual petition.  These Subpoenas are too far removed from any hypothetical future petition to qualify for protection.  In no event could *Noerr-Pennington* possibly encompass the sort of "sham" activity alleged here—particularly where the City Attorney's powers are being misused, under auspices of the Subpoenas, to reshape journalism and chill expression so that it better pleases critics at the City Attorney's Office and Yale Law School.

*Second*, the Privilege Law found in California Code of Civil Procedure 47(a) does not provide immunity from U.S. News' Shield Law claim because that privilege applies only to "publications and broadcasts."  The Subpoenas are neither.  More fundamentally, Section 47 was

designed to protect against damages claims for tort liability; it should not be expanded to obstruct declaratory and injunctive remedies for unconstitutional government action.

Compounding perversity, the City Attorney argues that U.S. News' California claims are barred by the anti-SLAPP statute.  But claims challenging the legality of government action—here, patently unconstitutional Subpoenas—are not subject to the anti-SLAPP statute.  Otherwise, citizens would be chilled from trying to hold their government accountable in court.  Nor is the act of issuing a subpoena a "protected activity" under the provisions cited by the City Attorney.  Regardless, because U.S. News' claims survive a Rule 12(b)(6) analysis, they could not possibly be subject to dismissal under the anti-SLAPP statute.

Finally, the City Attorney's brief lacks any plausible basis for denying a preliminary injunction on the merits.  First Amendment interests loom large and are paramount.  By contrast, the City Attorney's investigation has been as sluggish as it is anomalous.  Having gone without the requested information throughout prior decades and been content to stand still (of his own volition) for months even before this case commenced, the City Attorney cannot claim any urgent need for the documents and information he seeks.  This Court should preserve the status quo and thereby prevent irreparable harm while important constitutional questions are adjudicated.

## LEGAL STANDARD

When deciding a motion to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the court must "accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiffs, the non-moving party." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156-57 (9th Cir.).  "The district court resolves a facial attack [under Rule 12(b)(1)] as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med.*

*Progress,* 890 F.3d 828, 834 (9th Cir. 2018), amended, 897 F.3d 1224 (9th Cir. 2018).  "On the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply.  But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."  *Id.*

## ARGUMENT

## I.   CONTRARY TO THE CITY ATTORNEY'S CORE PREMISE, THIS COURT HAS JURISDICTION TO ENJOIN HIS VIOLATION OF THE FIRST AMENDMENT

The City Attorney argues that "a plaintiff launching a pre-enforcement challenge to a non-self-enforcing subpoena . . . has not suffered an injury for purposes of Article III standing and such challenges are constitutionally and prudentially unripe."  Br. at 8.  This argument defies decades and volumes of First Amendment decisions, filled with successful pre-enforcement challenges to government action that would otherwise chill protected expression.  Moreover, U.S. News has identified actual, imminent harm from the issuance of the Subpoenas and threatened enforcement actions.  This case is ripe for adjudication, and this Court has not only jurisdiction but an obligation to consider U.S. News' rights under the U.S. and California Constitutions.

### A.   U.S. News Faces Actual And Imminent Harm As A Result Of The City Attorney's Viewpoint-Based Discrimination

The question whether this dispute is constitutionally ripe for adjudication boils down to whether U.S. News faces a concrete injury-in-fact from the challenged Subpoenas.  The answer to that is obviously "yes," no less than it is in any case where a press entity faces unconstitutional intrusions by a hostile regulator who finds fault with its journalistic decisions and views.

"A plaintiff needs only to plead general factual allegations of injury in order to survive a motion to dismiss, for we presume that general allegations embrace those specific facts that are necessary to support the claim."  *LSO*, 205 F.3d at 1156 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "To satisfy the Article III case or controversy requirement, [a plaintiff] must establish, among other things, that it has suffered a constitutionally cognizable injury-in-fact."  *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093 (9th Cir. 2003).  "To satisfy this prerequisite, a plaintiff must demonstrate that it has suffered an 'injury-in-fact,' *i.e.*, 'a realistic

danger of sustaining a direct injury as a result of the statute's operation or enforcement.'"  *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (injury must be "actual or imminent," not "conjectural" or "hypothetical").

"[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003); *Winter v. Wolnitzek*, 834 F.3d 681, 686-688 (6th Cir. 2016) ("The line between Article III standing and ripeness in preenforcement First Amendment challenges has evaporated."). "Moreover, in recognition that 'the First Amendment needs breathing space,' the Supreme Court has relaxed the prudential requirements of standing in the First Amendment context." *Canatella v. State of California*, 304 F.3d 843, 853 (9th Cir. 2002) (citation omitted).

Here, U.S. News has identified concrete harm, both actual and imminent, resulting from the City Attorney's unconstitutional investigation and threat of enforcement.  Citing extensive prior exchanges culminating in the Subpoenas, U.S. News has noted that the City Attorney is engaged in "mounting harassment," that "Defendant's adverse government action implicates U.S. News' fundamental rights both as a private speaker and a world-renowned journalistic enterprise," Compl. ¶ 12, and that U.S. News is "[f]aced with violation and chilling of First Amendment freedoms," *id.* ¶ 13.  U.S. News quotes the City Attorney's own touting of the fact that, "[f]ollowing the letter [the City Attorney's] office sent US News last week, the University of Pennsylvania Health System has joined other hospitals in withdrawing from US News & World Report's dubious hospital rankings," *id.* ¶ 54; *see also* Potter Decl. Ex. V, thereby confirming that the City Attorney's actions "had caused damage to U.S. News' business and reputation."  *Id.*

U.S. News further alleges that the Subpoenas are an "attempt to intimidate and dissuade U.S. News and the hospitals from entering into commercial relationships with each other, harming U.S. News' business, simply because the City Attorney disagrees with U.S. News' hospital rankings and methodology." *Id.* ¶ 60; *see also* ¶ 62 (identifying the "harm" that the investigation had already caused, and the "substantial risk that enforcement of the Subpoenas will intimidate hospitals and other entities from advertising with U.S. News or providing data to assist its rankings"); ¶ 63

(alleging the "severe" implications of surrendering to the City Attorney's demands and alter its hospital rankings); ¶ 79 (alleging the City Attorney's violation of "the First and Fourteenth Amendments and the Liberty of Speech Clause" are "irreparably injuring U.S. News").

U.S. News brings all this to a sharp point, spelling out its impending injury:

> The City Attorney's demand gives U.S. News two choices.  Either it must provide the requested documents and information, which will chill and burden its protected speech.  Or else it must bear the penalties of noncompliance with the Subpoenas.  So whichever way U.S. News goes with this Hobson's choice, it stands to lose First Amendment freedoms—and thus suffer irreparable injury—unless this Court issues declaratory and injunctive relief.

Compl. ¶ 84.  These facts establish actual and imminent harm translating to Article III injury-in-fact.  The City Attorney's investigation, Subpoenas, and commitment to enforce the same give rise to imminent harm to U.S. News' expressive freedoms—harm that is neither "conjectural" nor "hypothetical."  *See Babbit*, 442 U.S. at 298 ("One does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough.") (citation omitted).   "[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury."  *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (plaintiffs had standing based on threat of enforcement).

## B.    Courts Regularly Permit Pre-Enforcement Challenges To First Amendment Violations

The Supreme Court has recognized that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  To guard against such harm, the Supreme Court has long permitted plaintiffs to challenge unconstitutional laws and government actions before enforcement occurs.  "One does not have to await the consummation of threatened injury to obtain preventive relief." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974) (citations omitted).

> We are not troubled by the pre-enforcement nature of this suit.  The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.  We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them.  Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution.

*Virginia v. Am. Booksellers Assn*, 484 U.S. 383, 393 (1988).

The City Attorney argues that U.S. News has not been injured by the investigation and must await state court proceedings before challenging the Subpoenas.  Br. at 10-16.  But the Supreme Court does not require plaintiffs to await worsening injury before protecting their constitutional rights.  "In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."  *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (citations omitted).  "When an individual is subject to such a threat [of enforcement], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."  *Susan B. Anthony List*, 573 U.S. at 158; *MedImmune, Inc.*, 549 U.S. at 128-29.

As the City Attorney acknowledges, U.S. News has brought a "pre-enforcement challenge" to the Subpoenas.  Br. at 8, 10, 12, 14, 41.  But the City Attorney then ignores the vast body of case law permitting pre-enforcement challenges to government action where, as here, a credible threat of enforcement exists.  *See, e.g.*, *LSO*, 205 F.3d at 1154-56 ("[A] reasonable threat of prosecution, for standing purposes, dispenses with any ripeness problem."); *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1163 (W.D. Wash. 2010) (case ripe based on state's requests for information even though no summons had issued); *Maldonado v. Morales*, 556 F.3d 1037, 1044-45 (9th Cir. 2009) (challenge to statute was ripe even though plaintiff had not been prosecuted); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 616 (9th Cir. 1999) (pre-enforcement challenge ripe following warning letter from state attorney general); *Citizens United v. Schneiderman*, 882 F.3d 374, 388-89 (2d Cir. 2018) (same); *Amarin Pharma, Inc. v. U.S. Food & Drug Admin*., 119 F. Supp. 3d 196, 220-21 (S.D.N.Y. 2015) (First Amendment challenge to FDA action ripe following warning letter); *Navegar, Inc. v. U.S.*, 103 F.3d 994, 998 (D.C. Cir. 1997) ("[T]hreats of enforcement can simultaneously ripen a preenforcement challenge and give the threatened party standing."); *Robinson v. Attorney General*, 957 F.3d 1171, 1177-1178 (11th Cir. 2020) (same).

Federal courts regularly find the injury-in-fact requirement met where, as here, the government is targeting and chilling a plaintiff's exercise of its rights, short of having brought an enforcement action.  *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59-61, 66-72 (1963) (appellants had First Amendment standing to challenge system of informal censorship despite lack

of criminal or civil penalty); *Am. Commun. Ass'n, C.I.O., v. Douds,* 339 U.S. 382, 402 (1950) ("Under some circumstances, indirect 'discouragements' undoubtedly have the same coercive effect upon the exercise of First Amendment rights as imprisonment, fines, injunctions or taxes."); *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835-839 (9th Cir. 2012) (challenge to Controlled Substances Act was ripe given a "genuine threat of imminent prosecution" even absent an active investigation); *Online Merchants Guild v. Cameron*, 995 F.3d 540, 549-52 (6th Cir. 2021) (threat of prosecution and standing resulted from Kentucky Attorney General's subpoena and civil investigative demand that suggested violation of law); *Berry v. Schmitt*, 688 F.3d 290, 296-98 (6th Cir. 2012) (claim seeking declaratory relief under the First Amendment was ripe following warning letter from state bar association).[4]

The case of *Lakeview Financial v. Dept. of Financial Institutions,* 2021 WL 2530727 (W.D. Wash. 2021) is instructive. There, the state investigated a financial institution for potential violations of Washington's Consumer Loan Act. The state issued a subpoena, brought an action to enforce the subpoena, and then dismissed the enforcement action after plaintiff complied. When the state sought to negotiate a consent order and seek damages, plaintiff sought declaratory and injunctive relief under the Commerce Clause and Due Process Clause. Like the City Attorney, the state argued that the plaintiff "cannot establish injury-in-fact because the investigation . . . is still ongoing." *Id*. at *3. Relying upon pre-enforcement standing doctrine, the court rejected this argument. "[T]he Department's investigations into [plaintiff], including the issuance of a subpoena

---

[4]   Courts regularly uphold jurisdiction to entertain First Amendment challenges to subpoenas and other compelled disclosures, recognizing that fundamental rights are otherwise at risk.   *See Amazon.com*, 758 F. Supp. 2d at 1163 (granting plaintiffs' motion for summary judgment in pre-enforcement action where state's request for customer information violated the First Amendment); *see also Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 890-93 (3d Cir. 2022) (finding jurisdiction and denying *Younger* abstention in analyzing First Amendment challenge to New Jersey Attorney General's subpoena, which was "not self-executing" but allegedly reflected viewpoint discrimination); *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021) (to protect freedom of association, "exacting scrutiny requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes") (cleaned up) (sustaining federal challenge to compelled disclosure that facially violated First Amendment).

and a draft Consent Order, establish a credible threat of prosecution and establish injury-in-fact." *Id*. at *4. The plaintiff had standing and the case was ripe, just as is true here.

"Courts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing." *LSO*, 205 F.3d at 1155; *Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018) (plaintiff had standing where "[a]t a hearing on the cross-motions for summary judgment, the Deputy Attorney General refused to stipulate that California will not enforce the statute."); *Canatella*, 304 F.3d at 852-53 ("Nor has the State Bar conceded that it will not rely on the challenged provisions to bring disciplinary proceedings against Canatella should he be sanctioned again."); *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 490 (9th Cir. 2024) (plaintiff had standing where, at oral argument, the state refused to disavow enforcement); *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 746-47 (9th Cir. 1996) (challenge to statute ripe where attorney general's statements in the litigation "clearly indicates her intention to enforce [the statute] against the newspapers"); *D.H.L. Associates, Inc. v. O'Gorman*, 199 F.3d 50, 53-54 (1st Cir. 1999) (challenge to ordinance ripe where government officials represented to the court that enforcement was delayed only pending outcome of the litigation).

"[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO*, 205 F.3d at 1155. Per the Ninth Circuit, First Amendment cases "present unique standing considerations" given the "chilling effect of sweeping restrictions" on speech. *Arizona Right to Life Polit. Act. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). In order to avoid this chilling effect, the "Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Italian Colors*, 878 F.3d at 1171 (citation omitted).

In other words, contrary to the City Attorney's position, Article III jurisdiction results from a credible threat of enforcement and imminent harm that would follow. U.S. News need not await the actual enforcement action before vindicating its constitutional rights.

### C. U.S. News Has Alleged A Credible Threat Of Enforcement

U.S. News has pleaded the elements of injury-in-fact for its pre-enforcement challenge by establishing "circumstances that render the threatened enforcement sufficiently imminent.

Specifically, [the Supreme Court has] held that a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 158 (citation omitted). "To establish a dispute susceptible to resolution by a federal court, plaintiffs must allege that they have been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Culinary Workers Union*, 200 F.3d at 617 (citation omitted).

*First*, U.S. News has confirmed that it will continue to rank hospitals, and to stand behind its journalism despite the City Attorney's attempts to punish such speech through California's Unfair Competition Law. Compl. ¶ 4 ("U.S. News firmly stands behind its hospital rankings as a valuable and reliable public resource . . . ."); ¶ 5 ("U.S. News maintains fidelity to its mission of helping consumers make the best healthcare decisions and operates according to the highest journalistic standards."); ¶ 40 ("U.S. News believes that its methodology relies on 'world-class data and technology,' and it has ample justification for its opinion."). Moreover, U.S. News has shown through its consistent position, including as reflected in this lawsuit, that it will not comply with the Subpoenas short of compulsion. *Canatella*, 304 F.3d at 852-53 (case ripe where "[Plaintiff] has nowhere conceded that he will refrain from the type of expression that he believes is constitutionally protected"); *Hernandez-Gotay v. United States*, 985 F.3d 71, 77-78 (1st Cir. 2021) (same).

*Second*, a credible threat of enforcement exists—most immediately, the threat that the City Attorney will commence proceedings in state court to enforce the Subpoenas and to hold U.S. News in contempt for non-compliance. "As to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low. '[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003). Here, the City Attorney has not withdrawn his Subpoenas, nor has he disavowed any intent to enforce them if permitted. What is more, the City Attorney continues to repeat his baseless allegations that U.S. News has violated California law, now while opposing a preliminary injunction and seeking anti-SLAPP sanctions. *See Grant v. Meyer*, 828 F.2d

1446, 1449 (10th Cir. 1987) (credible threat of prosecution established in part by government's vigorous efforts to defend challenged statute).

### D.    The City Attorney Misreads *Twitter* And Other Authorities

Disregarding decades of precedent cited above, the City Attorney argues that "pre-enforcement challenges to subpoenas like those issued by the City Attorney must be dismissed for lack of standing or constitutional ripeness—even in cases involving alleged First Amendment harms." Br. at 12.  To reach this erroneous conclusion, the City Attorney relies on cases that either (i) do not involve a *pre-enforcement* challenge to a First Amendment violation, (ii) do not involve the First Amendment at all, or (iii) have been rejected by the Ninth Circuit for the very principle upon which the City Attorney relies.  Br. at 11-13; *see Twitter*, 56 F.4th at 1174 ("Twitter is not really making a pre-enforcement challenge"); *Second Amend. Found. v. Ferguson*, 2024 WL 97349, at *5 (W.D. Wash. Jan. 9, 2024) (not a pre-enforcement challenge); *Google, Inc. v. Hood*, 822 F.3d 212, 216 (5th Cir. 2016) (rejected by Ninth Circuit in *Twitter*, 56 F.4th at 1178 n.3); *First Choice Women's Res. Centers, Inc. v. Platkin*, 2024 WL 150096, at *3 (D.N.J. Jan. 12, 2024) (currently on appeal to Third Circuit, and relying upon *Google* reasoning that the Ninth Circuit rejects); *Reisman v. Caplin*, 375 U.S. 440 (1964) (not a First Amendment case, and rejected as inapplicable to First Amendment disputes in *Twitter*, 56 F.4th at 1178-79); *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 333 (10th Cir. 1984) (not a First Amendment case); *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000) (not a First Amendment case); *Winter v. California Med. Rev., Inc*., 900 F.2d 1322, 1326 (9th Cir. 1989) (not a First Amendment case); *Lewis v. Younger*, 653 F.2d 1258 (9th Cir. 1980) (not a First Amendment case); *Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57 (3d Cir. 2003) (not a First Amendment case).  Notably, the City Attorney does not cite a single Supreme Court case supporting his unfounded position.

None of the City Attorney's authorities involved a subpoena inquiring into the editorial judgment of a news organization.  Nor was any of them a pre-enforcement challenge under the First Amendment where, as here, the threat of enforcement was imminent and obvious.  Far from being "dispositive" of U.S. News' case (Br. at 13), the cited cases do not illuminate, much less control, the decision whether the instant First Amendment claims are ripe.

The City Attorney's primary case, *Twitter*, does not support dismissal.  Indeed, contrary to his suggestions (Br. at 11-12), *Twitter* rejected the view espoused by the Fifth Circuit that pre-enforcement challenges to subpoenas are categorically unripe.  *Twitter*, 56 F.4th at 1178-79 & n.4.  And *Twitter* certainly did not "purport to overrule years of Ninth Circuit and Supreme Court precedent recognizing the validity of pre-enforcement challenges." *Cal. Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003).  Instead, *Twitter* employed a fact-intensive analysis to conclude *that* particular dispute was not constitutionally ripe, relying on facts different from those at issue here, in the context of legal theories different from those operative here.

*First*, the Ninth Circuit panel evaluated Twitter's claims as a retaliation claim, *not* a pre-enforcement challenge.  Per Judge Nelson's opinion, "Twitter is not really making a pre-enforcement challenge.  Twitter does not allege that its speech is being chilled by a statute of general and prospective applicability that may be enforced against it.  Rather, Twitter alleges that OAG targeted it specifically with the CID and related investigation.  And the subject of its challenge is not only some anticipated future enforcement action by OAG; Twitter claims OAG has already acted against it." *Twitter*, 56 F.4th at 1174-75.  Here—as the City Attorney admits—U.S. News *is* making a pre-enforcement challenge to enjoin the Subpoenas before the City Attorney can enforce them.[5]  Although U.S. News has also alleged actual harm from actions that the City Attorney has already taken, its claims focus upon impending injury to its First Amendment rights based on a credible threat of future enforcement.  *Supra* I.C.  This alone makes *Twitter* inapposite.

*Second*, while failing to acknowledge that Twitter was *not* a pre-enforcement challenge, the City Attorney reads the case as effectively overruling decades of First Amendment jurisprudence.  But that is not a plausible reading.  The *Twitter* panel did not analyze the *imminent* harm that Twitter might experience due to a threat of prosecution, because Twitter relied on *actual* harm based on

---

[5]  Alternatively, even if analyzed as a retaliation-based First Amendment injury, U.S. News' claims would nonetheless be ripe.  The City Attorney's action would "chill a person of ordinary firmness," and, unlike *Twitter*, the Subpoenas demonstrate on their face an attempt to retaliate against a press entity for expressing a disfavored viewpoint. *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (providing elements of First Amendment retaliation claim); *see also Grosjean v. American Press Co.*, 297 U.S. 233, 249-50 (1936).

retaliatory actions the Texas Attorney General had *already* taken.  And in evaluating Twitter's complaint, the Ninth Circuit found such backwards-looking allegations lacking.  "Twitter's allegations are not enough to establish constitutional standing and ripeness because Twitter fails to allege any chilling effect on its speech or any other legally cognizable injury."  *Twitter*, 56 F.4th at 1175.  U.S. News, in contrast, identifies chilling that will occur if the City Attorney is permitted to enforce his intrusive Subpoenas.  *See, e.g.*, Compl. ¶¶ 12, 13, 54, 60, 62, 63, 79, 84.

*Third*, the investigation in *Twitter* did not trample the First Amendment freedoms of speech and of the press in the way that the City Attorney's does.  Indeed, the Texas AG committed that he did "not seek to investigate the content-moderation decisions that Twitter makes—and could not do so under [Texas's unfair and deceptive trade practices law]—but rather is conducting an investigation into whether Twitter truthfully represents its moderation policies to Texas consumers." *Twitter*, 56 F.4th at 1172.  True to that, the Texas CID was directed at Twitter's policies as opposed to its internal decision-making (not to mention any editorial judgments).  *See Twitter, Inc. v. Paxton*, Case No. 3:21-cv-01644-MMC (N.D. Cal.) (Dkt. 1-1) (Texas CID) (requesting content moderation policies, public statements regarding those policies, and communications regarding a competitor). As the Ninth Circuit noted, Twitter in fact had willingly turned over many of the requested documents as unobjectionable.  *Twitter*, 56 F.4th at 1176.

Here, by contrast, the City Attorney is frontally attacking "the freedom . . . of the press," as textually enshrined in the First Amendment.  The City Attorney's interrogatories expressly inquire into U.S. News' editorial judgment and decision-making, as demonstrated by no less than seven interrogatories probing into U.S. News' factors for ranking hospitals.  Potter Decl. Ex. D.  Whatever window-dressing the City Attorney adds about alleged "misstatements" is mere pretext.  Detailed, concrete allegations of the complaint—drawing upon extensive, publicly-available facts, as derived from texts, meetings, and letters, together with the Subpoenas themselves—are deserving of credit, and they establish that the City Attorney is in substance trying to censor, chill, and revise a contrary journalistic view unless and until it better conforms to his own.  Compl. ¶¶ 42-62.  Most, if not all, news organizations will tout themselves as trusted, unbiased and deserving of their readership; that does not give the government *carte blanche* to issue subpoenas seeking to determine just how

trustworthy and unbiased those news organizations actually are.  Under the City Attorney's contrary conception, little would remain of the First Amendment and freedom of the press.

*Fourth*, the *Twitter* panel doubted that Twitter's speech was actually chilled, in part because Twitter had voluntarily complied with the investigation before filing suit.  "Both the allegations and declaration do not quite show chilled speech."  *Twitter*, 56 F.4th at 1175; *id*. at 1176 ("[T]o the extent Twitter argues that any actions it has taken in response to the CID create an Article III injury, those injuries are self-inflicted because the actions were voluntary.")  Here, U.S. News has made it pellucid through its extensive meet-and-confer process with the City Attorney and its response letter in July 2023 that it objects on First Amendment grounds to any such intrusive inquiries into its rankings.  Potter Decl. Ex. B.  U.S. News stood firm on this objection by filing suit immediately after receiving the Subpoenas.  As such, there is no need here, as there was in *Twitter*, "to speculate about injuries that have not and may never occur" depending on what may happen in state court.  56 F. 4th at 1176.  The extensive, months-long dealings between the parties have ripened into a fundamental dispute under the First Amendment:  Does the City Attorney have charter, as he claims and U.S. News contests, to second-guess and intrude upon how U.S. News ranks hospitals?

*Fifth*, the *Twitter* panel distinguished the Supreme Court's decision in *Bantam Books* as involving an allegation "that the law has been broken."  *Twitter*, 56 F.4th at 1177.  Here, however, the City Attorney *does* allege that U.S. News has *broken* the law.  Br. at 1, 7; Compl. Ex. C (seeking documents and information "to determine the *scope* of USNWR's *violations* of federal and California consumer protection laws") (emphases added).

*Finally*, unlike *Twitter*, state court proceedings will not adequately protect the rights of U.S. News.  In *Twitter*, the provision at issue specifically permitted an appeal to the Texas Supreme Court; the appeal provision relevant here affords no direct appeal to the California Supreme Court. Cal. Civ. Proc. Code § 904.1.  Moreover, the City Attorney here has brought an anti-SLAPP motion to strike against U.S. News' *state* law claims (Br. at 30-38), while recognizing he *cannot* bring an anti-SLAPP motion against U.S. News' *First Amendment* claim while the case sits in *federal* court (Br. at 31 n.10).  In state court, however, the City Attorney could seek to strike the First Amendment claim and seek his fees for that, too, thereby creating exposure that is antithetical to federal civil

1    rights and vindication of same.  *Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1392 (2007).[6]  Finally,

2    in state court, U.S. News would be subject to an order to "show cause" at a perfunctory hearing,

3    Gov't Code § 11188, providing far less process and protection as compared to those available in this

4    Court.  For each and all of these reasons, denying the federal forum in this case would result in

5    deprivations of U.S. News' federal rights and be a recipe for irreparable harm.

6    **E.     The Case Is Prudentially Ripe, And The City Attorney Faces No Appreciable
          Hardship If His Unconstitutional Investigation Is Enjoined**

7    
8            The City Attorney is similarly wrong in challenging prudential ripeness.  Br. at 13-16.  This

     prudential inquiry examines (1) "the fitness of the issues for judicial decision" and (2) "the hardship
9
     to the parties of withholding court consideration."  *Ctr. For Biological Diversity v. Kempthorne*,
10
     588 F.3d 701, 708 (9th Cir. 2009) (citation omitted); *cf. Fowler v. Guerin*, 899 F.3d 1112, 1116 n.1
11
     (9th Cir. 2018) ("[P]rudential ripeness is a disfavored judge-made doctrine that is in some tension
12
     with [the Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to
13
     hear and decide cases within its jurisdiction is virtually unflagging.") (citation omitted).
14
             "A claim is fit for decision if the issues raised are primarily legal, do not require further
15
     factual development, and the challenged action is final."  *Skyline Wesleyan Church v. Cal. Dep't of*
16
     *Managed Health Care*, 968 F.3d 738, 752 (9th Cir. 2020) (cleaned up).  "To meet the hardship
17
     requirement, a litigant must show that withholding review would result in direct and immediate
18
     hardship and would entail more than possible financial loss."  *Cnty. of Santa Clara v. Trump*, 250
19
     F. Supp. 3d 497, 530 (N.D. Cal. 2017) (citation omitted).
20
             Here, the claims are prudentially ripe just as they are constitutionally ripe.  *Supra* I.A-C.
21
     The issues raised are primarily legal, do not require further factual development, and the City
22
     Attorney is already taking challenged action in the form of the Subpoenas.  Moreover, the hardship
23

24   ───────────────────────

25   [6]    The federal policy to encourage vindication of constitutional rights was elucidated in
     *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978), where
26   the Supreme Court held that a fee-shifting provision under the Civil Rights Act generally permits a
     plaintiff to recover its fees upon prevailing, *without* permitting a *defendant* to recover fees *unless*
27   plaintiff's claim was "frivolous, unreasonable, or groundless."  For the City Attorney to expand his
     bid for fees to cover federal claims would be inimical to that federal policy and chilling.  Yet that
28   result would predictably follow were this litigation relegated to state court.

to U.S. News from dismissal would be irreparable, as the City Attorney would next seek to enforce his Subpoenas in state court and pursue sanctions (including fees) and contempt if U.S. News does not comply. "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 467-68 (1987). Because the commencement of state court proceedings would enable the City Attorney to possibly invoke *Younger* abstention and res judicata, *see Smith & Wesson Brands, Inc. v. Grewal*, 2022 WL 17959579, at *6-9 (D.N.J. Dec. 27, 2022), delaying this Court's adjudication could be tantamount to foreclosing it, to the detriment of federal rights and derogation of the federal forum.

By comparison, any hardship to the City Attorney is *de minimis*. He argues that "proceeding with the action would impede the City Attorney's ability to conduct a legally authorized investigation and would force the City Attorney to prematurely litigate issues that overlap with the merits of its investigation while that investigation is still ongoing." Br. at 15. But the inability to pursue an unconstitutional inquiry into how the press reports is not a cognizable hardship. Tellingly, neither the City Attorney nor his amici (including fellow California City Attorneys) cite any precedent for any purportedly "legally authorized investigation" remotely resembling this one.

The statute cited by the City Attorney to justify his investigation is inapplicable, because the statements at issue are not "advertising claim[s]." Under Section 17508, an actionable statement must meet a three-part test to fall within the purview of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.): "(1) a commercial speaker, (2) an intended commercial audience, and (3) representations of fact of a commercial nature." *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 347-48 (2004) (citing *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 964 (2002)). Neither the City Attorney's letters nor his Brief identify any commercial statements of fact. Instead, the City Attorney states that he is investigating "misstatements about the quality of the rankings and omissions about financial connections with the ranked hospitals." Br. at 2.

Statements about the "quality" of the rankings are prototypical opinions outside the purview of Section 17508. In *Bernardo*, the court held that such opinions on Planned Parenthood's website were not actionable as commercial advertisements. *Bernardo*, 115 Cal. App. 4th at 348; *see also*

*Nike*, 27 Cal. 4th at 967 (holding the California statutes "do not suppress points of view but instead suppress false and misleading *statements of fact*") (emphasis added); *ARIIX, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (rankings involve "subjective decision-making").

Because alleged "omissions" about financial connections with hospitals are not statements of any kind, they cannot be "representations of fact of a commercial nature." *See Bernardo*, 115 Cal. App. 4th at 347-48. What is more, the exhibits that the City Attorney has filed with his motion discredit this allegation. Exhibit 6 to the declaration of Alexander Holtzman, for example, is a printout of a page from U.S. News' website titled "U.S. News Hospital Marking Opportunities." Holtzman Decl. Ex. 6. The page discusses various "marketing" and "advertising" opportunities that hospitals may pursue. This alone refutes the City Attorney's assertion that "[U.S. News] fails to disclose that it receives payments from the very hospitals it ranks, which deprives the public of key information in considering the reliability of the rankings." Br. at 2. In fact, the information is available to the public on U.S. News' website.[7]

Finally, the authority relied upon by the City Attorney to issue his Subpoenas expressly requires that they be issued "in a manner consistent with the California Constitution and the United States Constitution." Gov't Code § 11184. They were not, for the reasons noted herein.

To the extent the Court must balance the harm to U.S. News versus the harm to the City Attorney, the balance overwhelmingly favors U.S. News. There is no good reason why the City Attorney should be permitted to continue perpetrating viewpoint discrimination, under fabricated auspices, at the expense of the free press.

**F.    The City Attorney's Position Effectively Bars U.S. News From Federal Court**

It bears emphasizing that the City Attorney is out to spring a Catch-22 that could prevent federal courts from ever holding him to account under the First Amendment. His instant position is couched in terms of a lack of ripeness. Yet the federal challenge he considers *ripe* is one he would presumably seek to dismiss on *abstention* grounds. Specifically, once this case is ripe enough for

---

[7]  These disclosures further undermine the City Attorney's prior argument, now apparently dropped, that U.S. News failed to comply with FTC guidelines. Br. at 21-22. For the reasons set forth in the Complaint, the City Attorney lacks jurisdiction to enforce the FTC guidelines, which U.S. News has not violated in any event. Compl. ¶¶ 46-52

the City Attorney's tastes, the City Attorney would be positioned to invoke the *Younger* abstention doctrine.  *See Younger v. Harris*, 401 U.S. 37 (1971).  By all indications, the City Attorney is bidding to slam shut the doors of federal courts in cases where federal courts are essential.

"Under *Younger*, federal courts should abstain from exercising jurisdiction when there is an ongoing, state-initiated proceeding against the putative federal plaintiff in state court."  *Lakeview*, 2021 WL 2530727, at *2.  According to the City Attorney here, federal courts altogether lack jurisdiction *before* such a state proceeding commences.  The upshot could be a perverse Catch-22: "[I]f the standing inquiry always matched the *Younger* analysis, then federal courts would be prevented from hearing Constitutional preenforcement challenges to state laws. . . .  A federal court, however, is a proper place to bring such a claim."  *Id.* at *4; *see also Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) ("By this logic, *Younger* precludes all federal preenforcement challenges to state laws.  That's obviously not right.").

As discussed in Section I.B., federal courts naturally recognize injury-in-fact resulting from a credible threat of prosecution in cases like this.  Because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod*, 427 U.S. at 373, federal courts hear such pre-enforcement challenges to avoid the chilling effect that would otherwise ensue.  And while *amici* on behalf of the City Attorney trumpet the value of government subpoena power (Dkt. 24-1), no media organization could survive if subject to subpoenas, contempt, and sanctions from every state attorney general, every city attorney, and every local regulator who may disagree with its views, all without federal courts ever having say.  The Court should reject the City Attorney's menacing, unsettling view of ripeness in the First Amendment context, and should adjudicate this case on its constitutional merits.

## II.      THE CITY ATTORNEY FAILS TO DEFEND HIS ATTEMPTED CENSORSHIP

On the merits, the City Attorney whistles past obvious problems and incontestable facts pointing to the illegality of his Subpoenas.

### A.    The Subpoenas Reflect Unconstitutional Viewpoint-Based Discrimination

The City Attorney argues that he did not engage in viewpoint discrimination under the First Amendment and California's Liberty of Speech Clause[8] because (i) he did not seek to "prohibit" any speech and (ii) because his investigation is purportedly viewpoint neutral.  Br. at 16-18.  To so argue, the City Attorney departs from controlling law and telltale facts.

Contrary to the City Attorney's misconception, the First Amendment is violated short of an absolute "prohibition" on speech.  Under the First Amendment, "a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015) (internal quotation marks omitted).  And "Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812 (2000).  Even worse than general content-based regulation is *viewpoint*-based regulation of the sort evident here.  "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.  Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995) (citations omitted).

Here, U.S. News has chronicled how the City Attorney is targeting U.S. News because he disagrees with its stated views regarding which hospitals should be ranked higher than others and which factors should weigh more heavily in determining those rankings, and because he wishes to impose his own viewpoint about how hospitals should be ranked.  Compl. ¶¶ 42-43, 53-62.  Absent his substantive faulting of the rankings themselves, the City Attorney would not be inquiring peripherally into alleged "misstatements about the quality of the rankings" or alleged "omissions about financial connections with the ranked hospitals."  Br. at 2.

---

[8]  Contrary to the City position contention (Br. at 16 n.5), U.S. News' claim under the Liberty of Speech Clause is properly before this Court.  Although state-law claims are not cognizable under § 1983, the California Supreme Court has squarely held that the Liberty of Speech clause "supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or for injunction." *Degrassi v. Cook*, 29 Cal. 4th 333, 338, (2002); *see also infra* II.B.

Moreover, the Complaint demonstrates the City Attorney's bias against U.S. News.  In his first Tweet about the rankings, the City Attorney wrote:

> Today, my Office sent a letter seeking information on @usnews hospital rankings, which have come under scrutiny for questionable methodology, bias & undisclosed financial relationships with highly ranked hospitals.  Consumers use these rankings to make consequential health care decisions, and yet there is little understanding that the rankings are fraught & that U.S. News has financial relationships with the hospitals it ranks.  The hospital rankings appear to be biased towards providing treatment for wealthy, white patients, to the detriment of poorer, sicker, or more diverse populations.  This creates perverse incentives that may be warping our healthcare system.  Hospitals are essentially "treating to the test" by investing in specialties that rack up the most points rather than in primary care or other worthy specialties.

Potter Decl. Ex. T.  His public statements have continued to echo these substantive criticisms of the rankings themselves and the persuasive force they have on readers—and to manifest his desire to revise which hospitals are ranked where by U.S. News.  Compl. ¶¶ 42-43, 53-62.  Although his brief tries to dress these same points up better for the Court's consumption, the City Attorney's substantive criticisms still come through.  *See* Br. at 2 (alleging "flaws in [U.S. News'] methodology," "skewed and inequitable healthcare recommendations," and "significant concerns regarding the veracity of [U.S. News'] claims about the quality of its rankings").

Simply reading the interrogatory Subpoena confirms that the City Attorney is second-guessing and faulting the content and viewpoints reflected in the existing rankings.  In particular, seven of the interrogatories inquire into the basis for U.S. News' rankings and methodology:

> Describe USNWR's basis for stating that its Best Hospitals rankings are "[h]ow to find the best medical care in 2023," as stated on the following webpage: https://health.usnews.com/best-hospitals;

> Describe USNWR's basis for according 19 times greater weight to cystic fibrosis treatment than to sickle cell disease treatment in the Children's Hospital rankings;

> Describe how, if at all, USNWR has incorporated primary and preventive care in each annual version of the Best Hospitals rankings;

> Describe USNWR's basis for not including measures of health equity in its rankings of adult Hospitals;

> Describe how USNWR has adjusted the Medicare fee-for-service dataset to reflect actual patient populations in each annual version of its Best Hospitals rankings;

Describe USNWR's basis for believing that Medicare outcomes information from at least 18 months ago accurately reflects current Hospital outcomes;

Describe USNWR's basis for using opinion surveys as the exclusive method for ranking Hospitals in ophthalmology, psychiatry, and rheumatology and for incorporating opinion surveys into other specialties ranked by USNWR.

Potter Decl. Ex. D at 3-4 (Rog. Nos. 7-13).[9]  The City Attorney could just as easily demand that the San Francisco Chronicle, the New York Times, or countless other news organizations disclose their bases for reviewing a product, movie, candidate, or hospitals as many do.  This is textbook viewpoint discrimination by a government official who thinks he knows better than the press entity what it should be reporting and how.  *See Gibson v. Fla. Legislative Comm.*, 372 U.S. 539, 567-68 (1963) ("Since what an editor writes or thinks is none of the Government's business . . . it has no power to investigate the capacities, ideology, prejudices, or politics of those who write the news.") (concurrence, Douglas, J.).  Unless checked, the City Attorney's theories imperil all media companies who publish opinions or news stories with which a government official may disagree.

It is also conspicuous that the City Attorney largely ignores U.S. News' allegation—based on a host of credible, undisputed facts—that governmental authority is being coopted in order to weaponize the viewpoints of private individuals such as Yale Law School's Heather Gerken.  Br. at 19.  While the City Attorney claims these allegations rely on "implausible conjecture," in fact the allegations are derived from publicly-available sources, as quoted verbatim.  Compl. ¶ 66.  It is not conjecture, for instance, that the attorney who has been on point for the investigation and subpoenas, Sara Eisenberg, is the City Attorney's liaison to the Yale Law Clinic and runs it in partnership with Dean Gerken so as "to bring suits that most public interest groups cannot bring" and to deploy "Yale students work[ing] with deputy city attorneys . . . through every stage of the litigation process, from brainstorming possible suits to filing complaints to motions practice."  Compl. ¶¶ 65-68 (quoting Yale's website).  Nor is it conjecture that Dean Gerken "has become one of the leading critics of the rankings of U.S. News," particularly its ranking and methodologies, in respects that the City

_____

[9]  To downplay the threat to the First Amendment, the City Attorney focuses on his requests for U.S. News's business records (Br. at 7), but those requests flow from his impermissible assault on U.S. News's constitutional protections.  Nor would anything stop any regulator around the country from oppressing *any* for-profit member of the press with such inquiries into its "business" records.

1   Attorney now "mirrors."  *Id*. at 69-70.  The City Attorney does not deny any of these facts.  In

2   assessing likely success, therefore, this Court should take Yale's ostensible role as further indication

3   that unconstitutional viewpoint discrimination is at work.

4          "Premised on mistrust of governmental power, the First Amendment stands against attempts

5   to disfavor certain subjects or viewpoints or to distinguish among different speakers, which may be

6   a means to control content."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010).

7   A law that regulates speech based on its particular content or viewpoint is "presumptively

8   unconstitutional and may be justified only if the government proves that they are narrowly tailored

9   to serve compelling state interests."  *Reed*, 576 U.S. at 163.  Unable to satisfy strict scrutiny, the

10  City Attorney devotes all his efforts to trying to forestall it.  At the same time, the scattering of

11  doctors (unaccompanied by any established association) who support him as amici well confirm that

12  they support his efforts precisely because they, like him, fundamentally disagree with U.S. News

13  views on how hospitals should be ranked.  *Gibson*, 372 U.S. at 545 (holding that state legislative

14  subpoenas violated First and Fourteenth Amendments); *Watkins v. United States*, 354 U.S. 178, 197

15  (1957) ("Clearly, an investigation is subject to the command that the Congress shall make no law

16  abridging freedom of speech or press or assembly.").

17         In sum, this is a case where private viewpoint discrimination is being perpetrated via

18  governmental Subpoenas.  The constitutional violation is stark, just as the threatened chill is obvious

19  and profound.  Dismissal should be denied and a preliminary injunction granted.

20     **B.     California's Reporters' Shield Laws Support The Requested Injunction**

21         The Reporters' Shield Law embedded in the California Constitution and Code of Evidence

22  states that a journalist "shall not be adjudged in contempt by a [court] for refusing to disclose the

23  source of any information . . . , or for refusing to disclose any unpublished information obtained or

24  prepared in gathering, receiving or processing of information for communication to the public."

25  Cal. Const., art. I, § 2, subd. (b); Cal. Evid. Code § 1070.  U.S. News has explained that the

26  Subpoenas likely violate the Shield Law.  *See* P.I. Mot. at 28-29, 40-42.  In response, the City

27  Attorney does not dispute that U.S. News is a protected member of the press.  Instead, he focuses

28

on arguing that Shield Laws create no private cause of action and that no claim arises until a challenger gets held in contempt.  Br. at 22-25.  But the City Attorney errs in both respects.

As to the cause of action, California law makes clear that private rights of action need not be explicitly conferred unless damages are sought.  Because the people can always keep their government within legal bounds, claims for declaratory and injunctive relief are always available to force the government to comply with the California Constitution—the provisions of which are "self-executing."  *Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 307  (2002) (citing Cal. Const. art. 1, § 26 ("The provisions of this Constitution are mandatory and prohibitory.")); *see Degrassi*, 29 Cal. 4th at 333 (applying principle to claim under California Liberty of Speech Clause).

As to the contempt requirement, the City Attorney cites *New York Times Co. v. Superior Court* for the proposition that the Shield Law protects only against "a judgment of contempt."  51 Cal. 3d 453, 456 (1990).  But, as the City Attorney acknowledges in a footnote (Br. at 23 at n.8), the California Supreme Court there proceeded to evaluate, even outside the contempt context, how a claim under the Shield Law is properly analyzed.  *Id.* at 461-64.  Other California courts have followed that lead by taking cognizance of the Shield Law in cases not involving contempt.  *See, e.g.*, *O'Grady v. Superior Ct.*, 139 Cal. App. 4th 1423, 1438 (2006) (deciding Shield Law claim upon denial of protective order without contempt judgment entered).  Nothing prevents this Court from doing likewise as it decides, for purposes of declaratory and injunctive relief, whether the Subpoenas are likely invalid, including under the Shield Law, and, for purposes of irreparable harm, whether the City Attorney could ever realistically expect to see the Subpoenas enforced.

On the merits, the City Attorney lacks any persuasive argument as to why the Subpoenas supposedly square with the Shield Law.  He claims that requests do not request information covered by the Shield Law because they seek information relating to U.S. News' business, rather than journalistic, activities.  Br. at 25-26 (citing Compl. Ex. D (Interrogatories 1-6, 14)) and *id.* Ex. E (all Requests).  But the plain text of Shield Law refutes the City Attorney's argument.  It protects from disclosure "any *unpublished information* obtained or prepared in gathering, receiving, or processing of information for *communication to the public*."  Cal. Const., art. I, § 2, subd. (b) (emphasis added); Cal. Evid. Code § 1070.  Here, all subpoena requests seek unpublished information; the City

Attorney does not even suggest otherwise.  The interrogatories seek information regarding which hospitals have paid U.S. News for any purpose, including badge licensing, data, advertising, and promotions.  Compl. Ex. D. (Interrogatories 1-6, 14).  The document requests likewise demand agreements between U.S. News and hospitals, as well as with certain other partners who assist in preparing the Best Hospital rankings.  *Id.* at Ex. E.  This information is received and processed as part of U.S. News' journalistic operations, all of which focus on communicating with the public.[10]  Further, these inquiries impermissibly invade U.S. News' relationships with one of its key sources of data—hospitals—upon which its rankings are based.

Nor can the City Attorney retroactively gerrymander the Subpoenas to make them compliant.  Br. at 26.  Because no regard whatsoever has been paid to the Shield Law, it should be apparent that the Subpoenas likely violate it, which itself establishes U.S. News' likely success for purposes of a preliminary injunction.  Nor can the City Attorney obviate the legal defect by suggesting that U.S. News can carefully craft responses steering around the covered information.  The whole point of the Shield Laws is to protect U.S. News from disclosing "any unpublished information" surrounding its rankings, while a central, express thrust of the Subpoenas is to pry into such information.

## III.    THE *NOERR-PENNINGTON* DOCTRINE AND CALIFORNIA PRIVILEGE LAW ARE IRRELEVANT TO THIS DISPUTE

### A.    The *Noerr-Pennington* Doctrine Does Not Bar U.S. News' Claims

At its inception and at its core, the *Noerr-Pennington* doctrine is a narrow rule of statutory construction, developed by courts in the antitrust context, to avoid statutory interpretations that might infringe petitioning rights.  *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-31 (9th Cir. 2006) (explaining history).  Although it has sometimes been applied beyond that context, it cannot possibly, as the City Attorney contends, trump the First Amendment itself when enforced under Section 1983.  The City Attorney resorts to absurdity in arguing that, because his Subpoenas might

---

[10]   The one case cited by the City Attorney, *Rancho Publications v. Superior Court*, 68 Cal. App. 4th 1538 (1999), is inapposite.  There, the publisher could not obtain the Shield Law's protections because it had ostensibly done nothing but sell space on its pages to the anonymous originators of an allegedly tortious publication.  *Id.* at 1546.  At the same time, the court recognized that "paid advertorials" could be protected for "legitimate journalistic purposes."  *Id.* at 1545-46.

one day contribute to an enforcement action (the supposed petitioning), government is immunized against any legal challenge to their issuance. This would turn the First Amendment on its head—subordinating the citizenry's freedom of expression while giving government *carte blanche* to chill that expression via investigation and prosecution, as dubbed "petitioning." Neither the *Noerr-Pennington* doctrine nor anything else justifies such a topsy-turvy result.

*First*, as a matter of first principles, the First Amendment states that "Congress shall make no law bridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. By its terms, the amendment protects the *people from government overreach*; it does not protect the *government from the people's invocation of their rights.* Indeed, the Supreme Court has indicated that the First Amendment does not apply to government speech. *Pleasant Grove City v. Summum* 555 U.S. 46, 467-68 (2009). No more should it apply to the government's petitioning activities. Thus, the *Noerr-Pennington* doctrine should be irrelevant to lawsuits, like this one, directed at government entities as such.[11] Other courts have so recognized. *See Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1086 (5th Cir. 1988) ("*Noerr-Pennington* protection does not apply to the government, of course, since it is impossible for the government to petition itself within the meaning of the first amendment."). Although the Ninth Circuit has held otherwise, *see Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009), U.S. News preserves this argument for further review. And even though this Court cannot rely on the First Amendment itself to remove *Noerr-Pennington* from the analysis, it should reject any expansion of the doctrine.

*Second*, the City Attorney overlooks a categorical limit on *Noerr-Pennington*: It applies only when a plaintiff "seeks to hold Defendants *liable* for their petitioning conduct," not when, as here, the plaintiff *seeks to challenge the constitutionality of a state law or government action*. *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 540-41 (9th Cir. 2022) (emphasis added). In heeding

---

[11]  Because U.S. News sued Mr. Chiu is his official capacity, the claims operate against his office as a government entity. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) (holding that official-capacity claims are "claims against the county").

this distinction, the Ninth Circuit has held that *Noerr-Pennington* applies to a case seeking damages (that is, liability) under § 1983 for a constitutional violation, while recognizing it does *not* apply to parallel claims seeking "declaratory and injunctive relief that would apply . . . only prospective[ly]." *Id.* at n.6.  This distinction precludes the City Attorney's *Noerr-Pennington* argument, for U.S. News is seeking solely to challenge the Subpoenas' constitutionality and to enjoin their prospective enforcement, not to hold the City Attorney monetarily liable for his conduct.

*Third*, *Noerr-Pennington* does not apply because the City Attorney has not shown that issuing the Subpoenas was protected *petitioning activity*—a necessary element of *Noerr-Pennington*.  *See B&G Foods*, 29 F.4th at 535.  Only the filings of "petitions," things like "a complaint, an answer, [or] a counterclaim" are truly covered by the Petition Clause, not "litigation conduct generally."  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Although "conduct incidental to" a petition can still be protected, *id.*, such incidental activity is protected petitioning only if "the connection between [the incidental activity] and access to the courts is sufficiently close."  *Sosa*, 437 F.3d at 936.  This rule applied to discovery activity, like issuing subpoenas, *in active litigation*.  *See Freeman*, 410 F.3d at 1184.  But those cases—many of which the City Attorney relies on (Br. at 28)—do not apply here because no suit has yet been filed.

In the pre-litigation context, the only type of incidental conduct found by the Ninth Circuit to have a sufficiently close relationship to actual petitioning activity is sending pre-suit demand letters.  *See Sosa*, 437 F.3d at 936.  Contrary to the City Attorney's statements and altered quotes from *Sosa* (Br. at 27), however, *Sosa* did not hold that *all* "investigating and issuing investigatory subpoenas" fall within the *Noerr-Pennington* doctrine.  Instead, *Sosa* conducted a granular analysis specifically of pre-suit demand letters in reasoning why they are covered.  *Sosa*, 437 F.3d at 936-37.  Those reasons do not reach these investigatory Subpoenas, which did not frame the parties' views over U.S. News' underlying compliance, are not covered by any statutory privilege, and would not obviate litigation.  Indeed, because the City Attorney is affirmatively denying that the Subpoenas threaten litigation, he should not simultaneously be invoking *Noerr-Pennington*.

*Fourth*, accepting the City Attorney's view would have chilling consequences.  It follows from the City Attorney's argument that search warrants, indictments, citations, sanctions,

foreclosures, etc., are all immunized against challenge by *Noerr-Pennington* simply because they may spawn judicial proceedings and therefore qualify as "petitioning" activity.  The upshot would foreclose § 1983 claims for police brutality, illegal searches and seizures, malicious prosecution, takings, and so on.  Ninth Circuit precedent of course stands to the contrary.  *See, e.g.*, *Butler v. Elle*, 281 F.3d 1014, 1027-28 (9th Cir. 2002) (addressing § 1983 claim for unlawful search and seizure); *Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019) (addressing § 1983 claim for malicious prosecution, among others).  Indeed, it follows from the City Attorney's position that U.S. News cannot challenge the Subpoenas even in *state* court, where *Noerr-Pennington* is no less operative. His all-encompassing account of *Noerr-Pennington* is no sounder in this forum than in that one.

*Finally*, setting aside all the above troubles and assuming that *Noerr-Pennington* might immunize governmental subpoenas from challenge, these Subpoenas are subject to the "sham exception" to the *Noerr-Pennington* doctrine.  That exception is rooted in the understanding that sham litigation is not true petitioning worthy of First Amendment protection.  *See Sosa*, 437 F.3d at 938.  And it applies to both the "discovery conduct" and to the "underlying petition" to which discovery relates.  *Id.* at 932; *see Theofel v. Farey-Jones* 359 F.3d 1066, 1079 (9th Cir. 2004) (finding that issuing a subpoena was a sham).

As relevant here, the sham exception applies because the Subpoenas are "objective[ly] baseless" and because the City Attorney's "motive in [issuing them] was unlawful.  *B&G Foods*, 29 F.4th at 537-38.  *First*, the City Attorney's Subpoenas are objectively baseless because they facially violate the U.S. and California Constitutions by perpetrating impermissible viewpoint discrimination.  *See supra* II.A.  They also violate the Reporters' Shield Law.  *See supra* II.B.  Thus, no reasonable City Attorney would have expected compliance with the Subpoenas.  *See B&G Foods*, 29 F.4th at 538 (holding that litigation activity is objectively baseless when "no reasonable litigant could realistically expect success") (citation omitted).  *Second*, the City Attorney's reason for issuing them was also unlawful.  His own statements lay bare the viewpoint discrimination that he is engaging in by issuing the Subpoenas.  *See P.I. Mot. 7-11.  And that viewpoint discrimination is further highlighted by Yale Law School's collaboration with the City Attorney.  As discussed *supra* p. 23, the Dean of Yale Law School—an outspoken critic of U.S. News—appears to have co-opted

the City Attorney's office so as to impose an opposing viewpoint on U.S. News.  *See* P.I. Mot. 12-14.  In these circumstances, the Subpoenas reflect bad faith and a calculated, concerted effort by the government in combination with private partisans to chill and penalize a disfavored viewpoint.  *See B&G Foods*, 29 F.4th at 538 (motive prong can be satisfied when the defendant used "government processes, as opposed to the outcome of those processes, as a mechanism to injure").

**B.      The California Privilege Law Does Not Protect The City Attorney's Issuance Of The Subpoenas**

The City Attorney also seeks, improperly, to foreclose the Shield Law challenge to his Subpoenas based on the "California Privilege Law" found in Civil Code Section 47(a).  Br. at 29-30.  That section protects a "publication or broadcast" that is made "in the proper discharge of an official duty."  Cal. Civ. Code § 47(a).  When triggered, the privilege is "absolute and [is] unaffected by the existence of malice."  *Royer v. Steinberg*, 90 Cal. App. 3d 490, 500 (1979).  That alone shows why it does not apply here.  Were the City Attorney correct, *all* government subpoenas would be beyond reproach, no matter how flagrantly they violate the California Constitution.  Suffice it to note that (1) a subpoena is not a "publication or broadcast"; and (2) Section 47 protects against tort liability, not declaratory and injunctive claims seeking simply to hold government in check.

*First*, the City Attorney omits to cite the actual text of Section 47, which states that it applies only to "publication[s] or broadcast[s]."  Section 47 does not immunize the City Attorney's *conduct*, such as issuing subpoenas against a news organization.  That *conduct* is what grounds U.S. News' Shield Law claim, as the City Attorney admits when arguing that the anti-SLAPP motion applies. *See* Br. at 32.  Nor is U.S. News separately complaining to the effect that the City Attorney otherwise published or broadcasted the text of the Subpoenas to the larger public.  Because U.S. News is not challenging any publication or broadcast, as distinct from a governmental issuance directed against U.S. News as a regulated entity, invocation of Section 47(a) is sorely out of place.

The cases cited by the City Attorney confirm why Section 47(a) is inapplicable.  They all relate to *statements* made public ("publications") by government agencies reflecting investigations and findings—quite different from the coercive governmental command at issue in the current action. *See Pacaso Inc. v. City of St. Helena*, 2021 WL 2987144 (N.D. Cal. July 15, 2021) (Orrick,

J.) (City Attorney's public letter); *Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075 (2008) (public letter by director of department of corrections); *Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604 (2006) (public statements by City Attorney); *Kilgore v. Younger*, 30 Cal. 3d 770 (1982) (public statements made by Attorney General).[12]   Here, again, U.S. News is not challenging any "publication" (*e.g.*, tweets) that the City Attorney made regarding the rankings; it challenges the City Attorney's issuance of coercive Subpoenas.

Moreover, to the extent the City Attorney relies on cases purporting to extend the protections of Section 47(a) to any "statement" whatsoever, his argument fails for the same reason.  U.S. News is challenging the constitutionality of a government subpoena.  The fact that all governmental dictates must be communicated orally or in writing cannot transform the issuance into a privileged communication.  Otherwise, any challenge under California law to a statute, ordinance, or any government action would be categorically foreclosed by Section 47(a) because all must necessarily be communicated orally or via written statements.  To state that view is to refute it.  Indeed, the California Supreme Court has rejected a similar line of reasoning in the anti-SLAPP context— holding that simply because a government decision is communicated in writing does not transform it into a protected writing under the anti-SLAPP statute.  *See infra* IV.B. (explaining distinction in detail).  The same reasoning applies here.

*Second*, even setting aside the above, the purpose of Section 47 is to "bar[] liability in tort for the making of certain statements."  *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 360 (2004).  That is, "the purpose of the official immunity accorded government officers is to avoid the 'chilling effect' which the fear of *damages suits* would have on the energetic performance of the public's business."  *Younger*, 30 Cal. 3d at 782 (emphasis added).  Although the privilege has since been extended beyond the tort context, it would make no sense to extend its protection here—in a case not seeking to *impose liability at all* for any actual statements made by the City Attorney (much

---

[12]   *Valley Surgical Ctr. LLC. v. Cnty. of Los Angeles*, 2016 WL 7017208, at *6 (C.D. Cal. Dec. 1, 2016) also dealt with a report that was made public, but did not address whether the subpoena was privileged, and, is inapposite given the court applied Section 47(b), which the City Attorney has not contended applies here.

1   less for a tort) and instead challenging the constitutionality of his Subpoenas.  Notably, the City

2   Attorney cites no cases that apply Section 47(a) immunity to a case like this.  All involve defamation

3   or other similar tort claims.  The Court should not break new ground here.

4          Indeed, one of the City Attorney's cases, *Pacaso*, illustrates the distinction between damages

5   suits for torts, on the one hand, and claims challenging the constitutionality of government action,

6   on the other.  There, the St. Helena City Attorney invoked the anti-SLAPP statute to strike only the

7   tort claim for interference with economic advantage based on a letter that the City Attorney claimed

8   was protected by Section 47(a).  *See Pacaso*, 2021 WL 2987144 at *5.  There was no suggestion

9   that either the anti-SLAPP statute or the Section 47 privilege could apply to the *other* claims seeking

10  declarations that certain ordnances were unconstitutional and otherwise unlawful.  *Id.*  In this

11  respect, too, the City Attorney appears to be trying to go where no California official has ever gone.

12  **IV.   THIS COURT SHOULD DENY THE CITY ATTORNEY'S ANTI-SLAPP MOTION**

13         By the California Legislature's own telling, the anti-SLAPP statute is subject to "disturbing

14  abuse" that actually "undermine[s] the exercise of the constitutional rights of freedom of speech and

15  petition for the redress of grievances, contrary to the purpose and intent of Section 425.16."  Code

16  Civ. Proc. § 425.17(a).  This case exemplifies that abuse.  The City Attorney asks, without irony,

17  for this Court to punish a press entity for seeking declaratory and injunctive relief against chilling,

18  coercive action by the government on the theory that the speech and petitioning rights of the

19  government itself are somehow imperiled.  If the governmental abuse were not already evident

20  enough from U.S. News' Complaint, it should be from the City Attorney's anti-SLAPP motion.

21  Crediting the City Attorney's upside-down view of how courts should "protect" expression would

22  cripple the citizenry's ability to challenge the legality of all measure of government action, whatever

23  form it takes—be it subpoenas, ordinances, search warrants, statutes, or orders—by "chill[ing] the

24  resort to legitimate judicial oversight over potential abuses of legislative and administrative power."

25  *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 181 Cal. App. 4th 1207, 1225 (2010).

26         The City Attorney's anti-SLAPP motion fails for three independent reasons.  *First*, claims

27  challenging the validity of government action are not properly subject to anti-SLAPP motions.

28  *Second*, the City Attorney has failed to show that the relevant act of issuing the specific Subpoenas

here was "protected activity" under Sections 425.16(e)(2) or (e)(4). *Third*, U.S. News has demonstrated that each California claim is legally sufficient and factually substantiated.

### A. Claims Against the Government Challenging The Legality Of Government Action Are Not Subject To The Anti-SLAPP Statute

It seems to escape the City Attorney that U.S. News sued Mr. Chiu in his official capacity—meaning the claims are against his office, as such. *See Mendiola-Martinez*, 836 F.3d at 1250. Under the anti-SLAPP statute, California courts have long distinguished between "claims seeking to impose liability against a governmental entity" and those "seeking to impose liability for the expressive activity of officials" *See Area 51 Prods., Inc. v. City of Alameda*, 20 Cal. App. 5th 581, 599 (2018). Section 425.16 is "concerned with actions against public officials *as individuals,*" which actions engender special concerns precisely because it is "not necessary to sue government officers in *their personal capacities* to challenge the propriety of a government action." *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 426 (2016) (emphasis added). As a general rule, claims against government entities do not implicate the anti-SLAPP statute. *See Laker v. Bd. of Trustees of California State Univ.*, 32 Cal. App. 5th 745, 775 (2019).

When it comes to suing government entities, two related lines of cases show that U.S. News does not trigger the anti-SLAPP statute by challenging the City Attorney's Subpoenas as incompatible with the California Constitution. The first line holds that claims challenging ordinances or statutes are not subject to anti-SLAPP motions. For example, in the *City of Cotiati v. Cashman*, the California Supreme Court held that a declaratory-judgment claim was not "subject to" the anti-SLAPP statute because the claim arose from "a dispute . . . between the parties over the constitutionality of" an ordinance. 29 Cal. 4th 69, 73-74, 80 (2002). Other California courts have elucidated the point: Extending "the anti-SLAPP statute to litigation merely challenging the application, interpretation, or validity of a statute or ordinance would expand the reach of the [anti-SLAPP] statute way beyond any reasonable parameters." *USA Waste of California, Inc. v. City of Irwindale*, 184 Cal. App. 4th 53, 66 (2010); *see also Vacation Rental Owners v. City of Rancho Mirage*, 2023 WL 4445297, at *4 (Cal. Ct. App. July 11, 2023) (claims seeking to prohibit enforcement of an unconstitutional ordinance were not subject to an anti-SLAPP motion).

Local subpoenas are indistinguishable from local ordinances for these purposes. The subpoena no less than the ordinance reflects official exercise of government's coercive power against regulated persons. And there is no more reason why citizens should trip anti-SLAPP traps when testing the legality of the subpoena in court as compared to an ordinance or statute.

A second line of cases leads to the same conclusion. These cases focus on whether certain acts of governance are valid. Previously, the City of San Francisco has conceded that, under this line of cases, the "anti-SLAPP statute is inapplicable to lawsuits against a government entity for acts of governance, even though some government speech is necessarily incidental to the government action." *Yee v. City & Cnty. of San Francisco*, 2016 WL 234462, at *8 (Cal. Ct. App. Jan. 20, 2016). The same holds here: U.S. News sued Mr. Chiu in his official capacity for an act of governance under the law, *i.e.*, issuing the Subpoenas.[13] The City Attorney's instant invocation of the anti-SLAPP statute is especially incongruous given settled law establishing that claims against government entities challenging "[a]cts of governance mandated by law, without more," are not subject to anti-SLAPP motions, because those governance acts "are not exercises of free speech or petition" rights. *San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Employees' Ret. Assn.*, 125 Cal. App. 4th 343, 354 (2004); *see also Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* 225 Cal. App. 4th 1345, 1354-55 (2014) (holding that claims against government bodies challenging government decisions are not subject to anti-SLAPP motions).

Again, U.S. News does not seek damages for anything the City Attorney uttered; it seeks only to challenge the government decision that the City Attorney took for his Office in issuing illegal Subpoenas. Questioning the legality of his Subpoenas, as an act of governance, should be beyond the scope of the anti-SLAPP statute. A contrary ruling would "burden[] significantly" the people's ability to "challenge governmental action." *USA Waste of California*, 184 Cal. App. 4th at 65. Tellingly, the City Attorney does not cite a single case applying the anti-SLAPP statute to claims challenging a governmental subpoena (or any such official government action).

---

[13] Per the City Attorney, his claimed authorization for the Subpoenas comes from the California Business and Professional Code. *See* Br. 34 at n.12 (noting the legal authority to issue subpoenas).

That is not to say government entities can never invoke the anti-SLAPP statute.  U.S. News recognizes that public entities can do so for their *speech*, as opposed to their *actions*.  Take *Vargas v. City of Salinas*, 46 Cal. 4th 1 (2009).  There, the California Supreme Court found that the anti-SLAPP statute barred a defamation claim against the city based on statements on the city's website advocating for a ballot initiative.  *Id.* at 19.  Such claims, unlike these, seek to impose financial liability based simply on the persuasive effects speech has on listeners.  Unlike in *Vargas* and a series of such cases the City Attorney cites (*see* Br. at 33-34), this case concerns the *coercive* effects the City Attorney's Subpoenas have on *U.S. News*.

For example, *Maranatha Corrections* addressed a defamation claim based on a publicized letter sent while negotiating a contractor's right to retain revenue from inmate telephone calls at a prison.  158 Cal. App. 4th at 1081.  Likewise, in *Pacaso*, this Court found that the anti-SLAPP statute barred a claim for intentional interference with prospective economic advantage because it arose from the allegedly "intimidat[ing] and threaten[ing]" statements made in the city attorney's letter as part of a zoning-violation investigation.  2021 WL 2987144, at *6-7.  Finally, in *City of Costa Mesa*, the court addressed claims against city employees for alleged slander, trade libel, and intentional interference with prospective economic advantage.  214 Cal. App. 4th at 375.  In finding those claims fell within the anti-SLAPP statute, the court emphasized that the plaintiff was "suing for relief based on the oral statements, *not challenging the underlying acts* (the refusal of the City and its employees to issue licenses)." *Id.* (emphasis added).

While citing the City Attorney's tweets and letters disparaging U.S. News' rankings as proof of the City Attorney's motivations, U.S. News has been clear from the outset that it is *not* challenging the legality of *those*.[14]  Indeed, U.S. News has been explicit and reiterates that the City Attorney "is entitled" to "his personal views." *See e.g.*, Compl. ¶ 63.  What U.S. News challenges is the constitutionality of the City Attorney's actions.  And such a challenge falls categorically outside the anti-SLAPP statute for reasons California courts have well explained.

---

[14]   *See* Br. 32; *see also Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1065 (2017) (explaining the "distinction between speech that provides the basis for liability and speech that provides evidence of liability").

1

2

### B.      The Act Of Issuing Government Subpoenas Is Not "Protected Activity" Under Section 425.16(e)

3

If the Court nonetheless analyzes whether issuing the Subpoenas might specifically be protected under Sections 425.16(e)(2) and (e)(4), the City Attorney's arguments fail there too.

4

5

**Section 425.16(e)(2).** This section protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." That provision does not apply here. The City Attorney would treat the Subpoenas as "writing[s]" in connection with a government investigation (Br. at 32-35), but thereby distends Section 425.16(e)(2) in a way that it would cover *virtually everything* the government does. To state the obvious, the mere fact that a government decision must necessarily be "communicated orally or in writing" does not bring the claim within subsection (e)(2). *Miszkewycz v. Cnty. of Placer*, 317 Cal. Rptr. 3d 465, 472 (2024). That much is settled and dictated by common sense. For instance, in *Park*, the California Supreme Court rejected an anti-SLAPP motion over a public university's decision to deny tenure to a professor. 2 Cal. 5th at 1068. In doing so, it dispelled any notion that subsection (e)(2) was satisfied simply because the "tenure decision may have been communicated orally or in writing." *Id.*; *see also Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1014, 1019-20 (2021) (holding that disciplinary actions, even when reduced to speech or writing, are not protected under subsection (e)(2)); *see also Supershuttle Int'l, Inc. v. Lab. & Workforce Dev. Agency*, 40 Cal. App. 5th 1058, 1067 (2019) (same).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Without grappling with the above authorities, the City Attorney relies on two cases allegedly showing that the act of issuing a subpoena—simply because it reduces to writing—must fall under subsection (e)(2). *See* Br. at 33. But neither does. In *Mallard v. Progressive Choice Insurance, Co.*, a case *between private parties*, the court held that claims for invasion of privacy and abuse of process should be dismissed under the anti-SLAPP statute because the claims were based on the statements in a private subpoena attending an arbitration. 188 Cal. App. 4th 531, 541-44 (2010). Similarly, in the City Attorney's other case, the anti-SLAPP statute barred plaintiff's claims for unfair competition and intentional interference with business relationships because the claims arose

20

21

22

23

24

25

26

27

28

1  from certain "allegedly disparaging statements" made in litigation, including in subpoenas.  *Tuck*

2  *Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003 (N.D. Cal. 2010).

3      These cases stand at most for the modest proposition that statements made in a subpoena *can*

4  fall within the anti-SLAPP statute, *not* that they do as a rule.  Neither case suggests that speech is

5  imperiled and the anti-SLAPP statute is triggered simply because a challenge questions the legal

6  authority for issuing a subpoena.  Conversely, the claims that triggered anti-SLAPP scrutiny in both

7  of those cases concerned the persuasive effect that the subpoena-contained statements had on private

8  business relationships.  In no event does either case change the settled rule that government

9  decisions do not fall within subsection (e)(2) simply because they must be communicated in

10  writing—which is the City Attorney's only theory for qualifying under this provision.

11      **Section 425.16(e)(4).**  This section—known as the "catch all" provision—applies to "any

12  other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional

13  right of free speech in connection with a public issue or an issue of public interest."  To flail for this

14  provision, the City Attorney relies *FilmOn*'s two-step framework. Br. at 35-38.  But that framework

15  determines only whether the activity was "in connection with a public issue or an issue of public

16  interest."  *See Bonni*, 11 Cal. 5th at 1020 n.9 (citation omitted).  To determine whether conduct

17  furthered "the exercise of the constitutional right of petition or the constitutional right of free

18  speech"—the key question here—the *Wilson* framework applies.  *Id.*

19      And *Wilson* defeats the City Attorney's reliance on subsection (e)(4).  In *Wilson*, the

20  California Supreme Court explained that the "catch-all" provision serves primarily to protect

21  expressive conduct—"the burning of flags, the wearing of armbands, and the like."  *Wilson v. Cable*

22  *News Network, Inc.*, 7 Cal. 5th 871, 893 (2019).  Beyond that, the statutory language "in furtherance"

23  of speech or petitioning can also cover "certain conduct that, though itself [contains] no expressive

24  elements, facilitates expression."  *Id.*  Such "ancillary acts" must bear a "substantial relationship" to

25  the defendant's "*ability* to [petition or] speak on matters of public concern" before they can qualify

26  for anti-SLAPP protection.  *Bonni*, 11 Cal. 5th at 1020 (emphasis added).  As to that, it does not

27  suffice that an action be the but-for cause of future speech or petitioning.  *Id.* at 1022.

28

1      Here, the City Attorney does not address *Wilson*, let alone carry his burden of proof under

2   it.  Nor could he.  There is no indication how issuing the Subpoenas is integral to his "ability" to

3   engage in any future speech or petitioning.  *See supra* III.B.  And it is thoroughly implausible that

4   a catch-all provision might properly swallow the larger rule, discussed *supra*, that challenges to

5   official government action, *qua* government action, are not subject to the anti-SLAPP statute.

6      Even under the *FilmOn* framework, the City Attorney fails at step two, which asks whether

7   the defendant's activity "contributes" to the public discussion of the public issue.  This is met when

8   the defendant—"through public or private speech or conduct—participated in, or furthered, the

9   discourse that makes an issue one of public interest."  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.

10  5th 133, 151 (2019).  Here, the City Attorney claims that the Subpoenas contributed to the public

11  discourse because they may advance the City's investigation and lead to an enforcement action—

12  both of which, the City asserts, would further "larger public discussion."  Br. at 37.  That argument

13  fails.  *First*, the correct question is not whether *the investigation or enforcement action* would further

14  the public discourse, but whether *issuing the subpoena*, as such, would do so.  On that point, the

15  City Attorney has no reason why the Subpoenas did anything more than his unchallenged tweets,

16  press statements, and interviews have.  *Second*, the City Attorney cites no case holding that a

17  government investigation or commencement of an enforcement action, as such, further the public

18  discourse.  To so hold here would have far-reaching implication:  arrests, indictments, and seizures

19  (to name just a few) would all meet the test.

20     The cases that the City Attorney does cite are not remotely apposite.  Obviously, soliciting

21  investors for a public documentary on the refugee crisis in Syria would directly further public

22  discourse on that important topic.  *Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1032 (2019).  Likewise,

23  a letter by concerned parents to prompt Catholic authorities to act against bullying and harassment

24  in schools would also promote discourse on an important topic.  *Hicks v. Richard*, 39 Cal. App. 5th

25  1167, 1177 (2019).  And finally, disclosing registered sex offenders to neighbors likewise furthers

26  the public discourse on the important topic of child safety.  *Cross v. Cooper*, 197 Cal. App. 4th 357,

27  378 (2011).  Simply reciting those facts establishes how much these differ.

28

### C.     U.S. News Is Likely To Prevail On Its California Claims

Setting all the above aside, the City Attorney's anti-SLAPP motion should still be denied because U.S. News has established that "there is a probability that [it] will prevail" on the claims. Code Civ. Proc. § 425.16(b)(1).  U.S. News agrees with the City Attorney that this step is evaluated under the pleading standard of Rule 12(b)(6).  And as explained above, *supra* § II, U.S. News has met that standard for its claims under the Liberty of Speech Clause and the Reporters' Shield Law.

## V.     U.S. NEWS IS ENTITLED TO A PRELIMINARY INJUNCTION

### A.     U.S. News Has Demonstrated A Likelihood of Success on the Merits

For the above reasons, U.S. News' likelihood of success on the merits is clearcut.  Tellingly, the City Attorney focuses most of his arguments on seeking total dismissal for supposed lack of ripeness.  Once that fails, he does not even attempt to justify large chunks of the Subpoenas, nor does he address his own contemporaneous confessions to the viewpoint discrimination that drove them, nor does he deny strong factual indicia that he is improperly imposing the viewpoint of private partisans at Yale.  And he makes no attempt whatsoever to satisfy the strict scrutiny that applies to the content- and viewpoint-based discrimination so palpably at work.  Because the City Attorney is seeking to stifle U.S. News' exercise of its expressive freedoms through its ranking and because the City Attorney has no better justification for doing so now than he did when blowing past U.S. News' stated concerns in prior months, as conveyed in a good-faith meet and confer process (Potter Decl. Ex. B at 7-9), U.S. News is likely to prevail on the merits of its challenge.

### B.     U.S. News Will Be Irreparably Harmed Absent A Preliminary Injunction

As explained above, U.S. News has alleged actual and imminent harm resulting from the City Attorney's unlawful actions.  The threat of government invasions, enforcement, and contempt by definition chills U.S. News' protected expression and operations absent an injunction.  *Supra* I.C.  Again, undisputed facts here show that the City Attorney is going after U.S. News' editorial judgments because he disagrees with U.S. News' viewpoint.  Letting government leverage its coercive powers would result in irreparable harm as a matter of law while casting larger chill across the free press.  *See supra* I.B. (threat of discriminatory enforcement is an injury under the First Amendment); *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 938 (C.D. Cal.

2019) (deprivation of First Amendment rights is "well established to constitute irreparable harm" supporting a preliminary injunction); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief[.]") (cleaned up); *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

### C. The Balance of Equities Weigh Heavily In Favor Of U.S. News, And An Injunction Serves The Public Interest

Where the First Amendment hangs in the balance, the "balance of equities and the public interest . . . tip[s] sharply in favor of enjoining the [offending governmental action]." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-1208 (9th Cir. 2009); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) ("[W]hen a party has established likelihood of success on the merits of a constitutional claim—particularly one involving a fundamental right—the remaining *Winter* factors favor enjoining the likely unconstitutional law.").

The City Attorney has not demonstrated any urgent need to pursue his unprecedented investigation.  After meeting with U.S. News and being put on notice of its First Amendment concerns last summer, the City Attorney opted to wait six months before issuing these Subpoenas. Having done so, he suffers no appreciable harm from continuing to pause while an appropriate record is made and the merits are adjudicated.  On the other side of the scale, U.S. News and the free press more broadly will be irreparably harmed if U.S. News is forced to either comply with the Subpoenas, or else face contempt and sanctions.  At a minimum, this case presents gravely serious questions as to whether the City Attorney is acting unconstitutionally.  In such a case, the public interest is well served by ensuring that government officials are held within legal bounds, that constitutional commands are enforced, and that freedom of expression and of the press are preserved while judicial review runs its course.  Those vital interests commend that this Court continue to maintain the longstanding status quo until it renders final judgment.

### <u>CONCLUSION</u>

For the reasons stated herein, the Court should deny the City Attorney's motion to dismiss, deny the City Attorney's motion to strike, and grant U.S. News motion for a preliminary injunction.

1    Dated: March 15, 2024.                Respectfully submitted,

2                                          QUINN EMANUEL URQUHART &

3                                          SULLIVAN LLP

4

5                          By */s/ John Potter*

6                              John Potter

7                              *Attorneys for Plaintiff*
                                    *U.S. News & World Report, L.P.*