DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
SARA J. EISENBERG, SBN 148137
Chief of Complex & Affirmative Litigation
ALEXANDER J. HOLTZMAN, SBN 311813
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Fl.
San Francisco, California 94102-5408
Telephone:      (415) 554-3999
                (415) 355-3308
Facsimile:      (415) 437-4644
E-Mail:         Alexander. Holtzman@sfcityatty.org
                Karun.Tilak@sfcityatty.org

*Attorneys for Defendant*
San Francisco City Attorney David Chiu

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. NEWS & WORLD REPORT, L.P., | Case No. 3:24-cv-00395-WHO |
| Plaintiff, | **DEFENDANT SAN FRANCISCO CITY ATTORNEY DAVID CHIU'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE** |
| vs. | |
| DAVID CHIU, in his Official Capacity as City Attorney of the City and County of San Francisco, | Judge:          Hon. William H. Orrick III<br>Place:          Courtroom 2, 17th Floor<br>Hearing Date:   April 10, 2024<br>Time:           2:00 p.m. |
| Defendant. | Trial Date:     Not Set |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ............................................................................................1

II.   ARGUMENT ..................................................................................................2

      A.    USNWR Lacks Standing and its Claims are Unripe. ...................................2

            1.    Under *Twitter v. Paxton*, USNWR Has Suffered No Article III
                  Injury. ...........................................................................................2

            2.    USNWR's "Pre-Enforcement" Caselaw is Inapposite. ..................6

            3.    USNWR's Claims are Prudentially Unripe. ..............................8

      B.    USNWR's Claims Fail on the Merits. ........................................................9

            1.    USNWR Fails to State a Claim for Viewpoint Discrimination. ......9

            2.    USNWR's Purported Shield Law Claim Fails.............................11

            3.    USNWR's Claims Do Not Overcome Federal and State
                  Immunities. ...............................................................................13

                  a.    The *Noerr-Pennington* Doctrine Bars All Plaintiffs'
                        Claims. ..............................................................................13

                  b.    California Civil Code Section 47 Bars USNWR's State
                        Law Claims. .......................................................................15

      C.    California's Anti-SLAPP Law Bars USNWR's State-Law Claims. .........16

CONCLUSION...................................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Cases**

*Acosta v. FCE Benefit Admins., Inc.*
No. 17-CV-05448-JSW, 2018 WL 11447534 (N.D. Cal. Jan. 22, 2018) ...............................13

3

4

*Andersen v. Atl. Recording Corp.*
No. 07-CV-934-BR, 2009 WL 3806449 (D. Or. Nov. 12, 2009) ...............................................14

5

6

*Ariz. Right to Life Pol. Action Comm. v. Bayless*
320 F.3d 1002 (9th Cir. 2003) .................................................................................................6

7

8

*B&G Foods N. Am., Inc. v. Embry*
29 F.4th 527 (9th Cir. 2022) ...................................................................................................14

9

*Bantam Books, Inc. v. Sullivan*
372 U.S. 58 (1963) ...............................................................................................................5, 7

10

11

*Blue v. Off. of Inspector Gen.*
23 Cal. App. 5th 138 (2018) ....................................................................................................17

12

13

*Bonni v. St. Joseph Health Sys.*
11 Cal. 5th 995 (2021) .............................................................................................................20

14

*Bonni v. St. Joseph Health Sys.*
83 Cal. App. 5th 288 (2022) ....................................................................................................16

15

16

*Boswell v. Retreat Cmty. Ass'n*
No. E064171, 2016 WL 3773403 (Cal. Ct. App. July 11, 2016) ..............................................19

17

18

*Bradbury v. Super. Ct. of Ventura Cnty.*
49 Cal. App. 4th 1108 (1996) ..................................................................................................17

19

*Calvary Chapel San Jose v. Cody,*
No. 20-cv-03794-BLF, 2023 WL 2638318 (N.D. Cal. Mar. 10, 2023) ..................................6, 9

20

21

*Canatella v. State of Cal.*
304 F.3d 843 (9th Cir. 2002) ....................................................................................................8

22

23

*City & Cnty. of S.F. v. Uber Techs., Inc.*
36 Cal. App. 5th 66 (2019) ......................................................................................................10

24

*Coastal States Mktg., Inc. v. Hunt*
694 F.2d 1358 (5th Cir. 1983) .................................................................................................14

25

26

*Culinary Workers Union, Local 226 v. Del Papa*
200 F.3d 614 (9th Cir. 1999) ....................................................................................................8

27

28

*Delaney v. Superior Court*
50 Cal. 3d 785 (1990) ..............................................................................................................12

*Doe v. State of Cal.*
    8 Cal. App. 5th 832 (2017) ...............................................................................16, 17

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*
    365 U.S. 127 (1961)..................................................................................................14

*Exxon Mobil Corp. v. Schneiderman*
    316 F. Supp. 3d 679 (S.D.N.Y. 2018) .............................................................10, 11

*Fashion Valley Mall, LLC v. NLRB*
    42 Cal. 4th 850 (2007)...............................................................................................9

*FilmOn.com v. DoubleVerify Inc.*
    7 Cal. 5th 133 (2019) ..............................................................................................19

*Freeman v. Lasky, Haas & Cohler*
    410 F.3d 1180 (9th Cir. 2005) .................................................................................14

*Gallanis-Politis v. Medina*
    152 Cal. App. 4th 600 (2007) ...........................................................................15, 16

*Google, Inc. v. Hood*
    822 F.3d 212 (5th Cir. 2016) ..................................................................................4, 9

*Haw. Newspaper Agency v. Bronster*
    103 F.3d 742 (9th Cir. 1996) .....................................................................................6

*Italian Colors Rest. v. Becerra*
    878 F.3d 1165 (9th Cir. 2018) ...................................................................................6

*KSDO v. Super. Ct.*
    136 Cal. App. 3d 375 (1982) ..............................................................................11, 12

*Laker v. Board of Trustees of Cal. State Univ.y*
    32 Cal. App. 5th 745 (2019) ....................................................................................17

*Lakeview Fin., Inc. v. Dep't of Fin. Insts.*
    No. 3:21-CV-05267-RJB, 2021 WL 2530727 (W.D. Wash. 2021) ...........................7

*Lewis v. Younger*
    653 F.2d 1258 (9th Cir. 1980) ...................................................................................9

*LSO, Ltd. v. Stroh*
    205 F.3d 1146, 1150 (9th Cir. 2000) .........................................................................8

*Maldonado v. Morales*
    556 F.3d 1037 (9th Cir. 2009) ...................................................................................6

*Mallard v. Progressive Choice Ins. Co.*
    188 Cal. App. 4th 531 (2010) ............................................................................18, 19

*Manistee Town Ctr. v. City of Glendale*
227 F.3d 1090 (9th Cir. 2000) ....................................................................................13

*Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*
158 Cal. App. 4th 1075 (2008) ...................................................................................15

*Miami Herald Publ'g Co. v. Tornillo*
418 U.S. 241 (1974)........................................................................................................9

*New York Times Co. v. Super. Ct.*
51 Cal. 3d 453 (1990) ..............................................................................................11, 12

*O'Grady v. Super. Ct.*
139 Cal. App. 4th 1423 (2006) ...................................................................................11

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*
676 F.3d 829 (9th Cir. 2012) .........................................................................................8

*Pacaso Inc. v. City of St. Helena*
No. 21-CV-02493-WHO, 2021 WL 2987144 (N.D. Cal. July 15, 2021)............................15, 17

*Peace Ranch LLC v. Bonta*
93 F.4th 482 (9th Cir. 2024) ..........................................................................................6

*People v. Harris*
47 Cal. 3d 1047 (1989) .................................................................................................11

*Rancho Publ'ns v. Super. Ct.*
68 Cal. App. 4th 1538 (1999) ................................................................................12, 13

*Reisman v. Caplin*
375 U.S. 440 (1964)........................................................................................................4

*Ross v. Seyfarth Shaw, LLP*
96 Cal. App. 5th 722 (2023) .........................................................................................20

*Rubin v. Green*
4 Cal. 4th 1187 (1993) ..................................................................................................16

*San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Emps.' Ret. Assn.*
125 Cal. App. 4th 343 (2004) ......................................................................................18

*Schwarzburd v. Kensington Police Prot. & Cmty. Servs. Dist. Bd.*
225 Cal. App. 4th 1345 (2014) ....................................................................................18

*Second Amend. Found. v. Ferguson*
No. C23-1554 MJP, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024) ...........................3, 7

*Sosa v. DIRECTV, Inc.*
437 F.3d 923 (9th Cir. 2006) .................................................................................14, 15

*Squires v. City of Eureka*
    231 Cal. App. 4th 577 (2014) ................................................................................17

*Steffel v. Thompson*
    415 U.S. 452 (1974) ...........................................................................................8

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ...........................................................................................6

*Tuck Beckstoffer Wines LLC v. Ultimate Distrib., Inc.*
    682 F. Supp. 2d 1003 (N.D. Cal. 2010) ................................................................19

*Tutor-Saliba Corp. v. Herrera*
    136 Cal. App. 4th 604 (2006) ..............................................................................15

*Twitter v. Paxton*
    56 F.4th 1170 (9th Cir. 2022) ....................................................................... *passim*

*Union Pac. R.R. v. Nev. Power Co.*
    950 F.2d 1429 (9th Cir.1991) ...............................................................................8

*Vargas v. City of Salinas*
    46 Cal. 4th 1 (2009) ...............................................................................2, 16, 17

*Virginia v. Am. Booksellers Ass'n*
    484 U.S. 383 (1988) ...........................................................................................6

*Westlands Water Dist. Distrib. Dist. v. Nat. Res. Def. Council, Inc.*
    276 F. Supp. 2d 1046 (E.D. Cal. 2003) .................................................................14

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) ...............................................................................7

*Wilson v. Cable News Network, Inc.*
    7 Cal. 5th 871 (2019) ....................................................................................19, 20

*Wolfson v. Brammer*
    616 F.3d 1045 (9th Cir. 2010) ...............................................................................6

*Younger v. Harris*
    401 U.S. 37 (1971)............................................................................................8, 9

**State Constitution**
Article I
    § 2 (b)..........................................................................................................10, 14

**State Statutes & Codes**
Business & Professions Code
    § 16759 ........................................................................................................10, 14

Civil Code
  § 47 .............................................................................................................1, 15, 16

Code of Civil Procedure
  § 16759 .......................................................................................... *passim*

Government Code
  § 821.6 ......................................................................................................15
  § 11187 ......................................................................................................14
  § 11188 ......................................................................................................14

Health & Safety Code
  § 1278 ........................................................................................................16


**Other References**

*Penn Medicine to Stop Actively Participating in U.S. News & World Report "Best Hospital"*
  *Rankings*, Penn Medicine (June 26, 2023), https://www.pennmedicine.org/news/news-
  releases/2023/june/penn-medicine-stops-participation-in-us-news-and-world-report ...............3

1

## I.     INTRODUCTION

2        There is an old adage among lawyers that says: "If you have the facts on your side, pound the

3  facts; if you have the law on your side, pound the law; if you have neither the facts nor the law, pound

4  the table and yell really loud."  In its opposition, USNWR pounds the table with all of its might and

5  yells as loudly as it can because neither the facts nor the law is on its side.  Once one wades through all

6  the hyperbole and blustery rhetoric, USNWR's opposition does not meaningfully rebut any of the

7  grounds for dismissing this case and striking USNWR's state-law claims.

8        USNWR's fundamental premise—that jurisdiction in this court is appropriate and necessary to

9  vindicate its constitutional rights—is patently false and foreclosed by binding precedent.  USNWR

10  does not dispute (nor could it) that the City Attorney's subpoenas are not self-executing, that they can

11  only be enforced through a state court proceeding where USNWR has the right to have its First

12  Amendment and other claims adjudicated, and that USNWR can, at any time, object and move to

13  quash the subpoenas in state court and raise these same constitutional objections.  The Ninth Circuit in

14  *Twitter v. Paxton*, as well as numerous other courts, have clearly held that a challenge to such a

15  subpoena does not satisfy the requirements to invoke federal courts' limited jurisdiction under Article

16  III.  This Court can and should dismiss the case on this ground alone.  USNWR's table pounding to the

17  contrary notwithstanding, this ordinary application of standing and ripeness doctrine creates no

18  miscarriage of justice, especially since USNWR has the ability to raise its constitutional objections in

19  state court if the subpoena is ever enforced (or on its own motion to quash).

20        USNWR's claims fare no better on the merits.  USNWR's opposition still provides no case to

21  support its theory that a subpoena that merely asks questions and does not unilaterally impose

22  sanctions constitutes a restriction on expression for purposes of a viewpoint discrimination claim, and

23  it cannot shore up its implausible allegations regarding the City Attorney's motivations for issuing the

24  subpoenas.  USNWR's Shield Law claim runs headlong into consistent binding authority making clear

25  that the Shield Law is only a defense to contempt, and cannot be wielded as a sword as USNWR seeks

26  to do here.  And USNWR smattering of arguments regarding the application of *Noerr-Pennington* and

27  Civil Code § 47 rest on misstatements of the law and unsupported claims regarding the City

28  Attorney's investigation.

Finally, USNWR's attempt to strip government entities of the right to bring anti-SLAPP motions is contrary to California Supreme Court caselaw expressly holding that "section 425.16 may not be interpreted to exclude governmental entities and public officials from its potential protection." *Vargas v. City of Salinas*, 46 Cal. 4th 1, 18-19 (2009).  And for good reason.  Where, as here, a government entity has engaged in protected investigative activity, the target of that investigation should not be permitted to bring a lawsuit based on the government's activities absent a strong likelihood of prevailing on the merits—which, for all the reasons explained below, is lacking here.[1]

## II.    ARGUMENT

### A.    USNWR Lacks Standing and its Claims are Unripe.

#### 1.    Under *Twitter v. Paxton*, USNWR Has Suffered No Article III Injury.

In *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), the Ninth Circuit held that a plaintiff challenging a subpoena in virtually identical circumstances to USNWR has not suffered an Article III injury.  While USNWR tries to distort the Ninth Circuit's decision, *Twitter* is squarely on point.

In both cases, a public entity served a subpoena seeking information about potential violations of law.  In both cases, the subpoenas were not self-executing and required a court order before compliance could be required or any consequence for lack of compliance could be imposed.  In both cases, the targets alleged that they were being unlawfully targeted based on disagreement with their editorial decisions and that the subpoenas infringed on their First Amendment rights.[2]  And in both cases, the target sought to invoke federal jurisdiction to enjoin the public entity from enforcing the subpoena before any action was taken to enforce the subpoenas in state court.  56 F.4th at 1172.  In these circumstances, the Ninth Circuit determined that Twitter suffered no actual or imminent First

---

[1] Because this brief is only a reply on the City Attorney's motions to dismiss and to strike, it does not address USNWR's arguments concerning its request for a preliminary injunction.

[2] *Compare* Compl. ¶ 4, *Twitter, Inc. v. Paxton*, Dkt. No. 1, Case No. 3:21-cv-01644-MMC (N.D. Cal. filed Mar. 8, 2021) (hereinafter "*Twitter* Compl.") ("The investigation and CID unlawfully intrude on Twitter's internal editorial processes and burden its protected activity . . . solely because Twitter exercised its First Amendment rights in a way disagreeable to AG Paxton.") *with* Compl. ¶ 3 ("The City Attorney is threatening invasive, sweeping, burdensome incursions against a news organization merely because he disagrees with [USNWR's] editorial viewpoint"); *Twitter* Compl. ¶ 61 (alleging that the Texas investigation sought to force Twitter to "exercise its editorial discretion in a manner consistent with AG Paxton's preferences going forward"); *with* Compl. ¶ 63 (alleging that the City Attorney's subpoenas seek to "alter [USNWR's] hospital rankings to align with his preferences").

Amendment injury. *Twitter*, 56 F.4th at 1175–76. To avoid this result in the effectively identical situation presented here, USNWR tries in vain to distinguish *Twitter*.

First, USNWR argues that the cases differ because this is a pre-enforcement challenge while *Twitter* involved a retaliation claim. Pls.' Opp. to Defs.' Mot. to Dismiss and Mot. to Strike & Reply ISO Mot. for PI ("Opp.") at 14. This argument fails for the reasons discussed in Part II.A.2 below.

Second, USNWR asserts that *Twitter* is distinguishable because Twitter alleged only actual harm based on actions already taken, whereas USNWR's claims "focus upon impending injury to its First Amendment rights based on a credible threat of future enforcement." Opp. at 14. As an initial matter, USNWR tellingly does not argue that it has made a showing of actual harm that is more plausible than the allegations found to be inadequate in *Twitter*. Nor could it, given the utter absence of allegations in the complaint that its speech has been chilled and the fact that any such allegations would not be objectively reasonable because the subpoenas are not self-executing. *See Twitter*, 56 F.4th at 1176 (rejecting Twitter's allegations of harm in part because "Twitter never faced any penalties for its refusal to comply"); *see also id.* at 1177–78 (distinguishing cases involving plausible allegations of chilled speech because, unlike in those cases, the CID had "procedural safeguards" requiring judicial review prior to enforcement).[3]

In any event, USNWR mischaracterizes *Twitter*. Twitter made numerous allegations regarding fear of future enforcement that closely mirror USNWR's allegations here. *Compare* Twitter Compl. ¶ 65 (alleging that the Texas CID "put Twitter to the unconstitutional choice of disclosing documents . . . or potentially facing sanctions in state court"), *with* Compl. ¶ 84 (USNWR alleges that its First Amendment rights are violated because it "must provide the requested documents and information" or "bear the penalties of noncompliance"); *Twitter* Compl. ¶ 70 (seeking relief to prevent Texas "from

---

[3] In passing, USNWR refers to the University of Pennsylvania Hospital system's withdrawal from the hospital rankings. Opp. at 7. But to the extent USNWR suggests a causal link between the City Attorney's letter and the University's withdrawal, that suffers from the logical fallacy of *post hoc ergo propter hoc*, especially where the University did not reference the City Attorney's investigation in explaining its decision to withdraw. *Penn Medicine to Stop Actively Participating in U.S. News & World Report "Best Hospital" Rankings*, Penn Medicine (June 26, 2023), https://www.pennmedicine .org/news/news-releases/2023/june/penn-medicine-stops-participation-in-us-news-and-world-report; *see also Second Amend. Found. v. Ferguson*, No. C23-1554 MJP, 2024 WL 97349, at *5 (W.D. Wash. Jan. 9, 2024) (rejecting similarly conclusory allegations of reputational harm).

initiating any action to enforce the CID"), *with* Compl. Prayer for Relief ¶¶ 3–4 (seeking similar relief with respect to the City Attorney's subpoenas).  And, as the Ninth Circuit observed, the employee declaration submitted by Twitter did not assert that Twitter employees' speech had already been chilled, only that that it "would 'if th[e] CID and investigation were allowed to proceed.'"  *Twitter*, 56 F.4th at 1175.  The Ninth Circuit specifically found this threat that Twitter would be forced to comply if the subpoenas were enforced—the very same threat USNWR alleges—to be "highly speculative" because the subpoena was not self-executing.  *Id.* at 1175; *see also id.* at 1176.

Further, to the extent that USNWR's alleged injury rests squarely on allegations of "chilling that *will* occur if the City Attorney is permitted to enforce" the subpoenas, Opp. at 15 (emphasis added), decisions like *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) and *Reisman v. Caplin*, 375 U.S. 440 (1964) are directly applicable.  The *Twitter* court distinguished *Google* and *Reisman* because they did not assess the possibility that the subpoena could have already chilled the recipient's speech. *See Twitter,* 56 F.4th at 1178 & n.3.  But here, where USNWR does not allege that its speech has already been chilled and concedes that its standing "focus[es] . . . on a credible threat of future enforcement," Opp. at 14, the holdings in *Google* and *Reisman*—that a fear of future injury is speculative in the context of a non-self-enforcing subpoena—apply with full force.  *See also* Defs.' Mot. to Dismiss, Mot. to Strike, and Opp. to PI Mot., at 12–13 (hereinafter "Mot.") (citing additional cases dismissing pre-enforcement challenges to non-self-executing subpoenas because of the speculative nature of future harm).

Third, USNWR makes the spurious claim that the First Amendment harms alleged in *Twitter* were meaningfully different than USNWR's alleged harms here.  Opp. at 15.  But just as *Twitter* claimed that the government's justification for its investigation was a "pretext" to target Twitter's protected First Amendment activity, 56 F.4th at 1172, USNWR likewise claims that the City Attorney's justification for investigating potential misrepresentations to consumers is "mere pretext" for viewpoint discrimination.  Opp. at 15; *see also id.* at 21–22.  Further, contrary to USNWR's assertion, the requests in Twitter were even more intrusive than those at issue here, seeking "highly confidential, internal documents" and internal communications between Twitter employees.  *Twitter* Compl. ¶¶ 3, 56.  Indeed, Twitter specifically alleged that its speech would be chilled because "content

1   moderation discussions and decisions are subject to disclosure under the CID," but the Ninth Circuit

2   nevertheless found these fears to be speculative.  *Twitter*, 56 F.4th at 1175–76.

3       Fourth, USNWR's claim that *Twitter* is distinguishable because Twitter produced some

4   documents, whereas USNWR has produced none, is a red herring.  Opp. at 16.  The Ninth Circuit

5   found that costs incurred by Twitter in producing documents could not be the basis of standing

6   because they were voluntarily incurred and because Twitter was not seeking damages.  *Twitter*, 56

7   F.4th at 1176.  But that partial production did not bear on the court's conclusion about why Twitter's

8   allegations of chilled speech and fear of future harm were speculative.  *Id.* at 1175–76.

9       Fifth, USNWR claims that this case involves an allegation that USNWR broke the law, and

10   therefore this case is similar to the Supreme Court's decision in *Bantam Books, Inc. v. Sullivan*, 372

11   U.S. 58 (1963) and dissimilar from *Twitter*.  But the subpoenas here merely seek information and

12   records about the scope of potential legal violations and are subject to judicial review before

13   enforcement.  In contrast, *Bantam Books* involved non-reviewable notices to publishers stating that

14   their publications had been determined to be obscene, that lists of the publications had been provided

15   to police departments to prevent their distribution, and that the authorities would recommend criminal

16   prosecution if the publishers failed to comply.  *See* 372 U.S. at 62–63 & n.5; *see also Twitter*, 56 F.4th

17   at 1176–77 (distinguishing *Bantam Books* on similar grounds).  Moreover, the Texas Attorney

18   General's statements regarding the investigation at issue in *Twitter* were far more strident than any of

19   the City Attorney's statements that USNWR identifies.  *See Twitter*, 56 F.4th at 1172 (Attorney

20   General's tweet days before issuing the CID that Twitter stood "ready/willing to be the left's Chinese-

21   style thought police" and he would "fight them with all I've got").  If the Texas Attorney General's

22   publicly declared commitment to "fight" Twitter with all he had was not a threat of prosecution

23   sufficient to confer standing, *Twitter*, 56 F.4th at 1177, the City Attorney's measured statements about

24   his investigation certainly do not create an imminent threat of prosecution.

25       Finally, USNWR contends that the state court procedures available to it differ meaningfully

26   from those available to Twitter.  Not so.  The fact that the Texas law provides for direct appeal to the

27   Texas Supreme Court while USNWR would have to appeal to the Court of Appeal before petitioning

28   the California Supreme Court for relief is not a meaningful distinction.  And USNWR's assertion that

the "show cause" hearing in state court would be "perfunctory" is entirely meritless.  There is

absolutely no basis to presume that the state court would do a "perfunctory" job discharging its duty

and fail to provide a robust hearing on any attempt by the City Attorney to enforce the subpoenas.

Indeed, there is a presumption that state procedures will provide an adequate remedy absent

unambiguous evidence to the contrary (which USNWR does not provide).  *See, e.g.*, *Calvary Chapel*

*San Jose v. Cody*, No. 20-cv-03794-BLF, 2023 WL 2638318, at *7–8 (N.D. Cal. Mar. 10, 2023).

In short, all of USNWR's attempts to distinguish *Twitter* fail.  *Twitter* is squarely on point and

dictates that USNWR's claims be dismissed for lack of standing or constitutional ripeness.

## 2.     USNWR's "Pre-Enforcement" Caselaw is Inapposite.

USNWR also tries to avoid *Twitter* by labeling its claim as a "pre-enforcement" challenge.[4]

But just as in *Twitter*, USNWR "is not really making a pre-enforcement challenge" because it "does

not allege that its speech is being chilled by a statute of general and prospective applicability that may

be enforced against it."  *Twitter*, 56 F.4th at 1175.  USNWR does not, for example, allege that

California's Unfair Competition Law is unconstitutional.  Thus, the cases cited by USNWR and its

*amici* involving pre-enforcement challenges to the constitutionality of statutes or regulations are

inapposite. Indeed, the Ninth Circuit in *Twitter* considered and found many of these same cases to be

inapplicable under essentially identical circumstances.  *See Twitter*, 56 F.4th at 1178 (distinguishing

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) and *Ariz. Right to Life Pol. Action Comm. v.*

*Bayless*, 320 F.3d 1002 (9th Cir. 2003)).[5]  Rather, as discussed above, USNWR solely challenges the

City Attorney's issuance of the subpoenas as targeting its First Amendment activity.  *see* Part II.A.1*,*

*supra; see also* Opp. at 34 (USNWR "seeks only to challenge the government decision that the City

Attorney took . . . in issuing illegal Subpoenas.").  In this context, the Ninth Circuit has concluded that

---

[4] USNWR seizes on the City Attorney's use of "pre-enforcement."  But the cases discussed in the City Attorney's motion to dismiss, Mot. at 11–13, refer to "pre-enforcement" challenges to a subpoena without invoking the line of cases that USNWR advances, Opp. at 8–12, further underscoring the inapplicability of these cases to USNWR's challenge.

[5] USNWR cites similarly inapplicable cases challenging statutes.  *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988); *Peace Ranch LLC v. Bonta*, 93 F.4th 482 (9th Cir. 2024); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018); *Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009); *Haw. Newspaper Agency v. Bronster*, 103 F.3d 742 (9th Cir. 1996).

the retaliatory framework for assessing standing—not a pre-enforcement framework—is the appropriate standard.  *See Twitter*, 56 F.4th at 1175; *see also Second Amend. Found.* 2024 WL 97349, at *4 (explaining that in *Twitter,* "the Ninth Circuit held that First Amendment claims premised on a civil investigation by an attorney general should be analyzed under the 'retaliatory framework,' rather than the 'pre-enforcement framework'").

   While USNWR asserts that it fears prosecution because the City Attorney "will commence proceedings in state court to enforce the Subpoenas," Opp. at 12, this is fundamentally dissimilar from the threat of prosecution that courts have found sufficient to demonstrate actual or imminent harm. Indeed, the *Twitter* court considered some of the very cases on which USNWR and its *amici* rely and found them to be distinguishable from a challenge to a non-self-executing subpoena.   For example, the Ninth Circuit distinguished *Bantam Books*, where there was "no judicial review of . . . notices" threatening criminal prosecution, and *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), where the plaintiff "would have had no opportunity to challenge any aspect of the investigation until formal charges were brought."  *Twitter*, 56 F.4th at 1177.  As the court explained, these cases involved a threat of prosecution carrying criminal or civil penalties for substantive violations of the law where there were no safeguards to protect a target's rights before charges were filed.  *Id.*  By contrast, the Texas CID merely "started an investigation and requested documents" and Twitter could "raise its First Amendment defense before there are underlying charges" if Texas moved to enforce the subpoena.  *Id.*

   The same is true here.  The City Attorney's subpoenas are merely a tool to gather information to investigate whether a violation occurred, not a threat of impending litigation.[6]  A motion to enforce the subpoena in state court likewise is not a threat of prosecution similar to cases like *Bantam Books* or *White*, but instead a key safeguard to protect subpoena recipients like USNWR from facing the kinds of consequences that courts have deemed sufficient to confer standing in pre-enforcement cases.  *See Twitter*, 56 F.4th at 1177 n.2 (distinguishing additional cases involving threats of criminal prosecution

---

[6] This case is unlike *Lakeview Fin.,, Inc. v. Dep't of Fin. Insts.*, No. 3:21-CV-05267-RJB, 2021 WL 2530727, at *1 (W.D. Wash. 2021).  There, the dispute centered not just on a subpoena, but a draft Consent Order for Lakeview to resolve alleged substantive legal violations at a cost of over a million dollars.  There is no similar threat from the City Attorney to levy fines against USNWR for violating the UCL.

or other legal sanction on the grounds that Twitter "faces no such consequences" "because it can raise its First Amendment challenge in an action . . . to enforce the CID"); *see also id.* at 1177–78.[7]  Thus, USNWR's claim that dismissing this case will render the subpoenas "categorically immune from constitutional challenge," Opp. at 1, is categorically false.  And to the extent USNWR fears that its First Amendment rights will be harmed if it is ultimately compelled to respond or face contempt sanctions, it speculates about injuries that "have not occurred and may never occur" because state court proceedings to enforce the subpoena have not even been commenced.  *Twitter*, 56 F.4th at 1176.  As in *Twitter*, USNWR has therefore suffered no actual or imminent Article III injury.

### 3.    USNWR's Claims are Prudentially Unripe.

The speculative nature of any injury also renders USNWR's claims prudentially unripe.  Because the subpoenas do not carry automatic sanctions for noncompliance or failure to respond, and a state court would adjudicate the merits of USNWR's First Amendment claims before it could be forced to respond or face any sanctions, the "Hobson's choice" that USNWR posits is entirely speculative at this stage.  Compl. ¶ 84; Opp. at 8.  USNWR does little to engage with the myriad cases that have found challenges to non-self-executing subpoenas to be prudentially unripe because they do not require immediate compliance and depend on speculation about the outcome of state court proceedings to enforce the subpoena.  *See* Mot. at 14.  Thus, for the reasons discussed in the City Attorney's motion to dismiss and in Part II.A.1–2, above, USNWR's claims are prudentially unripe.

In its opposition, USNWR not only asks the Court to rule on its constitutional claims based on the hypothetical outcome of potential state court proceedings, but also invites the Court to render an advisory opinion about the possible implications under *Younger v. Harris*, 401 U.S. 37 (1971), if a state court action were filed to enforce the subpoena.  The Court should decline this invitation.  *Union Pac. R.R. v. Nev. Power Co.*, 950 F.2d 1429, 1434 (9th Cir.1991) (declining to render advisory opinion

---

[7] USNWR's citations to cases involving threats of prosecution, Opp. at 8–11, are similarly inapposite. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452 (1974) (threat of arrest and criminal prosecution); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 836 (9th Cir. 2012) (challenge to statute where there was prior law enforcement seizure and possible threat of criminal violation); *Canatella v. State of Cal.*, 304 F.3d 843, 848 (9th Cir. 2002) (formal disciplinary charges and sanctions against attorney); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000) (threat of revocation of license and other sanctions); *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 616 (9th Cir. 1999) (threat that information would be referred to authorities for prosecution).

dependent on speculation as to what might happen between the parties in further proceedings).    In any

event, the possibility that USNWR would be required to have its First Amendment claims adjudicated

as part of a state court proceeding is entirely consistent with *Younger*, which itself involved a First

Amendment claim.  *See* 401 U.S. at 39; *see also Calvary Chapel San Jose*, 2023 WL 2638318 at *7.

In fact, federalism and comity considerations weigh heavily against allowing USNWR to simply skip

available state-court procedures and seek premature adjudication of hypothetical First Amendment

claims here.  *Google*, 822 F.3d at 226; *see also Lewis v. Younger*, 653 F.2d 1258, 1260 (9th Cir. 1980).

### B.    USNWR's Claims Fail on the Merits.

#### 1.    USNWR Fails to State a Claim for Viewpoint Discrimination.

USNWR's opposition quibbles about whether a claim of viewpoint discrimination under the

First Amendment and the California Constitution requires an "absolute prohibition" or whether an

action that "restrict[s] expression" is sufficient.  Opp. at 21 (cleaned up).  But that is beside the point:

it is undisputed here that the subpoenas are not self-executing and therefore neither *prohibit* nor

*restrict* any speech.  The subpoenas do not compel USNWR to "provide the requested documents and

information" or change or restrict its speech, nor do they unilaterally carry "penalties for

noncompliance."  Compl. ¶ 84; Opp. at 8.  Rather, the subpoenas simply ask questions that USNWR is

free to object to or move to quash, and which can only be enforced against USNWR after a state court

rules on USNWR's First Amendment objections.   Neither USNWR nor its *amici* identify any

comparable cases stating a viewpoint discrimination claim based on the issuance of a government

request that is, by law, subject to court review before it can ever be enforced to compel or restrict

speech.  Mot. at 17 (distinguishing cases relied on by USNWR); *see also Miami Herald Publ'g Co. v.

Tornillo*, 418 U.S. 241, 244 (1974) (primary case relied on by *amici*, involving a challenge to statute

*requiring* newspapers to publish, on risk of criminal penalty, content provided by political candidates

to reply to editorials attacking them).

Nor can USNWR establish that the City Attorney's subpoenas are motivated by USNWR's

particular viewpoint, rather than "legitimate concerns that are unrelated to any disagreement with the

message conveyed."  *Fashion Valley Mall, LLC v. NLRB*, 42 Cal. 4th 850, 867 (2007) (cleaned up).

USNWR tries to read into the City Attorney's statements and the requests a discriminatory purpose

that is not present.  Opp. at 22.  As the City Attorney's correspondence and public statements make

clear, the investigation is driven by his authority under California law to protect consumers from

USNWR's potentially misleading claims regarding the reliability of its rankings.  *See, e.g.*, Compl. ¶

53 (quoting City Attorney's tweet expressing concern that "[c]onsumers use these rankings to make

consequential healthcare decisions"); *id.* Ex. A (explaining potentially misleading claims in USNWR's

advertising and its failure to disclose payments from hospitals); *id.* at Ex. C (explaining that

"USNWR's statements about the authoritativeness and reliability of its rankings affect sales of

USNWR's products" and are properly the focus of the Office's inquiries); *see also Exxon Mobil Corp.*

*v. Schneiderman*, 316 F. Supp. 3d 679, 706–08 (S.D.N.Y. 2018) (public officials' statements about

holding company accountable did not support inference that company was targeted for its views).[8]

Finally, USNWR's efforts to imbue a collaboration between the City Attorney's Office and

Yale Law School with a nefarious purpose fall flat.  USNWR quotes extensively from publicly

available websites that broadly describe the San Francisco Affirmative Litigation Program ("SFALP")

and provide a general guide to local government public interest litigation.  Compl. ¶¶ 65–68; Opp. at

23.  But this information is not specific to any particular lawsuit or investigation, and USNWR does

not provide any allegations about how this general information bears at all on its claim that USNWR

has been targeted for its viewpoint.  USNWR also notes that Yale Law School Dean Heather Gerken

has criticized USNWR's law school rankings.  But it does not plausibly or logically follow that if

Dean Gerken has been critical of USNWR, then the City Attorney simply "adopt[ed] Dean Gerken's

preferred viewpoint" in issuing the subpoenas.  Compl. ¶ 72.  Even if Dean Gerken brought the issue

to the City Attorney's attention—as many private parties do on a regular basis—there is nothing

improper, much less unlawful, about that unless the City Attorney proceeded to issue the subpoenas

without having a good faith belief that they were justified.  USNWR's complaint is devoid of any

---

[8] *Amici* in support of USNWR argue the ultimate merits of whether USNWR's statements are
actionable under the UCL.  Media Orgs. Amicus Br. at 4–10.  But as the City Attorney has explained,
the subpoenas need only be supported by a "reasonable belief" of a violation of the law, Bus. & Prof.
Code § 16759(b), and the City "need not prove the merits of its case or demonstrate triable issues of
fact before it can enforce the subpoenas or conduct its investigation."  *City & Cnty. of S.F. v. Uber
Techs., Inc.*, 36 Cal. App. 5th 66, 78 (2019).  And for the reasons articulated in its motion to dismiss,
these arguments are not only irrelevant, but unfounded.  *See* Mot. at 20–21.

plausible allegations that, regardless of Dean Gerken's views of USNWR, the City Attorney lacked independent, viewpoint neutral basis for the subpoenas—especially where the City Attorney's public statements and correspondence articulate his consumer protection concerns regarding USNWR's representations. *See* Comp. ¶¶ 53, 54 n.32; *id.* Exs. A, C. Courts have rejected similar implausible allegations attributing the viewpoint of a private individual to a government entity. *See, e.g.*, *Exxon*, 316 F. Supp. 3d at 709 (no inference of improper purpose based on the fact that attorneys general met with activists where "[i]t is pure speculation to suggest that the content of the presentations was to encourage baseless investigations" and "another logical leap is required to infer that the [attorneys general] agreed to do so without having a good faith belief that their investigations . . . were justified"). This Court should likewise reject USNWR's threadbare allegations of improper purpose.

## 2. USNWR's Purported Shield Law Claim Fails.

USNWR all but ignores the key, threshold limitation on the Shield Law: that it is a "shield," not a sword, that is available only as a defense to contempt. The Shield Law "provides only an immunity *from contempt*," and USNWR has not been held in contempt. *New York Times Co. v. Super. Ct.*, 51 Cal. 3d 453, 459 (1990) (emphasis in original). Whatever USNWR means when it urges the Court to "tak[e] cognizance of the Shield Law in" this case "not involving contempt," Opp. at 25, the Shield Law does not authorize enjoining the City Attorney's subpoenas. *New York Times*, 51 Cal. 3d at 460 (holding the "Court of Appeal . . . erred by granting relief before the newsperson was held in contempt").[9] Indeed, even a future order compelling discovery on the subpoenas would not trigger the Shield Law. *See KSDO v. Super. Ct.*, 136 Cal. App. 3d 375, 384 (1982). *New York Times* repeatedly emphasized that, under the statutory and Constitutional Shield Law, "there is nothing from which to seek relief until a newsperson has been adjudged in contempt." 51 Cal. 3d at 459.

USNWR offers no response to the City Attorney's argument that the statutory Shield Law does not create a private right of action. Mot. at 24–25. It argues only that "claims for declaratory and

---

[9] USNWR states that courts (plural) have supposedly "taken cognizance of the Shield Law in cases not involving contempt," but cites only one case: *O'Grady v. Super. Ct.*, 139 Cal. App. 4th 1423 (2006). *O'Grady* did not address the contempt requirement or suggest it did not apply because the respondent did not raise this argument with respect to the subpoenas at issue in that decision. *Id.* at 1456 n.18. "It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court." *People v. Harris*, 47 Cal. 3d 1047, 1071 (1989).

1   injunctive relief are always available to force the government to comply with the California

2   Constitution—the provisions of which are 'self-executing.'"  Opp. at 25.  This may be true as a

3   general principle but is not accurate where, as here, the language of the constitutional provision itself

4   limits its application to prohibiting an adjudication of contempt.  Article 1, Section 2, subdivision (b)

5   of the California Constitution states in full:

6   > A publisher, editor, reporter, or other person connected with or employed upon a
    > newspaper, magazine, or other periodical publication, or by a press association or
7   > wire service, or any person who has been so connected or employed, *shall not be
    > adjudged in contempt* by a judicial, legislative, or administrative body, or any other
8   > body having the power to issue subpoenas, for refusing to disclose the source of
    > any information procured while so connected or employed for publication in a
9   > newspaper, magazine or other periodical publication, or for refusing to disclose
    > any unpublished information obtained or prepared in gathering, receiving or
10  > processing of information for communication to the public.  (Emphasis added)

11          Thus, by its own terms, the Constitutional Reporters Shield provision does not create any

12  standalone right to be exercise in a private action or generalized protection—it creates *only* a

13  protection against contempt.  It is therefore unsurprising that the courts in *New York Times*, *Delaney v.

14  Super. Ct.*, 50 Cal. 3d 785 (1990), and *KSDO* all treat both the statutory and Constitutional Shield Law

15  as only providing a defense against contempt.  Nor is it surprising that USNWR has not pointed to a

16  single case recognizing an affirmative Shield Law claim.  The City Attorney is not aware of any such

17  case either.  This Court should not be the first to recognize such a claim.

18          Nor do the subpoenas intrude on information protected by the Shield Law, as the City Attorney

19  explained in the Motion.  Mot. at 25–26.  USNWR has the burden to "prove [that] all the requirements

20  of the shield law have been met."  *Rancho Publ'ns v. Super. Ct.*, 68 Cal. App. 4th 1538, 1546 (1999).

21  It makes no effort to explain how any of the subpoena requests intrude on unpublished journalistic

22  information apart from unsupported assertions that is the case.  "[T]he shield law provides no

23  protection for information obtained by a journalist not directly engaged in 'gathering, receiving or

24  processing' news."  *Delaney*, 50 Cal. 3d at 797 n. 8.  "[T]here remains a fundamental distinction

25  between the reporting and editorial functions of a newspaper and the buying, selling and placing of

26  commercial advertisements."  *Rancho Publ'ns*, 68 Cal. App. 4th at 1545.  Information about

27  USNWR's Best Hospital badge, advertising, data, and other payments from ranked hospitals are even

28  more clearly unprotected than the identity of advertorial customers in *Rancho Publications*, where the

publication could have—but did not—present evidence about the journalistic content of the advertorials. *Id.* at 1546 (observing "confidentiality expectations of [the company's] '*advertising customers*' . . . of course, are not protected by the privileges enjoyed by the press). USNWR's repeated contention that it separates its business and rankings operations, *e.g.*, Compl. ¶ 52, conflicts with its contention that the Shield Law covers its business operations. Meanwhile, USNWR also makes no attempt to show how the subpoena requests about its advertising representations require it to provide unpublished, journalistic information. As the City Attorney explained, Mot. at 26, they do not. On any one of these independent grounds, USNWR's Shield Law claim should be dismissed.

### 3.   USNWR's Claims Do Not Overcome Federal and State Immunities.

On top of its failure to show its claims are justiciable or sufficiently pled, USNWR's numerous arguments against application of the *Noerr-Pennington* doctrine and California privilege law each misinterpret the relevant law or depend on inapplicable policy comparisons and extrapolations.

### a.   The *Noerr-Pennington* Doctrine Bars All Plaintiffs' Claims.

As the City Attorney has explained, Mot. at 27–28, the *Noerr-Pennington* doctrine bars USNWR's federal and state claims, which burden his right to petition. None of USNWR's five arguments show the *Noerr-Pennington* doctrine is inapplicable here, given the company's allegations clearly targeting the City Attorney's own First Amendment rights.

USNWR first argues that government officials cannot avail themselves of the *Noerr-Pennington* doctrine. Opp. at 27. But it concedes, as it must, that the Ninth Circuit has rejected that argument. *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093–94 (9th Cir. 2000). USNWR's contention that "the First Amendment does not apply to government speech" is deeply concerning and wrong. *See* Opp. at 27.

As to USNWR's second argument, the company is flatly incorrect to argue that the *Noerr-Pennington* doctrine bars only damages claims and not injunctive or declaratory relief claims. "[T]he principle underlying *Noerr-Pennington*—that First Amendment petitioning activity should not be chilled by the threat of liability—applies with equal force whether legal or equitable remedies are sought." *Acosta v. FCE Benefit Admins., Inc.*, No. 17-CV-05448-JSW, 2018 WL 11447534, at *4 n.2 (N.D. Cal. Jan. 22, 2018). Courts have rejected USNWR's argument that the doctrine "should be

limited to suits seeking 'civil liability' and that the immunity therefore cannot cover declaratory judgment actions." *Westlands Water Dist. Distrib. Dist. v. Nat. Res. Def. Council, Inc.*, 276 F. Supp. 2d 1046, 1053–54 (E.D. Cal. 2003). Indeed, the doctrine's namesake case involved prospective injunctive relief. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 134 & n.9 (1961) (focusing on problematically broad injunctive relief awarded). USNWR bases its contrary assertion solely on a misreading of (and misleading quotation from) a single footnote in a Ninth Circuit case. Opp. at 27–28 (quoting *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541 n.6 (9th Cir. 2022)). In fact, nothing in that footnote (or the *B&G* opinion more broadly) purports to render *Noerr-Pennington* inapplicable in cases seeking only declaratory and injunctive relief.

USNWR's third argument—that the subpoenas here are too attenuated from litigation to conflict with *Noerr-Pennington*—ignores that just as an unsatisfied demand letter may lead to a lawsuit, so too a subpoena may lead to a petition to compel or motion to quash in state court. The authorizing statutes closely link the subpoenas to the potential for investigative steps including motions to compel or quash. *See* Cal. Bus. & Prof. Code § 16759; Cal. Gov. Code §§ 11187–88. The analysis in *Sosa* of demand letters is therefore applicable to the subpoenas here. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936–37 (9th Cir. 2006). The City Attorney is not "protected only when he strikes" by filing a civil lawsuit against an investigative target "without warning." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983). USNWR cites no case holding that government administrative subpoenas fall outside of the *Noerr-Pennington* doctrine's protection, and the cases cited by the City Attorney show the doctrine does apply here. *See Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2009 WL 3806449, at *9 (D. Or. Nov. 12, 2009) (involving investigatory subpoenas issued to gather information about alleged copyright infringers in anticipation of possible future litigation against those individuals); *see also Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (holding discovery conduct protected as incidental to litigation).

USNWR's fourth, policy argument about a purported parade of horribles that would emerge from holding *Noerr-Pennington* immunity applies here is entirely unsupported. Nothing about USNWR's federal litigation seeking to enjoin subpoenas here bears on "claims for police brutality, illegal searches and seizures, malicious prosecution, takings, and so on." Opp. at 29. None of these

claims, arguably other than malicious prosecution, involves a claim like USNWR's here targeting a public official's petitioning conduct.  And malicious prosecution claims are subject to significant limitations precisely to protect the ability of public prosecutors to bring charges where appropriate. *See, e.g.*, Cal. Gov. Code § 821.6.

USNWR's final argument—that the subpoenas are subject to the "sham" exception—reflects solely its blinkered view of the investigation.  Opp. at 29–30.  Many targets of government investigations believe—or at least assert publicly—that the investigations are a sham.  USNWR has come nowhere close to showing that the subpoenas are "objectively baseless and the [City Attorney's] motive in [issuing them] was unlawful."  *Sosa*, 437 F.3d at 938.  The City Attorney's Motion and the briefs submitted by *amici*, in contrast, make clear the compelling importance of this investigation and the City Attorney's ability to undertake it.

### b.     California Civil Code Section 47 Bars USNWR's State Law Claims.

As the City Attorney explained in the Motion, USNWR's state law claims are additionally barred by the privilege under California Civil Code section 47(a) for "any statement made by a public official in the course of discharging his [or her] official duties."  *Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075, 1087 (2008); *see* Mot. at 29–30.  USNWR appropriately does not contest that the subpoenas here were issued by the City Attorney as part of his official duties.

Rather, USNWR argues that the subpoenas are conduct rather a "statement" to the public by the City Attorney.  Opp. at 30–31.  However, a "privileged publication or broadcast" under Civil Code section 47 does not depend on whether a statement is directed at the public, but rather whether the statement is made as part of a public official's duties.  *See, e.g.*, *Gallanis-Politis v. Medina*, 152 Cal. App. 4th 600, 615 (2007) (workplace investigation); *see also Pacaso Inc. v. City of St. Helena*, No. 21-CV-02493-WHO, 2021 WL 2987144, at *10 (N.D. Cal. July 15, 2021) (focusing on letter being "related to the policy-making [the city attorney] must necessarily perform" and "within the scope of his duties," as here).  Public officials necessarily make statements in the course of discharging their duties, and California has decided to shield those statements from liability to avoid interference with these officials' job responsibilities.  *See Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604, 615 (2006).  By arguing that subpoenas issued pursuant to the City Attorney's authority under state law

request information in violation of state law, USNWR seeks to interfere with the City Attorney's responsibilities and its claims clearly fall within the ambit of section 47 immunity.[10]

USNWR's second argument, that section 47 immunities protect only against tort liability and not declaratory or injunctive relief claims or other statutory or constitutional claims is foreclosed by decisions applying the immunity to California statutory and constitutional claims seeking a variety of relief. *See Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) (holding "plaintiff may not avoid the bar of section 47(b) by pleading his claim as one for injunctive relief under the unfair competition statute"); *Bonni v. St. Joseph Health Sys.*, 83 Cal. App. 5th 288, 293, 303–05 (2022) (Cal. Health & Safety Code § 1278 claims); *Gallanis-Politis*, 152 Cal. App. 4th at 605 (California Fair Employment and Housing Act claims). The cases USNWR cites do not hold to the contrary that section 47 is so limited. The Court should therefore dismiss USNWR's state law claims based on Civil Code section 47 immunity.

## C.    California's Anti-SLAPP Law Bars USNWR's State-Law Claims.

UNSWR's arguments against the City Attorney's anti-SLAPP motion are similarly unavailing.

First, USNWR argues that "it seems to escape the City Attorney that U.S. News sued Mr. Chiu in his official capacity," meaning that the claims are actually against the office—not him as an individual. Opp. at 33. This fact did not "escape" the City Attorney, but the City Attorney disagrees that it has the effect USNWR contends. USNWR asserts that this fact renders the anti-SLAPP statue inapplicable because there is a "general rule [that] claims against government entities do not implicate the anti-SLAPP statute." *Id.* This is simply not so. Indeed, the exact opposite is true. After carefully analyzing the statute's language and legislative history, the California Supreme Court has held that "section 425.16 may *not* be interpreted to exclude governmental entities and public officials from its potential protection." *Vargas*, 46 Cal. 4th at 18–19 (emphasis added). And numerous California Courts of Appeal, both before and after *Vargas*, have allowed government entities—and individuals sued in their official capacity—to pursue anti-SLAPP motions. *See, e.g.*, *Doe v. State of Cal.*, 8 Cal.

---

[10] In its opposition, USNWR concedes that it cannot bring a Liberty of Speech Clause claim as part of its first cause of action under 42 U.S.C. § 1983. Opp. at 21 n.8. To the extent USNWR brings a standalone Liberty of Speech Clause claim—despite not pleading it as a separate cause of action— any such state-law cause of action is barred by Civil Code section 47(a) and must be stricken as violating the Anti-SLAPP Statute, *see* Part II.C, *infra*.

App. 5th 832, 839 (2017) (State of California permitted to bring an anti-SLAPP motion in a lawsuit

alleging, inter alia, that the State wrongfully coerced the defendant to register as a sex offender); *Blue*

*v. Off. of Inspector Gen.*, 23 Cal. App. 5th 138, 147 (2018) (California Office of the Attorney General

permitted to bring an anti-SLAPP motion in a lawsuit alleging that OIG agents wrongfully denied

employees' requests for representation in interviews conducted as part of investigation into prison

practices); *Squires v. City of Eureka*, 231 Cal. App. 4th 577, 582 (2014) (applying anti-SLAPP

protection to actions allegedly taken by the City of Eureka and its officials in the investigation and

prosecution of plaintiffs regarding code enforcement violations); *Bradbury v. Super. Ct. of Ventura*

*Cnty.*, 49 Cal. App. 4th 1108, 1114 (1996) ("[T]he word "person" as used in section 425.16,

subdivision (b) must be read to include a governmental entity."); *Pacaso Inc.*, 2021 WL 2987144 at *1

(Orrick, J.) (claim brought against St. Helena City Attorney "in his capacity as City Attorney of St.

Helena" [see complaint at 2022 WL 21309908]).[11]

None of the cases USNWR cites holds to the contrary.  USNWR cites to *Laker v. Board of*

*Trustees of Cal. State Univ.*, 32 Cal. App. 5th 745 (2019), in support of its purported "general rule"

that government entities cannot invoke anti-SLAPP protection.  Opp. at 33.  But *Laker* says no such

thing.  Indeed, the Court of Appeal there *granted* the University and the Dean's anti-SLAPP motion

with respect to the plaintiff's defamation claim.  *Laker*, 32 Cal. App. 5th at 779.  In analyzing the

whether the plaintiff's retaliation claim was similarly subject to be being stricken, the court

"observe[d] that courts appear more likely to find that claims arise out of protected conduct when they

are based on the actions of individuals."  *Id.* at 775.  It made clear, however, that "the distinction

between individual and organizational defendants" was *not* a "formal element of the anti-SLAPP

---

[11] USNWR half-heartedly attempts to distinguish *Vargas* and other cases allowing government entities to bring anti-SLAPP motions by saying that public entities can invoke the statute only "for their *speech*, as opposed to their *actions*."  Opp. at 35.  But USNWR has not cited—and the City Attorney has not identified—a single case that makes this distinction.  Moreover, USNWR's argument is contradicted by *Vargas* itself.  The *Vargas* Court expressly stated that "a lawsuit against a public entity that arises from its statements *or actions* is potentially subject to the anti-SLAPP statute," and then held that "the publications *and activities of the City* that [were] at issue in [that] case constitute 'protected activity' within the meaning of the first step of the anti-SLAPP analysis." Vargas, 46 Cal. 4th at 19 (emphases added).  Indeed, several post Vargas cases have stricken claims based on protected governmental action.  *See, e.g.*, *Doe*, 8 Cal. App. 5th at 840–41; *Blue*, 23 Cal. App. 5th at 147; *Squires*, 231 Cal. App .4th at 582.

analysis, for judicial imposition of [such] a requirement not contained in the text of section 425.16 would violate the foremost rule of statutory construction." *Id.* at 776 (cleaned up).

USNWR also cites cases holding that claims challenging ordinances or statutes are not subject to anti-SLAPP motions, but makes no effort to support its bald assertion that "[l]ocal subpoenas are indistinguishable from local ordinances for these purposes." Opp. at 34. Certainly USNWR cites no case that draws that analogy. And the cases USNWR cites for the proposition that the anti-SLAPP statute is inapplicable to lawsuits against a public entity for "acts of governance" are similarly inapplicable here. The "acts of governance" at issue in the cases USNWR cites were (1) "charging the [defendant] more for certain pension contributions than the [defendant] believes is appropriate," *San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Emps.' Ret. Assn.*, 125 Cal. App. 4th 343, 357 (2004)), and (2) "fail[ing] to give proper advance notice of the business items that were discussed at the July 12, 2012 [public Board] meeting," *Schwarzburd v. Kensington Police Prot. & Cmty. Servs. Dist. Bd.*, 225 Cal. App. 4th 1345, 1349 (2014). Here, by contrast, the challenged conduct—serving a subpoena in connection with an issue under consideration by an official proceeding or body—has been held to be subject to anti-SLAPP protection. See Mot. at 33 and *infra*. The mere fact that the subpoena was issued by a government entity does not remove it from the statute's sphere of protection.

Second, USNWR argues that the City Attorney's issuance of the subpoenas here was not protected activity under Section 425.16(e)(2) or (e)(4). USNWR arguments fail.

**Section 425.16(e)(2).** The most notable thing about USNWR's argument with respect to subsection (e)(2) is what USNWR does *not* dispute. USNWR does not dispute that its Shield Law Claim arises from issuance of the subpoenas. Mot. at 32. It does not dispute that the subpoenas at issue here were prepared and served by the City Attorney in connection with an issue under consideration and review by his office. See Mot. at 33-34. And it does not dispute that they were issued in connection with an "official proceeding authorized by law." *Id.* at 35. Instead the company argues only that subpoenas cannot be "writings" within the meaning of the anti-SLAPP statute. Opp. at 36-37. This argument is refuted by California caselaw.

In *Mallard v. Progressive Choice Ins. Co.*, 188 Cal. App. 4th 531 (2010), the claims were "entirely based on [defendant's] alleged conduct, as Progressive's counsel, of subpoenaing third party

health care providers . . . to obtain [plaintiff's] mental health records to defend against her uninsured motorist claim." *Id.* at 538.  The court held that "the use of subpoenas to conduct discovery in the context of a contractual arbitration of an uninsured motorist claim dispute under the Insurance Code constitutes a writing in connection with 'any other official proceeding authorized by law,' within the meaning of section 425.16, subdivision (e)(2)."  *Id.* at 535; *see also Boswell v. Retreat Cmty. Ass'n*, No. E064171, 2016 WL 3773403, at *12 (Cal. Ct. App. July 11, 2016) (holding that "helping to subpoena the [defendant] Association" constituted protected activity under (e)(2)).  This Court held similarly in *Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003 (N.D. Cal. 2010).  In *Tuck*, the claims at issue arose, in part, from the moving party's service of subpoenas on the other party.  The moving party argued that the subpoenas fell within subsection (e)(2), and the Court agreed, holding that the anti-SLAPP statute protects, among other things, "the service of subpoenas, and any factual investigation related to the issues in dispute."  *Id.* at 1015.

USNWR attempts to distinguish these cases because they were between private parties.  Opp. at 36.  But this fact is irrelevant to the question of whether a subpoena issued in connection with an issue under consideration by an official body or an official proceeding is protected activity.

Finally, USNWR argues that an action—e.g., the denial of tenure or a retaliatory disciplinary action—is not protected activity merely because it is reduced to writing.  Opp. at 36.  This, too, is true but irrelevant.  USNWR is not challenging an independent action that was reduced to writing in a subpoena.  As USNWR has conceded, USNWR's state-law claims (like the claims in *Mallard* and *Tuck*) arises out of the conduct of issuing subpoenas.

**Section 425.16(e)(4).**  Subsection (e)(4) protects "any other conduct in furtherance of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest."  USNWR contends that *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871 (2019), defeats the City Attorney's reliance on this subsection.  Opp. at 37.  Not so.  As an initial matter, USNWR implies that the City Attorney erred by applying the analysis from *FilmOn.com v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149 (2019) and that *Wilson* establishes an entirely separate framework that should have been addressed in the City Attorney's motion.  But as the California Supreme Court recognized in the very footnote USNWR cites for this proposition, "[t]he two-part *FilmOn* inquiry will often be dispositive in

cases concerning the reach of the catchall provision." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1020 n. 9 (2021).  Only if it is "unclear whether apparently noncommunicative acts qualify" as conduct in furtherance of speech and petitioning is *Wilson* implicated at all, in which case "a court may need to also examine that question" by asking whether the acts "furthered the [defendants'] speech or petitioning rights because they bore some substantial relationship to the [defendants'] ability to [petition or] speak on matters of public concern." *Id.* at 1020 & n. 9 (cleaned up).

Even assuming *Wilson* is relevant here, the City Attorney's investigative conduct in issuing the subpoenas is protected under (e)(4).  The California Court of Appeal's opinion in *Ross v. Seyfarth Shaw, LLP*, 96 Cal. App. 5th 722 (2023), is instructive.  There the target of an internal investigation carried out by Seyfarth Shaw sued the law firm and the individual lawyers who worked on the investigation alleging, *inter alia*, that the defendants selectively reviewed evidence and improperly limited their investigatory interviews.  Like USNWR, the plaintiffs argued that subdivision (e)(4) could not apply under the Supreme Court's decision in *Wilson*.  *Id.* at 738.  The court disagreed and concluded that the defendants' noncommunicative investigatory conduct was protected under subdivision (e)(4) because it furthered the preparation of their report.  Similarly here, the City Attorney's investigative conduct "bore some substantial relationship to the City Attorney's ability to" petition on a matter of public interest.[12]  Without taking the investigative steps deemed necessary to determine the relevant facts, including issuing a subpoena, the City Attorney cannot assess whether or not USNWR has violated the law and, if so, petition the courts for redress.

In sum, because both subsection (e)(2) and (e)(4) are applicable here and because USNWR is unlikely to prevail on its Shield Law or Liberty of Speech claims, those claims should be stricken.

## CONCLUSION

For the foregoing reasons, the Court should dismiss USNWR's complaint in its entirety without leave to amend, strike USNWR's state-law causes of action as violating the City Attorney's anti-SLAPP protections, and award the City fees and costs associated with litigating the anti-SLAPP motion.

---

[12] USNWR does not dispute the City Attorney's assertion that this investigation involves a matter of public interest.  Mot. 36-37.

1    Dated:  March 29, 2024

2

3                                          DAVID CHIU
                                           City Attorney
4                                          YVONNE R. MERÉ
                                           Chief Deputy City Attorney
5                                          SARA J. EISENBERG
                                           Chief of Complex & Affirmative Litigation
6                                          ALEXANDER J. HOLTZMAN
                                           KARUN A. TILAK
7                                          Deputy City Attorneys

8                                     By:  _/s/ Karun A. Tilak_____
9                                          KARUN A. TILAK

10                                         *Attorneys for Defendant*
                                           SAN FRANCISCO CITY ATTORNEY DAVID CHIU
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28