UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. NEWS & WORLD REPORT, L.P., | Case No. 24-cv-00395-WHO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE AND DENYING REQUEST FOR PRELIMINARY INJUNCTION** |
| DAVID CHIU, et al., | |
| Defendants. | Re: Dkt. Nos. 18, 25 |

This case involves a dispute between the San Francisco City Attorney's Office and U.S. News and World Report ("U.S. News") over a series of interrogatory and document subpoenas (the "Subpoenas") that the City Attorney David Chiu (the "City Attorney") issued to U.S. News last year. The Subpoenas seek insight into the methodologies that U.S. News uses to rank hospitals in the United States. The City Attorney accompanied the Subpoenas with a demand letter that expressed "significant concerns about the rankings of hospitals" and questioned the reliability of the rankings. He suggested that U.S. News may be in violation of California Business and Professions Code section 17508. In response, U.S. News filed this lawsuit under the First Amendment and the California Constitution and seeks a preliminary injunction preventing the City Attorney from enforcing the Subpoenas, contending that the Subpoenas violate its right to freely express itself. It also asserts a claim under the California Reporters' Shield law.

The City Attorney moved to dismiss and brought an anti-SLAPP motion to strike. There is a procedure under state law that would allow U.S. News to raise its arguments about the Subpoenas in California Superior Court for the City and County of San Francisco if the City Attorney petitions the Superior Court to enforce them. To date, there is no petition and no basis for federal court intervention: the claims are not justiciable yet, if they ever will be. I will DENY

U.S. News's motion for a preliminary injunction and GRANT the City Attorney's motion to dismiss and anti-SLAPP motion.

### BACKGROUND

#### A.     U.S. News and World Report

U.S. News and World Report, an American media company, publishes news, consumer advice, rankings, and analysis.  Among other things, it provides "Best Hospital" rankings to what it describes as "excellent healthcare facilities" in order to "inform the public about the relative strengths of particular hospitals."  *See* Complaint for Injunctive Relief and Declaratory Judgment ("Compl.") [Dkt. No. 1] ¶ 20; *see* Declaration of John Potter ("Potter Decl.") [Dkt. No. 19-6].

U.S. News provides different kinds of rankings, including "specialty rankings" that are meant for patients with "life-threatening or rare conditions who need a hospital that excels in treating complex, high-risk cases," and "procedure and condition rankings" that focus on more commonly required procedures.  Compl. ¶¶ 20-22.  In 2023, "U.S. News evaluated thousands of hospitals across 15 specialties and 21 procedures." *Id.* ¶ 23.  It states that it works with an independent, nonprofit research institute to support the publication of Best Hospitals: Specialty Rankings and Best Children's Hospitals and that it has a rigorous refining process for its methodology. *Id.* ¶¶ 26-31.  It also publishes reports that describe "in detail" the methodologies underlying its Best Hospitals ranking for any given year. *Id.* ¶ 32.  It says that it gives "no weight to financial considerations" when determining and publishing its rankings. *Id.* ¶ 33.  The Best Hospitals rankings are themselves widely lauded by a variety of different ratings organizations. *Id.* ¶¶ 34-41.

#### B.     The Subpoenas and U.S. News's Response

On June 30, 2023, the City Attorney sent U.S. News a demand letter expressing concerns with the methodology behind its hospital rankings and seeking information into the same.  *See* Compl. Ex. A.  He stated that he sought this information under his authority to investigate potential violations of the California Business and Professions Code, particularly section 17508 of the same.  U.S. News responded on July 19, 2023, *see* Compl. Ex. B, that it believed the City Attorney's letter infringed on its freedom of expression as guaranteed by the United States and

United States District Court
Northern District of California

California Constitutions, and by California's Reporters' Shield Laws.  Compl. ¶¶ 6-7; see *id*. Ex. B.

Roughly six months later, on January 9, 2024, the City Attorney issued two subpoenas seeking documents and information related to U.S. News's hospital rankings.  *See* Exs. D, E (the Subpoenas).  The first Subpoena posed 14 interrogatories, listed below:

1. Identify all Hospitals that paid USNWR or BrandConnex, LLC in each year for Best Hospital badge licensing and the amount paid by each Hospital for Best Hospital badge licensing;
2. Identify all Hospitals that paid USNWR in each year for access to USNWR data or data insights, including, but not limited to, USNWR's "Hospital Data Insights" database and the amount paid by each Hospital for access to USNWR data or data insights;
3. Identify all Hospitals that paid USNWR in each year for advertising, including, but not limited to, advertising on USNWR's website and in its Best Hospitals Guidebook and the amount paid by each Hospital for advertising;
4. Identify all Hospitals that paid USNWR in each year to be a Featured Hospital and the amount paid by each Hospital to be a Featured Hospital;
5. Identify all products or services other than those addressed in Interrogatory Specification Nos. 1–4 for which USNWR receives direct or indirect payments from Hospitals;
6. For each product or service identified in response to Interrogatory Specification No. 5, identify all Hospitals that paid for that product or service and the amount paid by each Hospital for that that product or service;
7. Describe USNWR's basis for stating that its Best Hospitals rankings are "[h]ow to find the best medical care in 2023," as stated on the following webpage: https://health.usnews.com/best-hospitals.
8. Describe USNWR's basis for according 19 times greater weight to cystic fibrosis treatment than to sickle cell disease treatment in the Children's Hospital rankings;
9. Describe how, if at all, USNWR has incorporated primary and preventive care in each annual version of the Best Hospitals rankings;
10. Describe USNWR's basis for not including measures of health equity in its rankings of adult Hospitals;
11. Describe how USNWR has adjusted the Medicare fee-for-service dataset to reflect actual patient populations in each annual version of its Best Hospitals rankings;
12. Describe USNWR's basis for believing that Medicare outcomes information from at least 18 months ago accurately reflects current Hospital outcomes;
13. Describe USNWR's basis for using opinion surveys as the exclusive method for ranking Hospitals in ophthalmology, psychiatry, and rheumatology and for incorporating opinion surveys into other specialties ranked by USNWR; and
14. Describe USNWR's relationship with Doximity, Inc., including any equity interest held by USNWR in Doximity, Inc., and any change in that relationship over the last four years.

*See* Compl. Ex. D

The second subpoena requested six groups of documents from U.S. News, listed below:

1. Documents sufficient to show the corporate structure of USNWR, including but not limited to U.S. News & World Report L.P.'s relationship with any parent, subsidiary or affiliate entity identified in your responses to the accompanying Subpoena for Interrogatory Responses;
2. All agreements between USNWR and BrandConnex, LLC;
3. All agreements between USNWR and RTI International relating to the Best Hospitals rankings;
4. For each Hospital identified in response to Interrogatory Specification Nos. 1–6 in the accompanying Subpoena for Interrogatory Responses, all agreements between that Hospital and USNWR;
5. Documents sufficient to determine USNWR's equity interest in Doximity, Inc. for each year between 2019 and the present; and
6. All USNWR policies and procedures governing the receipt of payments from Hospitals eligible to be considered in USNWR's Best Hospitals rankings.

*See id.* Ex. E

Both the interrogatory and document subpoenas contained warnings in bold script: "Failure to comply with the commands of this Subpoena may subject you to citation for contempt or other penalties before the Superior Court of the State of California." *See id.*, Exs. D, E.

### C.    California State Law Related To the Subpoenas

There is a California statutory procedure to respond to the Subpoenas. To start, if U.S. News, as the recipient of the Subpoenas, objects to the requests in the Subpoenas and refuses to respond, it must provide its objections to the City Attorney, the issuer of the Subpoenas, and meet and confer with the City Attorney to address those objections. *See* Cal. Bus. & Prof. Code § 16759(d).

The Subpoenas are not self-enforcing. The City Attorney may only compel a response by petitioning the San Francisco Superior Court for an order requiring compliance. *See* Cal. Gov. Code. § 11187(a). U.S. News faces no automatic penalties for objecting to the Subpoenas or failing to respond to them.

If the City Attorney files such a petition, the Superior Court would then issue an order requiring U.S. News to appear before the court to show cause why it has not complied with the Subpoenas. *Id.* at § 11188. Alternatively, immediately after serving objections and meeting and

conferring with the City Attorney, U.S. News may choose to file a motion to quash the Subpoenas in whole or in part in Superior Court.  *See* Cal. Bus. & Prof. Code § 16759(d).

Regardless of whether U.S. News moves to quash the Subpoenas, chooses not to respond, or simply objects, the City Attorney is not empowered to overrule its objections.  Instead, the "validity of the objection [to the Subpoenas] shall be determined exclusively in a proceeding brought . . . to compel compliance" with the Subpoenas.  *See* Cal. Gov. Code § 11187(d).  If the Superior Court determines that the objections are well founded, then the Subpoenas will not be enforced.  If the Superior Court finds that the objections are without merit, then it can issue an order compelling compliance with the Subpoenas.  *Id*. at § 11188.  Only at that point is compliance required.   If U.S. News continues not to comply with the Subpoenas, the City Attorney may seek sanctions for contempt of court.  *Id*.  An order requiring compliance with the Subpoenas is immediately appealable.  *See Dana Point Safe Harbor Collective v. Superior Court*, 51 Cal. 4th 1, 11 (2010).

### D.    U.S. News Files Suit

U.S. News did not seek to meet and confer with the City Attorney after the Subpoenas were served.  Instead, it filed this lawsuit on January 23, 2024, the day before the deadline to respond to the Subpoenas.  *See* Compl.  It filed its motion for a preliminary injunction shortly thereafter.  *See* Motion for Preliminary Injunction ("Preliminary Injunction Mot.") [Dkt. No. 18].  The City Attorney moved to dismiss and to strike U.S. News's state law claims.  *See* Motion to Dismiss and Consolidated Motions to Strike and Opposition to Preliminary Injunction Mot. ("MTD & Strike") [Dkt. No. 25].  The City Attorney agreed not to move to enforce the Subpoenas until all the pending motions were heard.[1]

### LEGAL STANDARD

### I.    MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

---

[1] Several parties have filed amicus briefs in this case, on behalf of both U.S. News and the City Attorney.  The briefs largely address the merits of U.S. News's claims.

United States District Court
Northern District of California

dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## II.  PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. However, the Ninth Circuit has held that a plaintiff may also obtain an injunction if he has demonstrated "serious

questions going to the merits" that the balance of hardships "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011).

"[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed . . . at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir. 2011) (overruled in part on other grounds).

## DISCUSSION

## I.    U.S. NEWS'S CLAIMS ARE NOT JUSTICIABLE NOW

To succeed on the merits, a party must be able to reach the merits. The answer to whether U.S. News's claims are justiciable drives the resolution to all three pending motions. I conclude that its claims are not constitutionally or prudentially ripe.

### A.    U.S. News's Claims Are Not Constitutionally Ripe

Along with standing and mootness, ripeness is one of three justiciability requirements. Ripeness "is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, L.ed.2d 681 (1967) (overruled on other grounds, *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977))).

The Ninth Circuit has separated the constitutional and prudential components of ripeness. "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094, n.2 (9th Cir. 2003) (internal quotations omitted). Whether framed as an issue of standing or ripeness, an injury must involve "an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b)

actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotations omitted).  In the context of First Amendment claims, the requirements of ripeness and standing are less stringently applied, *see Wolfson v. Grammer*, 616 F.3d 1045, 1053 (9th Cir. 2010), but mere allegations of chilled speech are not sufficient to sustain a First Amendment claim, *see Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022).

      The First Amendment typically prohibits government officials from "subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019)).  It also protects plaintiffs who have an "actual or well-founded fear" that speech regulation will be enacted against them.  *See Alaska Right to Life Pol. Action Comm. v. Feldman* (*Feldman*), 504 F.3d 840, 849 (9th Cir. 2007) (internal quotations omitted).  The latter group are referred to as having "pre-enforcement" claims.  *Id.*  Constitutional ripeness and standing in First Amendment cases are evaluated in different ways depending on whether a plaintiff asserts a pre-enforcement claim or a traditional retaliation claim.  *See Twitter v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022).

      To determine whether a *pre-enforcement* claim is constitutionally ripe, a court considers: "(1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute."  *Id.* (quoting *Feldman*, 504 F.3d at 849 (internal quotations omitted)).[2]  For a pre-enforcement claim to be constitutionally ripe, "[t]he potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" it.  *Feldman*, 504 F.3d at 851 (quoting *Getman*, 328 F.3d at 1095).[3]

_____

[2] For ease of reference, I will refer to the factors that courts consider when determining whether a claim is ripe under the pre-enforcement framework as the "*Feldman* factors."

[3] Briefly, the parties grapple over whether the City Attorney itself frames U.S. News's claims as pre-enforcement claims.  U.S. News contends that the City Attorney admitted that this was a pre-enforcement case.  Oppo. 14:15-17.  The City Attorney replies that its reference to "pre-

United States District Court
Northern District of California

In contrast, in a typical First Amendment *retaliation* case where the plaintiff challenges a state action that has already been taken against it, the court's inquiry focuses on "the three elements that form the 'irreducible constitutional minimum' of Article III standing." *See Twitter*, 56 F.4th at 1174 (quoting *Lujan*, 504 U.S. at 560).  A plaintiff must show: "'(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  In the First Amendment context, "'the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression.'" *Id.* (quoting *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021)).

U.S. News says that its claims are constitutionally ripe for two reasons.  First, because it understands its case as a pre-enforcement case, it argues that all it must do to establish constitutional ripeness is show that the Subpoenas create a credible threat of prosecution, which it believes they do.  In the alternative, it asserts that even if its claims are evaluated under a retaliatory framework, it can show concrete injury-in-fact under the traditional three-prong, Article III standard.  I disagree on both fronts.

### 1.    U.S. News Is Not Bringing Pre-Enforcement Claims

U.S. News is not bringing pre-enforcement claims because it does not challenge any law of general and prospective applicability.  On this issue, and many others, *Twitter v. Paxton*, 56 F. 4th 1170, 1171-72 (9th Cir. 2022), is directly on point.

In *Twitter v. Paxton*, the Texas Office of the Attorney General (OAG) served the social media company Twitter with a non-self-executing Civil Investigative Demand (CID) asking it to produce various documents relating to its content moderation decisions in the wake of Twitter's decision to ban President Donald Trump from the app.  *See Twitter*, 56 F.4th at 1171-72.  After some negotiation between the OAG and Twitter, "rather than respond to the CID or wait for OAG

---

enforcement" challenges to subpoenas in a different context, "without invoking the line of cases that U.S. News advances."  Reply 6, n. 4.  My evaluation of whether this case is a pre-enforcement action is independent of the parties' portrayals.

to move to enforce it in Texas state court," Twitter instead brought suit in the Northern District of California against Paxton, in his official capacity, arguing under 42 U.S.C. § 1983 that the CID was government retaliation for speech protected by the First Amendment. *Twitter*, at 1172. It claimed that the investigation chilled its speech. It asked the district court to enjoin Paxton from enforcing the CID and from continuing his investigation and to declare the investigation unconstitutional. *Id.*

Paxton responded that the OAG did not "seek to investigate the content-moderation decisions that Twitter makes—and could not do so under [Texas's unfair and deceptive trade practices law]—but rather is conducting an investigation into whether Twitter truthfully represents its moderation policies to Texas consumers." *Id.* Twitter insisted that this explanation was a pretext for unlawful retaliation by Paxton against Twitter for its political viewpoint. It argued that Paxton's public comments against Twitter illustrated his wrongful motives for issuing the CIDs. In response, Paxton contested, among other things, constitutional ripeness.

The district court denied the injunction and agreed with Paxton that Twitter's claims were not constitutionally ripe. It evaluated ripeness using a First Amendment retaliatory framework, not a pre-enforcement framework.[4] It did not reach the merits; it did not decide whether Paxton's CIDs were part of a permissible investigation or were otherwise motivated by Paxton's personal animus against Twitter.

The Ninth Circuit affirmed. The court explained that Twitter was not bringing a pre-enforcement claim because it did not allege that its speech "[was] being chilled by a statute of general and prospective applicability that may be enforced against it [but rather] [it] allege[d] that OAG targeted it specifically with the CID and related investigation." *Twitter*, at 1175. It found that the district court was correct to evaluate Twitter's standing under a traditional retaliatory framework and to "focus[] directly on the three elements that form the 'irreducible constitutional

---

[4] The OAG had encouraged the district court, and then the Ninth Circuit to consider the case under a pre-enforcement framework, because the accepted rule was that non-self-executing document requests were not ripe for review prior to enforcement. *See Twitter, Inc., Plaintiff-Appellant, v. Ken PAXTON, in his official capacity as Attorney General of Texas, Defendant-Appellee.*, 2021 WL 4256633, at *12 (response brief). Neither the trial nor the appellate court was persuaded.

1    minimum of Article III standing'." *Id.* (quoting *Lujan*, 504 U.S. at 560).

2        This case stands on all fours with *Twitter.* U.S. News does not challenge a statute of

3    general and prospective applicability.  Instead, it challenges the City Attorney's choice to target it

4    specifically with non-self-enforcing subpoenas and potentially a related investigation, just as

5    Paxton did in *Twitter.  See* Compl. ¶¶ 80-84; Oppo. 34:19-21 ("U.S. News . . . seeks only to

6    challenge the government decision that the City Attorney took for his Office in issuing illegal

7    Subpoenas.").  U.S. News alleges, just as Twitter did, that it has been unlawfully targeted by non-

8    self-enforcing interrogatories based on disagreement with its editorial decisions, and that this

9    infringes on its First Amendment Rights.  *See e.g.*, Compl. ¶ 3 ("The City Attorney is threatening

10   invasive, sweeping, burdensome incursions against a news organization merely because he

11   disagrees with [U.S. News's] editorial viewpoint").  And U.S. News does not allege that

12   California's Unfair Competition Law, which is the source of the City Attorney's authority to issue

13   the Subpoenas, is unconstitutional, which was also true of Twitter's position with respect to

14   Texas's CID statute. [5]  As the Ninth Circuit concluded in *Twitter,* the retaliatory framework is the

15   appropriate way to evaluate whether U.S. News's case is ripe.

16       U.S. News protests that the *Twitter* comparison is inapt.  It contends that the Ninth Circuit

17   in *Twitter* considered only the actual harm caused by retaliatory actions that the Texas OAG had

18   already taken.  Here, U.S. News says that it has "identifi[ed] chilling that *will* occur if the City

19   Attorney is permitted to enforce his intrusive Subpoenas," which it argues makes this a pre-

20   enforcement case where *Twitter* was not. Oppo. 14:22-15:5-6 (emphasis added); *see also* Compl.

21

22   [5] U.S. News argues that the Business and Professions Code section that the City Attorney cites as
     the impetus for his investigation is inapplicable to U.S. News's activities as a journalistic entity
23   because it claims that it does not engage in commercial speech.  *See* Oppo. 18-19.  Under Section
     17508, an actionable statement must meet a three-part test to fall within the purview of
24   California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.): "(1) a commercial
     speaker, (2) an intended commercial audience, and (3) representations of fact of a commercial
25   nature." *Bernardo v. Planned Parenthood Fed'n of Am*., 115 Cal. App. 4th 322, 347-48 (2004)
     (citing *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 964 (2002)).  U.S. News contends that the City
26   Attorney's demand letters, subpoenas, and papers in this matter all fail to identify any commercial
     statements of fact.  Preliminary Injunction Motion [Dkt. No. 18] 2.  It argues that statements about
27   the "quality" of its rankings are "opinions" outside of the purview of Section 17508.  That may be
     a subject of debate on the merits, but it is not a reason to conclude that Section 17508 is not a law
28   of general and prospective applicability.

¶¶ 12, 13, 54, 60, 62, 63, 79, 84; Preliminary Injunction Mot. 15-17, 19-20.  But this analysis is off

kilter.  In explaining why *Twitter* was not a pre-enforcement case, the Ninth Circuit remarked that

"the subject of [Twitter's] challenge [was] not only some anticipated future enforcement action by

OAG . . . Twitter claims OAG has already acted against it."  *Twitter*, 56 F.4th at 1174-75.

U.S. News challenges both anticipated enforcement action that the City Attorney has yet to

undertake *and* the "government decision that the City Attorney took for his Office in issuing

illegal subpoenas," the "burdensome subpoenas" themselves, and what it characterizes as

"mounting harassment" by the City Attorney.⁶  *See* Compl. ¶¶ 2-3, 80-84; Oppo. 34:19-21.  Just

like Twitter, U.S. News claims that the City Attorney has already acted against it.  *See Twitter*, 56

F.4th at 1174-75.  The nature of its claims calls for evaluation of ripeness under a First

Amendment retaliatory framework, meaning that U.S. News must establish constitutional ripeness

by alleging a chilling effect on its speech or an otherwise "legally cognizable injury" that is not

"conjectural" or "hypothetical."  *See id.*; *see also Lujan*, 504 U.S. at 560.

The cases U.S. News relies on to support its argument that it is bringing a pre-enforcement

challenge are cases that challenge statutes of general and prospective applicability and so are not

applicable.  And those cases also involved specific warnings or threats to initiate proceedings that

are necessary for a pre-enforcement challenge under the second *Feldman* factor, unlike the

circumstances here.  *See Twitter*, 56 F.4th at 1174 (quoting *Feldman*, 504 F.3d at 849 (internal

quotations omitted)).

U.S. News contends that it faced a "credible threat of enforcement" of the sort that

plaintiffs in ripe pre-enforcement cases face, but the cases to which it analogizes are inapposite.

For instance, it points out that in *Maldonado v. Morales*, 556 F.3d 1037, 1044-45 (9th Cir. 2009),

the Ninth Circuit held that a challenge to a state statute—California's Outdoor Advertising Act

(COAA)—was ripe even though the plaintiff had never been criminally prosecuted under the

provision of the COAA that he challenged.  But there, the plaintiff challenged a statute of general

---

⁶ This is further evidenced by an argument that U.S. News makes later, in support of prudential
ripeness, where it states that "the City Attorney is already taking challenged action in the form of
the Subpoenas," arguing that this renders the issues raised ripe for review.  Oppo. 17:20-23.

United States District Court
Northern District of California

and prospective applicability. Moreover, he had also already been cited in contempt for violating the statute. *Id.* at 1041-42. He sued in federal court, alleging that the COAA violated the First Amendment, both facially and as applied to him. *Id.* Unlike U.S. News, by the time he sued, he had already been enjoined from engaging in the expression in which he wished to engage and faced criminal prosecution if he continued to violate the challenged statutes. *See id.* at 1044-45. He also lacked any route forward for judicial review except in federal court; U.S. News has not faced the same suppression and does not face the same threats.

In *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir. 1999), the plaintiff, a union, challenged a Nevada criminal statute that it claimed infringed upon its members' First Amendment rights. The state attorney general had threatened to enforce the statute, which was again one of general and prospective applicability. *See id.* at 617-18. The state attorney general insisted that she lacked the authority to enforce the statute in the way the plaintiff claimed, and the Ninth Circuit considered whether her lack of authority to carry out her threats rendered the union's pre-enforcement claim non-justiciable. It found that the claim was justiciable because the state attorney general had made a "specific threat of prosecution," making the union's fear of prosecution not "imaginary or wholly speculative," and that she had threatened, in the alternative, to refer prosecution to "local criminal authorities," which similarly triggered the "case or controversy" requirement. *Id.* at 618.[7] The court in *Del Papa* rejected the argument that the state attorney general's letter failed to "chill" the union's exercise of its First Amendment rights and was not a "genuine threat," finding that there was "no dispute that the union stopped distributing the contested handbill as soon as it received the attorney general's letter" and this was "substantially more than a subjective chilling effect." *Id.* at 619.

The City Attorney has not threatened U.S. News with criminal or civil prosecution. The clause included in the Subpoenas—that failure to comply might lead to a citation for contempt in

---

[7] The Ninth Circuit distinguished the situation in *Del Papa* from its decision in *Southern Pac. Transp. Co. v. Brown*, 651 F.2d 613 (9th Cir. 1980), where the court had reasoned that a state attorney general's power to "direct and advise" local prosecutors was insufficient to create a justiciable controversy against the attorney general. The key distinction was that in *Brown*, "there was . . . no actual threat of enforcement", but in *Del Papa*, there was. *Del Papa*, at 618 (distinguishing *Brown*, 651 F.2d 613).

superior court—is not a "threat" to prosecute.  *See* Compl. Exs. D, E.  The City Attorney has opened an investigation into U.S. News, as he is authorized to do under California law, and has made clear what he is investigating: whether the hospital rankings violate California's Business and Professions Code.  Several state court procedures stand between U.S. News and any finding of contempt or other form of citation.  And unlike the plaintiff in *Del Papa*, U.S. News has not changed its behavior in any tangible way in response to the Subpoenas.  *See* Oppo. 12:9-10; Compl. ¶¶ 4-5 (U.S. News has "confirmed that it will continue to rank hospitals, and to stand behind its journalism, despite the City Attorney's attempts to punish such speech.").

  *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), is also a different case.  There, the Rhode Island Legislature created a commission that was responsible for "educat[ing] the public" about obscene or impure literature as defined by certain sections of the general laws of the state.  *Bantam*, 372 U.S. at 59.  The state legislature gave that commission the authority and duty to investigate and recommend the prosecution of violations of said statutes.  The plaintiffs in *Bantam* were booksellers who had repeatedly ignored notices from the commission informing them that they were in violation of the relevant statutes and stood to be prosecuted.  *Id.* at 59-60.  The Supreme Court held that even when a state entity is limited to informal legal sanctions, the threat of those informal sanctions may be sufficient to constitute suppression of speech.  Informal censorship may "sufficiently inhibit the circulation of publications to warrant injunctive relief."  *Id.* at 59-61.

  The booksellers in *Bantam* challenged a statute of general and prospective applicability.  Not so here.  And the state-authorized commission repeatedly put booksellers on notice that they were violating state laws and threatened them with legal sanctions as a result; here, the City Attorney has "significant concerns" that U.S. News has broken laws or regulations and has started an investigation, which is ongoing.[8]  *See Bantam*, 372 U.S. at 61.  The state regulatory scheme in

_____

[8] U.S. News argues that the City Attorney *does* allege that U.S. News has broken the law.  *See* Oppo. 16:16-20 ("the *Twitter* panel distinguished the Supreme Court's decision in *Bantam Books* as involving an allegation 'that the law has been broken.' *Twitter*, 56 F.4th at 1177. Here, however, the City Attorney *does* allege that U.S. News has *broken* the law.") (citing MTD & Strike 1, 7; Compl. Ex. C (seeking documents and information "to determine the scope of [U.S. News's] violations of federal and California consumer protection laws") (emphases added))).  To

1   *Bantam* "provide[d] no safeguards whatever against the suppression of . . . constitutionally

2   protected [] matter." *See id.* at 71.  Here, U.S. News enjoys constitutionally guaranteed safeguards

3   that protect it against unreasonable or unjustified subpoenas.  *See* Cal. Gov. Code. §§ 1187(a),

4   1188; *see also supra* Section C.  The plaintiffs in *Bantam* faced a different set of risks than U.S.

5   News; they met the second *Feldman* factor.  U.S. News does not.

6        *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir.

7   2012), also involved a specific threat of prosecution in a way that even the most generous

8   interpretation of U.S. News's situation does not mirror.  *See* Oppo. 10:4-6.  There, the Ninth

9   Circuit held that a challenge to the Controlled Substances Act was ripe given a "genuine threat of

10  imminent prosecution," even though no investigation was active.  *See Oklevueha*, 676 F.3d at 835-

11  39.  A chapter of the Native American Church in Hawaii sued government officials, alleging that

12  their right to use marijuana in their religion was being infringed upon by the Controlled

13  Substances Act's ban on marijuana, and seeking the return of (or compensation for) marijuana

14  already seized by the government.  *Id.* at 835-39.  The court determined that the plaintiffs' pre-

15  enforcement claim was ripe because they "alleged an intention to engage in a course of conduct,"

16  i.e., using marijuana, "arguably affected with a constitutional interest," i.e., free exercise of

17  religion, "but proscribed by statute," i.e., the Controlled Substances Act.  *Id*. at 835; *see also*

18  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (laying out the elements

19  of pre-enforcement claims).

20        The plaintiffs there challenged a law of general and prospective applicability, the

21  Controlled Substances Act.  This created an "actual and well-founded fear" that the Controlled

22  Substances Act would be enforced against them, making their pre-enforcement claims

23  constitutionally ripe.  *See Feldman*, 504 F.3d at 851.  U.S. News does not face the same kind of

24  threat.  The City Attorney has not petitioned to enforce the Subpoenas in state court, and obtaining

25  _____

26  put a finer point on it, the City Attorney is conducting the initial stages of an investigation,
    motivated by its belief that U.S. News may be violating California state law.  No doubt that the
    dispute will have First Amendment implications if it becomes ripe.  And California law provides a

27  clear path toward the resolution of that dispute when it ripens into litigation, starting in San

28  Francisco Superior Court.

an order from the state court is the only way the City Attorney can require compliance.  If U.S. News chooses not to comply, or otherwise moves to quash the Subpoenas, and the City Attorney does petition to enforce them, then U.S. News may make all of its merits arguments in state court.  If the state court finds that those arguments are convincing, then U.S. News will be under no obligation to comply with the Subpoenas.  Unlike the plaintiffs in *Oklevueha*, U.S. News faces no threat of imminent prosecution that would create an "actual and well-founded fear" that the Subpoenas will be enforced against them.

A case that did not involve a statute of general and prospective applicability is *Lakeview Financial v. Dept. of Financial Institutions*, 2021 WL 2530727 (W.D. Wash. Jun. 21, 2021), where the state of Washington investigated Lakeview, a financial institution, for potential violations of state law.  The state issued a subpoena, brought an action to enforce the subpoena, and then dismissed the enforcement action after Lakeview complied.  *See Lakeview*, 2021 WL 2530727, at \*\*2-4.  The state continued its investigation and later offered a draft Consent Order that would require Lakeview, among other things, to pay Washington consumers more than 1.24 million dollars.  Lakeview then sued the state in federal court, asserting violations of the Commerce Clause and Due Process Clause.  The state argued that the plaintiff could not establish injury-in-fact because the investigation was ongoing, but the district court disagreed.  It relied on the pre-enforcement standing doctrine in holding that "the department's investigations into [the plaintiff], including the issuance of a subpoena and a draft Consent Order, establish[ed] a credible threat of prosecution and establish injury-in-fact." *Lakeview*, at \*4.  Here, the City Attorney has not brought an action in Superior Court to enforce the Subpoenas, U.S. News has not complied with the Subpoenas, and the City Attorney's investigation has not proceeded far enough to know if he will conclude that U.S. News has violated the Business and Professions Code, on what grounds, and what type of remedy he thinks is appropriate.  What created the plaintiff's "actual and well-founded fear" of prosecution in *Feldman* and in *Lakeview* is absent here.

U.S. News contends that there is a "substantial risk that enforcement of the Subpoenas will intimidate hospitals and other entities from advertising with U.S. News or providing data to assist its rankings." Oppo. 7:23-8:3; Compl. ¶¶ 60, 62-63.  But, of course, the only mechanisms that

16

United States District Court
Northern District of California

1  would lead to enforcement are not underway; to date, all that the City Attorney has done is initiate

2  an investigation.  Taken to its logical conclusion, this would allow any business to stop the City

3  Attorney from investigating that business because it fears that the City Attorney might decide to

4  petition the Superior Court to enforce a subpoena and prevail in in the trial and appellate courts in

5  some wrongful fashion.  A facially lawful investigation by the City Attorney is not a credible

6  threat of prosecution.

7        In sum, I conclude that the First Amendment retaliatory standard applies.  U.S. News is not

8  bringing a pre-enforcement claim:  It is not challenging a statute of general and prospective

9  applicability.  And the City Attorney has not communicated a specific warning or threat to initiate

10  proceedings, so this claim would fail as a pre-enforcement claim under *Feldman*.

11              **2.**     **U.S. News Has Not Shown Concrete Injury-In-Fact**

12        Because this is not a pre-enforcement claim, U.S. News must satisfy the traditional

13  elements of constitutional ripeness as evaluated under the First Amendment retaliatory framework.

14  As U.S. News puts it, "[t]he question [of] whether this dispute is constitutionally ripe for

15  adjudication boils down to whether [it] faces a concrete injury-in-fact from the challenged

16  Subpoenas."  Oppo. 6:17-20.  It contends that the answer is "obviously 'yes,'," and compares this

17  case to "any case" where a "press entity faces unconstitutional intrusions by a hostile regulator

18  who finds fault with its journalistic decisions and views."  *Id.* 6:20-21.  I reach a different

19  conclusion.

20        To determine whether a plaintiff's retaliation claims are constitutionally ripe, I consider the

21  three elements that form the "irreducible constitutional minimum" of Article III standing.  *See*

22  *Twitter*, 56 F.4th at 1174-75; *see also Lujan*, 504 U.S. at 560 (laying out the three elements as:

23  "(1) an injury in fact, (2) sufficient causal connection between the injury and the conduct

24  complained of, and (3) a likelihood that the injury will be redressed by a favorable decision").

25  The Ninth Circuit has noted that in the First Amendment context, "'the injury-in-fact element is

26  commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is

27  chilled from exercising his right to free expression."  *Twitter*, at 1174 (quoting *Haines*, 2 F.4th at

28  310).  U.S. News focuses on self-censorship.

United States District Court
Northern District of California

U.S. News argues that the City Attorney's actions "would 'chill a person of ordinary firmness,' and . . . the Subpoenas demonstrate on their face an attempt to retaliate against a press entity for expressing a disfavored viewpoint." Oppo. 14, n. 5 (quoting *Arizona Students' Assoc. v. Arizona Board of Regents*, 824 F.3d 858, 867 (9th Cir. 2016)).  It states that it has identified impending concrete harm in the form of the City Attorney's "unconstitutional investigation and threat of enforcement," *id.* 6, 8:9-10, and it claims that the City Attorney is using the Subpoenas to "intimidate and dissuade [U.S. News] and the hospitals from entering into commercial relationships with each other, harming [its] business," and that the Subpoenas force U.S. News to choose whether to "either [provide] the requested documents and information, which will chill and burden its protected speech [or] bear the penalties of noncompliance with the Subpoenas." Compl. ¶ 84.  Critically, U.S. News does not contend that it has changed or will change its rankings methodology in any way because of the Subpoenas; in short, it has not showed that it has or will in the future censor itself.

The case to which U.S. News analogizes, *Arizona Students' Association v. Arizona Board of Regents*, 824 F.3d 858 (9th Cir. 2016), is inapposite.  There, a non-profit organization representing students enrolled in Arizona's public universities brought a § 1983 action against the Board of Regents for Arizona's public university system.  The non-profit alleged that the Board of Regents had retaliated against its exercise of its free speech rights when the Board first suspended its ability to collect fees from students and then adopted a policy limiting how the non-profit could collect student fees and requiring it to reimburse universities for the administrative costs of collecting those fees.  *See Arizona Students Assoc.*, 824 F.3d at 858-60.  The non-profit claimed that the Board's conduct was "more than a threat to encumber speech; the Board's actions . . . actually limited [its] speech by eliminating [its] primary source of income," i.e., the student fees. *Id.* at 869.  The Ninth Circuit found that the benefit provided by the Board (fee collection) fell within the range of government benefits that the court had previously recognized as "sufficiently valuable to give rise to a retaliation claim," and that the non-profit had plausibly alleged that the termination of that benefit was retaliatory.  *Id.* at 870-71.  Here, U.S. News has not alleged that the Subpoenas have "actually limited" its ability to express itself.  *See id.* at 869.  Further, the plaintiff

1   in *Arizona Students Association* lacked the statutorily guaranteed route toward relief that U.S.

2   News has.  *See generally Arizona Students Assoc.*, 824 F.3d 858*.; see supra* Section C.

3        In another effort to show concrete injury, U.S. News points out that after the City Attorney

4   sent the letter in June 2023, the University of Pennsylvania withdrew from U.S. News's hospital

5   rankings.  It provides no evidence, however, that this withdrawal was connected to the City

6   Attorney's investigation.  *See* Oppo. 7:18-22; Declaration of John Potter ("Potter Decl.") [Dkt.

7   No. 19-22] Ex. V (showing a post from Twitter that the City Attorney posted on June 26, 2023,

8   declaring that since he sent the letter to U.S. News on June 20, "the University of Pennsylvania

9   Health System . . . [withdrew' from [U.S. News's] dubious hospital rankings.").  In its complaint,

10  it states that the social media post showed that the City Attorney was "evidently pleased that his

11  use of his official government powers had caused damage to U.S. News's business and

12  reputation," *see* Compl. ¶ 54, but this is immaterial.  It does not show that U.S. News suffered

13  business injury from the City Attorney's actions.

14       U.S. News relies on *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979), to

15  support its argument that the City Attorney's investigation, subpoenas, and his "commitment to

16  enforce the same," "give rise to imminent harm to [U.S. News's] expressive freedoms that is

17  neither conjectural nor hypothetical." *See* Oppo. 8:9-14.  In *Babbitt*, a farmworkers union sought

18  to enjoin various provisions of Arizona's farm labor statute, violations of which risked criminal

19  liability.  *See Babbitt*, 442 U.S. at 289-90.  The district court granted the injunction, declaring the

20  statute unconstitutional.  *Id.*  On review, the Court stated that "[o]ne does not have to await the

21  consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending,

22  that is enough." *Id.* at 298.  The Court also affirmed that "[w]hen the plaintiff has alleged an

23  intention to engage in a course of conduct arguably affected with a constitutional interest, but

24  proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not

25  be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Id.*

26  (internal quotations omitted).  It also clarified that "'persons having no fears of state prosecution

27  except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'"

28  *Id.*

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    There is no prosecution in the offing here.  The City Attorney is investigating a matter and

2    has issued the Subpoenas.  They are not self-executing.  In *Babbitt*, the plaintiffs would face state

3    criminal prosecution immediately upon violating Arizona's farm labor statute, which they

4    intended to do.  Here, were U.S. News to refuse to comply with the Subpoenas and were the City

5    Attorney to try to enforce them, an entire set of legal procedures would be set in motion, forcing

6    the City Attorney to justify the Subpoenas in state court before they could be enforced.  There is

7    quite an obvious difference between the threat of immediate criminal prosecution for violating a

8    law of general and prospective applicability and the participation in a statutory discovery

9    procedure that allows a party to object or not respond to discovery requests and requires the City

10   Attorney to file a petition in state court to require production.  *See* Cal. Gov. Code §§ 11187-

11   11188 (providing that "if any witness refuses to answer any interrogatory . . . or produce . . . any

12   papers or other items . . . required by subpoena, the head of the department may petition the

13   superior court in the county in which . . . [the] documents . . . designated in the subpoena [are] to

14   be produced, for an order compelling the person to answer the interrogatories . . . or produce [the

15   documents].").  That process provides the objecting party with due process to raise all available

16   defenses and objections to the subpoena, and, if the Superior Court rules against it, to appeal that

17   decision in the normal process.  And all of this would occur *before* the City Attorney determines

18   whether to file suit.  Meanwhile, nothing prevents U.S. News from engaging in the speech that it

19   claims the Subpoenas seek to chill.

20   U.S. News points out that the Subpoenas "*threaten*[] *potential* contempt for noncompliance

21   if [U.S. News] does not answer [them]."  Preliminary Injunction Mot. 17:1-4 (emphasis in

22   original).  This is not the type of threat that constitutes actual or imminent harm sufficient to

23   establish Article III standing and show that a claim is constitutionally ripe.  *See supra*.  U.S.

24   News's speculation about harm to First Amendment rights if the Subpoenas are ultimately

25   enforced after state court adjudication is a hypothetical and conjectural injury, insufficient to

26   establish constitutional ripeness.

27   *Twitter* is once again instructive.  The Ninth Circuit distinguished Twitter's chilled speech

28   allegation from those of plaintiffs who lacked any procedural safeguards providing judicial review

prior to enforcement.  *See Twitter*, 56 F.4th at 1176-78 (distinguishing cases and finding the threat of possible future forced compliance with the CIDs to be highly speculative, given that the CIDs in *Twitter* were not self-enforcing).  The same distinctions apply here.  As I explained above, the farmworkers in *Babbitt* risked criminal liability if they violated the farm labor statute that they challenged and had no route toward judicial review of the statute other than suing in federal court.  *See Babbitt*, at 298.  The plaintiffs in the other cases that U.S. News cites also had no access to judicial review prior to the enforcement of whatever statute or rule they challenged.  *See e.g.*, *Bantam*, 372 U.S. at 59-61 (no judicial review of the notices that threatened criminal prosecution)[9]; *Libertarian Party of Los Angeles Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (same); *Arizona Students' Assoc.*, 824 F.3d 858 (9th Cir. 2016) (no judicial review of allegedly retaliatory termination of a government benefit).  That is not the case here.

Finally, U.S. News offers a recent decision by the United States District Court for the District of Columbia, where the court granted a media organization's request for preliminary injunction enjoining the Texas Attorney General, Ken Paxton, from pursuing an investigation into its organization.  *See* Notice by U.S. News of Supplemental Authority [Dkt. No. 39] (providing notice of *Media Matters v. Paxton*., No. 24-cv-147 (D.D.C. April 12, 2024) (Dkt. 37)).  There: "Through sworn affidavits, [plaintiff Media Matters] demonstrated the profound chilling impact that the CID has had on its news operations and journalistic mission." *Media Matters*, No. 24-cv-147, at p. 31.  In employee affidavits, Media Matters identified specific articles that, as a result of the CIDs, it decided not to publish out of concern that the articles would serve as fodder for "retaliatory legal action" or be subject to "investigative demands."  *Id.*  Media Matters's editor-in-chief stated that the CIDs had caused it to "significantly slow[] down [its] editorial and publication process." *Id.*  Media Matters provided concrete evidence of injury-in-fact: It showed that its employees had self-censored as a direct result of the CIDs, which met the standard for Article III injury in a First Amendment retaliation case, as laid out by the Supreme Court and other circuits.

---

[9] *Twitter* distinguished *Bantam* in three ways: "[*Bantam*] . . . involved allegations that the law had been broken, it addressed a state regulatory scheme that 'provide[d] no safeguards whatever against the suppression of ... constitutionally protected[ ] matter,' 372 U.S. at 70, 83 S.Ct. 631, and it did not address ripeness." *Twitter*, at 1176.

*See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-158 (2014); *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021).

U.S. News offers no such evidence.  It provided no affidavits suggesting that it has changed its publication habits in the slightest.  It does not claim that it has changed, or will change, its behavior to adjust to the City Attorney's Subpoenas.  Quite the opposite: U.S. News has "confirmed that it will continue to rank hospitals, and to stand behind its journalism, despite the City Attorney's attempts to punish such speech."  Oppo. 12:9-10; Compl. ¶¶ 4-5.  Media Matters suffered a concrete injury; U.S. News has not.

In sum, U.S. News has not shown the elements of Article III standing that are necessary to show that a retaliation-based First Amendment case like this one is justiciable.  The Subpoenas have not caused an injury-in-fact and U.S. News has not engaged in self-censorship.  I conclude that its case is not constitutionally ripe.

### B.    U.S. News's Case Is Not Prudentially Ripe

Lack of prudential ripeness further justifies dismissal.  The Ninth Circuit has separated out the constitutional and prudential components of ripeness.  The prudential component requires the court to evaluate the "fitness of the issues for judicial decision" first, and second, the "hardship to the parties of withholding court consideration." *See Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (internal quotations omitted).  The Ninth Circuit has held that "[t]he prudential considerations of ripeness are amplified where constitutional issues are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (internal citations omitted).

#### 1.    Fitness for Judicial Decision

The Ninth Circuit has held that a claim is fit for decision "if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 752 (9th Cir. 2020) (cleaned up).  Here, the City Attorney has not petitioned to enforce the Subpoenas, concluded his investigation into U.S. News's methodology, or brought any enforcement action.  Any determination of whether the Subpoenas are unenforceable would require a more fully developed

1   record, exploring among other things the allegedly intrusive nature of the Subpoenas and how

2   well-tailored they are to the City Attorney's legitimate purposes.

3          Many cases have found non-self-executing subpoenas to be prudentially unripe, as they do

4   not require immediate compliance and require speculation about what another decision maker

5   might decide.  *Association of American Medical Colleges v. U.S.*, 217 F.3d 770 (9th Cir. 2000), is

6   instructive.  There, several medical associations sued federal agencies, seeking to enjoin the

7   government from conducting audits in accordance with a nationwide program of audits for

8   reimbursements made to teaching hospitals under the Medicare Act.  *See Assoc. of American*

9   *Medical Colleges*, 217 F.3d at 773.  The district court dismissed for lack of subject matter

10  jurisdiction, ruling that the action was premature because there had been no final agency action,

11  the plaintiffs had adequate alternative remedies, and the issues were not ripe for

12  adjudication.  *Id.*  The Ninth Circuit affirmed and dismissed the action without prejudice.

13         The court noted that agency action is generally not ripe for review unless it is final, though

14  courts traditionally take a "pragmatic and flexible view of finality."  *Id.* at 780.  It added that

15  courts typically consider the following in determining finality: (1) whether the administrative

16  action is a definitive statement of an agency's position; (2) whether the action has a direct and

17  immediate effect on the complaining parties; (3) whether the action has the status of law; and (4)

18  whether the action requires immediate compliance with its terms.  *Id.* (citing *Mt. Adams Veneer*

19  *Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1989)).  Upon examining the audits in question in

20  *Association of American Medical Colleges*, the Ninth Circuit determined that while judicial

21  resolution of the questions at hand might aid the parties, the DHS and DOJ actions were not yet

22  final.  *Id.*  And the court noted that even if they were final, the audits themselves did not "'impose

23  an obligation, deny a right, or fix some legal relationship as a consummation of the administrative

24  process.'"  *Id.* at 781 (quoting *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113

25  (1948)).  It noted that "[a]n investigation, even one conducted with an eye to enforcement, is

26  quintessentially non-final."  *Id.* (internal citations omitted).

27         Other circuits are in accord.  In an almost identical case to this one, *Google, Inc. v. Hood*,

28  822 F.3d 212, 216 (5th Cir. 2016), the Fifth Circuit found that challenges to a non-self-executing

United States District Court
Northern District of California

23

state-administrative subpoena that had yet to be enforced against a plaintiff were not ripe for resolution in a federal court. *Id.* at 216. There, the Mississippi Attorney General issued a "broad administrative subpoena, which Google challenged in federal court," arguing in part that it would be "incredibly burdensome." *Id.* The state attorney general had also allegedly threatened to prosecute Google for allowing third parties to publish dangerous or unlawful content on its search engine. *Id.* Google argued that the subpoena and threatened prosecution violated its rights under several federal statutes and the First, Fourth, and Fourteenth Amendments. It moved for a temporary restraining order and preliminary injunction. The district court granted preliminary relief, which the Fifth Circuit vacated, finding that the challenge to a non-self-executing state-administrative subpoena that had not yet been enforced upon Google was not ripe for resolution by a federal court.

U.S. News does not engage with the implications of *Association of American Medical Colleges* or *Google* on prudential ripeness, beyond pointing out that the former is not a First Amendment case, *see* Oppo. 13:18-19, and the latter was rejected on different grounds by the Ninth Circuit in *Twitter*, *see id.* 13:12-13. It argues that its claims are prudentially ripe because the "issues raised are primarily legal, do not require further factual development, and the City Attorney is already taking challenged action in the form of Subpoenas." Oppo. 17:20-23. But U.S. News does not meaningfully distinguish the many cases where courts have found non-self-executing subpoenas to be prudentially unripe because they do not require immediate compliance and because their finality depends on the outcome of future state court proceedings. It is dismissive of some because they were not pre-enforcement claims. *See e.g.*, *Second Amend. Found. v. Ferguson*, No. C23-1554 MJP, 2024 WL 97349, at *1 (W.D. Wash. Jan. 9, 2024) (holding that plaintiffs' First and Fourth Amendment claims were prudentially unripe because the state attorney general's office had not yet completed the challenged investigation, and because the plaintiffs showed no hardship from withholding judicial consideration). But neither is this one. It ignores other cases because they were not First Amendment cases. *See e.g.*, *Winter v. California Medical Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989) (holding that a plaintiff's request for injunctive relief against an ongoing investigation was not ripe where the investigator could still

review additional information about the target of the investigation and determine there was no violation). While it is true that prudential concerns of ripeness are "amplified" when First Amendment claims are at issue, *see Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002), that does not make all non-First Amendment cases inapplicable.

Ultimately, the speculative nature of U.S. News's claims makes them unfit for judicial decision. The Subpoenas carry no automatic sanctions for noncompliance; they are not self-enforcing and require a state court order to be enforced. The City Attorney has not pursued such an order, and if he does, I do not know whether he will modify his requests or what the Superior Court will do.

## 2.    The Balance of Hardships

The prudential ripeness analysis also considers whether the action "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (cleaned up).[10] Here, the non-self-enforcing nature of the Subpoenas and the clearly delineated path forward to challenge their enforceability in state court strongly disfavors prudential ripeness.

U.S. News argues that it would suffer "irreparable" hardship if I dismiss these claims because the City Attorney "would next seek to enforce his Subpoenas in state court and pursue sanctions (including fees) and contempt if U.S. News does not comply." Oppo. 17:22-18:3; Preliminary Injunction Mot. 19-20. That is not an "immediate and significant change in [U.S. News's] conduct of [its] affairs with serious penalties attached to noncompliance." *See Stormans*, 586 F.3d at 1126. The hardship is speculative: The City Attorney has not moved to enforce and, if he does, the state court proceedings may well resolve in U.S. News's favor.

---

[10] As part of this hardship prong, the Ninth Circuit has also considered the hardship to the government from moving forward with the case. *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000) ("the State and the City would suffer hardship were we to adjudicate this case now."). Even if there is some hardship to the plaintiff from withholding consideration, that hardship may still be "insufficient to overcome the uncertainty of the legal issue presented in the case in its current posture" and thus "fail[ ] ... [to] outweigh[ ] our and the [government's] interest in delaying review." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009) (citation omitted). This also weighs against a finding of prudential ripeness in U.S. News's case.

United States District Court
Northern District of California

U.S. News also worries that if I determine that its claims are unripe, and dismiss for lack of justiciability, this "effectively bars" it from federal court. *See* Oppo. 19-20. It foreshadows a scenario where once this case is ripe "to the City Attorney's tastes," the City Attorney will then invoke *Younger* abstention. *See Younger v. Harris*, 401 U.S. 37 (1971). Courts in the Ninth Circuit have interpreted *Younger* to mean that federal courts "should abstain from exercising jurisdiction when there is an ongoing, state-initiated proceeding against the putative federal plaintiff in state court." *See Lakeview*, 2021 WL 2540727, at *2. U.S. News points out that courts both within and outside of this circuit have held that *Younger* cannot preclude all federal pre-enforcement challenges to state laws because even momentary losses of First Amendment freedoms constitute irreparable injury. *See e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

There is force to the general proposition set forth by U.S. News. But this is not a pre-enforcement challenge. It is subject to traditional Article III standing requirements that it cannot meet. It has a guaranteed statutory route toward challenging these subpoenas. Its argument about *Younger* abstention aims to extract an advisory opinion from me, which I will not give. I conclude that this case is not prudentially ripe.

## II.     THE CITY ATTORNEY'S ANTI-SLAPP ARGUMENTS PREVAIL

The City Attorney has filed an anti-SLAPP motion to strike in response to U.S. News's Shield Law and Liberty of Speech clause claims. [11]   *See* MTD & Strike 30-38; Reply in Support of MTD & Strike ("Reply") [Dkt. No. 30] 16-20. "California, like some other states, has a statute designed to discourage 'strategic lawsuits against public participation'," referred to as "SLAPPs." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010). SLAPPs "masquerade as ordinary

---

[11] Courts in this circuit agree that anti-SLAPP law does not apply to federal claims brought in federal court, so the City Attorney's anti-SLAPP motion is as a matter of law inapplicable to any claims derived from the First Amendment. *See e.g.*, *Bull. Displays, LLC v. Regency Outdoor Advert., Inc*., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (holding that although the anti-SLAPP statute does apply to state law claims brought in federal court, *United States ex rel Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 973 (1999), it does not apply to federal question claims in federal court because such application would frustrate substantive federal rights); *see also Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1130 (N.D.Cal.1999); *In re Bah,* 321 B.R. 41, 46 (9th Cir.BAP2005) ("We ... agree with the *Globetrotter* court that the anti-SLAPP statute may not be applied to matters involving federal questions..."). Accordingly, the City Attorney raises the anti-SLAPP motion in response to U.S. News's Shield Law and Liberty of Speech clause claims.

United States District Court
Northern District of California

1    lawsuits but are brought to deter common citizens from exercising their political or legal rights or

2    to punish them for doing so." *Id*. (internal quotations omitted).

3           Under California's anti-SLAPP statute, state law claims that arise from defendants'

4    exercise of their speech rights—or any action taken in furtherance of those rights—must be struck

5    unless the plaintiff establishes that it can make out a claim on the merits.  *See* Cal. Civ. Proc. Code

6    § 425.16(a); *see also Hilton*, 599 F.3d at 903; MTD & Strike 30-33.  Anti-SLAPP Motions

7    challenge particular causes of action rather than individual allegations or theories supporting a

8    cause of action.  *See* Cal. Civ. Proc. Code § 425.16(b)(1) ("A cause of action . . . shall be subject

9    to a special motion to strike . . .").

10          The anti-SLAPP statute itself describes four kinds of activity that qualify as protected

11   conduct:

12          "any written or oral statement or writing made before a legislative,
            executive, or judicial proceeding, or any other official proceeding
13          authorized by law; (2) any written or oral statement or writing made
            in connection with an issue under consideration or review by a
14          legislative, executive, or judicial body, or any other official
            proceeding authorized by law; (3) any written or oral statement or
15          writing made in a place open to the public or a public forum in
            connection with an issue of public interest; (4) or any other conduct
16          in furtherance of the exercise of the constitutional right of petition or
            the constitutional right of free speech in connection with a public
17          issue or an issue of public interest."

18   Cal. Civ. Proc. Code § 425.16(e).  California courts evaluate a moving defendant's anti-SLAPP

19   motion in two steps.  First, the moving defendant must make a "'threshold showing . . . that the act

20   or acts of which the plaintiff complains were taken in furtherance of the defendant's right of

21   petition or free speech under the United States or California Constitution in connection with a

22   public issue as defined in [subsection (e)] of the statute.'" *Hilton*, at 903 (quoting *Equilon Enters.,*

23   *LLC v. Consumer Cause, Inc*., 29 Cal. 4th 53 (2002)).  Second, "'if the court finds that such a

24   showing has been made, it must then determine whether the plaintiff has demonstrated a

25   probability of prevailing on the claim.'" *Hilton*, at 903 (quoting *Navellier v. Sletten*, 29 Cal.4th 82

26   (2002)).

27          In other words, the plaintiff must "demonstrate that the complaint is both legally sufficient

28   and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the

                                                  27

1    evidence submitted by the plaintiff is credited." *Id.* The court should not weigh the credibility or

2    strength of competing evidence, but it should grant the motion if, as a matter of law, the

3    defendant's evidence that supports the motion defeats the plaintiff's attempt to establish

4    evidentiary support for the claim. *See* Cal. Civ. Proc. Code § 425.16(b)(2).

5        The Ninth Circuit has not considered whether a trial court may award anti-SLAPP fees

6    after finding the court lacks subject matter jurisdiction over a defendant. However, the Supreme

7    Court of California has held that "[a] court that lacks subject matter jurisdiction over a plaintiff's

8    claims has the power to resolve an anti-SLAPP motion on jurisdictional grounds." *See Barry v.*

9    *State of California*, 2 Cal. 5th 318 (2017). Critically, the court concluded that a lack of subject

10   matter jurisdiction does not bar a court from imposing an award of attorney fees and costs. *Id.* at

11   325-26. It explained that the anti-SLAPP statute merely requires the trial court to determine

12   whether the plaintiff can prove a likelihood of prevailing on the merits to meet the second prong.

13   The court reasoned that it does not matter if that showing depends on a failure of proof, lack of

14   substantive merit, or other, non-merits-based reasons such that the trial court "lacks the power to

15   entertain the claims in the first place." *Id.* at 324-25. This is in large part because a defendant who

16   moves to dismiss a SLAPP lawsuit for lack of subject matter jurisdiction is still faced with the

17   "undue burden of defending against nonmeritorious claims," including associated fees and costs.

18   *Id.* at 327. It noted that to "exempt a plaintiff's claims from the reach of the anti-SLAPP statute

19   because they fail for a reason unrelated to their substantive merit would open up new avenues for

20   harassing and retaliatory litigation; it would permit plaintiffs to bypass the protections of the anti-

21   SLAPP statute simply by filing suit in a tribunal that has no power to entertain the claim." *Id.* at

22   325. Courts within this circuit have followed *Barry* and determined that courts may award

23   attorney fees where they lack jurisdiction, though the award is not mandatory. *See e.g.*, *Williams*

24   *v. Kula*, No. 20-1120, 2020 WL 7770915, at *7 (S.D. Cal. Dec. 29, 2020); *Wigington v.*

25   *MacMartin*, No. 221CV02355KJMDMC, 2022 WL 3999887, at *5 (E.D. Cal. Sept. 1, 2022).

26       "[R]uling on an anti-SLAPP motion does not necessarily require a ruling on the merits of

27   the plaintiff's claims; it may instead involve a determination that the plaintiff has no probability of

28   prevailing because the court lacks the power to entertain the claims in the first place." *Barry*, at

326.  Even though I am dismissing U.S. News's claims as unripe and for lack of standing, the City Attorney's anti-SLAPP motion and request for attorney fees is still within my authority to decide.

### A.   Step One: The City Attorney Issued the Subpoenas in His Official Capacity

No one contests that the City Attorney issued the Subpoenas in furtherance of his official responsibilities, which include the right to investigate entities that he believes may be violating California law.  The parties hotly dispute whether anti-SLAPP protection extends to actions taken by government officials, and specifically whether it extends to subpoenas issued by government officials.

#### 1.   Actions by Government Officials Are Not Per Se Excluded from Anti-SLAPP Protection

U.S. News is bringing its California state law claims against the City Attorney, David Chiu, in his official capacity.  *See generally* Compl.; *see also* Oppo. 33:4-6; Reply 16:14-17. While California courts have held that the text of section 425.16 "does not distinguish between claims arising from the protected conduct of individuals from those arising from the protected conduct of governmental entities," they have also observed that "courts appear more likely to find that claims arise out of protected conduct when they are based on the actions of individuals." *Laker v. Bd. of Trustees of California State Univ.*, 32 Cal. App. 5th 745, 775 (2019).

That said, section 425.16 does not exclude governmental entities and public officials from its potential protection as a matter of law.  *See Vargas v. City of Salinas*, 46 Cal. 4th 1, 18-19 (2009) ("[s]ection 425.16, subdivision (e) does not purport to draw any distinction between (1) statements by *private individuals or entities* that are made in the designated contexts or with respect to the specified subjects, and (2) statements by governmental *entities or public officials acting in their official capacity* that are made in these same contexts or with respect to these same subjects.") (emphasis added)).  The City Attorney is not precluded from bringing an anti-SLAPP motion.

#### 2.   The Issuance of Government Subpoenas Can Qualify as "Protected Activity" Under Section 425.16(e)

U.S. News contends that the act of issuing government subpoenas is not a protected activity under section 425.16(e)(2) because treating the subpoenas as "writing[s]" in connection

1    with a government investigation would "distend[] section 425.16(e)(2) in a way that it would

2    cover virtually everything the government does." Oppo. 36:4-10.  Section 425.16(e)(2)

3    "encompasses any cause of action against a person arising from any statement or writing made in,

4    or connection with an issue under consideration or review by, an official proceeding or body." *See*

5    *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1113 (1999); *see also* section

6    425.16(e)(2) (providing that the statute covers "any written or oral statement or writing made in

7    connection with an issue under consideration or review by a legislative, executive, or judicial

8    body, or any other official proceeding authorized by law.").

9         I do not see the same risk that U.S. News does.  The Subpoenas do not fall under

10   subsection (e)(2) merely because they were "communicated orally or in writing," but rather

11   because the Subpoenas are by nature written statements made in connection with an "official

12   proceeding authorized by law," i.e., the City Attorney's investigation into potential violations of

13   California law.  And the caselaw does not support U.S. News's argument.  As I held in another

14   case, subpoenas issued by city attorneys in connection with official investigations can fall within

15   the ambit of anti-SLAPP protections.  *See Pacaso Inc. v. City of St. Helena*, 2021 WL 2987144-

16   WHO (N.D. Cal. Jul. 15, 2021) (recognizing that a letter sent by a city attorney during

17   investigations into a company for suspected violations of zoning ordinances was protected under

18   the anti-SLAPP statute).  The City Attorney explains in its reply, "[U.S. News] is not challenging

19   an independent action that was reduced to writing in a subpoena . . . [its] state-law claims arise[]

20   out of the conduct of issuing subpoenas." *See* Reply 19:16-20.

21        The cases that U.S. News cites in opposition do not offer an applicable rule.  Take *Park v.*

22   *Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1065 (2017), for example.  U.S. News

23   offers this case for the rule that a party cannot bring an anti-SLAPP motion just because the

24   decision or action at issue has been reduced to writing.  *See* Oppo. 36:11-19.  There, the court

25   rejected the idea that the defendant, a public university, could invoke subsection (e)(2) merely

26   because its decision to deny a professor tenure "may have been communicated orally or in

27   writing."  *Id.*  But that establishes nothing here, where the action at issue is clearly connected to an

28   official proceeding at least ostensibly authorized by law, *see supra* n. 5, and the City Attorney

United States District Court
Northern District of California

1   does not attempt to fit under the section 425.16(e)(2) umbrella simply by stating that the

2   Subpoenas were written.

3           **3.      Other Arguments**

4           U.S. News makes a variety of other arguments in support of its position that the City

5   Attorney's issuance of subpoenas does not fall within the protection of California's anti-SLAPP

6   law.  None is persuasive.

7           U.S. News points out that California courts have held that claims challenging ordinances or

8   statutes are not subject to anti-SLAPP motions, and it argues that this rule applies to its claims

9   insofar as they challenge the Subpoenas as incompatible with the California Constitution.  *See*

10  Oppo. 33-34; *see also City of Cotati v. Cashman*, 29 Cal. 4th 69, 73-74, 80 (2002).  This argument

11  stalls because U.S. News points to no caselaw supporting its contention that "[l]ocal subpoenas are

12  indistinguishable from local ordinances for these purposes."  Oppo. 34:1-3.  Even assuming that

13  the two are analogous, the cases that it cites do not support its position.

14          U.S. News cites *USA Waste of California, Inc. v. City of Irwindale*, 184 Cal. App. 4th 53

15  (2010), where a California court of appeal denied an anti-SLAPP motion, commenting that

16  "extend[ing] the anti-SLAPP statute to litigation merely challenging the application,

17  interpretation, or validity of a statute or ordinance would expand the reach of the statute way

18  beyond any reasonable parameters." *USA Waste*, 184 Cal. App. 4th at 66; Oppo. 33:22-26.  There,

19  the City of Irwindale appealed the denial of its motion to strike USA Waste's cross-complaint

20  under the anti-SLAPP law.  *See USA Waste*, 184 Cal. App. 4th at 56.  The underlying issue

21  "concern[ed] a private matter between USA Waste and the City that [was] not a public issue or of

22  public interest," which led the court to conclude that application of the anti-SLAPP law to a cross-

23  complaint addressing that non-public issue would be an over-extension of the statute.  *Id.*

24          In contrast, this dispute involves a public issue that is a matter of public interest.  *See* MTD

25  & Strike 35-37; Oppo. 35-38.[12]  Regardless of who turns out to be right on the merits of U.S.

26  _____

27  [12] U.S. News argues briefly in opposition that the City Attorney's issuance of subpoenas does not
    "contribute" to the public discussion of the public issue as would be necessary for his actions to

28  fall within the ambit of section 425.16(e)(4).  *See* Oppo. 37:11-38:8. I do not reach this larger
    argument about subsection (e)(4), as I have determined that the City Attorney's actions fall within

United States District Court
Northern District of California

News's free expression claims, the public has an interest in its resolution.  Either U.S. News is engaging in bad business practices and misleading the public about how it ranks hospitals and the City Attorney's investigation will serve the public by exposing as much, or the City Attorney is over-extending his authority under California law by subpoenaing U.S. News in this manner and the public interest will be served by enjoining him from doing so.  *USA Waste* is inapplicable at least because the City Attorney's anti-SLAPP motion does not involve litigation that "merely challeng[es] the application, interpretation, or validity of a statute or ordinance," *see USA Waste*, 184 Cal. App. 4th at 66: it involves much thornier legal questions, and it involves a public issue.

U.S. News further asserts that the City Attorney's anti-SLAPP motion fails because California courts have allowed government entities to invoke section 425.16 to protect their right to speech, but not to protect their actions.  *See* Oppo. 35.  It first cites to *Vargas*, where the Supreme Court of California found that the anti-SLAPP statute barred a defamation claim against the city based on statements on the city's website that advocated for a ballot initiative.  *See Vargas*, 46 Cal. 1 at 19.  But in so holding, the *Vargas* court stated that "a lawsuit against a public entity that arises from its statements *or actions* is potentially subject to the anti-SLAPP statute." *See Vargas*, 46 Cal. 4th at 19 (emphasis added).  *Vargas* created no rule that would, per se, prevent the City Attorney from pursuing an anti-SLAPP action against a motion that challenges his issuance of subpoenas in his official capacity as part of an ongoing investigation.

While U.S. News is correct that "[a]cts of governance mandated by law, without more," are not subject to anti-SLAPP motions because those governance acts "are not exercises of free speech or petition," *see* Oppo. 34:5-19 (quoting *San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Employees' Ret. Assn*., 125 Cal. App. 4th 343, 354 (2004)), this has no bearing on the City Attorney's anti-SLAPP motion.  U.S. News does not challenge an "act of governance mandated by law" like the one considered in *San Ramon*.  It instead challenges the City's exercise of its right to subpoena entities that it seeks to investigate for possible violations of California law.

---

subsection (e)(2), but U.S. News's position confirms that it does not dispute that the underlying issue in this case is a public one.

1    The challenged conduct at issue here is subject to anti-SLAPP protection.  *See supra* Section

2    II(A)(2).

3        **B.    Step Two: U.S. News Cannot Prevail on Merits it Cannot Reach**

4        Since the City Attorney has made at least a threshold showing that he issued the Subpoenas

5    in "'furtherance of [his] right of petition or free speech under the United States or California

6    Constitution in connection with a public issue as defined in [subsection (e)] of [the anti-SLAPP

7    statute],'" I must determine whether U.S. News has "demonstrated a probability of prevailing on

8    [its] claim[s]." *See Hilton*, at 903 (quoting *Navellier v. Sletten*, 29 Cal. 4th 82 (2002)).  The answer

9    to this question is simple:  It has *not* demonstrated a probability of prevailing on its claims before

10   this court because its claims are not constitutionally ripe.  *See supra* Section I(A)-(B).  The issue is

11   not whether U.S. News is ultimately right on the merits down the road, but whether its strategy to

12   run to federal court to attempt to block a subpoena issued under a state statutory scheme designed

13   to resolve the legitimacy of the subpoena has any merit.

14   **III.    A PRELIMINARY INJUNCTION WILL NOT ISSUE**

15       As is obvious from the preceding findings, a preliminary injunction will not issue.  U.S.

16   News cannot prevail on merits that it cannot reach.  Its claims are not ripe.  *See supra* Sections

17   I(A)-(B).  The merits are for a state court to consider when evaluating the enforceability of the

18   City Attorney's Subpoenas if U.S. News chooses not to comply with them and the City Attorney

19   seeks to enforce them.

20        U.S. News faces no irreparable harm in the absence of an injunction.  California law

21   provides a direct route to state court to challenge the enforceability of the City Attorney's

22   subpoenas if the City Attorney seeks to enforce them.  *See supra* Sections I, II.  And in the

23   meantime, U.S. News faces no irreparable harm for not complying with non-self-enforcing

24   subpoenas.  If it chooses not to comply (as is its right) and the City Attorney takes the matter up in

25   state court (its only possible route for enforcement), then U.S. News is free to make the arguments

26   in state court that it has made to this court.  The City Attorney will have to defend the reasons

27   behind its subpoenas and its legal right to serve them.  If U.S. News prevails in those proceedings,

28   it will be excused from complying with the City Attorney's subpoenas.  And if it does not, it can

United States District Court
Northern District of California

appeal the matter to the California Court of Appeals and beyond.  *See Dana Point Safe Harbor Collective v. Superior Court*, 51 Cal. 4th 1, 11 (2010); *see supra* Section C.

The balance of equities and public interest are neutral.  While the City Attorney has demonstrated no urgent need to pursue its investigation immediately, its actions are ostensibly taken in the public interest.  U.S. News also contends that it acts in the public interest.  Ultimately, the public's interest is best served by having the parties proceed through the state-sanctioned process for determining whether these subpoenas are enforceable.  If they are enforceable, the public's interest will be served by the City Attorney proceeding with its investigation into what it believes may be violations of California's False Advertising Law.  If they are not enforceable, the public's interest will be served by allowing U.S. News to quash the Subpoenas and carry on with business as usual, completely unencumbered by an investigation.  Either way, the public is best served by the parties contesting these subpoenas in the proper forum, which is not here.

## CONCLUSION

The City Attorney's motion to dismiss is GRANTED and U.S. News's claims are DISMISSED without prejudice.[13]  The City Attorney's anti-SLAPP is GRANTED.  U.S. News is ORDERED to pay to defendant for fees and costs incurred in connection with the anti-SLAPP motion.  The City Attorney shall file a memorandum and declarations justifying the fees and costs incurred within two weeks of the date below.  U.S. News will have one week to respond.  No further briefing is allowed absent further order of this court.

**IT IS SO ORDERED.**

Dated: May 7, 2024



William H. Orrick
United States District Judge

---

[13] If the City Attorney attempts to circumvent the state-sanctioned process for enforcing the Subpoenas, then U.S. News is welcome to re-file its complaint in this court with new arguments as to why its claims have ripened.

United States District Court
Northern District of California